UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re: Chapter 11

Blitman Saratoga LLC, Case No. 20-23177 (RDD)

Debtor.

------------------------------------------------------------x

**DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§ 362, 364 AND 507 FOR AN ORDER AUTHORIZING DEBTOR TO OBTAIN REPLACEMENT AND NEW POST-PETITION DIP FINANCING**

The debtor herein, Blitman Saratoga LLC (the "Debtor"), by and through its counsel, submit this motion (the "Motion"), pursuant sections 362, 364(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") for the entry of interim (the "Interim Order") and final orders (the "Final Order" and together with the Interim Order, the "DIP Order"), *inter alia*, (i) authorizing the Debtor to borrow the total sum of up to $3,100,000 (the "DIP Loans") from Saratoga Funding LLC (the "DIP Lender") on a rolling basis pursuant to 11 U.S.C. §364(c) for the purposes of (i) replacing the existing Building Mortgage Loan and related Revolving Operating Loan held by Ballston Spa National Bank ("BSNB"), pursuant to an assignment of all of BSNB's loan and collateral documents and guarantees to the DIP Lender; (ii) advancing funds of up to $1.2 million over the next three (3) months to enable the Debtor to resume construction of the eight residential one-family homes under contract; and (iii) modifying the automatic stay to perfect the DIP Loans by recording the DIP Order or collateral documents consistent therewith. In support of this Motion, the Debtor represents as follows:

## Preliminary Statement

1. Perhaps, this is the most pivotal Motion in the Chapter 11 case, and is designed to jump-start resumption of construction for the immediate benefit of eight (8) potential homeowners, who are under contract to buy residential homes from the Debtor. The Debtor intends to move forward with completion of construction based upon an influx of new financing to be provided by Saratoga Funding LLC, an entity organized by the Debtor's lead financial investors, James Goren and Alex Goren. Prior pre-petition efforts to replace the existing mortgage and construction lender got bogged-down by internal disputes among the majority and minority members over a number of issues that ultimately boiled over into state court litigation. The Chapter 11 case, however, was filed to separate construction related matters from the internal disputes and to provide a framework for new financing under 11 U.S.C. §364. This Motion will hopefully accomplish that goal, which, in turn, will ultimately allow the Debtor to address the balance of its debts and, most importantly, deliver completed homes to eight would-be buyers whose patience is surely waning. A proposed DIP Order is annexed hereto as Exhibit "A". A proposed consolidated promissory note dovetailing with the DIP Order is annexed hereto as Exhibit "B".

## Jurisdiction and Venue

2. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1408. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. The statutory predicates for the relief sought herein are sections 362, 364 and 507 of Bankruptcy Code and Rules 2002 and 4001 of the Bankruptcy Rules.

## Background

4. On November 6, 2020 (the "Petition Date"), the Debtor commenced this bankruptcy case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code, and has continued in possession of its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. The Debtor is a real estate development company headquartered in White Plains, New York, which is currently involved in the completion of a residential home community known as Beaver Pond Village, located in Saratoga Springs, New York. To date, some 56 homes have been completed and sold, and there are many families and retirees already living in the community. At present, however, eight (8) homes are under purchase contracts and require financing to complete construction (the "Remaining Project").

6. The U.S. Trustee has inquired about the status of the deposits received from the homebuyers, all of which have either been bonded or remain in escrow, as per the attached schedule relating to the eight contracts is annexed hereto as Exhibit "C". [1]

7. The threshold goal of the Chapter 11 case is to resume construction as soon as possible based upon new financing to be provided by the DIP Lender in conjunction with a replacement of the existing bank loans made by BSNB. To be sure there is an internal dispute with a minority member (Howard Blitman) and his daughter (Robin Winter), which has negatively impacted the pace of construction; however, the Debtor is committed to delivering finished houses to the home-buyers.

8. The Remaining Project is being currently managed by Thomas Keaney, the current managing member of the Debtor, who has 25 years of experience in construction and

[1] One of the homebuyers, the Eastins, sued the Debtor to rescind the contract, although their home is 75% complete. The Debtor hopes to resuscitate the sale to the Eastins in bankruptcy.

development projects, is an engineer by profession, and is fully knowledgeable and conversant with all of the home-buyers. Mr. Keaney also lives in the area and has developed the attached completion budgets for each unit, collectively annexed hereto as Exhibit "D" (the "Budgets"). The Budgets also include a month by month master cash flow schedule showing that the funding of the construction based upon the DIP Loans for the first three months, and the utilization of the proceeds of the home sales to complete the balance of the construction.

9. As reflected in the Budgets, the Debtor's immediate construction needs over the next three (3) months total $1.2 million, to be funded at a rate of $500,000 per month for the first two months, followed by another $200,000 in the third month.

10. Two of the homes are 76-79% complete and need about eight - twelve weeks to finish from resumption of construction. The balance of the homes are in lesser stages of construction. Two other homes are approximately 50% complete and are projected to finish by April 30, 2021, one is 20% complete and is projected to finish by June 30, 2021, another home is 15% complete and two have holes dug for the foundation with permits in place. The projected end date for completion of the last set of homes is July, August and September, 2021.

11. However, the first order of business is for the Debtor to refinance the existing debt held by BSNB in the total amount of $1,892,438.92, and fund the initial draw-down of $500,000 for December 2020. The BSNB debt consists of two credit facilities: (i) Building Mortgage Loan with a current balance of $638,479.82[2]; and (ii) Operating/Construction Revolving Loan with a current balance of $1,254,959.10 (the "Revolver"). BSNB previously made demand on the Debtor for full payment of the debt at maturity on November 27, 2020, pursuant to letter dated November 2, 2020, a copy of which is annexed hereto as Exhibit "E".

---

[2] The Building Loan is secured by a real property mortgage in the sum of $1,500,000, while the Revolver is secured by a UCC lien and security interest against all personal property.

12. Given the impending maturity date, and the need to have as much flexibility as possible, the Debtor seeks to substitute lenders and replace BSNB based on an assignment of the existing BSNB loans, collateral and guarantees, subject to the following important caveats: First, the interest rate under the BSNB loans shall be reduced from 1% over Prime to straight Prime. Second, all interest on the DIP Loans shall accrue pending completion of construction and related home closings, whereupon the net proceeds shall first be used to fund the balance of construction expenses and then pay down the DIP Loans as provided by the Budgets. To repeat, the four (4) houses which are about 50% complete are expected to be closed by May 2021, with net proceeds to be available to fund completion of the remaining four (4) houses, all as reflected in the Budgets. Third, the maturity date of the DIP Loans shall be extended to be coterminous with the sale of the last home and other vacant lots, or one year from entry of the DIP Order, whichever occurs first.

13. All of these modifications are designed to provide the Debtor with improved liquidity for purposes of resuming construction. The additional DIP Loans, over and above, the replacement of the existing BSNB bank debt shall be made under Section 364(c)(1) and (c)(3), with priority over other administrative expenses except for a carve-out for professional fees of $100,000 and US Trustee fees, and secured by a junior lien on the eight homes under construction (lots and improvements) and twelve vacant lots.

14. The Court and interested parties are respectfully referred to the *Declaration of Thomas Keaney Pursuant to Local Bankruptcy Rule 1007-2* [Docket Entry No. 1] (the "Declaration") for a general discussion regarding the Debtor, its operations, and the events leading to the filing of the Bankruptcy Case. Mr. Keaney has filed a Supplemental Declaration in direct support of this Motion.

**Pre-Petition Secured Debt**

15. BSNB refinanced the original mortgage debt on the project. The BSNB loans evolved and expanded over time as different phases of the Project were built and completed. At one point, the Debtor maintained a balance of approximately $2.5 million dollars under the Revolver, which has since been paid down to the current balance of approximately $1.25 million. Likewise, the Building Mortgage Loan has been paid down as well from the initial draw of $1.5 million to approximately $640,000. Attached collectively hereto as Exhibit "F" are the current notes relating to the Building Mortgage Loan and the Revolver.

16. The BSNB bank debt is personally guaranteed by James Goren and Alex Goren jointly (50%) and Howard Blitman (50%). Because of pending litigation between the Gorens and Blitman, BSNB elected not to assign the mortgage debt and instead indicated that it planned to proceed with a maturity default on November 27, 2020. BSNB's position made it very difficult to obtain new financing and left the Debtor with no real option except to seek Chapter 11 relief on November 6, 2020.

**A. The Proposed DIP Loans**

17. The Debtor proposes to obtain the DIP Loan to replace BSNB, and provide financing to resume completion of construction. The only condition to the DIP Loans is that the BSNB loans be assigned to the DIP Lender, such that the DIP Lender will succeed to all rights under any personal guarantees except for modified terms in favor of the Debtor. The initial borrowings by the Debtor will aggregate approximately $3,100,000 itemized as follows:

| | | |
|---|---|---|
| a. | Replacement of Existing BSNB Bank debt | $1,900,000 (rounded) |
| | Construction expenses from 12/1/20 – 2/28/21 | $1,200,000 (rounded) |
| | Total: | $3,100,000 |

18. The key financial terms for the DIP Loans are as follows:

| | |
|---|---|
| **Borrower:** | Debtor |
| **DIP Lender:** | Saratoga Funding LLC |
| **DIP Loans:** | Up to approximately $3,100,000 of total borrowing to, *inter alia,* replace the BSBN bank debt through assignment of current loans, and resume construction. |
| **Maturity Date:** | Coterminous with the sale of the last home to be built and after the vacant lots are sold, or one year from the date of the DIP Order, whichever comes first. |
| **Funding Dates:** | The DIP Facility shall be disbursed in stages as construction progresses after the initial funding to replace BSNB. By late spring 2021, the first four houses should be sold closed, and the net proceeds should thereafter be available to fund the remaining construction expenses. |
| **Interest Rate:** | The interest rate shall be Prime, without a default rate, except that post-maturity interest is at the legal rate of nine (9%) percent. |
| **Security and Collateral:** | The DIP Lenders shall receive an assignment of the existing BSNB mortgage, UCC-1 liens and security agreements, and all related guarantees, together with a junior lien on the eight homes under construction. |
| **Superpriority Claims:** | The obligations of the Debtor under the DIP Loans shall also constitute an allowed super-priority administrative expense claim having priority over all administrative expenses of the kind specified in section 503(b) or section 507(b) of the Bankruptcy Code, subject only to the Carve-Out for (i) the unpaid fees due and payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930, and (ii) the allowed professional fees and expenses of Debtor's counsel in the sum of $100,000. |
| **Events of Default:** | Each of the following events shall be an "Event of Default" under the DIP Loans subject to a ten (10) day written notice with a right to cure.<br><br>(a) The Debtor shall fail to pay real estate taxes and other charges when due.<br><br>(b) The Court shall enter an order dismissing the Chapter 11 Case or converting it to a case under chapter 7 of the Bankruptcy Code, or, without the consent of the DIP Lenders (i) appointing a trustee in the Chapter 11 Case or (ii) appointing a responsible officer.<br><br>(c) The Debtor shall fail to pay accrued interest and principal to the DIP Lenders as and when due following the sale of a particular unit or home. |

| | |
|---|---|
| | (d) The Debtor fails to maintain adequate insurance for the Remaining Project.<br><br>(e) The Debtor breaches any other covenants, representation or warranty as set forth in the BSNB mortgage documents and note, as assigned. |

**Requested Relief and Basis Therefor**

19. The Motion requests, pursuant to Sections 364 and 507 of the Bankruptcy Code, the following essential relief: (i) entry of the proposed DIP Financing Order, attached as Exhibit "A" hereto, and a Final Order consistent therewith, (ii) authorizing the DIP Loans and approval of the Budgets; and (iii) directing the assignment of the BSNB mortgage, UCC-1 liens and security agreements, to the DIP Lender, together with all other loan collateral documents and guarantees.

20. The DIP Loans will enable the Debtor to resume completion of construction in an orderly and reasonable manner to honor written contracts with third party purchasers, and thereby preserve and enhance the value of the units for the benefit of creditors. Additionally, the availability of credit will also provide confidence to contractors to encourage them to return to work to complete construction.

**B. The DIP Facility Should be Approved**

21. Bankruptcy Code Section 364(c) provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under Bankruptcy Code Section 503(b)(1), the court may authorize the debtor to obtain credit or incur debt (i) with priority over any and all administrative expenses as specified in Bankruptcy Code section 503(b) or 507(b); (ii) secured by a lien on property of the estate that is not otherwise subject to a lien; or (iii) secured by a junior or senior lien on property of the estate that is subject to a lien.

22. The statutory requirement for obtaining post-petition credit under Section 364(c) is a finding, made after notice and hearing, that the debtor is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code]." 11 U.S.C. § 364(c). *See also In re Crouse Group Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987). Courts have applied the following three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code:

> (i) the debtor is unable to obtain unsecured credit under section 364(b), i.e., by allowing a lender only an administrative claim;
> (ii) the credit transaction is necessary to preserve the assets of the estate; and
> (iii) the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*Crouse Group*, 71 B.R. at 549. As discussed below, each of these elements is satisfied.

**(1) <u>The Debtor is Unable to Obtain Unsecured Credit</u>**

23. The project is already leveraged by the BSNB secured debt and certain liens, and the Debtor has no independent cash reserves to resume construction. Under these circumstances, it is virtually axiomatic that the Debtor cannot possibly qualify for unsecured credit, and is fortunate that the DIP Lenders have stepped into the breech to provide new loans at interest rates below those charged by BSNB. Mr. Keaney has consulted other area banks (M&T and Capital Bank), and has been advised that the Debtor does not qualify for unsecured credit for a multitude of reasons (*See* accompanying Keaney Supplemental Declaration).

**(2) <u>The DIP Facility is Necessary to Preserve the Debtor's Estate</u>**

24. Without access to post-petition financing, the Debtor will be unable to resume construction, which would, in turn, lead to multiple lawsuits and damages, and significantly

impair the value of the Debtor's remaining assets. Outside of the proposed financing, the Debtor has no ready source of cash and liquidity.

25. Thus, the Debtor faces a substantial risk of irreparable damage to the value of the Remaining Project and the ability to sell the remaining homes absent approval of the DIP Facility. *See In re Sun Healthcare Group, Inc.*, 245 B.R. 779, 781 (Bankr. D. Del. 2000) (noting that the court had approved debtor-in-possession financing to "permit the Debtors to continue to operate to preserve their estates").

26. Moreover, it is the Debtor's business judgment that entry into the DIP Facility is in its best interests. Provided that a debtor's business judgment does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, Courts grant a debtor considerable deference. *See, e.g., Trans World Airlines, Inc. v. Travellers Int'l AG. (In re Trans World Airlines, Inc.*), 163 B.R. 964, 974 (Bankr. D. Del. 1994), *rev'd on other grounds* by 134 F.3d 188 (3d Cir. 1998) (approving interim loan, receivables facility and asset-based facility based upon prudent business judgment of the debtor); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("Cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest."); *see also Funding Sys. Asset Mgmt. Corp. v. Key Capital Corp. (In re Funding Sys. Asset Mgmt. Corp.)*, 72 B.R. 87, 88 (Bankr. W.D. Pa. 1987); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981).

27. In sum, the Debtor has satisfied the requirements of 11 U.S.C. § 364(c) since credit on more favorable terms is difficult to even imagine at this juncture, and, certainly, not

available to the Debtor on an expedited basis. Moreover, even though the DIP Lender is an affiliate, it is willing to provide credit under better terms and at better rates than BSNB, including an extended maturity date and interest accruals without default rates or other charges. The DIP Lender is separately represented by counsel (Jay Russ, Esq.), and the Debtor has done its best to negotiate the most favorable terms that are available.

## C. The Automatic Stay Should Be Modified on a Limited Basis

28. The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtor to grant the security interests, mortgage liens, and super-priority claims described above and to perform such acts as may be requested to assure the filing, recording and perfection of such mortgages, security interests and mortgage liens.

## Notice

29. Notice of this Motion shall be provided to: (i) the Office of the United States Trustee; (ii) BSNB; (iii) counsel for the DIP Lender; (iv) all other scheduled creditors; and (v) all other parties who filed requests for service of notices. Due to the urgency of the circumstances surrounding this Motion and the nature of the relief in it, the Debtor respectfully submits that, at least on an interim basis, the motion should be entertained on shortened notice, with service to be done by email where known, and overnight delivery when no email is available.

**WHEREFORE**, the Debtor respectfully requests approval of the DIP Facility and Budget, together with such other and further relief as the Court deems appropriate.

Dated: New York, NY
November __, 2020

Goldberg Weprin Finkel Goldstein LLP
Attorneys for the Debtor
1501 Broadway, 22nd Floor
New York, New York 10036
(212) 221-5700

By: ______________________
Kevin J. Nash, Esq.

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re: Chapter 11

Blitman Saratoga LLC, Case No. 20-23177 (RDD)

Debtor.
-----------------------------------------------------------x

**ORDER APPROVING AND AUTHORIZING THE DEBTOR TO OBTAIN REPLACEMENT AND NEW POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 362 AND 364(c)**

Upon the motion (the "DIP Financing Motion")[1] of Blitman Saratoga LLC (the "Debtor"), pursuant to Sections 362, 364(c) and 507 of title 11 of the United States Code, (the "Bankruptcy Code"), and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking entry of an interim order (the "Interim Order") and final order, *inter alia*, (i) authorizing the Debtor to borrow the total sum of up to $3,100,000(the "DIP Loans") from Saratoga Funding LLC, an entity affiliated with James Goren and Alex Goren, majority members of the Debtor (the "DIP Lender") on a rolling basis pursuant to 11 U.S.C. §364(c) for the purposes of (i) replacing the existing first mortgage lien held by Ballston Spa National Bank ("BSNB") pursuant to an assignment of all loan and collateral documents and guarantees and (ii) advancing funds to enable the Debtor to resume construction of the eight residential one-family homes under contract; (iii) modifying the automatic stay to perfect and record mortgage liens relating to the DIP Orders; and (iv) scheduling a final hearing to consider the relief requested in the DIP Financing Motion and approving the form of notice with respect to the Final Hearing; and upon the Supplemental Declaration of Thomas Keaney filed in support of the DIP Financing Motion; and good and sufficient notice having been given; and an interim

[1] All terms defined in the DIP Financing Motion shall have the same meanings for purposes of this Order.

hearing having been held on _____ __, 2020; and based on the record compiled at the interim hearing, and it appearing that any objections to the relief have been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief is necessary to avoid irreparable harm to the Debtor and to permit the Debtor to resume construction and thereby preserve value for the Debtor's estate pending the Final Hearing, and such interim relief is fair and reasonable and in the best interests of the Debtor, its estate, its creditors and equity holders, and is essential for the timely resumption of the Remaining Project (as defined in the DIP Financing Motion); and after due deliberation and consideration; and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACTS AND CONCLUSIONS OF LAW:**[2]

I. Petition. On November 6, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, creating the Debtor's bankruptcy estate (the "Estate"). The Debtor has continued in possession of its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Chapter 11 case

II. Jurisdiction and Venue. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1408. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief herein are sections 362, 364(c) and 507 of Bankruptcy Code and Bankruptcy Rules 2002 and 4001.

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P. 7052. Any statements of the Court from the bench at the Interim Hearing, shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference herein to the extent not inconsistent herewith.

III. Need for Postpetition Financing. The DIP Loans satisfy the requirements of applicable law including section 364(c) of the Bankruptcy Code. The Debtor needs to obtain new and additional financing to replace the maturity mortgage debt of Ballston Spa National Bank ("BSNB") and resume construction of the eight remaining homes under contract forming the "Remaining Project" as defined in the DIP Financing Motion, so as to preserve and maximize the value of the Debtor's estate. The Debtor does not have sufficient sources of working capital and financing to resume construction absent the DIP borrowing.

IV. Willingness to Lend. The DIP Lender, although an insider, has offered to make the DIP Loans on better terms than the existing BSNB mortgage. As such, the Court finds that such financing is reasonable and necessary to the Debtor's reorganization efforts, that the DIP Lender is extending additional credit in good faith and that the DIP Lender's post-petition loans will have the protections provided under section 364(e) of the Bankruptcy Code. Additionally, as part of the replacement of existing mortgage debt, BSNB shall be directed to assign the mortgage and all other collateral and guarantees to the DIP Lender.

V. Use of Proceeds of the DIP Loans. The DIP Lender requires, and the Debtor has agreed, that the proceeds of the DIP Loans shall be used to replace the BSNB mortgage and to resume construction, and to pay the costs and expenses thereof as set forth in the Budgets collectively annexed to the DIP Financing Motion as Exhibit "D" (the "Budgets").

VI. Final Hearing. At the Final Hearing, the Debtor will seek final approval of the DIP Loans pursuant to a proposed final order (the "Final Order"), which order shall be in form and substance similar to this Interim Order, notice of which Final Hearing and Final Order will be provided in accordance with this Interim Order.

VII. Notice. Pursuant to Rule 4001(c) of the Bankruptcy Rules, notice of the Interim Hearing and the relief requested in the DIP Financing Motion was given to: (i) the Office of the United States Trustee; (ii) the parties included on the Debtor's list of twenty (20) largest creditors; and (iii) all other parties required to receive service hereof. Based on the foregoing:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that:

1. Approval. The DIP Financing Motion is GRANTED, on an interim basis, to the extent provided herein with respect to the funds to be advanced pursuant to this Interim Order totaling approximately $3.1 million to replace the existing BSNB mortgage based upon an assignment thereof and to resume construction. Thus, the Debtor is hereby authorized and, pursuant to the terms of this Order and the Budgets, to borrow up to $3,100,000 (the "DIP Loans").

2. Authorization of the DIP Loans. The Debtor is authorized and empowered to execute or cause to be executed (i) the proposed Consolidated Note annexed to the DIP Financing Motion as Exhibit "B"; (ii) an assignment of the existing BSNB mortgage and other loan and collateral documents, including all notes and guaranties; and (iii) any other customary documents and instruments relating to the DIP Loans; and to incur and to perform all obligations in accordance with, and subject to, the terms of this Order, and to deliver all instruments and documents which may be required or necessary for the performance by the Debtor under the DIP Orders and the creation and perfection of a subordinate mortgage pursuant to 11 U.S.C.§364(c).

3. DIP Order. The DIP Order shall constitute and evidence valid and binding obligations of the Debtor with respect to funds advanced pursuant to this Order, and shall be enforceable against the Debtor, its Estate and any successors thereto, including, without

limitation, any trustee appointed or elected in this Chapter 11 case or a case under Chapter 7 of the Bankruptcy Code.

4. Junior Mortgage. Upon entry of this Order: (a) the DIP Lender is hereby granted a valid, binding, enforceable, and perfected subordinate mortgage (the "Junior Mortgage") on the Debtor's remaining lots, either under construction or vacant, together with all improvements thereon pursuant to 11 U.S.C. §364(c) in the amount of the DIP Loans, excluding the assignment of the BSNB loans. The Junior Mortgage and related security interest shall be valid and enforceable against any trustee appointed or elected in this Chapter 11 case or a case under Chapter 7 of the Bankruptcy Code.

5. DIP Superpriority Claim. Also, upon entry of this Interim Order, the DIP Lender is hereby granted, pursuant to section 364(c)(1) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in this Chapter 11 case (collectively, the "DIP Superpriority Claim") in the amount of all post-petition advances for construction and related expenses, projected to ne $1.2 million pursuant to the Budgets. The DIP Superpriority Claim shall be subordinate only to the Carve Out defined below, and shall otherwise have priority over any and all administrative expenses and unsecured claims against the Debtor.

6. Use of DIP Loan Proceeds. The Debtor shall use the loan proceeds advanced hereunder only for the purposes specifically set forth in the Budgets.

7. Carve-Out. The Adequate Protection Liens shall be junior only to the carve out for the following items (the "Carve Out"): (i) all fees required to be paid to the U.S. Trustee pursuant to 28 U.S.C. §1930(a) and (ii) the reasonable fees and expenses of up to $100,000 incurred by the Debtor's counsel subject to the filing of an application and notice therefore pursuant to 11 U.S.C. §330 and 331 ; (iii) payment of up to $10,000 for any fees incurred by a

Chapter 7 trustee and his or her professionals should this Chapter 11 case be subsequently converted to Chapter 7. The foregoing shall not be deemed to be a waiver of any right to seek to surcharge the Debtor's property pursuant section 506(c) of the Bankruptcy Code or a waiver of the right of the Lender to contest any surcharge.

8. Events of Default. The occurrence of any of the following events shall constitute an event of default after ten (10) days prior written notice with opportunity to cure (collectively, "Events of Default"):

(a) The Debtor shall fail to pay real estate taxes and other charges when due.

(b) The Court shall enter an order dismissing the Chapter 11 Case or converting it to a case under chapter 7 of the Bankruptcy Code, or, without the consent of the DIP Lender (i) appointing a trustee in the Chapter 11 Case or (ii) appointing a responsible officer.

(c) The Debtor shall fail to pay accrued interest and principal to the DIP Lender as and when due following the sale of a particular unit or home.

(d) The Debtor fails to maintain adequate insurance for the Remaining Project.

(e) The Debtor breaches any other covenants, representation or warranty as set forth in the BSNB mortgage documents and note, as assigned.

9. Modification of the Automatic Stay. The automatic stay imposed under Bankruptcy Code section 362(a) is modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the DIP Lender to record a conventional subordinate mortgage consistent with the terms hereof (the Junior Mortgage); and (b) permit the Debtor to perform such acts as the DIP Lender may request in its reasonable discretion to assure the perfection of the Junior Mortgage.

10. Perfection of Junior Mortgage. This Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the Junior Mortgage with respect to funds advanced for the resumption of construction under the Budgets. Notwithstanding the foregoing, the DIP Lender is authorized to file, as it deems necessary or advisable, such financing statements, mortgages, notices and other instruments or documents in accordance with applicable non-bankruptcy law to record, perfect or evidence the Junior Mortgage.

11. Good Faith Under Section 364(e) of the Bankruptcy Code. Even though the DIP Lender is an affiliate of the Debtor's majority members, the DIP Lender was represented by separate counsel. The DIP Lender has acted in good faith in connection with the DIP Loans and this Interim Order. Thus, in the event that any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this or appellate court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code with respect to funds advanced for the resumption of construction pursuant to this Interim Order.

12. Final Hearing. The Final Hearing to consider entry of the Final Order and final approval of the DIP Loans is scheduled for ______ __, **2021 at __:__ _.M. (Eastern Time)** by telephone through Court Solutions before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York. On or before **4:00 p.m. (Eastern Time) on _____ ___, 2020**, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Order and notice of the Final Hearing (the "Final Hearing Notice"), together with a copy of this Order and the DIP Financing Motion, on: (a) the parties provided with notice of the Interim Hearing; (b) any party that, as of that date, filed a request for notices with this Court; and (c) the U.S. Trustee. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order

shall file written objections with the Clerk of the Court no later than __________ ___**, 2021 at 4:00 P.M. (Eastern Time)**, which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtor, Kevin J. Nash, Esq., Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, NY 10046, knash@gwfglaw.com; and (ii) the Office of the United States Trustee, Attn. Greg Zipes, Esq., U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, greg.zipes@usdoj.gov.

13. Effect of this Order. This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, only with respect to funds advanced pursuant to this Order.

Dated: White Plains, NY
_____________ __, 2020

____________________________
Hon. Robert D. Drain

# EXHIBIT B

# CONSOLIDATED, MODIFIED AND EXTENDED NOTE

Up to $3,100,000

White Plains, New York
Dated: December __, 2020

THIS CONSOLIDATED, MODIFIED AND EXTENDED NOTE (hereinafter, the "**Note**") made this ____ day of December, 2020 by Blitman Saratoga LLC, a New York limited liability company (hereinafter, referred to as the "**Maker**"), for the benefit of Saratoga Funding LLC, a New York limited liability company, its successors or assigns (the "**Payee**").

This Note is issued pursuant to and in accordance with the DIP Orders entered in the Maker's Chapter 11 case. The terms of the DIP Order are expressly incorporated herewith without repetition. All terms defined in the DIP Order shall have the same meanings for purposes of this Note.

FOR VALUE RECEIVED, Maker promises to pay to the order of Payee at such place as Payee may designate to Maker in writing from time to time, the principal sum of up to THREE MILLION ONE HUNDRED THOUSAND AND 00/100 DOLLARS ($3,100,000.00) or so much thereof as shall have been disbursed (the "Debt"), together with interest thereon at the Interest Rate (as hereinafter defined), calculated in the manner hereinafter set forth from and including the date of this Note to the date this Note is paid in full, as follows:

As of the date hereof, interest at the Interest Rate shall be to accrue during the Interest Accrual Period (as hereinafter defined), and, thereafter, interest shall be payable on the Maturity Date. Interest shall be calculated on the basis of a 365-day year for the actual number of days elapsed.

For the purposes of this Note, these terms shall be defined as follows:

1. The term "**Business Day**" shall mean any day other than a Saturday, Sunday or any other day on which national banks in New York, New York are not open for business.

2. The term "**Interest Accrual Period**" shall mean the period beginning as of the first day when the DIP Loans are made on a revolving basis until such time as Maturity occurs or the Debt is accelerated.

3. The term "**Interest Rate**" shall mean the prime lending rate.

4. The term "**Loan Agreement**" shall be synonymous with the terms of the DIP Loans as approved by the DIP Orders.

5. The term "**Maturity Date**" shall be coterminous with the sale of the last home and all vacant lots or one year from the date hereof, whichever occurs first.

6. The term "**Mortgage**" shall mean that certain Building Loan Mortgage made by Maker in favor of BSNB in the principal amount of $1,500,000 affecting the Mortgaged Property (as hereinafter defined) to be assigned to Payee.

7. The term "**Principal Balance**" shall mean the outstanding principal balance of this Note from time to time.

8. The term "**Property**" shall mean the vacant lots and lots under construction located at Beaver Pond Village.

It is hereby expressly agreed that the entire Debt shall become immediately due and payable at the option of Payee on the occurrence of any Default under the terms of the DIP Order after ten (10) days' notice with an opportunity to cure, together with all accrued interest.

Payee also agrees that in the event of an uncured default under the DIP Order, there shall not be a charge for default interest, except that the Maker shall be required to pay interest at the legal rate of nine (9%) percent per annum following the Maturity Date (the "**Post Maturity Rate**"). This charge shall be added to the Debt, and shall be deemed secured by the Mortgage and the DIP Orders. This clause, however, shall not be construed as an agreement or privilege to extend the maturity date of the Note.

Maker acknowledges that this Note and Maker's obligations under this Note are and shall at all times continue to be absolute and unconditional in all respects. This Note together with the DIP Order represents the entire agreement and understanding of Payee and Maker. Maker hereby waives presentment and demand for payment, notice of dishonor, protest or notice of protest of this Note.

This Note to the extent that it replaces the existing BSNB loan indebtedness shall be binding on the existing guarantors and endorsers to the extent of their respective original liability and Payee reserves all rights against Howard Blitman as co-guarantor to recover his share of the guaranteed indebtedness to BSNB as assigned to Payee, equal to one-half (50%) of BSNB bank debt, together with all accrued interest and fees.

The indebtedness herein evidenced by this Note is secured by assignment of the Mortgage.

The terms of this Note shall be governed by and construed in accordance with the laws of the State of New York.

No delay on the part of Payee in exercising any right or remedy under this Note, the Mortgage or DIP Order shall operate as a waiver in whole or in part of any such right or remedy. No notice to or demand on Maker shall be deemed to be a waiver of the obligation of Maker or of the right of Payee to take further action without further notice or demand as provided in this Note, the Mortgage or the DIP Order.

Maker (and the undersigned representative of Maker, if any) represents that Maker has full power, authority and legal right to execute and deliver this Note, which constitutes a valid and binding obligation of Maker based upon Bankruptcy Court approval.

This Note, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Maker or Payee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Maker hereby irrevocably and unconditionally waives, and Payee, by its acceptance of this Note, irrevocably and unconditionally waives, any and all right to trial by jury in any action, suit or counterclaim arising in connection with, out of or otherwise relating to this Note, the Mortgage or DIP Order.

Maker, to the full extent permitted by law, hereby knowingly, intentionally and voluntarily, (a) submits to personal jurisdiction in the State of New York over any suit, action or proceeding by any person arising from or relating to this Note, (b) agrees that any such action, suit or proceeding may be brought in either the State Court sitting in Westchester County, New York or the Bankruptcy Court to the extent that the Maker's Chapter 11 case is still pending, (c) submits to the jurisdiction of such courts, and (d) to the fullest extent permitted by law, agrees that Maker will not bring any action, suit or proceeding in any other forum (but nothing herein shall affect the right of the holder of this Note to bring any action, suit or proceeding in any other forum). Maker further consents and agrees to service of any summons, complaint or other legal process in any such suit, action or proceeding by registered or certified U.S. Mail, postage prepaid, to Maker at the address set forth on page 1 hereof, and consents and agrees that such service shall constitute in every respect valid and effective service (but nothing herein shall affect the validity or effectiveness of process served in any other manner permitted by law).

This Note consolidates, modifies and extends in their entirety the following notes or other obligations:

1. Promissory Note made by Maker for the benefit of BSNB in the current total amount of $638,479.82, relating to the Building Loan Agreement as assigned.

2. Promissory Note made by Maker for the benefit of BSNB in the current total amount of $1,254,959.10, relating to the Revolver as assigned .

3. Direct borrowings of up to $1.2 million pursuant to the DIP Order.

[Signature and acknowledgement on following page]

IN WITNESS WHEREOF, Maker has duly executed this Note the day and year first above written.

BLITMAN SARATOGA LLC,
a New York limited liability company

By: ________________________
Name:
Title:

STATE OF NEW YORK )
) ss.:
COUNTY OF WESTCHESTER )

On the ___ day of December, 2020 before me, the undersigned, personally appeared ________________________, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

____________________________________
Notary Public

# EXHIBIT C

**BEAVER POND SUBDIVISION**

**CURRENT LOTS UNDER CONTRACT**

**(As of 11/16/2020)**

**Lot 18 - 49 Jane (Eastin)**

| Contract Date | Contract Price | 1st Deposit (Yes) | 2nd Deposit (Yes) | Total Escrow Deposit(s) | Bond Amount | ESCROW BALANCE (Interest Not Incl.) | Completion Time Frame | Building Permit Issued | Closing Date | Completion Deadline Date | Completion Deadline Date/Force Majeure | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/30/18 | $425,000 | $21,250 | $21,250 | $42,500 | $40,000 | $2,500 | 180days from B.P.; 12mos/18mos | 3/27/19 | 9/23/19 | 9/23/20 | 3/23/21 | |

**Lot 13 - 59 Jane (Colone)**

| Contract Date | Contract Price | 1st Deposit (Yes) | 2nd Deposit (Yes) | Total Escrow Deposit(s) | Bond Amount | ESCROW BALANCE (Interest Not Incl.) | Completion Time Frame* | Building Permit Issued | Closing Date | Completion Deadline Date | Completion Deadline Date/Force Majeure | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/10/18 | $481,000 | $24,050 | $24,050 | $48,100 | None | $48,100 | 180days from BP; 9mos/15mos | 4/1/19 | 9/28/19 | 6/28/20 | 12/28/20 | |

**Lot 14 - 57 Jane (Guiffre)**

| Contract Date | Contract Price | 1st Deposit (Yes) | 2nd Deposit (Yes) | Total Escrow Deposit(s) | Bond Amount | ESCROW BALANCE (Interest Not Incl.) | Completion Time Frame* | Building Permit Issued | Closing Date | Completion Deadline Date | Completion Deadline Date/Force Majeure | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/17/18 | $438,000 | $21,900 | $21,900 | $43,800 | None | $43,800 | 180days from BP; 9mos/15mos | 9/9/19 | 3/7/20 | 12/7/20 | 6/7/21 | |

***NOTE: 12 months/18 months per contract; was shortened per attorney approval.**

**Lot 19 - 47 Jane (Bennice)**

| Contract Date | Contract Price | 1st Deposit (Yes) | 2nd Deposit (Yes) | Total Escrow Deposit(s) | Bond Amount | ESCROW BALANCE (Interest Not Incl.) | Completion Time Frame* | Building Permit Issued | Closing Date | Completion Deadline Date | Completion Deadline Date/Force Majeure | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/16/19 | $438,000 | $21,900 | $21,900 | $43,800 | $20,000 | $23,800 | 180days from BP; 9mos/15mos | 9/30/19 | 3/28/20 | 12/28/20 | 6/28/21 | |

**Lot 77 - 8 Katie (Dorsey)**

| Contract Date | Contract Price | 1st Deposit (Yes) | 2nd Deposit (Yes) | Total Escrow Deposit(s) | Bond Amount | ESCROW BALANCE (Interest Not Incl.) | Completion Time Frame | Building Permit Issued | Closing Date | Completion Deadline Date | Completion Deadline Date/Force Majeure | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/27/19 | $548,000 | $54,800 | $54,800 | $109,600 | $50,000 | $59,600 | 180days from BP; 12mos/18mos | 12/1/19 | 5/29/20 | 5/29/21 | 11/29/21 | |

**Lot 67 - 11 Jane (Akker)**

| Contract Date | Contract Price | 1st Deposit (Yes) | 2nd Deposit (Yes) | Total Escrow Deposit(s) | Bond Amount | ESCROW BALANCE (Interest Not Incl.) | Completion Time Frame* | Building Permit Issued | Closing Date | Completion Deadline Date | Completion Deadline Date/Force Majeure | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/14/19 | $625,000 | $31,250 | $31,250 | $62,500 | $30,000 | $32,500 | 180days from BP; 9mos/15mos | 1/16/20 | 7/14/20 | 4/14/21 | 10/14/21 | |

***NOTE: 12 months/18 months per contract; was shortened per attorney approval.**

**Lot 76 - 6 Katie (Lesiak)**

| Contract Date | Contract Price | 1st Deposit (Yes) | 2nd Deposit (Yes*) | Total Escrow Deposit(s) | Bond Amount | ESCROW BALANCE (Interest Not Incl.) | Completion Time Frame | Building Permit Issued | Closing Date | Completion Deadline Date | Completion Deadline Date/Force Majeure | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/25/19 | $532,000 | $26,600 | $26,600 (*Rec'd 8/26/20) | $53,200 | $25,000 | $28,200 | 180days from BP; 12mos/18mos | 2/25/20 | 8/23/20 | 8/23/21 | 2/23/22 | |

**Lot 68 - 9 Jane (Lyeth)**

| Contract Date | Contract Price | 1st Deposit (Yes) | 2nd Deposit (NO) | Total Escrow Deposit(s) | Bond Amount | ESCROW BALANCE (Interest Not Incl.) | Completion Time Frame* | Building Permit Issued | Closing Date | Completion Deadline Date | Completion Deadline Date/Force Majeure | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/5/19 | $559,000 | $27,950 | ($27,950) (Not Received) | $27,950 | $25,000 | $2,950 | 180days from BP; 9mos/15mos | 8/4/20 | 1/31/21 | 10/31/21 | 5/1/22 | |

*NOTE: 12 months/18 months per contract; was shortened per attorney approval.

TOTAL ESCROW DEPOSITS RECEIVED: $431,450.00

LESS TOTAL AMOUNT OF BONDS: -190,000.00

ESCROW BALANCE TO DATE: $241,450.00*

(*Not included accumulated interest to date)

# EXHIBIT D

**Beaver Pond Village**
**BUDGET** 11.18.2020 for K Nash

| Sources: | 12/31/2020 | 1/31/2021 | 2/28/2021 | 3/31/2021 | 4/30/2021 | 5/31/2021 | 6/30/2021 | 7/31/2021 | 8/31/2021 | 9/30/2021 | 10/31/2021 | 11/30/2021 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Closing of Lot 718 - | | | $433,747 | | | | | | | | | | $433,747 |
| Closing of Lot 713 - | | | | $503,410 | | | | | | | | | $503,410 |
| Closing of Lot 714 - | | | | | $484,043 | | | | | | | | $484,043 |
| Closing of Lot 719 - | | | | | | $447,828 | | | | | | | $447,828 |
| Closing of Lot 777 - | | | | | | | $598,984 | | | | | | $598,984 |
| Closing of Lot 767 - | | | | | | | | $638,875 | | | | | $638,875 |
| Closing of Lot 776 - | | | | | | | | | $507,000 | | | | $507,000 |
| Closing of Lot 768 - | | | | | | | | | | $575,792 | | | $575,792 |
| Sale of Model | | | | | | | | | | | $550,000 | | $550,000 |
| Sale of Lots | | | | | | | | | | | | $1,550,000 | $1,550,000 |
| DIP Lender Financing | $500,000 | $500,000 | $200,000 | | | | | | | | | | $1,200,000 |
| **Total Sources** | $500,000 | $500,000 | $633,747 | $503,410 | $484,043 | $447,828 | $598,984 | $638,875 | $507,000 | $575,792 | $550,000 | $1,550,000 | $7,489,679 |

| Uses: | 12/31/2020 | 1/31/2021 | 2/28/2021 | 3/31/2021 | 4/30/2021 | 5/31/2021 | 6/30/2021 | 7/31/2021 | 8/31/2021 | 9/30/2021 | 10/31/2021 | 11/30/2021 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AP - Changebridge | $325,000 | $200,000 | $50,000 | $40,000 | $27,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $642,000 |
| AP - Blitman Saratoga | $47,000 | $45,000 | $45,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $137,000 |
| HC for Lot 718 - | $0 | $60,500 | $11,050 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $71,550 |
| HC for Lot 713 - | $0 | $28,850 | $9,000 | $50,475 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $88,325 |
| HC for Lot 714 - | $0 | $23,558 | $45,458 | $70,058 | $55,958 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $195,030 |
| HC for Lot 719 - | $0 | $5,220 | $20,720 | $56,620 | $60,720 | $40,400 | $0 | $0 | $0 | $0 | $0 | $0 | $183,680 |
| HC for Lot 777 - | $0 | $24,138 | $55,638 | $59,188 | $70,138 | $57,888 | $14,000 | $0 | $0 | $0 | $0 | $0 | $280,989 |
| HC for Lot 767 - | $0 | $0 | $73,500 | $35,500 | $12,143 | $46,693 | $62,143 | $49,893 | $20,143 | $0 | $0 | $0 | $300,013 |
| HC for Lot 776 - | $0 | $0 | $98,800 | $34,500 | $14,000 | $37,400 | $51,000 | $40,400 | $14,000 | $0 | $0 | $0 | $290,100 |
| HC for Lot 768 - | $0 | $27,851 | $60,225 | $22,425 | $38,425 | $16,925 | $43,475 | $58,925 | $46,675 | $16,925 | $0 | $0 | $331,854 |
| | | | | | | | | | | | | | |
| National Grid | $80,000 | $0 | $20,000 | | | | | | | | | | $100,000 |
| Site Costs - satisfy LOC's | | | | | | | $185,150 | $185,150 | $185,150 | $185,150 | | | $740,600 |
| Sales Commission | $0 | $0 | $21,250 | $24,050 | $21,900 | $21,900 | $27,400 | $31,250 | $26,600 | $27,950 | $0 | $77,500 | $279,800 |
| Option Commission | | | $9,777 | $6,657 | $2,993 | $1,939 | $6,564 | $2,852 | $0 | $2,716 | $0 | $0 | $33,497 |
| | | | | | | | | | | | | | |
| General Conditions | | | | | | | | | | | | | |
| Super | $ 6,250 | $ 6,250 | $ 6,250 | $ 6,250 | $ 6,250 | $ 6,250 | $ 6,250 | $ 6,250 | $ 6,250 | $ 6,250 | $ 6,250 | $ 6,250 | $75,000 |
| Labor | $ 3,333 | $ 3,333 | $ 3,333 | $ 3,333 | $ 3,333 | $ 3,333 | $ 3,333 | $ 3,333 | $ 3,333 | $ 3,333 | $ 3,333 | $ 3,333 | $40,000 |
| Project Management (tk) | $ 8,700 | $ 8,700 | $ 8,700 | $ 8,700 | $ 8,700 | $ 8,700 | $ 8,700 | $ 8,700 | $ 8,700 | $ 8,700 | $ 8,700 | $ 8,700 | $104,400 |
| Project Admin | $ 2,430 | $ 2,430 | $ 2,430 | $ 2,430 | $ 2,430 | $ 2,430 | $ 2,430 | $ 2,430 | $ 2,430 | $ 2,430 | $ 2,430 | $ 2,430 | $29,160 |
| Back office | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $36,000 |
| Fringes | $ 4,516 | $ 4,516 | $ 4,516 | $ 4,516 | $ 4,516 | $ 4,516 | $ 4,516 | $ 4,516 | $ 4,516 | $ 4,516 | $ 4,516 | $ 4,516 | $54,192 |
| Insurance | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $45,000 |
| Trailer | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $14,400 |
| Utilities | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $12,000 |
| Winter Conditions | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $15,000 |
| Temporary Condition | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $12,000 |
| Tools and Equipment | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $18,000 |
| Dumpsters | $ 833 | $ 833 | $ 833 | $ 833 | $ 833 | $ 833 | $ 833 | $ 833 | $ 833 | $ 833 | $ 833 | $ 833 | $10,000 |
| | | | | | | | | | | | | | |
| Soft Cost | | | | | | | | | | | | | |
| Blitman Saratoga Liaison (tk) | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $60,000 |
| SWPPP Inspections | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $12,000 |
| Surveying Lots | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $12,000 |
| Surveying Roads | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $30,000 |
| Engineering | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $30,000 |
| Architectural | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $6,000 |
| Legal | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $36,000 |
| Accounting | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $6,000 |
| Model Expenses | $ 1,167 | $ 1,167 | $ 1,167 | $ 1,167 | $ 1,167 | $ 1,167 | $ 1,167 | $ 1,167 | $ 1,167 | $ 1,167 | $ 1,167 | $ 1,167 | $14,004 |
| Homeowner Settlements | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $6,000 |
| HOA Fees | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $12,000 |
| C of O Fees | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $1,200 |
| Return of DIP Financing | | | | | | | | $ 200,000 | $ 100,000 | $ 200,000 | $ 300,000 | $ 400,000 | $ 1,200,000 |
| **Total Uses** | $509,530 | $472,646 | $577,947 | $457,002 | $360,806 | $280,674 | $447,262 | $625,999 | $450,098 | $490,272 | $357,530 | $535,030 | $5,564,794 |
| | | | | | | | | | | | | | |
| **Net Cash Flow** | ($9,530) | $27,354 | $55,800 | $46,408 | $123,237 | $167,154 | $151,722 | $12,876 | $56,902 | $85,520 | $192,470 | $1,014,970 | $1,924,886 |
| **Cumulative Cash Flow** | ($9,530) | $17,825 | $73,625 | $120,033 | $243,270 | $410,424 | $562,147 | $575,022 | $631,924 | $717,445 | $909,915 | $1,924,886 | |

| | | |
|---|---|---|
| Net Cash | $1,924,886 | |
| Less Loans | ($1,900,000) | 100% of A&D anc |
| | $24,886 | Available |

**Beaver Pond Village**
**November 16, 2020**

*Lot 718 - 49 Jane* Rosewood II

79% COMPLETE estimated completion date is February 2021

| Code | Description | Amount | Incurred | Cost to Complete | Extras Exposure | 12/31/2020 | 1/31/2021 | 2/28/2021 | 3/31/2021 | 4/30/2021 | 5/31/2021 | 6/30/2021 | 7/31/2021 | 8/31/2021 | 9/30/2021 | 10/31/2021 | 11/30/2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2000 | Clearing | $5,500.00 | $5,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 2001 | Grading & Excavation | $12,500.00 | $8,000.00 | $4,500.00 | | | $4,500.00 | | | | | | | | | | |
| 2002 | Footings | $7,500.00 | $7,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 2003 | Foundation Wall/Piers | $14,500.00 | $14,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 2004 | Slabs | $5,000.00 | $5,000.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 2005 | Porches & Patios | $5,000.00 | $5,000.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 2006 | Waterproofing | $1,800.00 | $1,800.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 3001 | Dimensional Lumber | $37,500.00 | $37,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 3002 | Roof Trusses | $8,000.00 | $8,000.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 3006 | Exterior Doors & Windows | $10,000.00 | $10,000.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 3007 | Patio Decks | $6,500.00 | $6,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 3008 | Stairs & Railings | $4,000.00 | $4,000.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 3009 | Interior Trim labor | $7,000.00 | $5,000.00 | $2,000.00 | | | $2,000.00 | | | | | | | | | | |
| 3009A | Interior Trim material | $7,500.00 | $5,500.00 | $2,000.00 | | | $2,000.00 | | | | | | | | | | |
| 3010 | Framing Labor | $19,500.00 | $19,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 3011 | Siding-Material & Labor | $18,500.00 | $18,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 3011a | Siding Labor | $0.00 | | $0.00 | | | $0.00 | | | | | | | | | | |
| 3012 | Roofing - Material & Labor | $7,000.00 | $7,000.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 3012A | Roofing Labor | $0.00 | | $0.00 | | | $0.00 | | | | | | | | | | |
| 3013 | Exterior Trim | $1,000.00 | | $1,000.00 | | | $1,000.00 | | | | | | | | | | |
| 3014 | Exterior Painting | $500.00 | | $500.00 | | | $500.00 | | | | | | | | | | |
| 3015 | Gutters & Leaders | $2,500.00 | | $2,500.00 | | | $2,500.00 | | | | | | | | | | |
| 3016 | Garage Doors | $1,500.00 | $1,150.00 | $350.00 | | | $350.00 | | | | | | | | | | |
| 3020 | Brick | $0.00 | | $0.00 | | | $0.00 | | | | | | | | | | |
| 4000 | Plumbing Material | $4,000.00 | | $4,000.00 | 3000 | | $7,000.00 | | | | | | | | | | |
| 4001 | Plumbing Labor | $12,500.00 | $8,750.00 | $3,750.00 | | | $3,750.00 | | | | | | | | | | |
| 4002 | Electrical | $8,500.00 | $6,000.00 | $2,500.00 | 1000 | | $3,500.00 | | | | | | | | | | |
| 4003 | H.V.A.C. | $15,500.00 | $10,850.00 | $4,650.00 | | | $4,650.00 | | | | | | | | | | |
| 4004 | Insulation (with Drywall) | $0.00 | | $0.00 | | | $0.00 | | | | | | | | | | |
| 4005 | Telecommunications | $0.00 | | $0.00 | | | $0.00 | | | | | | | | | | |
| 4006 | Dumpsters & cleanup | $0.00 | | $0.00 | | | $0.00 | | | | | | | | | | |
| 5001 | Drywall | $22,500.00 | $22,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 5002 | Cabinets & Countertops | $15,000.00 | $10,500.00 | $4,500.00 | | | $4,500.00 | | | | | | | | | | |
| 5003 | Tile & Marble | $4,000.00 | $4,000.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 5004 | Interior Painting | $8,000.00 | $6,000.00 | $2,000.00 | | | $2,000.00 | | | | | | | | | | |
| 5005 | Fireplace | $3,500.00 | $3,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 5006 | Bath Accessories | $1,500.00 | $1,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 5007 | Appliances | $1,750.00 | | $1,750.00 | | | $1,750.00 | | | | | | | | | | |
| 5008 | Floors | $12,500.00 | | $12,500.00 | 3000 | | $15,500.00 | | | | | | | | | | |
| 6001 | Driveways | $2,500.00 | | $2,500.00 | | | | $2,500.00 | | | | | | | | | |
| 6002 | Sidewalks | $5,000.00 | | $5,000.00 | | | $5,000.00 | | | | | | | | | | |
| 6003 | Punchlist | $500.00 | | $500.00 | | | | $500.00 | | | | | | | | | |
| 6004 | Final Cleaning | $550.00 | | $550.00 | | | | $550.00 | | | | | | | | | |
| 6005 | Repairs & Replacements | $1,000.00 | | $1,000.00 | | | | $1,000.00 | | | | | | | | | |
| 6006 | Landscaping | $6,500.00 | | $6,500.00 | | | | $6,500.00 | | | | | | | | | |
| | Total | $308,100.00 | $243,550.00 | $64,550.00 | $7,000.00 | $0.00 | $60,500.00 | $11,050.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**Beaver Pond Village**
**November 16, 2020**

*Lot 713 - 59 Jane* **Rosewood II** 76% COMPLETE estimated completion date is March 2021

| Code | Description | Amount | Incurred | Cost to Complete | Extras Exposure | 12/31/2020 | 1/31/2021 | 2/28/2021 | 3/31/2021 | 4/30/2021 | 5/31/2021 | 6/30/2021 | 7/31/2021 | 8/31/2021 | 9/30/2021 | 10/31/2021 | 11/30/2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2000 | Clearing | $5,500.00 | $5,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 2001 | Grading & Excavation | $12,500.00 | $8,000.00 | $4,500.00 | | | $4,500.00 | | | | | | | | | | |
| 2002 | Footings | $7,500.00 | $7,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 2003 | Foundation Wall/Piers | $14,500.00 | $14,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 2004 | Slabs | $5,000.00 | $5,000.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 2005 | Porches & Patios | $5,000.00 | $5,000.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 2006 | Waterproofing | $1,800.00 | $1,800.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 3001 | Dimensional Lumber | $37,500.00 | $37,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 3002 | Roof Trusses | $8,000.00 | $8,000.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 3006 | Exterior Doors & Windows | $10,000.00 | $10,000.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 3007 | Patio Decks | $6,500.00 | $6,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 3008 | Stairs & Railings | $4,000.00 | $4,000.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 3009 | Interior Trim labor | $7,000.00 | $5,000.00 | $2,000.00 | | | $2,000.00 | | | | | | | | | | |
| 3009A | Interior Trim material | $7,500.00 | $5,500.00 | $2,000.00 | | | $2,000.00 | | | | | | | | | | |
| 3010 | Framing Labor | $19,500.00 | $19,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 3011 | Siding-Material & Labor | $18,500.00 | $18,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 3011a | Siding Labor | $0.00 | | $0.00 | | | $0.00 | | | | | | | | | | |
| 3012 | Roofing - Material & Labor | $7,000.00 | $7,000.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 3012A | Roofing Labor | $0.00 | | $0.00 | | | $0.00 | | | | | | | | | | |
| 3013 | Exterior Trim | $1,000.00 | | $1,000.00 | | | | $1,000.00 | | | | | | | | | |
| 3014 | Exterior Painting | $500.00 | | $500.00 | | | | $500.00 | | | | | | | | | |
| 3015 | Gutters & Leaders | $2,500.00 | | $2,500.00 | | | | $2,500.00 | | | | | | | | | |
| 3016 | Garage Doors | $1,500.00 | $1,150.00 | $350.00 | | | $350.00 | | | | | | | | | | |
| 3020 | Brick | $0.00 | | $0.00 | | | $0.00 | | | | | | | | | | |
| 4000 | Plumbing Material | $4,000.00 | | $4,000.00 | 3000 | | | | $7,000.00 | | | | | | | | |
| 4001 | Plumbing Labor | $12,500.00 | $8,750.00 | $3,750.00 | | | | | $3,750.00 | | | | | | | | |
| 4002 | Electrical | $8,500.00 | $6,000.00 | $2,500.00 | 2275 | | | | $4,775.00 | | | | | | | | |
| 4003 | H.V.A.C. | $15,500.00 | $10,850.00 | $4,650.00 | | | | | $4,650.00 | | | | | | | | |
| 4004 | Insulation (with Drywall) | $0.00 | | $0.00 | | | $0.00 | | | | | | | | | | |
| 4005 | Telecommunications | $0.00 | | $0.00 | | | $0.00 | | | | | | | | | | |
| 4006 | Dumpsters & cleanup | $0.00 | | $0.00 | | | $0.00 | | | | | | | | | | |
| 5001 | Drywall | $22,500.00 | $22,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 5002 | Cabinets & Countertops | $15,000.00 | | $15,000.00 | 5000 | | $20,000.00 | | | | | | | | | | |
| 5003 | Tile & Marble | $4,000.00 | $4,000.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 5004 | Interior Painting | $8,000.00 | $6,000.00 | $2,000.00 | 500 | | | | $2,500.00 | | | | | | | | |
| 5005 | Fireplace | $3,500.00 | $3,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 5006 | Bath Accessories | $1,500.00 | $1,500.00 | $0.00 | | | $0.00 | | | | | | | | | | |
| 5007 | Appliances | $1,750.00 | | $1,750.00 | | | | | $1,750.00 | | | | | | | | |
| 5008 | Floors | $12,500.00 | | $12,500.00 | 2500 | | | | $15,000.00 | | | | | | | | |
| 6001 | Driveways | $2,500.00 | | $2,500.00 | | | | | $2,500.00 | | | | | | | | |
| 6002 | Sidewalks | $5,000.00 | | $5,000.00 | | | | $5,000.00 | | | | | | | | | |
| 6003 | Punchlist | $500.00 | | $500.00 | | | | | $500.00 | | | | | | | | |
| 6004 | Final Cleaning | $550.00 | | $550.00 | | | | | $550.00 | | | | | | | | |
| 6005 | Repairs & Replacements | $1,000.00 | | $1,000.00 | | | | | $1,000.00 | | | | | | | | |
| 6006 | Landscaping | $6,500.00 | | $6,500.00 | | | | | $6,500.00 | | | | | | | | |
| | **Total** | $308,100.00 | $233,050.00 | $75,050.00 | $13,275.00 | $0.00 | $28,850.00 | $9,000.00 | $50,475.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**Beaver Pond Village**
**November 16, 2020**

*Lot 714 - 57 Jane* Rosewood

45% COMPLETE estimated completion date is April 2021

| Code | Description | Amount | Incurred | Cost to Complete | 12/31/2020 | 1/31/2021 | 2/28/2021 | 3/31/2021 | 4/30/2021 | 5/31/2021 | 6/30/2021 | 7/31/2021 | 8/31/2021 | 9/30/2021 | 10/31/2021 | 11/30/2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7000 | Extra Hard Cost | | | $32,230.10 | | $8,057.53 | $8,057.53 | $8,057.53 | $8,057.53 | | | | | | | |
| 2000 | Clearing | $5,500.00 | $5,500.00 | $0.00 | | $0.00 | | | | | | | | | | |
| 2001 | Grading & Excavation | $12,500.00 | $8,000.00 | $4,500.00 | | | | $4,500.00 | | | | | | | | |
| 2002 | Footings | $7,500.00 | $7,500.00 | $0.00 | | $0.00 | | | | | | | | | | |
| 2003 | Foundation Wall/Piers | $14,500.00 | $14,500.00 | $0.00 | | $0.00 | | | | | | | | | | |
| 2004 | Slabs | $5,000.00 | $2,500.00 | $2,500.00 | | $2,500.00 | | | | | | | | | | |
| 2005 | Porches & Patios | $5,000.00 | | $5,000.00 | | $5,000.00 | | | | | | | | | | |
| 2006 | Waterproofing | $1,800.00 | $1,800.00 | $0.00 | | $0.00 | | | | | | | | | | |
| 3001 | Dimensional Lumber | $37,500.00 | $37,500.00 | $0.00 | | $0.00 | | | | | | | | | | |
| 3002 | Roof Trusses | $8,000.00 | $8,000.00 | $0.00 | | $0.00 | | | | | | | | | | |
| 3006 | Exterior Doors & Windows | $9,000.00 | $9,000.00 | $0.00 | | $0.00 | | | | | | | | | | |
| 3007 | Patio Decks | $6,500.00 | | $6,500.00 | | | $6,500.00 | | | | | | | | | |
| 3008 | Stairs & Railings | $4,000.00 | | $4,000.00 | | | $4,000.00 | | | | | | | | | |
| 3009 | Interior Trim labor | $6,000.00 | | $6,000.00 | | | | $6,000.00 | | | | | | | | |
| 3009A | Interior Trim material | $6,500.00 | | $6,500.00 | | | | $6,500.00 | | | | | | | | |
| 3010 | Framing Labor | $19,500.00 | $15,000.00 | $4,500.00 | | $4,500.00 | | | | | | | | | | |
| 3011 | Siding-Material & Labor | $18,500.00 | $16,500.00 | $2,000.00 | | $2,000.00 | | | | | | | | | | |
| 3011a | Siding Labor | $0.00 | | $0.00 | | $0.00 | | | | | | | | | | |
| 3012 | Roofing - Material & Labor | $7,000.00 | $7,000.00 | $0.00 | | $0.00 | | | | | | | | | | |
| 3012A | Roofing Labor | $0.00 | | $0.00 | | $0.00 | | | | | | | | | | |
| 3013 | Exterior Trim | $1,000.00 | | $1,000.00 | | $1,000.00 | | | | | | | | | | |
| 3014 | Exterior Painting | $500.00 | | $500.00 | | $500.00 | | | | | | | | | | |
| 3015 | Gutters & Leaders | $2,500.00 | | $2,500.00 | | | $2,500.00 | | | | | | | | | |
| 3016 | Garage Doors | $1,500.00 | | $1,500.00 | | | $1,500.00 | | | | | | | | | |
| 3020 | Brick | $0.00 | | $0.00 | | $0.00 | | | | | | | | | | |
| 4000 | Plumbing Material | $3,500.00 | | $3,500.00 | | | 500 | | $3,000.00 | | | | | | | |
| 4001 | Plumbing Labor | $10,000.00 | | $10,000.00 | | | 7000 | | $3,000.00 | | | | | | | |
| 4002 | Electrical | $8,000.00 | | $8,000.00 | | | 5600 | | $2,400.00 | | | | | | | |
| 4003 | H.V.A.C. | $14,000.00 | | $14,000.00 | | | 9800 | | $4,200.00 | | | | | | | |
| 4004 | Insulation (with Drywall) | $0.00 | | $0.00 | | $0.00 | | | | | | | | | | |
| 4005 | Telecommunications | $0.00 | | $0.00 | | $0.00 | | | | | | | | | | |
| 4006 | Dumpsters & cleanup | $0.00 | | $0.00 | | $0.00 | | | | | | | | | | |
| 5001 | Drywall | $20,500.00 | | $20,500.00 | | | | $20,500.00 | | | | | | | | |
| 5002 | Cabinets & Countertops | $14,500.00 | | $14,500.00 | | | | $14,500.00 | | | | | | | | |
| 5003 | Tile & Marble | $3,500.00 | | $3,500.00 | | | | $3,500.00 | | | | | | | | |
| 5004 | Interior Painting | $7,500.00 | | $7,500.00 | | | | | $7,500.00 | | | | | | | |
| 5005 | Fireplace | $3,500.00 | | $3,500.00 | | | | | $3,500.00 | | | | | | | |
| 5006 | Bath Accessories | $1,500.00 | | $1,500.00 | | | | | $1,500.00 | | | | | | | |
| 5007 | Appliances | $1,750.00 | | $1,750.00 | | | | | $1,750.00 | | | | | | | |
| 5008 | Floors | $11,500.00 | | $11,500.00 | | | | | $11,500.00 | | | | | | | |
| 6001 | Driveways | $2,500.00 | | $2,500.00 | | | | | $2,500.00 | | | | | | | |
| 6002 | Sidewalks | $5,000.00 | | $5,000.00 | | | | | $5,000.00 | | | | | | | |
| 6003 | Punchlist | $500.00 | | $500.00 | | | | | $500.00 | | | | | | | |
| 6004 | Final Cleaning | $550.00 | | $550.00 | | | | | $550.00 | | | | | | | |
| 6005 | Repairs & Replacements | $1,000.00 | | $1,000.00 | | | | | $1,000.00 | | | | | | | |
| 6006 | Landscaping | $6,500.00 | | $6,500.00 | | | | $6,500.00 | | | | | | | | |
| | Total | $295,600.00 | $132,800.00 | $195,030.10 | $0.00 | $23,557.53 | $45,457.53 | $70,057.53 | $55,957.53 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**Beaver Pond Village**
**November 16, 2020**

*Lot 719 - 47 Jane* Rosewood

45% COMPLETE estimated completion date is May 2021

| Code | Description | Amount | Incurred | Cost to Complete | 12/31/2020 | 1/31/2021 | 2/28/2021 | 3/31/2021 | 4/30/2021 | 5/31/2021 | 6/30/2021 | 7/31/2021 | 8/31/2021 | 9/30/2021 | 10/31/2021 | 11/30/2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7000 | Extra Hard Cost | | | $20,879.60 | | $5,219.90 | $5,219.90 | $5,219.90 | $5,219.90 | | | | | | | |
| 2000 | Clearing | $5,500.00 | $5,500.00 | $0.00 | | | 0 | | | | | | | | | |
| 2001 | Grading & Excavation | $12,500.00 | $8,000.00 | $4,500.00 | | | | | 4500 | | | | | | | |
| 2002 | Footings | $7,500.00 | $7,500.00 | $0.00 | | | 0 | | | | | | | | | |
| 2003 | Foundation Wall/Piers | $14,500.00 | $14,500.00 | $0.00 | | | 0 | | | | | | | | | |
| 2004 | Slabs | $5,000.00 | $2,500.00 | $2,500.00 | | | 2500 | | | | | | | | | |
| 2005 | Porches & Patios | $5,000.00 | | $5,000.00 | | | 5000 | | | | | | | | | |
| 2006 | Waterproofing | $1,800.00 | $1,800.00 | $0.00 | | | 0 | | | | | | | | | |
| 3001 | Dimensional Lumber | $37,500.00 | $37,500.00 | $0.00 | | | 0 | | | | | | | | | |
| 3002 | Roof Trusses | $8,000.00 | $8,000.00 | $0.00 | | | 0 | | | | | | | | | |
| 3006 | Exterior Doors & Windows | $9,000.00 | $9,000.00 | $0.00 | | | 0 | | | | | | | | | |
| 3007 | Patio Decks | $6,500.00 | | $6,500.00 | | | | 6500 | | | | | | | | |
| 3008 | Stairs & Railings | $4,000.00 | | $4,000.00 | | | | 4000 | | | | | | | | |
| 3009 | Interior Trim labor | $6,000.00 | | $6,000.00 | | | | | 6000 | | | | | | | |
| 3009A | Interior Trim material | $6,500.00 | | $6,500.00 | | | | | 6500 | | | | | | | |
| 3010 | Framing Labor | $19,500.00 | $15,000.00 | $4,500.00 | | | 4500 | | | | | | | | | |
| 3011 | Siding-Material & Labor | $18,500.00 | $16,500.00 | $2,000.00 | | | 2000 | | | | | | | | | |
| 3011a | Siding Labor | $0.00 | | $0.00 | | | 0 | | | | | | | | | |
| 3012 | Roofing - Material & Labor | $7,000.00 | $7,000.00 | $0.00 | | | 0 | | | | | | | | | |
| 3012A | Roofing Labor | $0.00 | | $0.00 | | | 0 | | | | | | | | | |
| 3013 | Exterior Trim | $1,000.00 | | $1,000.00 | | | $1,000.00 | | | | | | | | | |
| 3014 | Exterior Painting | $500.00 | | $500.00 | | | $500.00 | | | | | | | | | |
| 3015 | Gutters & Leaders | $2,500.00 | | $2,500.00 | | | | 2500 | | | | | | | | |
| 3016 | Garage Doors | $1,500.00 | | $1,500.00 | | | | 1500 | | | | | | | | |
| 3020 | Brick | $0.00 | | $0.00 | | | 0 | | | | | | | | | |
| 4000 | Plumbing Material | $3,500.00 | | $3,500.00 | | | | $500.00 | | 3000 | | | | | | |
| 4001 | Plumbing Labor | $10,000.00 | | $10,000.00 | | | | $7,000.00 | | 3000 | | | | | | |
| 4002 | Electrical | $8,000.00 | | $8,000.00 | | | | $5,600.00 | | 2400 | | | | | | |
| 4003 | H.V.A.C. | $14,000.00 | | $14,000.00 | | | | $9,800.00 | | 4200 | | | | | | |
| 4004 | Insulation (with Drywall) | $0.00 | | $0.00 | | | 0 | | | | | | | | | |
| 4005 | Telecommunications | $0.00 | | $0.00 | | | 0 | | | | | | | | | |
| 4006 | Dumpsters & cleanup | $0.00 | | $0.00 | | | 0 | | | | | | | | | |
| 5001 | Drywall | $20,500.00 | | $20,500.00 | | | | | 20500 | | | | | | | |
| 5002 | Cabinets & Countertops | $14,500.00 | | $14,500.00 | | | | | 14500 | | | | | | | |
| 5003 | Tile & Marble | $3,500.00 | | $3,500.00 | | | | | 3500 | | | | | | | |
| 5004 | Interior Painting | $7,500.00 | | $7,500.00 | | | | | | 7500 | | | | | | |
| 5005 | Fireplace | $3,500.00 | | $3,500.00 | | | | | | 3500 | | | | | | |
| 5006 | Bath Accessories | $1,500.00 | | $1,500.00 | | | | | | 1500 | | | | | | |
| 5007 | Appliances | $1,750.00 | | $1,750.00 | | | | | | 1750 | | | | | | |
| 5008 | Floors | $11,500.00 | | $11,500.00 | | | | | | 11500 | | | | | | |
| 6001 | Driveways | $2,500.00 | | $2,500.00 | | | | $2,500.00 | | | | | | | | |
| 6002 | Sidewalks | $5,000.00 | | $5,000.00 | | | | 5000 | | | | | | | | |
| 6003 | Punchlist | $500.00 | | $500.00 | | | | | | 500 | | | | | | |
| 6004 | Final Cleaning | $550.00 | | $550.00 | | | | | | 550 | | | | | | |
| 6005 | Repairs & Replacements | $1,000.00 | | $1,000.00 | | | | | | 1000 | | | | | | |
| 6006 | Landscaping | $6,500.00 | | $6,500.00 | | | | $6,500.00 | | | | | | | | |
| | Total | $295,600.00 | $132,800.00 | $183,679.60 | $0.00 | $5,219.90 | $20,719.90 | $56,619.90 | $60,719.90 | $40,400.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**Beaver Pond Village**
**November 16, 2020**

*Lot 777 - 8 Katie Lane* Rosewood II | 32% COMPLETE | estimated completion date is June 2021

| Code | Description | Amount | Incurred | Cost to Complete | 12/31/2020 | 1/31/2021 | 2/28/2021 | 3/31/2021 | 4/30/2021 | 5/31/2021 | 6/30/2021 | 7/31/2021 | 8/31/2021 | 9/30/2021 | 10/31/2021 | 11/30/2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7000 | Extra Hard Cost | | | $70,688.80 | | | $14,137.76 | $14,137.76 | $14,137.76 | $14,137.76 | $14,137.76 | | | | | |
| 2000 | Clearing | $5,500.00 | $5,500.00 | $0.00 | | | 0 | | | | | | | | | |
| 2001 | Grading & Excavation | $12,500.00 | $8,000.00 | $4,500.00 | | | | | 4500 | | | | | | | |
| 2002 | Footings | $7,500.00 | $7,500.00 | $0.00 | | | 0 | | | | | | | | | |
| 2003 | Foundation Wall/Piers | $14,500.00 | $14,500.00 | $0.00 | | | 0 | | | | | | | | | |
| 2004 | Slabs | $5,000.00 | $0.00 | $5,000.00 | | | 5000 | | | | | | | | | |
| 2005 | Porches & Patios | $5,000.00 | $0.00 | $5,000.00 | | | 5000 | | | | | | | | | |
| 2006 | Waterproofing | $1,800.00 | $1,800.00 | $0.00 | | | 0 | | | | | | | | | |
| 3001 | Dimensional Lumber | $37,500.00 | $37,500.00 | $0.00 | | | 0 | | | | | | | | | |
| 3002 | Roof Trusses | $8,000.00 | $8,000.00 | $0.00 | | | 0 | | | | | | | | | |
| 3006 | Exterior Doors & Windows | $10,000.00 | $0.00 | $10,000.00 | | | | 10000 | | | | | | | | |
| 3007 | Patio Decks | $6,500.00 | $0.00 | $6,500.00 | | | | | 6500 | | | | | | | |
| 3008 | Stairs & Railings | $4,000.00 | $0.00 | $4,000.00 | | | | | 4000 | | | | | | | |
| 3009 | Interior Trim labor | $7,000.00 | $0.00 | $7,000.00 | | | | | | 7000 | | | | | | |
| 3009A | Interior Trim material | $7,500.00 | $0.00 | $7,500.00 | | | | | | 7500 | | | | | | |
| 3010 | Framing Labor | $19,500.00 | $15,000.00 | $4,500.00 | | | | 4500 | | | | | | | | |
| 3011 | Siding-Material & Labor | $18,500.00 | $0.00 | $18,500.00 | | | | 18500 | | | | | | | | |
| 3011a | Siding Labor | $0.00 | $0.00 | $0.00 | | | | 0 | | | | | | | | |
| 3012 | Roofing - Material & Labor | $7,000.00 | $0.00 | $7,000.00 | | | | 7000 | | | | | | | | |
| 3012A | Roofing Labor | $0.00 | $0.00 | $0.00 | | | | 0 | | | | | | | | |
| 3013 | Exterior Trim | $1,000.00 | $0.00 | $1,000.00 | | | | 1000 | | | | | | | | |
| 3014 | Exterior Painting | $500.00 | $0.00 | $500.00 | | | | 500 | | | | | | | | |
| 3015 | Gutters & Leaders | $2,500.00 | $0.00 | $2,500.00 | | | | | 2500 | | | | | | | |
| 3016 | Garage Doors | $1,500.00 | $0.00 | $1,500.00 | | | | | 1500 | | | | | | | |
| 3020 | Brick | $0.00 | $0.00 | $0.00 | | | | 0 | | | | | | | | |
| 4000 | Plumbing Material | $4,000.00 | $0.00 | $4,000.00 | | | | | 500 | | 3500 | | | | | |
| 4001 | Plumbing Labor | $12,500.00 | $0.00 | $12,500.00 | | | | | 8750 | | 3750 | | | | | |
| 4002 | Electrical | $8,500.00 | $0.00 | $8,500.00 | | | | | 5950 | | 2550 | | | | | |
| 4003 | H.V.A.C. | $15,500.00 | $0.00 | $15,500.00 | | | | | 10850 | | 4650 | | | | | |
| 4004 | Insulation (with Drywall) | $0.00 | $0.00 | $0.00 | | | | 0 | | | | | | | | |
| 4005 | Telecommunications | $0.00 | $0.00 | $0.00 | | | | 0 | | | | | | | | |
| 4006 | Dumpsters & cleanup | $0.00 | $0.00 | $0.00 | | | | 0 | | | | | | | | |
| 5001 | Drywall | $22,500.00 | $0.00 | $22,500.00 | | | | | | 22500 | | | | | | |
| 5002 | Cabinets & Countertops | $15,000.00 | $0.00 | $15,000.00 | | | | | | 15000 | | | | | | |
| 5003 | Tile & Marble | $4,000.00 | $0.00 | $4,000.00 | | | | | | 4000 | | | | | | |
| 5004 | Interior Painting | $8,000.00 | $0.00 | $8,000.00 | | | | | | | 8000 | | | | | |
| 5005 | Fireplace | $3,500.00 | $0.00 | $3,500.00 | | | | | | | 3500 | | | | | |
| 5006 | Bath Accessories | $1,500.00 | $0.00 | $1,500.00 | | | | | | | 1500 | | | | | |
| 5007 | Appliances | $1,750.00 | $0.00 | $1,750.00 | | | | | | | 1750 | | | | | |
| 5008 | Floors | $12,500.00 | $0.00 | $12,500.00 | | | | | | | 12500 | | | | | |
| 6001 | Driveways | $2,500.00 | $0.00 | $2,500.00 | | | | | | | | 2500 | | | | |
| 6002 | Sidewalks | $5,000.00 | $0.00 | $5,000.00 | | | | | | | | 5000 | | | | |
| 6003 | Punchlist | $500.00 | $0.00 | $500.00 | | | | | | | 500 | | | | | |
| 6004 | Final Cleaning | $550.00 | $0.00 | $550.00 | | | | | | | 550 | | | | | |
| 6005 | Repairs & Replacements | $1,000.00 | $0.00 | $1,000.00 | | | | | | | 1000 | | | | | |
| 6006 | Landscaping | $6,500.00 | $0.00 | $6,500.00 | | | | | | | | 6500 | | | | |
| | Total | $308,100.00 | $97,800.00 | $280,988.80 | $0.00 | $0.00 | $24,137.76 | $55,637.76 | $59,187.76 | $70,137.76 | $57,887.76 | $14,000.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**Beaver Pond Village**
**November 16, 2020**

*Lot 767 - 11 June* Rosewood II

13% COMPLETE estimated completion date is July 2021

| Code | Description | Amount | Incurred | Cost to Complete | 12/31/2020 | 1/31/2021 | 2/28/2021 | 3/31/2021 | 4/30/2021 | 5/31/2021 | 6/30/2021 | 7/31/2021 | 8/31/2021 | 9/30/2021 | 10/31/2021 | 11/30/2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7000 | Extra Hard Cost | | | $30,712.50 | | | | | $6,142.50 | $6,142.50 | $6,142.50 | $6,142.50 | $6,142.50 | | | |
| 2000 | Clearing | $5,500.00 | $5,500.00 | $0.00 | | | 0 | | | | | | | | | |
| 2001 | Grading & Excavation | $12,500.00 | $8,000.00 | $4,500.00 | | | | | 4500 | | | | | | | |
| 2002 | Footings | $7,500.00 | $7,500.00 | $0.00 | | | 0 | | | | | | | | | |
| 2003 | Foundation Wall/Piers | $14,500.00 | $14,500.00 | $0.00 | | | 0 | | | | | | | | | |
| 2004 | Slabs | $5,000.00 | | $5,000.00 | | | 5000 | | | | | | | | | |
| 2005 | Porches & Patios | $5,000.00 | | $5,000.00 | | | 5000 | | | | | | | | | |
| 2006 | Waterproofing | $1,800.00 | $1,800.00 | $0.00 | | | 0 | | | | | | | | | |
| 3001 | Dimensional Lumber | $37,500.00 | | $37,500.00 | | | 37500 | | | | | | | | | |
| 3002 | Roof Trusses | $8,000.00 | $1,500.00 | $6,500.00 | | | 6500 | | | | | | | | | |
| 3006 | Exterior Doors & Windows | $10,000.00 | | $10,000.00 | | | | 10000 | | | | | | | | |
| 3007 | Patio Decks | $6,500.00 | | $6,500.00 | | | | | | 6500 | | | | | | |
| 3008 | Stairs & Railings | $4,000.00 | | $4,000.00 | | | | | | 4000 | | | | | | |
| 3009 | Interior Trim labor | $7,000.00 | | $7,000.00 | | | | | | | 7000 | | | | | |
| 3009A | Interior Trim material | $7,500.00 | | $7,500.00 | | | | | | | 7500 | | | | | |
| 3010 | Framing Labor | $19,500.00 | | $19,500.00 | | | 19500 | | | | | | | | | |
| 3011 | Siding-Material & Labor | $18,500.00 | | $18,500.00 | | | | 18500 | | | | | | | | |
| 3011a | Siding Labor | $0.00 | | $0.00 | | | | 0 | | | | | | | | |
| 3012 | Roofing - Material & Labor | $7,000.00 | | $7,000.00 | | | | 7000 | | | | | | | | |
| 3012A | Roofing Labor | $0.00 | | $0.00 | | | | 0 | | | | | | | | |
| 3013 | Exterior Trim | $1,000.00 | | $1,000.00 | | | | | 1000 | | | | | | | |
| 3014 | Exterior Painting | $500.00 | | $500.00 | | | | | 500 | | | | | | | |
| 3015 | Gutters & Leaders | $2,500.00 | | $2,500.00 | | | | | | 2500 | | | | | | |
| 3016 | Garage Doors | $1,500.00 | | $1,500.00 | | | | | | 1500 | | | | | | |
| 3020 | Brick | $0.00 | | $0.00 | | | | | 0 | | | | | | | |
| 4000 | Plumbing Material | $4,000.00 | | $4,000.00 | | | | | | 500 | | 3500 | | | | |
| 4001 | Plumbing Labor | $12,500.00 | | $12,500.00 | | | | | | 8750 | | 3750 | | | | |
| 4002 | Electrical | $8,500.00 | | $8,500.00 | | | | | | 5950 | | 2550 | | | | |
| 4003 | H.V.A.C. | $15,500.00 | | $15,500.00 | | | | | | 10850 | | 4650 | | | | |
| 4004 | Insulation (with Drywall) | $0.00 | | $0.00 | | | | | 0 | | | | | | | |
| 4005 | Telecommunications | $0.00 | | $0.00 | | | | | 0 | | | | | | | |
| 4006 | Dumpsters & cleanup | $0.00 | | $0.00 | | | | | 0 | | | | | | | |
| 5001 | Drywall | $22,500.00 | | $22,500.00 | | | | | | | 22500 | | | | | |
| 5002 | Cabinets & Countertops | $15,000.00 | | $15,000.00 | | | | | | | 15000 | | | | | |
| 5003 | Tile & Marble | $4,000.00 | | $4,000.00 | | | | | | | 4000 | | | | | |
| 5004 | Interior Painting | $8,000.00 | | $8,000.00 | | | | | | | | 8000 | | | | |
| 5005 | Fireplace | $3,500.00 | | $3,500.00 | | | | | | | | 3500 | | | | |
| 5006 | Bath Accessories | $1,500.00 | | $1,500.00 | | | | | | | | 1500 | | | | |
| 5007 | Appliances | $1,750.00 | | $1,750.00 | | | | | | | | 1750 | | | | |
| 5008 | Floors | $12,500.00 | | $12,500.00 | | | | | | | | 12500 | | | | |
| 6001 | Driveways | $2,500.00 | | $2,500.00 | | | | | | | | | 2500 | | | |
| 6002 | Sidewalks | $5,000.00 | | $5,000.00 | | | | | | | | | 5000 | | | |
| 6003 | Punchlist | $500.00 | | $500.00 | | | | | | | | 500 | | | | |
| 6004 | Final Cleaning | $550.00 | | $550.00 | | | | | | | | 550 | | | | |
| 6005 | Repairs & Replacements | $1,000.00 | | $1,000.00 | | | | | | | | 1000 | | | | |
| 6006 | Landscaping | $6,500.00 | | $6,500.00 | | | | | | | | | 6500 | | | |
| | Total | $308,100.00 | $38,800.00 | $300,012.50 | $0.00 | $0.00 | $73,500.00 | $35,500.00 | $12,142.50 | $46,692.50 | $62,142.50 | $49,892.50 | $20,142.50 | $0.00 | $0.00 | $0.00 |

**Beaver Pond Village**
**November 16, 2020**

*Lot 776 - 6 Katie Lane* Willow

2% COMPLETE estimated completion date is August 2021

| Code | Description | Amount | Incurred | Cost to Complete | 12/31/2020 | 1/31/2021 | 2/28/2021 | 3/31/2021 | 4/30/2021 | 5/31/2021 | 6/30/2021 | 7/31/2021 | 8/31/2021 | 9/30/2021 | 10/31/2021 | 11/30/2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7000 | Extra Hard Cost | | | $0.00 | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | | | |
| 2000 | Clearing | $5,500.00 | $5,500.00 | $0.00 | | | 0 | | | | | | | | | |
| 2001 | Grading & Excavation | $12,500.00 | $0.00 | $12,500.00 | | | | | 12500 | | | | | | | |
| 2002 | Footings | $7,500.00 | $0.00 | $7,500.00 | | | 7500 | | | | | | | | | |
| 2003 | Foundation Wall/Piers | $14,500.00 | $0.00 | $14,500.00 | | | 14500 | | | | | | | | | |
| 2004 | Slabs | $5,000.00 | $0.00 | $5,000.00 | | | 5000 | | | | | | | | | |
| 2005 | Porches & Patios | $5,000.00 | $0.00 | $5,000.00 | | | 5000 | | | | | | | | | |
| 2006 | Waterproofing | $1,800.00 | $0.00 | $1,800.00 | | | 1800 | | | | | | | | | |
| 3001 | Dimensional Lumber | $37,500.00 | $0.00 | $37,500.00 | | | 37500 | | | | | | | | | |
| 3002 | Roof Trusses | $8,000.00 | $0.00 | $8,000.00 | | | 8000 | | | | | | | | | |
| 3006 | Exterior Doors & Windows | $9,000.00 | $0.00 | $9,000.00 | | | | 9000 | | | | | | | | |
| 3007 | Patio Decks | $6,500.00 | $0.00 | $6,500.00 | | | | | | 6500 | | | | | | |
| 3008 | Stairs & Railings | $4,000.00 | $0.00 | $4,000.00 | | | | | | 4000 | | | | | | |
| 3009 | Interior Trim labor | $6,000.00 | $0.00 | $6,000.00 | | | | | | | 6000 | | | | | |
| 3009A | Interior Trim material | $6,500.00 | $0.00 | $6,500.00 | | | | | | | 6500 | | | | | |
| 3010 | Framing Labor | $19,500.00 | $0.00 | $19,500.00 | | | 19500 | | | | | | | | | |
| 3011 | Siding-Material & Labor | $18,500.00 | $0.00 | $18,500.00 | | | | 18500 | | | | | | | | |
| 3011a | Siding Labor | $0.00 | $0.00 | $0.00 | | | | 0 | | | | | | | | |
| 3012 | Roofing - Material & Labor | $7,000.00 | $0.00 | $7,000.00 | | | | 7000 | | | | | | | | |
| 3012A | Roofing Labor | $0.00 | $0.00 | $0.00 | | | | 0 | | | | | | | | |
| 3013 | Exterior Trim | $1,000.00 | $0.00 | $1,000.00 | | | | | 1000 | | | | | | | |
| 3014 | Exterior Painting | $500.00 | $0.00 | $500.00 | | | | | 500 | | | | | | | |
| 3015 | Gutters & Leaders | $2,500.00 | $0.00 | $2,500.00 | | | | | | 2500 | | | | | | |
| 3016 | Garage Doors | $1,500.00 | $0.00 | $1,500.00 | | | | | | 1500 | | | | | | |
| 3020 | Brick | $0.00 | $0.00 | $0.00 | | | | | 0 | | | | | | | |
| 4000 | Plumbing Material | $3,500.00 | $0.00 | $3,500.00 | | | | | | 500 | | 3000 | | | | |
| 4001 | Plumbing Labor | $10,000.00 | $0.00 | $10,000.00 | | | | | | 7000 | | 3000 | | | | |
| 4002 | Electrical | $8,000.00 | $0.00 | $8,000.00 | | | | | | 5600 | | 2400 | | | | |
| 4003 | H.V.A.C. | $14,000.00 | $0.00 | $14,000.00 | | | | | | 9800 | | 4200 | | | | |
| 4004 | Insulation (with Drywall) | $0.00 | $0.00 | $0.00 | | | | | 0 | | | | | | | |
| 4005 | Telecommunications | $0.00 | $0.00 | $0.00 | | | | | 0 | | | | | | | |
| 4006 | Dumpsters & cleanup | $0.00 | $0.00 | $0.00 | | | | | 0 | | | | | | | |
| 5001 | Drywall | $20,500.00 | $0.00 | $20,500.00 | | | | | | | 20500 | | | | | |
| 5002 | Cabinets & Countertops | $14,500.00 | $0.00 | $14,500.00 | | | | | | | 14500 | | | | | |
| 5003 | Tile & Marble | $3,500.00 | $0.00 | $3,500.00 | | | | | | | 3500 | | | | | |
| 5004 | Interior Painting | $7,500.00 | $0.00 | $7,500.00 | | | | | | | | 7500 | | | | |
| 5005 | Fireplace | $3,500.00 | $0.00 | $3,500.00 | | | | | | | | 3500 | | | | |
| 5006 | Bath Accessories | $1,500.00 | $0.00 | $1,500.00 | | | | | | | | 1500 | | | | |
| 5007 | Appliances | $1,750.00 | $0.00 | $1,750.00 | | | | | | | | 1750 | | | | |
| 5008 | Floors | $11,500.00 | $0.00 | $11,500.00 | | | | | | | | 11500 | | | | |
| 6001 | Driveways | $2,500.00 | $0.00 | $2,500.00 | | | | | | | | | 2500 | | | |
| 6002 | Sidewalks | $5,000.00 | $0.00 | $5,000.00 | | | | | | | | | 5000 | | | |
| 6003 | Punchlist | $500.00 | $0.00 | $500.00 | | | | | | | | 500 | | | | |
| 6004 | Final Cleaning | $550.00 | $0.00 | $550.00 | | | | | | | | 550 | | | | |
| 6005 | Repairs & Replacements | $1,000.00 | $0.00 | $1,000.00 | | | | | | | | 1000 | | | | |
| 6006 | Landscaping | $6,500.00 | $0.00 | $6,500.00 | | | | | | | | | 6500 | | | |
| | **Total** | $295,600.00 | $5,500.00 | $290,100.00 | $0.00 | $0.00 | $98,800.00 | $34,500.00 | $14,000.00 | $37,400.00 | $51,000.00 | $40,400.00 | $14,000.00 | $0.00 | $0.00 | $0.00 |

**Beaver Pond Village**
**November 16, 2020**

*Lot 768 - 9 Jane* **Arcadia** 2% COMPLETE estimated completion date is September 2021

| Code | Description | Amount | Incurred | Cost to Complete | 12/31/2020 | 1/31/2021 | 2/28/2021 | 3/31/2021 | 4/30/2021 | 5/31/2021 | 6/30/2021 | 7/31/2021 | 8/31/2021 | 9/30/2021 | 10/31/2021 | 11/30/2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7000 | Extra Hard Cost | | | $29,254.40 | | $5,850.88 | $2,925.44 | $2,925.44 | $2,925.44 | $2,925.44 | $2,925.44 | $2,925.44 | $2,925.44 | $2,925.44 | | |
| 2000 | Clearing | $5,500.00 | $5,500.00 | $0.00 | | | | 0 | | | | | | | | |
| 2001 | Grading & Excavation | $12,500.00 | $0.00 | $12,500.00 | | | | | | 12500 | | | | | | |
| 2002 | Footings | $7,500.00 | $0.00 | $7,500.00 | | $7,500.00 | | | | | | | | | | |
| 2003 | Foundation Wall/Piers | $14,500.00 | $0.00 | $14,500.00 | | $14,500.00 | | | | | | | | | | |
| 2004 | Slabs | $5,000.00 | $0.00 | $5,000.00 | | | 5000 | | | | | | | | | |
| 2005 | Porches & Patios | $5,000.00 | $0.00 | $5,000.00 | | | 5000 | | | | | | | | | |
| 2006 | Waterproofing | $1,800.00 | $0.00 | $1,800.00 | | | 1800 | | | | | | | | | |
| 3001 | Dimensional Lumber | $37,500.00 | $0.00 | $37,500.00 | | | 37500 | | | | | | | | | |
| 3002 | Roof Trusses | $8,000.00 | $0.00 | $8,000.00 | | | 8000 | | | | | | | | | |
| 3006 | Exterior Doors & Windows | $10,000.00 | $0.00 | $10,000.00 | | | | | 10000 | | | | | | | |
| 3007 | Patio Decks | $6,500.00 | $0.00 | $6,500.00 | | | | | | | 6500 | | | | | |
| 3008 | Stairs & Railings | $4,000.00 | $0.00 | $4,000.00 | | | | | | | 4000 | | | | | |
| 3009 | Interior Trim labor | $7,000.00 | $0.00 | $7,000.00 | | | | | | | | 7000 | | | | |
| 3009A | Interior Trim material | $7,500.00 | $0.00 | $7,500.00 | | | | | | | | 7500 | | | | |
| 3010 | Framing Labor | $19,500.00 | $0.00 | $19,500.00 | | | | 19500 | | | | | | | | |
| 3011 | Siding-Material & Labor | $18,500.00 | $0.00 | $18,500.00 | | | | | 18500 | | | | | | | |
| 3011a | Siding Labor | $0.00 | $0.00 | $0.00 | | | | | 0 | | | | | | | |
| 3012 | Roofing - Material & Labor | $7,000.00 | $0.00 | $7,000.00 | | | | | 7000 | | | | | | | |
| 3012A | Roofing Labor | $0.00 | $0.00 | $0.00 | | | | | 0 | | | | | | | |
| 3013 | Exterior Trim | $1,000.00 | $0.00 | $1,000.00 | | | | | | 1000 | | | | | | |
| 3014 | Exterior Painting | $500.00 | $0.00 | $500.00 | | | | | | 500 | | | | | | |
| 3015 | Gutters & Leaders | $2,500.00 | $0.00 | $2,500.00 | | | | | | | 2500 | | | | | |
| 3016 | Garage Doors | $1,500.00 | $0.00 | $1,500.00 | | | | | | | 1500 | | | | | |
| 3020 | Brick | $0.00 | $0.00 | $0.00 | | | | | | 0 | | | | | | |
| 4000 | Plumbing Material | $4,000.00 | $0.00 | $4,000.00 | | | | | | | 500 | | 3500 | | | |
| 4001 | Plumbing Labor | $12,500.00 | $0.00 | $12,500.00 | | | | | | | 8750 | | 3750 | | | |
| 4002 | Electrical | $8,500.00 | $0.00 | $8,500.00 | | | | | | | 5950 | | 2550 | | | |
| 4003 | H.V.A.C. | $15,500.00 | $0.00 | $15,500.00 | | | | | | | 10850 | | 4650 | | | |
| 4004 | Insulation (with Drywall) | $0.00 | $0.00 | $0.00 | | | | | | 0 | | | | | | |
| 4005 | Telecommunications | $0.00 | $0.00 | $0.00 | | | | | | 0 | | | | | | |
| 4006 | Dumpsters & cleanup | $0.00 | $0.00 | $0.00 | | | | | | 0 | | | | | | |
| 5001 | Drywall | $22,500.00 | $0.00 | $22,500.00 | | | | | | | | 22500 | | | | |
| 5002 | Cabinets & Countertops | $15,000.00 | $0.00 | $15,000.00 | | | | | | | | 15000 | | | | |
| 5003 | Tile & Marble | $4,000.00 | $0.00 | $4,000.00 | | | | | | | | 4000 | | | | |
| 5004 | Interior Painting | $8,000.00 | $0.00 | $8,000.00 | | | | | | | | | 8000 | | | |
| 5005 | Fireplace | $3,500.00 | $0.00 | $3,500.00 | | | | | | | | | 3500 | | | |
| 5006 | Bath Accessories | $1,500.00 | $0.00 | $1,500.00 | | | | | | | | | 1500 | | | |
| 5007 | Appliances | $1,750.00 | $0.00 | $1,750.00 | | | | | | | | | 1750 | | | |
| 5008 | Floors | $12,500.00 | $0.00 | $12,500.00 | | | | | | | | | 12500 | | | |
| 6001 | Driveways | $2,500.00 | $0.00 | $2,500.00 | | | | | | | | | | 2500 | | |
| 6002 | Sidewalks | $5,000.00 | $0.00 | $5,000.00 | | | | | | | | | | 5000 | | |
| 6003 | Punchlist | $500.00 | $0.00 | $500.00 | | | | | | | | | 500 | | | |
| 6004 | Final Cleaning | $550.00 | $0.00 | $550.00 | | | | | | | | | 550 | | | |
| 6005 | Repairs & Replacements | $1,000.00 | $0.00 | $1,000.00 | | | | | | | | | 1000 | | | |
| 6006 | Landscaping | $6,500.00 | $0.00 | $6,500.00 | | | | | | | | | | 6500 | | |
| | Total | $308,100.00 | $5,500.00 | $331,854.40 | $0.00 | $27,850.88 | $60,225.44 | $22,425.44 | $38,425.44 | $16,925.44 | $43,475.44 | $58,925.44 | $46,675.44 | $16,925.44 | $0.00 | $0.00 |

# EXHIBIT E

BURGESS & ASSOCIATES P.C.
*Attorneys and Counselors at Law*

646 Plank Road, Suite 103, Clifton Park, New York 12065
Telephone **518-371-0052**
Facsimile **518-371-0053**

November 2, 2020

**VIA CERTIFIED MAIL R.R.R./U.S. MAIL**
**7011 0470 0002 5059 2898**

Blitman Saratoga, LLC
222 Bloomingdale Road, Suite 404
White Plains, New York 10605

**VIA CERTIFIED MAIL R.R.R./U.S. MAIL/E-MAIL**
**7011 0470 0002 5059 2942**
**blitman1@optonline.net**

Howard N. Blitman, P.E.
3 Elmsdorf Drive
Scarsdale, New York 10583

**VIA CERTIFIED MAIL R.R.R./U.S. MAIL/E-MAIL**
**7011 0470 0002 5059 2904**
**gperesiper@gmail.com**

Gary S. Peresiper
250 Waverly Avenue
East Rockaway, New York 11518

**VIA CERTIFIED MAIL R.R.R./U.S. MAIL/E-MAIL**
**7011 0470 0002 5059 2911**
**Svarley13@gmail.com**

Scott P. Varley
13 Joshua Road
Saratoga Springs, New York 12866

**VIA CERTIFIED MAIL R.R.R./U.S. MAIL/E-MAIL**
**7011 0470 0002 5059 2928**
**james@gorenbros.com**

James G. Goren
163 Washington Vly Road
Warren, New Jersey 07059

**VIA CERTIFIED MAIL R.R.R./U.S. MAIL/E-MAIL**
**7011 0470 0002 5059 2935**
**alex@gorenbros.com**

Alexander M. Goren
1175 Park Avenue
New York, New York 10128

BURGESS & ASSOCIATES P.C.
*Attorneys and Counselors at Law*



**Re: Ballston Spa National Bank / Blitman Saratoga, LLC**
**Loan Numbers Ending: 2822 and 7002**

Dear Mr. Blitman, Mr. Peresiper, Mr. Varley, and Messrs. Goren:

We represent Ballston Spa National Bank.

The first purpose of this letter is to reaffirm the requirements set forth in our correspondence dated August 27, 2020, a copy of which is enclosed for your review and ready reference.

The second purpose of this letter is to declare that an additional event of default has occurred on Loan Number Ending 7002 by reason of the failure or refusal to remit the payments due September 1, 2020 and on the first day of each month thereafter through and including November 1, 2020.

The third purpose of this letter is to provide amount due information for each loan as of November 27, 2020.

The total amount due for each loan, as of November 27, 2020, is:

Loan-1 (account ending 2822):

| | | |
|---|---|---|
| Principal | - | $1,186,820.58 |
| Interest (to 11/27/2020) | - | $ 60,144.77 |
| Bank Fees | - | $ 1,000.00 |
| Attorney's Fees | - | $ 6,993.75 |
| **TOTAL (as of 11/27/2020)** | **-** | **$1,254,959.10** |
| Per Diem (after 11/27/2020) | - | $ 140.11 |

Loan-2 (account ending 7002):

| | | |
|---|---|---|
| Principal | - | $622,342.43 |
| Interest (to 11/27/2020) | - | $ 8,669.56 |
| Late Charges | - | $ 224.08 |
| Bank Fees | - | $ 250.00 |
| Attorney's Fees | - | $ 6,993.75 |
| **TOTAL (as of 11/27/2020)** | **-** | **$638,479.82** |
| Per Diem (after 11/27/2020) | - | $ 73.47 |

BURGESS & ASSOCIATES P.C.
*Attorneys and Counselors at Law*



**The total amount due (for both loans) is $1,893,438.92 as of November 27, 2020.**

Please be guided accordingly.

Very truly yours,

BURGESS & ASSOCIATES P.C.

Peter L. Burgess

PLB/klp
cc: Benjamin Fishman, Esq. (via e-mail)
Anthony R. Ianniello, Esq. (via e-mail)
Jay Edmond Russ, Esq. (via e-mail)
Ballston Spa National Bank (via email)
S:\BAPCLAW\3188.191 Blitman Saratoga\Demand.11022020.doc

# EXHIBIT F

# BUILDING LOAN NOTE

$1,500,000.00

June 27, 2019
Albany, New York

PROMISE TO PAY

FOR VALUE RECEIVED, and intending to be legally bound, **BLITMAN SARATOGA, LLC** (the "Borrower"), a limited liability company organized under the laws of the State of New York, with a mailing address of 222 Bloomingdale Road, Suite 404, White Plains, New York 10605, promises to pay to the order of **BALLSTON SPA NATIONAL BANK,** a national banking association, with an address of 990 State Route 67, P.O. Box 70, Ballston Spa, NY 12020 ("Lender"), or order, on or before the Maturity Date (as hereinafter defined), in lawful money of the United States of America, the principal sum of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00) Dollars (the "Loan"), together with interest thereon from the date hereof, until the Indebtedness (as defined below) is paid in full.

1. DEFINITIONS

When used in this Building Loan Note (hereinafter the "Note"), the following terms shall have the meanings indicated for each of them:

1.1 Building Loan Agreement: That certain Building Loan Agreement between Borrower and Lender, dated June 27, 2019, to be filed in the Saratoga County Clerk's Office, serving as a building loan contract and given in connection with the Loan for the construction of the Project.

1.2 Business Day: A day of the year other than Saturday, Sunday or day on which banks are authorized or required by law to close in New York State.

1.3 Completion Date: The earlier of (i) June 30, 2022, (ii) the date on which all Loan proceeds have been disbursed under the Building Loan Agreement, or (iii) the issuance of final certificates of occupancy for the Project (as detailed in the Building Loan Agreement).

1.4 Guarantor: Shall mean Howard Blitman, Scott Varley and Gary Peresiper.

1.5 Indebtedness: All loans, advances, debts, liabilities, indebtedness, obligations, and credit owing by Borrower to Lender of any kind or nature, present or future, whether as borrower or guarantor, however evidenced, whether arising hereunder or any other loan, note, letter of credit, guaranty, collateral or other agreement or by operation of law, and whether direct or indirect, absolute or contingent, due or to become due, now owing or existing or hereafter arising or created and however acquired, and any amendments, extensions, renewals or increases thereof, including, without limitation, all principal, interest, charges, expenses, commitment or facility fees, collateral management or other fees, treasury management obligations, obligations due pursuant to any interest rate protection agreement, reasonable attorneys' fees and expenses related to the collection of the foregoing, and any other amounts payable by Borrower whether executed in connection herewith or otherwise.

1.6 Interest Rate: The Prime Rate plus 100 basis point, as adjusted from time to time.

1.7 Limited Guarantor: Shall mean Alexander Goren and James Goren.

1.8 Loan Agreement: The Loan and Security Agreement executed by Borrower and Lender of even date herewith, given in connection with this Note.

1.9 Loan Documents: This Note, the Mortgage, Building Loan Agreement, Loan and Security Agreement and all other documents executed and delivered by the Borrower to the Lender in connection with the Loan.

1.10 Loan Term: Commencing on the date hereof and ending on the Maturity Date.

1.11 Maturity Date: The last day of the Loan Term, such date being July 1, 2022, or such earlier date as may be established pursuant to the terms hereof or the Loan Agreement.

1.12 Mortgage: The Building Loan Mortgage of even date, given by Borrower to Lender to secure this Note.

1.13 Note: This Note and all amendments, supplements, renewals, replacements or modifications thereof.

1.14 Prime Rate: shall be defined as a variable rate of interest as published in the Money Market section of the Wall Street Journal. The Prime Rate may or may not be the most favorable rate of interest charged by Lender to its customers from time to time. If such rate is not available, a similar rate based upon a comparable index chosen by Lender, in its sole discretion, shall be used. The Interest Rate shall be adjusted from time to time upon any change or adjustment in the Prime Rate.

1.15 Project: The Borrower's fee interest in and all rights in and to the Mortgaged Premises, together with its interest in the building and any improvements to be constructed or made thereon as defined in the Building Loan Agreement.

2. INTEREST RATE AND ACCRUAL

2.1 Interest Accrual: Interest shall accrue at the applicable interest rate on the outstanding principal balance hereof until paid in full. Borrower shall pay interest, calculated on the basis of a 360-day year for the actual number of days of each year (365 or 366, as applicable) on the outstanding principal amount from and including the date of this Note to, but not including, the date the outstanding principal amount is paid in full.

2.2 Rate Not Available: If any interest rate index required hereunder or under the Loan Documents is not available, a similar rate based upon a comparable index as determined by the Lender in its reasonable discretion and good faith business judgment to most nearly provide the measurement of the aforesaid index will be utilized.

2.3 Maximum Rate of Interest: It is intended that the rate of interest hereon shall never exceed the maximum rate, if any which may be legally charged on the loan evidenced by this Note ("Maximum Rate"), and if the provisions for interest contained in this Note would result in a rate higher than the Maximum Rate, interest shall nevertheless be limited to the Maximum Rate and any amounts which may be paid toward interest in excess of the Maximum Rate shall be applied to the reduction of principal, or, at the option of Lender, returned to Borrower.

3. PAYMENT TERMS

3.1 Interest Payments: During the Term, Borrower shall pay to the Lender interest only, at the Interest Rate, on the principal balances advanced and outstanding under this Note and the Building Loan Agreement from time to time. Payments shall be made on the first day of each month, commencing on August 1, 2019, and continuing through, to and including July 1, 2022.

3.2 Principal Payments: Upon the sale of each lot within the Subdivision, Borrower shall make a principal payment to Lender in the amount of $88,235.00, whereupon Lender shall release such Lot from the Mortgage, all as more fully described in the Mortgage and Loan Agreement.

3.3 Due Date: All Indebtedness owed to Lender hereunder or under the Loan Documents and not paid before the Maturity Date shall be due and payable on the Maturity Date, or at such earlier date as provided for in the Loan Agreement.

3.4 Prepayment: The outstanding principal balance due the Lender pursuant to the terms of this Note may be prepaid in whole or in part, provided written notice of prepayment is given to the Lender not less than thirty (30) days in advance.

3.5 Application; Business Day: All payments hereon shall be made, and all notices to Lender required or authorized hereby shall be given, at the office of Lender at the address designated in the heading of this Note, or to such other place as Lender may from time to time direct by written notice to Borrower. All payments shall be made absolutely net of, without deduction or offset and free and clear of taxes, deductions, charges or withholding of any kind. Lender shall apply all payments received on this Note to any accrued and unpaid interest then due and owing, then to the reduction of principal of this Note, then to other sums due hereunder in such order and in such amounts as Lender may determine from time to time. The sum or sums shown on Lender's records shall be evidence of the correct unpaid balances of principal and interest on this Note, absent manifest error. If any payment comes due on a day that is not a Business Day, Borrower may make the payment on the first Business Day following the payment date and pay the additional interest accrued to the date of payment.

3.6 Costs and Expenses: Borrower agrees to pay on demand all reasonable costs and expenses of every kind and nature, including, without limitation, reasonable attorneys' fees and disbursements incurred by Lender in retaining counsel for advice, suit, appeal, insolvency proceedings, or any other purpose described in this Section, incurred by Lender (i) in enforcing this Note, (ii) in collecting any Indebtedness evidenced hereby from Borrower or any Guarantor or Limited Guarantor, (iii) in realizing upon or protecting any collateral for the payment of this Note, and (iv) for any other purpose related hereto.

3.7 Collection Periods: Any check, draft, money order or other instrument given in payment of all or any portion hereof may be accepted by Lender and handled for collection in the customary manner, but the same shall not constitute payment hereunder or diminish any rights of Lender except to the extent that actual cash proceeds of such instrument are unconditionally received by Lender; provided, however, that this Note shall not be in default as the result of normal collection periods on such instruments.

3.8 Late Payment Charge: If any payment due under this Note is unpaid for ten (10) days or more, Borrower shall pay, in addition to any other sums due under this Note (and without limiting

Lender's other remedies on account thereof), a late charge in an amount equal to five (5%) percent of such unpaid amount, or $25.00 if greater.

3.9 Default Interest: After the occurrence of an Event of Default and continuance thereof after any applicable grace or cure periods, either hereunder or the Loan Documents, at Lender's option, and in lieu of additional Late Payment Charges, interest shall accrue at a rate per annum equal to the aggregate of the rate provided for herein plus five (5%) percent, and such rate shall continue to apply whether or not judgment shall be entered on this Note.

4. EVENTS OF DEFAULT

This Note is executed and delivered subject to the terms of the Loan Agreement, to which reference is hereby made with respect to Lender's rights of acceleration of the principal hereof on the occurrence of certain Events of Default, as defined in the Loan Agreement, and to Lender's remedies.

5. MISCELLANEOUS PROVISIONS

5.1 Notice: The giving and effectiveness of notices, elections or demands permitted or required hereby shall be governed by the provisions of the Mortgage.

5.2 Joint and Several Liability: If there is more than one Borrower, each of them shall be jointly and severally liable for all amounts and obligations which become due under this Note and the term "Borrower" shall include each as well as all of them.

5.3 Entire Agreement; Binding Effect; Severability: This Note, together with any related loan and security agreements, guaranties, and documents ancillary thereto contains the entire agreement between Lender and Borrower with respect to this Note, and supersedes every course of dealing, other conduct, oral agreement, commitment letter and representation previously made by Lender. Borrower agrees that in any legal proceeding, a copy of this Note kept in Lender's course of business may be admitted into evidence as an original. This Note is a binding obligation enforceable against Borrower and its heirs, executors, administrators and permitted successors and assigns and shall inure to the benefit of Lender and its successors and assigns. If a court deems any provision of this Note invalid, the remainder of this Note shall remain in effect.

5.4 Payment of Fees and Expenses: Borrower agrees to pay, upon demand, costs of collection of all amounts due under this Note, including, without limitation, principal, interest and fees, or in connection with the enforcement of, or realization on, any security for this Note, including, without limitation, to the extent permitted by applicable law, reasonable attorneys' fees and expenses.

5.5 Indemnification: Borrower agrees to indemnify Lender and its affiliates and their respective officers, directors and employees (collectively, "Indemnitees") and hereby holds Indemnitees harmless against all liabilities, claims, actions, suits, proceedings, penalties, costs, expenses, brokerage or other fees (including, without limitation, reasonable legal fees and expenses), losses, damages and liabilities of any kind or nature including in tort, penalties and interest, which Lender may incur in any manner other than Lender's negligence or willful misconduct, by reason of any matter relating, directly or indirectly, to this Note and the related loan documents. This indemnity shall survive the termination of this Note.

5.6 Governing Law: This Note shall be interpreted and the rights and liabilities of the parties shall be governed by the laws of the State of New York, without regard to principles of the conflict of laws. This Note has been delivered to and accepted by Lender and will be deemed to be made in the State of New York.

5.7 USA Patriot Act: Lender hereby notifies Borrower that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56), Lender is required to obtain, verify and record information that identifies Borrower, which information includes the name and address of Borrower and other information that will allow Lender to identify Borrower in accordance with the USA Patriot Act.

5.8 CONSENT TO JURISDICTION: BORROWER KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY (a) CONSENTS IN EACH ACTION AND OTHER LEGAL PROCEEDING COMMENCED BY LENDER AND ARISING OUT OF OR OTHERWISE RELATING TO THIS NOTE OR ANY COLLATERAL RELATED HERETO TO THE JURISDICTION OF THE SUPREME COURT FOR THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK, AND (b) WAIVES EACH OBJECTION TO THE LAYING OF VENUE OF ANY SUCH ACTION OR OTHER LEGAL PROCEEDING IN EITHER OF SUCH COURTS.

5.9 WAIVER OF JURY TRIAL: (a) BORROWER AND LENDER KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVE EACH RIGHT EITHER MAY HAVE TO A TRIAL BY JURY AND; (b) BORROWER WAIVES ANY RIGHT TO ASSERT ANY CLAIM FOR DAMAGES (INCLUDING, BUT NOT LIMITED TO, PUNITIVE DAMAGES) IN ADDITION TO ACTUAL DAMAGES IN, ANY ACTION OR OTHER LEGAL PROCEEDING OF ANY NATURE, RELATING TO (i) THIS NOTE, ANY RELATED LOAN DOCUMENT OR ANY COLLATERAL RELATED HERETO, (ii) ANY TRANSACTION CONTEMPLATED BY ANY SUCH DOCUMENTS OR (iii) ANY NEGOTIATION, PERFORMANCE OR ENFORCEMENT OF THIS NOTE, OR ANY COLLATERAL RELATED HERETO. BORROWER CERTIFIES THAT NEITHER LENDER NOR ANY REPRESENTATIVE OF LENDER HAS REPRESENTED TO BORROWER THAT LENDER WILL NOT SEEK TO ENFORCE THE WAIVER MADE BY BORROWER IN THIS PARAGRAPH. BORROWER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL AS NECESSARY AND APPROPRIATE.

*[SIGNATURES ONLY ON FOLLOWING PAGE]*

IN WITNESS WHEREOF, the Borrower has executed this Building Loan Note effective as of the date set forth above.

**Borrower:** **BLITMAN SARATOGA, LLC**

Dated: June 27, 2019

By:__________________________
Name: Gary Peresiper
Title: Authorized Member

STATE OF NEW YORK )
) SS:
COUNTY OF ALBANY )

On the 27th day of June in the year 2019, before me, the undersigned, personally appeared GARY PERESIPER, known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

__________________________
Frank C. O'Connor III
Notary Public, State of New York
Qualified in Albany County
Reg. No. 4862527
Commission Expires May 19, 2022

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,500,000.00 | 11-01-2017 | | 6606732822 | | | *** | |
| References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations. | | | | | | | |

**Borrower:** BLITMAN SARATOGA, LLC
222 Bloomingdale Road, Suite 404
White Plains, NY 10605

**Lender:** BALLSTON SPA NATIONAL BANK
Commercial Lending
PO Box 70
990 State Route 67
Ballston Spa, NY 12020

**Principal Amount: $1,500,000.00** **Date of Note: November 1, 2017**

PROMISE TO PAY. To repay Borrower's loan, BLITMAN SARATOGA, LLC ("Borrower") promises to pay to BALLSTON SPA NATIONAL BANK ("Lender"), or order, in lawful money of the United States of America, on demand, the principal amount of One Million Five Hundred Thousand & 00/100 Dollars ($1,500,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

PAYMENT. Borrower will pay this loan in full immediately upon Lender's demand. Borrower will pay in accordance with the following payment schedule:

(a) Borrower shall pay to the Lender interest only, at the Interest Rate on the principal balance outstanding under this Note from time to time. Payments shall be made on the first day of each month, commencing on December 1, 2017, and continuing thereafter monthly on the first of each month until demand, whereupon the entire principal balance outstanding, all accrued interest, and any unpaid charges and fees shall be paid in full.

(b) All payments shall be applied first to interest, then to principal, then to tax and insurance escrow payments, if any, and then to prepayment premiums and late charges, if any.

(c) Upon the sale of a lot located within the residential subdivision owned by Borrower and located at 98 Geyser Road, Saratoga Springs, New York , a principal reduction payment equal to the total amount advanced by the Lender with respect to the construction of the particular house shall be due and owing within three business days from the transfer of title.

Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

VARIABLE INTEREST RATE. The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the US Prime Rate as published in the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 4.250% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.000 percentage point over the Index, resulting in an initial rate of 5.250% per annum based on a year of 360 days. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

PREPAYMENT. Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: BALLSTON SPA NATIONAL BANK, Commercial Lending, PO Box 70, 990 State Route 67, Ballston Spa, NY 12020.

LATE CHARGE. If a regularly scheduled interest payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $25.00, whichever is greater. If Lender demands payment of this loan, and Borrower does not pay the loan in full within 10 days after Lender's demand, Borrower also will be charged either 5.000% of the sum of the unpaid principal plus accrued unpaid interest or $25.00, whichever is greater.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Borrower agrees to pay all costs and expenses Lender incurs to collect this Note. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of New York.

CHOICE OF VENUE. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Saratoga County, State of New York.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account and whether evidenced by a certificate of deposit). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

LINE OF CREDIT. This Note evidences a revolving line of credit. Advances under this Note may be requested only in writing by Borrower or as provided in this paragraph. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Gary S. Peresiper, Managing Member of BLITMAN SARATOGA, LLC. Advances will require the pre-approval of the Lender based on the following:

Maximum advance to construct a home will be 75% of the difference between the contract price minus the lot value estimated at $90,000.
Proof of a mortgage commitment (for home buyer) will be provided to Ballston Spa National Bank. If home purchase is a cash transaction, proof of cash will be required.
House(s) being constructed will be inspected by a Ballston Spa National Bank representative.
Schedule of funds being advanced for each home will be as follows:
25% after completion of foundation
25% after completion of framing
25% after building is enclosed
25% after completion of drywall

Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

ANNUAL FEE. The Lender reserves the right at all times during the term of this loan, whether or not any funds are advanced, and whether or not during the draw period or repayment period, to charge an annual fee.

ESTABLISH AND MAINTAIN ACCOUNTS WITH LENDER . The Borrower shall establish and maintain a deposit account, with the automatic transfer of the monthly payments to be deducted from said account. If the Borrower fails to establish and maintain such account with the Lender, the Lender, at its sole discretion, reserves the right to re-price the index and or percentage points over the index, on existing loans at any time during terms of the Loan.

ANNUAL REVIEW . The Lender reserves the right to allow advances under this Note by review on an annual basis. If the Lender gives approval for the next year, such advances may be made for the next year. The Lender's approval shall not be unreasonably withheld.

BANK'S RIGHT TO CANCEL. Should the Bank solely in its discretion determine your ability to repay your Line is hindered in any way we reserve the right to cancel our approval at any time.

DEBT. Any and all debts owned by the Borrower to their principals shall be subordinated to the indebtedness to Ballston Spa National Bank.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

GENERAL PROVISIONS. This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

BLITMAN SARATOGA, LLC

By: ______________________
Gary S. Peresiper, Managing Member of BLITMAN SARATOGA, LLC

LaserPro, Ver. 16.1.10.003 Copr. D+H USA Corporation 1997, 2017. All Rights Reserved. - NY C:\CFI\LPL\D20.FC TR-7021

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,500,000.00 | 11-01-2017 | | 6606732822 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** BLITMAN SARATOGA, LLC
222 Bloomingdale Road, Suite 404
White Plains, NY 10605

**Lender:** BALLSTON SPA NATIONAL BANK
Commercial Lending
PO Box 70
990 State Route 67
Ballston Spa, NY 12020

**Principal Amount: $1,500,000.00** **Date of Agreement: May 2, 2019**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Original Promissory Note dated November 1, 2017 in the amount of One Million Five Hundred Thousand and 00/100 U.S. Dollars ($1,500,000.00) between BLITMAN SARATOGA, LLC, and BALLSTON SPA NATIONAL BANK.

**DESCRIPTION OF COLLATERAL.** All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

An assignment of contracts. ..

**DESCRIPTION OF CHANGE IN TERMS.** Increase of the Principal Amount.

**PROMISE TO PAY.** To repay Borrower's loan, BLITMAN SARATOGA, LLC ("Borrower") promises to pay to BALLSTON SPA NATIONAL BANK ("Lender"), or order, in lawful money of the United States of America, on demand, the principal amount of Two Million Five Hundred Thousand & 00/100 U.S. Dollars ($2,500,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**CHANGE IN TERMS SIGNERS:**

BLITMAN SARATOGA, LLC

By: ______________________
Howard N. Blitman, P.E., Managing Member of BLITMAN SARATOGA, LLC

X ______________________
Howard N. Blitman, P.E.

X ______________________
Scott P. Varley

X ______________________
Gary S. Persiper

X ______________________
Alexander M. Goren

X ______________________
James G. Goren

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,500,000.00 | 11-01-2017 | | 6606732822 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** BLITMAN SARATOGA, LLC
222 Bloomingdale Road, Suite 404
White Plains, NY 10605

**Lender:** BALLSTON SPA NATIONAL BANK
Commercial Lending
PO Box 70
990 State Route 67
Ballston Spa, NY 12020

**Principal Amount: $1,500,000.00** **Date of Agreement: May 2, 2019**

DESCRIPTION OF EXISTING INDEBTEDNESS. Original Promissory Note dated November 1, 2017 in the amount of One Million Five Hundred Thousand and 00/100 U.S. Dollars ($1,500,000.00) between BLITMAN SARATOGA, LLC, and BALLSTON SPA NATIONAL BANK.

DESCRIPTION OF COLLATERAL. All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

*An assignment of contracts.*

DESCRIPTION OF CHANGE IN TERMS. **Increase of the Principal Amount.**

PROMISE TO PAY. To repay Borrower's loan, BLITMAN SARATOGA, LLC ("Borrower") promises to pay to BALLSTON SPA NATIONAL BANK ("Lender"), or order, in lawful money of the United States of America, on demand, the principal amount of Two Million Five Hundred Thousand & 00/100 U.S. Dollars ($2,500,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

CHANGE IN TERMS SIGNERS:

BLITMAN SARATOGA, LLC

By:____________________
Howard N. Blitman, P.E., Managing Member of BLITMAN SARATOGA, LLC

X____________________
Howard N. Blitman, P.E.

X____________________
Scott P. Varley

X____________________
Gary S. Peresipar

X____________________
Alexander M. Goren

X____________________
James G. Goren

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,500,000.00 | 11-01-2017 | | 6606732822 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** BLITMAN SARATOGA, LLC
222 Bloomingdale Road, Suite 404
White Plains, NY 10605

**Lender:** BALLSTON SPA NATIONAL BANK
Commercial Lending
PO Box 70
990 State Route 67
Ballston Spa, NY 12020

**Principal Amount: $1,500,000.00** **Date of Agreement: May 2, 2019**

DESCRIPTION OF EXISTING INDEBTEDNESS. Original Promissory Note dated November 1, 2017 in the amount of One Million Five Hundred Thousand and 00/100 U.S. Dollars ($1,500,000.00) between BLITMAN SARATOGA, LLC, and BALLSTON SPA NATIONAL BANK.

DESCRIPTION OF COLLATERAL. All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

An assignment of contracts. .

DESCRIPTION OF CHANGE IN TERMS. Increase of the Principal Amount.

PROMISE TO PAY. To repay Borrower's loan, BLITMAN SARATOGA, LLC ("Borrower") promises to pay to BALLSTON SPA NATIONAL BANK ("Lender"), or order, in lawful money of the United States of America, on demand, the principal amount of Two Million Five Hundred Thousand & 00/100 U.S. Dollars ($2,500,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

CHANGE IN TERMS SIGNERS:

BLITMAN SARATOGA, LLC

By:____________________
Howard N. Blitman, P.E., Managing Member of BLITMAN SARATOGA, LLC

X____________________
Howard N. Blitman, P.E.

X____________________
Scott P. Varley

X____________________
Gary S. Peresiper

X____________________
Alexander M. Goren

X____________________
James G. Goren

LENDER:

BALLSTON SPA NATIONAL BANK

X

Authorized Signer