**Hearing Date and Time: 12/02/2020 at 10:00 a.m.**

WHITEFORD, TAYLOR & PRESTON LLP
220 White Plains Road, Second Floor
Tarrytown, NY 10591
(914) 761-8400
klewis@wtplaw.com
Kenneth M. Lewis

*Attorneys for Howard N. Blitman*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BLITMAN SARATOGA LLC, | ) | Case No. 20-23177-rdd |
| | ) | |
| Debtor. | ) | |

## OBJECTION OF HOWARD N. BLITMAN TO DEBTOR'S MOTION PURSUANT TO §§ 362, 364 AND 507 FOR AN ORDER AUTHORIZING DEBTOR TO OBTAIN REPLACEMENT AND NEW POSTPETITION DIP FINANCING

Howard N. Blitman, by his attorneys, Whiteford, Taylor & Preston LLP, respectfully submits this Objection to the Debtor's Motion, Pursuant to §§ 362, 364 and 507, For an Order Authorizing Debtor to Obtain Replacement and New Postpetition DIP Financing [Docket No. 6].

1.      Mr. Blitman wishes to see the Saratoga project successfully completed for the benefit of all stakeholders, including existing and prospective homeowners, contractors, Ballston Spa National Bank, and the other members of Blitman Saratoga LLC.  However, Mr. Blitman believes there are less costly and burdensome alternatives to the funding currently being proposed by James and Alex Goren.

2.      In June 2020, Robin Winter, on behalf of her father, Howard Blitman, raised with

the Gorens various proposals to fund the Saratoga project to completion. Those proposals incorporated the capital call provisions of Section 3.8 of the Blitman Saratoga Operating Agreement, which is the mechanism by which the Debtor can obtain needed capital from its members without incurring borrowing costs, including interest. A copy of the Operating Agreement is annexed as Exhibit "A".

3. The proposals also recommended installing a new management team to ensure the same mistakes would not be repeated.

4. The Gorens rejected them all, litigation ensued, and a scorched-earth strategy, implemented by aggressive lawyering, was launched. Those tactics resulted in not just costly litigation, but the Bank loans being called, and the commencement of this chapter 11 case. Mr. Blitman was not even consulted about the bankruptcy, and only learned about it when Ms. Winter was contacted by a real estate advisor concerning the case.

5. Stage one of that strategy included falsely accusing Ms. Winter of withholding books and records. However, the so-called missing books and records issue is a red herring. In response to Mr. Russ' August 7 demand for the books and records, on August 9, Ms. Winter not only stated her intention to engage in a constructive dialogue to address, and hopefully resolve, the books and records demand, but also summarized the past communications concerning the books and records, in which *all* books and records that Ms. Winter could access were either already turned over or otherwise made available.[1]

---

[1] The only documents remaining at issue are files stored on a Sage computer program. While Ms. Winter has been willing to provide those files, only someone with administrator credentials can copy and send the files, and Ms. Winter does not have the credentials. According to Sage, Gary Peresiper is listed as the administrator. While he has or should have the credentials, he has declined to provide them. If he does not have the credentials, as administrator, he can arrange with Sage to substitute Ms. Winter as administrator or obtain new credentials so that Ms. Winter will be able to access the Blitman Saratoga files and in turn, provide copies of them to the Debtor.

2

6. However, rather than either responding to Ms. Winter's email, or having his clients otherwise engage in any dialogue to attempt to resolve the parties' disputes, on August 28, 2020, the Gorens filed a complaint in New York Supreme Court, Suffolk County, against Mr. Blitman and Ms. Winter titled *Blitman Saratoga, LLC, Alex Goren and James Goren, et al. v. Howard N. Blitman and Robin Winter*, Index No. 611885/2020. In that action, the Gorens asserted claims of purported mismanagement, misappropriation, and breaches of fiduciary duties.

7. Upon filing the Complaint, the Gorens sought an Order to Show Cause to seek the turnover of books and records, the very same books and records that were the subject of Ms. Winter's August 9 email that was never responded to.

8. Next, in a letter to the Bank's Board of Directors, Mr. Russ appears to have threatened and tried to bully Ballston Spa National Bank into selling to the Gorens the Bank's loans to Blitman Saratoga, which include the personal guarantees.

9. The Ballston Spa Bank loans were *never* in default, nor was there any threat of them going into default, until (i) Mr. Peresiper asked the Bank to call a loan default, and, after it refused, (ii) the Debtor, under Thomas Keaney's management, failed to pay the September, October and November interest payments.[2]

10. As reflected in the September 30 letter from Peter Burgess, counsel to Ballston Spa National Bank, to Mr. Russ' demand, apparently Mr. Peresiper "*told the BSNB relationship manager that the Goren Brothers wanted BSNB to call (i.e., default) the loans.*" A copy of Mr. Burgess' Letter is annexed as Exhibit "B". Mr. Burgess further observed that "*I have practiced in loan workout and litigation for more than 25 years and this is the first time a borrower of my client has asked for a loan default – the request is that unusual.*" Mr. Burgess' Letter, p. 2.

---

[2] The $1.5 million Building Loan Note dated June 27, 2019 (Loan-1 in the Bank's November 2, 2020 Default Letter) was not scheduled to mature until July 1, 2022, while the $1.5 million Promissory Note dated November 1, 2017 (Loan-2) is a demand note.

Following further observations of a lack of candor, Mr. Burgess stated that "*This confirms the now transparent effort of the Goren Brothers to purchase the BSNB loans for the purpose of having another claim against Mr. Blitman.*"

11. Instead of further exacerbating the current (or further) litigation, under chapter 11, the Ballston Spa Bank loans can be reinstated, and working capital can be provided to the Debtor by its members to complete the project. It is therefore unnecessary to further encumber the Debtor and its assets with the additional liens and costs associated with the Gorens' proposed financing.

12. Next, there is nothing in the proposed DIP financing loan documents that would require the Debtor to repay the amounts due under the "assigned" Ballston Spa Bank first lien indebtedness prior to repaying the Gorens under their new loans. The DIP financing motion and budget provide to the contrary and the motion states that the net sale proceeds will be used to fund the balance of construction expenses and then pay down the DIP loans. Moreover, with the proposed Consolidated, Modified and Extended Note, it would be difficult, if not impossible, to determine what indebtedness is applicable to the Ballston Spa Bank loans, to which Mr. Blitman (as well as each of the other members of the Debtor), provided a partial guaranty, and the new working capital loans provided by the Gorens, which Mr. Blitman has not agreed to guarantee. Thus, the current financing would only lead to further litigation, including indemnification and contribution claims with respect to the members' guarantees, should there be a shortfall under the "assigned" Ballston Spa Bank loans.

13. Finally, there is nothing in the proposed DIP loan documents that would require the Gorens to provide further advances to the Debtor once the Ballston Spa Bank loan documents, including the guarantees, are assigned to them.

4

14. While in Thomas Keaney's Declaration, Mr. Blitman and Ms. Winter have been attacked with gratuitous and unsubstantiated allegations of mismanagement and breach of fiduciary duty, it is important to set the record straight. As a preliminary matter, Mr. Keaney was not involved with the Saratoga project from the beginning, but instead, began to work for the project on or about January 2, 2015. Mr. Keaney took over as project manager in or about July 2015, until he resigned on June 17, 2020.

15. Since the Debtor's inception, Mr. Peresiper performed the chief financial officer function of the Debtor, until he resigned effective April 30, 2020. Prior to his resignation, he was indicted and entered a guilty plea with respect to fraud upon the Medicare program. (*United States of America v. Gary Peresiper*, E.D.N.Y. No. 18-280). While after the Indictment, Mr. Peresiper no longer had signing authority on checks or processed payroll, he still continued to oversee the entire Blitman Saratoga project, including going to the site every other week and meeting with Mr. Keaney and Mr. Varley and the sales team, and providing financial and accounting services to the Debtor, including administering accounts payable and accounts receivable, addressing insurance and banking issues, preparing projections and reports for Mr. Blitman and the Gorens, and addressing other financial related matters.

16. Scott Varley served as the sales manager for the Saratoga project since its inception, initially through Realty USA and then through Keller Williams.

17. At no time did Ms. Winter ever serve as the Manager of the Debtor. Rather, from mid-2016 through mid-2018, and again from July 2018 through May 2019, as a Changebridge Construction Corp. employee working on behalf of the Debtor, Ms. Winter worked with the Debtor's outside closing attorney on purchase agreements, on sales and marketing for the project, processed payroll, signed checks, and gathered information. However, when Ms. Winter

5

suggested replacing Mr. Varley as the sales manager in May 2019, the Gorens had Ms. Winter removed from the project.

18. Ms. Winter had no further role or responsibilities with respect to the Saratoga project until May 1, 2020. Upon reviewing the Debtor's books and records, Ms. Winter discovered a number of issues and discrepancies, including finding more than $700,000 in accounts payable that were not previously accounted for or reported by Mr. Peresiper. Moreover, Mr. Varley had not sold a house since August 2019. This is why, in her proposals to the Gorens, Ms. Winter suggested replacing the current management team. In response, in June 2020, the Debtor replaced Mr. Blitman as Managing Member, whereupon Ms. Winter's work with respect to the project also ended.

19. As the Gorens' financing proposal fails to provide financing that is less costly to the Debtor than is otherwise available, and would further advance needless litigation, it is respectfully requested that the Court deny the motion.

20. In lieu of the proposed costly and cumbersome DIP financing, Mr. Blitman looks forward to working with Ballston Spa National Bank, the Debtor's bankruptcy counsel, and the Gorens, where hopefully cooler heads will prevail, and the Saratoga project is successfully completed.

21. Mr. Blitman reserves all of his rights, including, but not limited to amending his Objection.

[Remainder of page intentionally left blank.]

WHEREFORE, Howard N. Blitman, respectfully requests that the Court sustain his Objection, and grant him such other and further relief as is just and proper.

Dated: Tarrytown, New York
November 27, 2020

                                WHITEFORD, TAYLOR & PRESTON LLP

                                By: */s/ Kenneth M. Lewis*
                                    Kenneth M. Lewis

                                220 White Plains Road
                                Tarrytown, NY 10591
                                (914) 761-8400
                                klewis@wtplaw.com

                                *Attorneys for Howard N. Blitman*