# EXHIBIT "B"

# BURGESS & ASSOCIATES P.C.
*Attorneys and Counselors at Law*

646 Plank Road, Suite 103, Clifton Park, New York 12065
Telephone **518-371-0052**
Facsimile **518-371-0053**

September 30, 2020

**VIA E-MAIL and U.S. MAIL**
**jayruss@russrusspc.com**

Jay Edmond Russ, Esq.
Russ & Russ, P.C.
543 Broadway
P.O. Box 149
Massapequa, New York  11758

      **Re:   Ballston Spa National Bank / Blitman Saratoga, LLC**

Dear Jay:

We represent Ballston Spa National Bank ("BSNB").

We are responding to your letter to the Board of Directors and Senior Management of BSNB dated September 23, 2020, a copy of which is enclosed for the benefit of the parties copied with this correspondence.

Your letter fails to mention essential facts which explain and justify the approach and positions taken by BSNB in the administration of the loans due from Blitman Saratoga, LLC (the "Borrower").

BSNB became aware of corporate governance issues within the Borrower on June 25, 2020.  At the time, BSNB was hopeful those issues would be quickly resolved.  Then, in a meeting on July 22, 2020, Gary Peresiper told the BSNB relationship manager that the Goren Brothers wanted BSNB to call (i.e., default) the loans.  The credit facilities were referred to our office for review on August 11, 2020.  Jay, I have practiced in loan workout and litigation for more than 25 years and this is the first time a borrower of my client has asked for a loan default – the request is that unusual.

Mindful of the corporate governance issues and the highly unusual request by the majority faction of the Borrower for a call of the loans, BSNB decided to pursue a course of conduct directed to avoid involvement in the controversies amongst the members.  In order to protect the interests of BSNB, the loans were demanded and accelerated by letter dated August 27, 2020.  The demand requires full payment on or before November 27, 2020.  The lengthy demand (90+ days) was afforded by BSNB to the Borrowers and the members as a courtesy and to provide an opportunity for the members to resolve their disputes and pay BSNB in full within a reasonable time period without unnecessary litigation.

You contacted me on August 31, 2020 to indicate that the Goren Brothers would pay the amount due from them under their limited guaranties while expressing disappointment that the parties were given 90 days to pay.  I took this to mean that you were disappointed that BSNB

# BURGESS & ASSOCIATES P.C.
*Attorneys and Counselors at Law*

Jay Edmond Russ, Esq.
September 30, 2020
Page 2


would not be suing the Borrower and other guarantors for the balance due sooner than the end of November.

We provided the documents for the Goren Brothers payoff on September 4, 2020. You immediately responded by conditioning the Goren payoff on a covenant not to sue the Borrower before first exhausting remedies against the other guarantors. After reviewing this highly unusual request with senior management, I informed you on September 9, 2020 that BSNB was unable to agree. The following day (September 10, 2020) you indicated that the Goren Brothers would pay off without the covenant, then the Goren Brothers questioned one of the guaranties, then you apologized for the back and forth saying that the Goren Brothers has decided not to pay after all.

On September 14, 2020, you then sent an e-mail stating that "an affiliate of the Goren Brothers will take over the bank's entire position." This new approach was also highly unusual particularly since BSNB had never offered the loans for sale! After reviewing this request with senior management, I informed you that BSNB would require the consent of all members of the Borrower to further consider the sale proposal. This request was made in furtherance of BSNB's policy to avoid involvement in the disputes amongst the members. You then protested, made a vague threat, and ended all communication with my office.

In the interim, we were first informed that the Borrower and the Goren Brothers had sued Mr. Blitman and his daughter on August 28, 2020 (the day after the BSNB loans were demanded). It is telling that, despite all our communication, you never mentioned to me that the Borrower and the Goren Brothers had sued Mr. Blitman. This all confirms the now transparent effort of the Goren Brothers to purchase the BSNB loans for the purpose of having another claim against Mr. Blitman.

Turning to the contentions in your letter, the idea that BSNB is somehow obligated to sell the loans to the Goren Brothers is entirely without merit. If you have any legal authority (statutory, case law, regulatory, or otherwise) to support the contention that BSNB has an obligation to sell the loans to a faction of the Borrower's membership (in this case, the Goren Brothers) in active litigation with another member, we will promptly review and consider the authority.

Your letter also states that BSNB's refusal to sell the loans demonstrates preference to Mr. Blitman. This is without merit as BSNB has made conscious and consistent efforts to remain independent of the disagreements between the members. Rest assured, BSNB would have taken the same position if it had been Mr. Blitman that had approached BSNB with an offer to purchase the loans.

The Borrower and the Goren Brothers have sued Mr. Blitman for $10 million dollars. The Complaint in that lawsuit exceeds 20 pages and is nearly 100 paragraphs in length. Even a

# BURGESS & ASSOCIATES P.C.
*Attorneys and Counselors at Law*

Jay Edmond Russ, Esq.
September 30, 2020
Page 3

casual reading reveals that the disputes between the Goren Brothers and Mr. Blitman extends far beyond any matters related to payment of the BSNB loans.  BSNB has no intention of becoming embroiled in those controversies through a sale of the loans when the obligations are well secured with wholly sufficient collateral and guaranties.

The suggestion that the Borrower is unable to operate without a sale of the loans is preposterous.  The members are free to invest in the project with any adjustments to profits or losses handled through the operating agreement or your pending lawsuit.

Finally, we are not convinced that the loan sale as requested by the Goren Brothers is permissible under §275 of the Real Property Law.

We hope the members can quickly settle their differences.  Regardless, BSNB expects full payment as demanded in our August 27, 2020 letter.  Please be guided accordingly.

Very truly yours,

BURGESS & ASSOCIATES P.C.

Peter L. Burgess

PLB:klp
Enclosure
cc:   Gary S. Peresiper (via e-mail)
       Scott P. Varley (via e-mail)
       Benjamin Fishman, Esq. (via e-mail)
       Ballston Spa National Bank (via e-mail)

S:\BAPCLAW\3188.191 Blitman Saratoga\Russ.09292020.doc

## Peter Burgess

| | |
|---|---|
| **From:** | Jay Russ <jayruss@russrusspc.com> |
| **Sent:** | Wednesday, September 23, 2020 3:05 PM |
| **To:** | Peter Burgess |
| **Subject:** | Blitman Saratoga, LLC |
| **Attachments:** | RNR Letterhead goren letter 1.docx; RNR Letterhead goren letter 2.docx |

These letters will be delivered tomorrow.

Jay

LAW OFFICES

# RUSS & RUSS, P.C.

543 BROADWAY -  P.O. BOX 149 - MASSAPEQUA, NEW YORK 11758

TEL, 516/541-1014    FAX, 516/541-1077

JAY EDMOND RUSS
LINDA EILEEN RUSS

•*Also Admitted in Connecticut*

*Of Counsel*
IRA LEVINE
DANIEL P. ROSENTHAL*

September 23, 2020

***VIA USPS PRIORITY MAIL***

To the Board of Directors and Senior Management of
Ballston Spa National Bank
87 Front Street
Ballston Spa, NY 12020

Robert E. Van Vranken, Esq.
Chairman of the Board

Dawn Abbuhl, PhD
Director

Paul N. DiCaprio
Director

Christopher R. Dowd
Director, President and Chief Executive Officer

Michael S. Dunn
Director

Beth A. Kayser, CPA
Director

Stephen J. Obermayer, CPA
Director

Richard P. Sleasman
Director

Stephen E. Strader, MD
Director

Timothy E. Blow
Executive Vice President, Corporate Secretary and Chief Financial Officer

Margaret K. de Koning
Executive Vice President and Chief Banking Officer

Dear Sir/Madam

This office is counsel to your customer, Blitman Saratoga, LLC., and to James Goren and
Alex Goren, d/b/a Goren Brothers and Goren Brothers, LP, as well as affiliates of the Goren family.
Recently, the Bank declared due from the LLC a note (secured by a mortgage) totaling
approximately 1.8 million dollars, which is the subject of limited guarantees by certain individuals.

**RUSS & RUSS, P.C.**

The demand made by the Bank to the Goren Brothers, as limited guarantors, was, essentially, one-half thereof. After due consideration of the needs of the LLC to be able to operate free from the continuous threat of enforcement by the Bank, the Goren Brothers (through an affiliate) decided to acquire the entire note, mortgage, guarantees, etc. from the Bank and pay the entire sum due, not just the sum which they guaranteed. The Bank then demanded that ALL members of the LLC consent to such a transfer, which the Bank knew or should have known was an unreasonable demand, given that the parties are in litigation. However, this office made the request of counsel for LLC member, Howard Blitman (15%) to which there was no response. All of the other members' consent.

The Bank, by holding the Sword of Damocles, above the LLC's "head" is making it impossible for the LLC to operate, complete construction, comply with contracts to sell homes, or engage in any/all of its operations. The Bank is threatening the LLC, although it can simply accept payment in full and transfer/assign its interests to a third-party. The Bank has background information on the Goren Brothers and know that they are financially capable of performing consistent with this letter.

In seeking consent from counsel for Mr. Blitman, we advised him that the transferee/assignee had every intention of enforcing the Blitman limited guarantee. The only reason why the Bank would refuse payment in full and the transfer/assignment to the payor, is to protect Mr. Blitman. There can be no other reason. We demand that the Bank accept payment in full, and transfer/assign its interests to an affiliate of the Goren Brothers. We advise the bank that it will be held liable and accountable for its misconduct in damaging the LLC and "preferring" one of its members, namely, Howard Blitman. We consider this misconduct to be willful, intentional and tortious.

We will be filing a formal complaint with the Department of Financial Services and any other bank governing body. We also will commence litigation on behalf of the LLC…a damaged party…against the Bank. Understand that the Bank's ongoing misconduct is preventing the LLC members (except for the 15% owned by Mr. Blitman) from raising funds to operate. The Bank is causing untold damage to the LLC's vendors and the community, without any legitimate reason.

We feel that every Director and every person in Senior Management should know the facts.

Very truly yours,

Jay Edmond Russ

LAW OFFICES

# RUSS & RUSS, P.C.

543 BROADWAY -  P.O. BOX 149 - MASSAPEQUA. NEW YORK 11758

TEL, 516/541-1014    FAX, 516/541-1077

JAY EDMOND RUSS
LINDA EILEEN RUSS

*Also Admitted in Connecticut*

*Of Counsel*
IRA LEVINE
DANIEL P. ROSENTHAL*

September 23, 2020

*VIA USPS PRIORITY MAIL*

New York State
Department of Financial Services
1 Commerce Plaza
Albany, NY 12257

Gentlemen:

We are counsel to Blitman Saratoga, LLC, which is a customer of Ballston Spa National Bank. This letter is a formal complaint against the Bank. We request that a complaint number and investigator be assigned and communicated to us, so that we may present the underlying documents and additional information.

The basic facts and circumstances are set forth in the attached letter to the Directors and Senior Management of the Bank.

Very truly yours,

Jay Edmond Russ