BURGESS & ASSOCIATES P.C.
646 Plank Road, Suite 103
Clifton Park, New York  12065
(518) 371-0052
pburgess@bapclaw.com
Peter L. Burgess

*Attorneys for Ballston Spa National Bank*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------

In re:

      BLITMAN SARATOGA LLC,

               Debtor.

------------------------------------------------------------

Chapter 11

Case No.:  20-23177-rdd

### LIMITED OBJECTION OF BALLSTON SPA NATIONAL BANK TO DEBTOR'S MOTION PURSUANT TO §§ 362, 364 AND 507 FOR AN ORDER AUTHORIZING DEBTOR TO OBTAIN REPLACEMENT AND NEW POST-PETITION DIP FINANCING

Ballston Spa National Bank, by its attorneys, Burgess & Associates P.C.,

respectfully submits this Limited Objection to the Debtor's Motion, pursuant to §§ 362,

364 and 507, for an Order Authorizing Debtor to Obtain Replacement and New Post-

petition DIP Financing [Docket No. 6].

#### Preliminary Statement

1.      Ballston Spa National Bank ("BSNB") welcomes full and timely payment of

the amounts due from the Debtor but not at the expense of a forced loan sale which

includes the assignment of guaranty documents which are not necessary for the

purposes expressed by the Debtor and an assignment of mortgage which may be

impermissible under § 275(3) of the Real Property Law of the State of New York.

1

**Background**

2.      The cessation of construction and the corporate governance issues of the

Debtor prompted BSNB to demand payment of the line of credit (loan number ending

2822) and accelerate the indebtedness of the mortgage loan (loan number ending

7002).  A copy of the August 27, 2020 demand letter is attached hereto as Exhibit "1".

3.      Following receipt of the demand, counsel for BSNB was contacted by

Russ & Russ, P.C. (Jay Edmond Russ, Esq.), as counsel for James G. Goren and

Alexander M. Goren.  Mr. Russ initially sought to arrange for payment of the Goren

limited guaranties.  Following provision of the payoff information, Mr. Russ sought to

qualify payment on a covenant not to sue the Debtor.  BSNB would not agree to this

request as it ran contrary to BSNB's policy to remain uninvolved in the Debtor's

corporate governance issues.  Then, an effort to purchase the BSNB loans, to include

an assignment of the guaranties, was rebuffed for the same reason and others.

4.      In response, Mr. Russ sent a letter of complaint to the Board of Directors

and senior management of BSNB dated September 23, 2020, a copy of which is

attached hereto as Exhibit "2".  Counsel for BSNB responded by letter dated September

30, 2020, a copy of which is attached hereto as Exhibit "3".  The September 30, 2020

letter provides important background relevant to the issues presented by the Motion.

5.      There is a significant factual error in the Motion requiring clarification.  The

Motion states that:

> "The BSNB bank debt is personally guaranteed by James
> Goren and Alex Goren jointly (50%) and Howard Blitman
> (50%)." (*see*, Motion at paragraph 16).

2

This is not correct. The guaranties of the line of credit (2822) and the mortgage loan (7002) are attached hereto as Exhibits "4" and "5", respectively. As is evident, the Goren guaranties are limited while the guaranties of Howard N. Blitman, Gary S. Peresiper and Scott P. Varley are unconditional and continuing.

**Limited Objection**

6.      Since the initial demand in August 2020, the Debtor has conflated the concept of a loan payoff with the mechanism of a loan sale. In a loan payoff, the debt is paid in full and the security instruments are discharged. In a loan sale, consideration is paid for an assignment of the security documents to a loan which remains extant.

7.      Rest assured, BSNB prefers to be paid and to be paid as quickly as possible. However, BSNB has never offered the loans for sale – not to the Gorens and not to any third party. While it can be routine for a lender like BSNB to sell a loan and security documents to an independent third party acting as a new lender, special consideration must be given to the sale of loans demanded by one faction of a closely held business organization in active litigation with a minority member.

8.      The first consideration is the Motion does not establish a necessity for the guaranties. Since the Blitman, Peresiper and Varley guaranties are continuing (and arguably guaranty the proposed consolidated indebtedness), it appears evident that the requirement for an assignment of the BSNB guaranties has absolutely nothing to do with the Debtor's reorganization. The requirement appears only to further the Goren effort against Blitman which would be consistent with their conduct since August 2020.

9.      The second consideration is that § 275(3) of the Real Property Law of the

3

State of New York requires that the mortgage assignment documents, typically executed by the assignor (BSNB), must include a statement under oath that the assignee (Goren Brothers) are not acting as a nominee of the mortgagor (the Debtor) and that the mortgage continues to secure a bona fide obligation. The Motion fails to demonstrate that the Goren Brothers are not a nominee of the Debtor. How could they not be? Further, and considering the pending state court litigation, the Motion fails to demonstrate that the mortgage would secure a bona fide obligation (as opposed to an obligation acquired for some other purpose).

10.    Should the Debtor drop the requirement for an assignment of the guaranties and provide acceptable assurance that the transaction is permissible under RPL §275, and should the Court authorize the transactions, BSNB would cooperate with the transactions subject of the Motion.

WHEREFORE, Ballston Spa National Bank, respectfully requests that the Court sustain its Limited Objection, and grant such other and further relief as is just and proper.

Dated:    November 30, 2020          BURGESS & ASSOCIATES P.C.
          Clifton Park, New York

/s/ Peter L. Burgess
Peter L. Burgess, Esq.
*Attorneys for Ballston Spa National Bank*
646 Plank Road, Suite 103
Clifton Park, New York  12065
(518) 371-0052
pburgess@bapclaw.com

S:\BAPCLAW\3188.191 Blitman Saratoga\Limited.Opposition.doc

4

# EXHIBIT 1

# BURGESS & ASSOCIATES P.C.
*Attorneys and Counselors at Law*

646 Plank Road, Suite 103, Clifton Park, New York 12065
Telephone **518-371-0052**
Facsimile **518-371-0053**

August 27, 2020

**VIA CERTIFIED MAIL R.R.R./U.S. MAIL**
**7011 0470 0002 5059 2782**

Blitman Saratoga, LLC
222 Bloomingdale Road, Suite 404
White Plains, New York  10605

**VIA CERTIFIED MAIL R.R.R./U.S. MAIL/E-MAIL**
**7011 0470 0002 5059 2799**
blitman1@optonline.net

Howard N. Blitman, P.E.
3 Elmsdorf Drive
Scarsdale, New York  10583

**VIA CERTIFIED MAIL R.R.R./U.S. MAIL/E-MAIL**
**7011 0470 0002 5059 2805**
gperesiper@gmail.com

Gary S. Peresiper
250 Waverly Avenue
East Rockaway, New York  11518

**VIA CERTIFIED MAIL R.R.R./U.S. MAIL/E-MAIL**
**7011 0470 0002 5059 2812**
Svarley13@gmail.com

Scott P. Varley
13 Joshua Road
Saratoga Springs, New York  12866

**VIA CERTIFIED MAIL R.R.R./U.S. MAIL/E-MAIL**
**7011 0470 0002 5059 2829**
james@gorenbros.com

James G. Goren
163 Washington Vly Road
Warren, New Jersey  07059

**VIA CERTIFIED MAIL R.R.R./U.S. MAIL/E-MAIL**
**7011 0470 0002 5059 2836**
alex@gorenbros.com

Alexander M. Goren
1175 Park Avenue
New York, New York  10128

# BURGESS & ASSOCIATES P.C.
*Attorneys and Counselors at Law*

Blitman Saratoga, LLC
Howard N. Blitman, P.E.
Gary S. Peresiper
Scott P. Varley
James G. Goren
Alexander M. Goren
August 27, 2020
Page 2

**Re:    Ballston Spa National Bank / Blitman Saratoga, LLC**
**Loan Numbers Ending: 2822 and 7002**

Dear Mr. Blitman, Mr. Peresiper, Mr. Varley, and Messrs. Goren:

We represent Ballston Spa National Bank ("BSNB").

Blitman Saratoga, LLC (the "Borrower") is indebted ("Loan-1") to BSNB pursuant to a PROMISSORY NOTE dated November 1, 2017 and a CHANGE IN TERMS AGREEMENT dated May 2, 2019 (collectively, "Note-1") in the principal amount of Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00). Loan-1 is guaranteed by Howard Blitman, P.E., Gary S. Peresiper, Scott Varley, James G. Goren, and Alexander M. Goren (collectively, the "Guarantors"). BSNB identifies the indebtedness evidenced by Note-1 as loan number ending 2822. The principal balance of Loan-1 is One Million One Hundred Eighty-Six Thousand Eight Hundred Twenty and 58/100 Dollars ($1,186,820.58) as of the date hereof. Note-1 is a demand note.

Blitman Saratoga, LLC (the "Borrower") is also indebted ("Loan-2") to BSNB pursuant to a BUILDING LOAN NOTE dated June 27, 2019 ("Note-2") in the principal amount of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00). Loan-2 is also guaranteed by the Guarantors. BSNB identifies the indebtedness evidenced by Note-2 as loan number ending 7002. The principal balance of Loan-2 is Six Hundred Twenty-Two Thousand Three Hundred Forty Two and 43/100 Dollars ($622,342.43) as of the date hereof.

Note-1, Note-2, the guaranties thereof, and all other documents executed by the parties in connection with the loans shall hereinafter be collectively referred to as the "Loan Documents".

The construction status of Beaver Pond Village and the corporate governance issues of the Borrower constitutes events of default under the terms and conditions of the Loan Documents.

**Accordingly, BSNB hereby demands Note-1 and accelerates Note-2, requiring payment in full of both loans on or before November 27, 2020.**

# BURGESS & ASSOCIATES P.C.
*Attorneys and Counselors at Law*

Blitman Saratoga, LLC
Howard N. Blitman, P.E.
Gary S. Peresiper
Scott P. Varley
James G. Goren
Alexander M. Goren
August 27, 2020
Page 3

> **Please contact BSNB directly for payoff statements when you are prepared to remit payment in full. In the absence of payment in full, BSNB will pursue remedies in litigation <u>immediately</u> after expiration of the demand period.**

Please be further advised that no further advances will be made on either loan.

BSNB reserves its rights to pursue any or all remedies under the Loan Documents, at law or in equity. BSNB reserves all of its rights with respect to any partial payments and the acceptance of any partial payments shall not operate as a waiver of any right, remedy, power or privilege set forth in the Loan Documents or as an extension or modification of the Loan Documents. Any partial payment of the above-recited amount will be at the risk of the Borrower and Guarantors, and acceptance by BSNB of any such partial payment shall not constitute compliance with the terms of this letter and shall not constitute a cure of the default or a reinstatement of the terms of the Loan Documents or a cure of any of the defaults. The recital herein of the events of default shall not be deemed a waiver of any other events of default, or conditions which, whether currently existing, hereafter arising or upon the passage of time may become events of default that are existing but not specified, and regardless of whether the same are known to BSNB.

The foregoing does not constitute a waiver of any term, provision, condition, covenant or agreement contained in any of the Loan Documents, nor a cure, modification or extension thereof, nor shall it (i) operate as a waiver of any right, remedy, power or privilege thereunder, (ii) prejudice or preclude any other or further exercise thereof or the exercise of any right or remedy provided by law or equity, (iii) entitle the Borrower or Guarantors to any other or further notice or demand whatsoever, or (iv) in any way modify, change, impair, affect, diminish or release any liability of the Borrower and Guarantors under or pursuant to the Loan Documents.

Please be guided accordingly.

Very truly yours,

BURGESS & ASSOCIATES P.C.

Peter L. Burgess

PLB/klp
cc:    Ballston Spa National Bank (via email)
S:\BAPCLAW\3188.191 Blitman Saratoga\Demand.08192020.doc

# EXHIBIT 2

LAW OFFICES

# RUSS & RUSS, P.C.

543 BROADWAY - P.O. BOX 149 - MASSAPEQUA. NEW YORK 11758

TEL, 516/541-1014    FAX, 516/541-1077

JAY EDMOND RUSS
LINDA EILEEN RUSS

*Also Admitted in Connecticut*

*Of Counsel*
IRA LEVINE
DANIEL P. ROSENTHAL*

September 23, 2020

*VIA USPS PRIORITY MAIL*

To the Board of Directors and Senior Management of
Ballston Spa National Bank
87 Front Street
Ballston Spa, NY 12020

Robert E. Van Vranken, Esq.
Chairman of the Board

Dawn Abbuhl, PhD
Director

Paul N. DiCaprio
Director

Christopher R. Dowd
Director, President and Chief Executive Officer

Michael S. Dunn
Director

Beth A. Kayser, CPA
Director

Stephen J. Obermayer, CPA
Director

Richard P. Sleasman
Director

Stephen E. Strader, MD
Director

Timothy E. Blow
Executive Vice President, Corporate Secretary and Chief Financial Officer

Margaret K. de Koning
Executive Vice President and Chief Banking Officer

Dear Sir/Madam

This office is counsel to your customer, Blitman Saratoga, LLC., and to James Goren and Alex Goren, d/b/a Goren Brothers and Goren Brothers, LP, as well as affiliates of the Goren family. Recently, the Bank declared due from the LLC a note (secured by a mortgage) totaling approximately 1.8 million dollars, which is the subject of limited guarantees by certain individuals.

**RUSS & RUSS, P.C.**

The demand made by the Bank to the Goren Brothers, as limited guarantors, was, essentially, one-half thereof. After due consideration of the needs of the LLC to be able to operate free from the continuous threat of enforcement by the Bank, the Goren Brothers (through an affiliate) decided to acquire the entire note, mortgage, guarantees, etc. from the Bank and pay the entire sum due, not just the sum which they guaranteed. The Bank then demanded that ALL members of the LLC consent to such a transfer, which the Bank knew or should have known was an unreasonable demand, given that the parties are in litigation. However, this office made the request of counsel for LLC member, Howard Blitman (15%) to which there was no response. All of the other members' consent.

The Bank, by holding the Sword of Damocles, above the LLC's "head" is making it impossible for the LLC to operate, complete construction, comply with contracts to sell homes, or engage in any/all of its operations. The Bank is threatening the LLC, although it can simply accept payment in full and transfer/assign its interests to a third-party. The Bank has background information on the Goren Brothers and know that they are financially capable of performing consistent with this letter.

In seeking consent from counsel for Mr. Blitman, we advised him that the transferee/assignee had every intention of enforcing the Blitman limited guarantee. The only reason why the Bank would refuse payment in full and the transfer/assignment to the payor, is to protect Mr. Blitman. There can be no other reason. We demand that the Bank accept payment in full, and transfer/assign its interests to an affiliate of the Goren Brothers. We advise the bank that it will be held liable and accountable for its misconduct in damaging the LLC and "preferring" one of its members, namely, Howard Blitman. We consider this misconduct to be willful, intentional and tortious.

We will be filing a formal complaint with the Department of Financial Services and any other bank governing body. We also will commence litigation on behalf of the LLC…a damaged party…against the Bank. Understand that the Bank's ongoing misconduct is preventing the LLC members (except for the 15% owned by Mr. Blitman) from raising funds to operate. The Bank is causing untold damage to the LLC's vendors and the community, without any legitimate reason.

We feel that every Director and every person in Senior Management should know the facts.

Very truly yours,

Jay Edmond Russ

LAW OFFICES

# RUSS & RUSS, P.C.

543 BROADWAY - P.O. BOX 149 - MASSAPEQUA, NEW YORK 11758

TEL, 516/541-1014    FAX, 516/541-1077

JAY EDMOND RUSS
LINDA EILEEN RUSS

*Also Admitted in Connecticut*

*Of Counsel*
IRA LEVINE
DANIEL P. ROSENTHAL*

September 23, 2020

*VIA USPS PRIORITY MAIL*

New York State
Department of Financial Services
1 Commerce Plaza
Albany, NY 12257

Gentlemen:

We are counsel to Blitman Saratoga, LLC, which is a customer of Ballston Spa National Bank. This letter is a formal complaint against the Bank. We request that a complaint number and investigator be assigned and communicated to us, so that we may present the underlying documents and additional information.

The basic facts and circumstances are set forth in the attached letter to the Directors and Senior Management of the Bank.

Very truly yours,

Jay Edmond Russ

# EXHIBIT  3

# BURGESS & ASSOCIATES P.C.
*Attorneys and Counselors at Law*

646 Plank Road, Suite 103, Clifton Park, New York 12065
Telephone **518-371-0052**
Facsimile **518-371-0053**

September 30, 2020

**VIA E-MAIL and U.S. MAIL**
**jayruss@russrusspc.com**

Jay Edmond Russ, Esq.
Russ & Russ, P.C.
543 Broadway
P.O. Box 149
Massapequa, New York  11758

Re:    **Ballston Spa National Bank / Blitman Saratoga, LLC**

Dear Jay:

We represent Ballston Spa National Bank ("BSNB").

We are responding to your letter to the Board of Directors and Senior Management of BSNB dated September 23, 2020, a copy of which is enclosed for the benefit of the parties copied with this correspondence.

Your letter fails to mention essential facts which explain and justify the approach and positions taken by BSNB in the administration of the loans due from Blitman Saratoga, LLC (the "Borrower").

BSNB became aware of corporate governance issues within the Borrower on June 25, 2020.  At the time, BSNB was hopeful those issues would be quickly resolved.  Then, in a meeting on July 22, 2020, Gary Peresiper told the BSNB relationship manager that the Goren Brothers wanted BSNB to call (i.e., default) the loans.  The credit facilities were referred to our office for review on August 11, 2020.  Jay, I have practiced in loan workout and litigation for more than 25 years and this is the first time a borrower of my client has asked for a loan default – the request is that unusual.

Mindful of the corporate governance issues and the highly unusual request by the majority faction of the Borrower for a call of the loans, BSNB decided to pursue a course of conduct directed to avoid involvement in the controversies amongst the members.  In order to protect the interests of BSNB, the loans were demanded and accelerated by letter dated August 27, 2020.  The demand requires full payment on or before November 27, 2020.  The lengthy demand (90+ days) was afforded by BSNB to the Borrowers and the members as a courtesy and to provide an opportunity for the members to resolve their disputes and pay BSNB in full within a reasonable time period without unnecessary litigation.

You contacted me on August 31, 2020 to indicate that the Goren Brothers would pay the amount due from them under their limited guaranties while expressing disappointment that the parties were given 90 days to pay.  I took this to mean that you were disappointed that BSNB

# BURGESS & ASSOCIATES P.C.

*Attorneys and Counselors at Law*

Jay Edmond Russ, Esq.
September 30, 2020
Page 2

would not be suing the Borrower and other guarantors for the balance due sooner than the end of November.

We provided the documents for the Goren Brothers payoff on September 4, 2020. You immediately responded by conditioning the Goren payoff on a covenant not to sue the Borrower before first exhausting remedies against the other guarantors. After reviewing this highly unusual request with senior management, I informed you on September 9, 2020 that BSNB was unable to agree. The following day (September 10, 2020) you indicated that the Goren Brothers would pay off without the covenant, then the Goren Brothers questioned one of the guaranties, then you apologized for the back and forth saying that the Goren Brothers has decided not to pay off after all.

On September 14, 2020, you then sent an e-mail stating that "an affiliate of the Goren Brothers will take over the bank's entire position." This new approach was also highly unusual particularly since BSNB had never offered the loans for sale! After reviewing this request with senior management, I informed you that BSNB would require the consent of all members of the Borrower to further consider the sale proposal. This request was made in furtherance of BSNB's policy to avoid involvement in the disputes amongst the members. You then protested, made a vague threat, and ended all communication with my office.

In the interim, we were first informed that the Borrower and the Goren Brothers had sued Mr. Blitman and his daughter on August 28, 2020 (the day after the BSNB loans were demanded). It is telling that, despite all our communication, you never mentioned to me that the Borrower and the Goren Brothers had sued Mr. Blitman. This all confirms the now transparent effort of the Goren Brothers to purchase the BSNB loans for the purpose of having another claim against Mr. Blitman.

Turning to the contentions in your letter, the idea that BSNB is somehow obligated to sell the loans to the Goren Brothers is entirely without merit. If you have any legal authority (statutory, case law, regulatory, or otherwise) to support the contention that BSNB has an obligation to sell the loans to a faction of the Borrower's membership (in this case, the Goren Brothers) in active litigation with another member, we will promptly review and consider the authority.

Your letter also states that BSNB's refusal to sell the loans demonstrates preference to Mr. Blitman. This is without merit as BSNB has made conscious and consistent efforts to remain independent of the disagreements between the members. Rest assured, BSNB would have taken the same position if it had been Mr. Blitman that had approached BSNB with an offer to purchase the loans.

The Borrower and the Goren Brothers have sued Mr. Blitman for $10 million dollars. The Complaint in that lawsuit exceeds 20 pages and is nearly 100 paragraphs in length. Even a

# BURGESS & ASSOCIATES P.C.

*Attorneys and Counselors at Law*

Jay Edmond Russ, Esq.
September 30, 2020
Page 3

casual reading reveals that the disputes between the Goren Brothers and Mr. Blitman extends far beyond any matters related to payment of the BSNB loans. BSNB has no intention of becoming embroiled in those controversies through a sale of the loans when the obligations are well secured with wholly sufficient collateral and guaranties.

The suggestion that the Borrower is unable to operate without a sale of the loans is preposterous. The members are free to invest in the project with any adjustments to profits or losses handled through the operating agreement or your pending lawsuit.

Finally, we are not convinced that the loan sale as requested by the Goren Brothers is permissible under §275 of the Real Property Law.

We hope the members can quickly settle their differences. Regardless, BSNB expects full payment as demanded in our August 27, 2020 letter. Please be guided accordingly.

Very truly yours,

BURGESS & ASSOCIATES P.C.

Peter L. Burgess

PLB:klp
Enclosure
cc:   Gary S. Peresiper (via e-mail)
     Scott P. Varley (via e-mail)
     Benjamin Fishman, Esq. (via e-mail)
     Ballston Spa National Bank (via e-mail)

S:\BAPCLAW\3188.191 Blitman Saratoga\Russ.09292020.doc

# EXHIBIT  4

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| | | | | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**  BLITMAN SARATOGA, LLC
222 Bloomingdale Road, Suite 404
White Plains, NY 10605

**Lender:**  BALLSTON SPA NATIONAL BANK
Commercial Lending
PO Box 70
990 State Route 67
Ballston Spa, NY 12020

**Guarantor:**  Howard N. Blitman, P.E.
3 Elmsdorf Drive
Scarsdale, NY 10583

---

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this

## COMMERCIAL GUARANTY
### (Continued)

Loan No: 6606732822                                                                      Page 2

Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

Additional Requirements. By April Thirtieth, (30) of each calendar year, each Guarantor shall provide the Lender with a signed copy of their certified public accountant prepared, Federal Tax Returns to include all schedules. If the Guarantor filed an extension of their tax return, the bank will accept proof of extension filing. Once tax return is ultimately filed, a copy must be delivered within 15 days of being filed to the IRS, along with a signed Ballston Spa National Bank Personal Financial Statement, in a form and substance satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue any other remedy within Lender's power; or (F) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account and whether evidenced by a certificate of deposit). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

## COMMERCIAL GUARANTY
### (Continued)

Loan No: 6606732822                                                                                                          Page 3

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Saratoga County, State of New York.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means BLITMAN SARATOGA, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Howard N. Blitman, P.E., and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means BALLSTON SPA NATIONAL BANK, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

## COMMERCIAL GUARANTY
### (Continued)

Loan No: 6606732822                                                                     Page 4

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED NOVEMBER 1, 2017.**

GUARANTOR:

X _____
  Howard N. Blitman, P.E.

LaserPro, Ver. 16.1.10.003  Copr. D+H USA Corporation 1997, 2017.  All Rights Reserved.  - NY  C:\CFI\LPL\E20.FC  TR-7021

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| | | | | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**   BLITMAN SARATOGA, LLC
222 Bloomingdale Road, Suite 404
White Plains, NY 10605

**Lender:**   BALLSTON SPA NATIONAL BANK
Commercial Lending
PO Box 70
990 State Route 67
Ballston Spa, NY 12020

**Guarantor:**   Gary S. Peresiper
250 Waverly Avenue
East Rockaway, NY 11518

---

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this

**COMMERCIAL GUARANTY**
**(Continued)**

Loan No: 6606732822                                                                                                          Page 2

Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

Additional Requirements. By April Thirtieth, (30) of each calendar year, each Guarantor shall provide the Lender with a signed copy of their certified public accountant prepared, Federal Tax Returns to include all schedules. If the Guarantor filed an extension of their tax return, the bank will accept proof of extension filing. Once tax return is ultimately filed, a copy must be delivered within 15 days of being filed to the IRS, along with a signed Ballston Spa National Bank Personal Financial Statement, in a form and substance satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue any other remedy within Lender's power; or (F) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account and whether evidenced by a certificate of deposit). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

# COMMERCIAL GUARANTY
## (Continued)

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Saratoga County, State of New York.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury. Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means BLITMAN SARATOGA, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Gary S. Peresiper, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means BALLSTON SPA NATIONAL BANK, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

# COMMERCIAL GUARANTY
## (Continued)

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS.  IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY".  NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.  THIS GUARANTY IS DATED NOVEMBER 1, 2017.

GUARANTOR:

X _____
  Gary S. Peresiper

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**  BLITMAN SARATOGA, LLC
222 Bloomingdale Road, Suite 404
White Plains, NY 10605

**Lender:**  BALLSTON SPA NATIONAL BANK
Commercial Lending
PO Box 70
990 State Route 67
Ballston Spa, NY 12020

**Guarantor:**  Scott P. Varley
13 Joshua Road
Saratoga Springs, NY 12866

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.**  For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents.  This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness.  Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.  Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.**  The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative.  This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties.  Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.**  THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS.  ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.**  This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full.  If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing.  Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing.  Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation.  For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due.  For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness.  This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death.  Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect.  Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty.  A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty.  It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty.  This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.**  Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A)  prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B)  to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C)  to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D)  to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose;  (E)  to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F)  to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G)  to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H)  to assign or transfer this

| Loan No: 6606732822 | **COMMERCIAL GUARANTY**<br>**(Continued)** | Page 2 |
|---|---|---|

Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

- Additional Requirements. By April Thirtieth, (30) of each calendar year, each Guarantor shall provide the Lender with a signed copy of their certified public accountant prepared, Federal Tax Returns to include all schedules. If the Guarantor filed an extension of their tax return, the bank will accept proof of extension filing. Once tax return is ultimately filed, a copy must be delivered within 15 days of being filed to the IRS, along with a signed Ballston Spa National Bank Personal Financial Statement, in a form and substance satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue any other remedy within Lender's power; or (F) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account and whether evidenced by a certificate of deposit). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**COMMERCIAL GUARANTY**
**(Continued)**

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Saratoga County, State of New York.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means BLITMAN SARATOGA, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Scott P. Varley, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means BALLSTON SPA NATIONAL BANK, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

## COMMERCIAL GUARANTY
### (Continued)

| Loan No: 6606732822 | | Page 4 |
|---|---|---|

Related Documents.  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS.  IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY".  NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.  THIS GUARANTY IS DATED NOVEMBER 1, 2017.

GUARANTOR:

X _____
Scott P. Varley

LaserPro, Ver. 15.4.10.003 Copr. D+H USA Corporation 1997, 2017.  All Rights Reserved.  - NY  C:\CFI\LPL\E20.FC  TR-7921

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | | | **** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** BLITMAN SARATOGA, LLC
222 Bloomingdale Road, Suite 404
White Plains, NY 10605

**Lender:** BALLSTON SPA NATIONAL BANK
Commercial Lending
PO Box 70
990 State Route 67
Ballston Spa, NY 12020

**Guarantor:** James G. Goren
163 Washington Vly Road
Warren, NJ 07059

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of Guarantor's Share of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**GUARANTOR'S SHARE OF THE INDEBTEDNESS.** The words "Guarantor's Share of the Indebtedness" as used in this Guaranty mean an amount not to exceed Three Hundred Seventy-five Thousand & 00/100 Dollars ($375,000.00) of the principal amount of the Indebtedness that is outstanding from time to time and at any one or more times. "Guarantor's Share of the Indebtedness" also includes all accrued unpaid interest on the Indebtedness and all collection costs, expenses and reasonable attorneys' fees whether or not there is a lawsuit, and if there is a lawsuit, any fees and costs for trial and appeals paid or incurred by Lender for the collection of the Indebtedness, the realization on any collateral securing the Indebtedness or any guaranty of the Indebtedness (including this Guaranty), or the enforcement of this Guaranty.

Guarantor's Share of the Indebtedness will only be reduced by sums actually paid by Guarantor under this Guaranty, but will not be reduced by sums from any other source including, but not limited to, sums realized from any collateral securing the Indebtedness or this Guaranty, or payments by anyone other than Guarantor, or reductions by operation of law, judicial order or equitable principles. Lender has the sole and absolute discretion to determine how sums shall be applied among guaranties of the Indebtedness.

The above limitation on liability is not a restriction on the amount of the Note of Borrower to Lender either in the aggregate or at any one time.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE GUARANTOR'S SHARE OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON A CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Guarantor's Share of the Indebtedness remains unpaid and even though the Guarantor's Share of the Indebtedness may from time to time be

| Loan No: 6606732822 | **COMMERCIAL GUARANTY**<br>**(Continued)** | Page 2 |
|---|---|---|

zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and the exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

   **Additional Requirements.** By April Thirtieth, (30) of each calendar year, each Guarantor shall provide the Lender with a signed copy of their certified public accountant prepared, Federal Tax Returns to include all schedules. If the Guarantor filed an extension of their tax return, the bank will accept proof of extension filing. Once tax return is ultimately filed, a copy must be delivered within 15 days of being filed to the IRS, along with a signed Ballston Spa National Bank Personal Financial Statement, in a form and substance satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue any other remedy within Lender's power; or (F) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account and whether evidenced by a certificate of deposit). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**COMMERCIAL GUARANTY**
**(Continued)**

Loan No: 6606732822

Page 3

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Saratoga County, State of New York.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury. Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

## COMMERCIAL GUARANTY
**(Continued)**

Loan No: 6606732822                                                                                     Page 4

Borrower. The word "Borrower" means BLITMAN SARATOGA, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

GAAP. The word "GAAP" means generally accepted accounting principles.

Guarantor. The word "Guarantor" means everyone signing this Guaranty, including without limitation James G. Goren, and in each case, any signer's successors and assigns.

Guarantor's Share of the Indebtedness. The words "Guarantor's Share of the Indebtedness" mean Guarantor's Indebtedness to Lender as more particularly described in this Guaranty.

Guaranty. The word "Guaranty" means this guaranty from Guarantor to Lender.

Indebtedness. The word "Indebtedness" means Borrower's Indebtedness to Lender as more particularly described in this Guaranty.

Lender. The word "Lender" means BALLSTON SPA NATIONAL BANK, its successors and assigns.

Note. The word "Note" means the promissory note dated November 1, 2017, in the original principal amount of $1,500,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED NOVEMBER 1, 2017.

GUARANTOR:

X_____
James G. Goren

LaserPro, Ver. 16.1.10.003  Copr. D+H USA Corporation 1997, 2017  All Rights Reserved.  - NY  C:\CFI\CPL\E24.FC  TR-7501

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| | | | | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** BLITMAN SARATOGA, LLC
222 Bloomingdale Road, Suite 404
White Plains, NY 10605

**Lender:** BALLSTON SPA NATIONAL BANK
Commercial Lending
PO Box 70
990 State Route 67
Ballston Spa, NY 12020

**Guarantor:** Alexander M. Goren
1175 Park Avenue
New York, NY 10128

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of Guarantor's Share of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**GUARANTOR'S SHARE OF THE INDEBTEDNESS.** The words "Guarantor's Share of the Indebtedness" as used in this Guaranty mean an amount not to exceed Three Hundred Seventy-five Thousand & 00/100 Dollars ($375,000.00) of the principal amount of the Indebtedness that is outstanding from time to time and at any one or more times. "Guarantor's Share of the Indebtedness" also includes all accrued unpaid interest on the Indebtedness and all collection costs, expenses and reasonable attorneys' fees whether or not there is a lawsuit, and if there is a lawsuit, any fees and costs for trial and appeals paid or incurred by Lender for the collection of the Indebtedness, the realization on any collateral securing the Indebtedness or any guaranty of the Indebtedness (including this Guaranty), or the enforcement of this Guaranty.

Guarantor's Share of the Indebtedness will only be reduced by sums actually paid by Guarantor under this Guaranty, but will not be reduced by sums from any other source including, but not limited to, sums realized from any collateral securing the Indebtedness or this Guaranty, or payments by anyone other than Guarantor, or reductions by operation of law, judicial order or equitable principles. Lender has the sole and absolute discretion to determine how sums shall be applied among guaranties of the Indebtedness.

The above limitation on liability is not a restriction on the amount of the Note of Borrower to Lender either in the aggregate or at any one time.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE GUARANTOR'S SHARE OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON A CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Guarantor's Share of the Indebtedness remains unpaid and even though the Guarantor's Share of the Indebtedness may from time to time be

# COMMERCIAL GUARANTY
## (Continued)

zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

> **Additional Requirements.** By April Thirtieth, (30) of each calendar year, each Guarantor shall provide the Lender with a signed copy of their certified public accountant prepared, Federal Tax Returns to include all schedules. If the Guarantor filed an extension of their tax return, the bank will accept proof of extension filing. Once tax return is ultimately filing, a copy must be delivered within 15 days of being filed to the IRS, along with a signed Ballston Spa National Bank Personal Financial Statement, in a form and substance satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue any other remedy within Lender's power; or (F) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account and whether evidenced by a certificate of deposit). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

## COMMERCIAL GUARANTY
### (Continued)

Loan No: 6606732822                                                    Page 3

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Saratoga County, State of New York.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**COMMERCIAL GUARANTY**
**(Continued)**

Loan No: 6606732822                                                                 Page 4

Borrower. The word "Borrower" means BLITMAN SARATOGA, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

GAAP. The word "GAAP" means generally accepted accounting principles.

Guarantor. The word "Guarantor" means everyone signing this Guaranty, including without limitation Alexander M. Goren, and in each case, any signer's successors and assigns.

Guarantor's Share of the Indebtedness. The words "Guarantor's Share of the Indebtedness" mean Guarantor's Indebtedness to Lender as more particularly described in this Guaranty.

Guaranty. The word "Guaranty" means this guaranty from Guarantor to Lender.

Indebtedness. The word "Indebtedness" means Borrower's Indebtedness to Lender as more particularly described in this Guaranty.

Lender. The word "Lender" means BALLSTON SPA NATIONAL BANK, its successors and assigns.

Note. The word "Note" means the promissory note dated November 1, 2017, in the original principal amount of $1,500,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED NOVEMBER 1, 2017.

GUARANTOR:

X_____
Alexander M. Goren

# EXHIBIT  5

# PAYMENT GUARANTY

THIS PAYMENT GUARANTY ("Guaranty") is made effective as of the 27th day of June 2019, by Howard Blitman, Gary Peresiper and Scott Varley, with mailing addresses as set forth below (individually and together the "Guarantor"), and given to **BALLSTON SPA NATIONAL BANK,** a national banking association, with an address of 990 State Route 67, P.O. Box 70, Ballston Spa, NY 12020 (the "Lender"). In consideration of all loans, advances, extensions of credit or other financial accommodations previously extended or to be extended or continued from time to time by the Lender to, or on the guarantee, endorsement or other assurance of **Blitman Saratoga, LLC** (the "Obligor"), the Guarantor does hereby agree and make this Guaranty as follows:

1.      As used in this Guaranty:

(a)      "Obligations" shall mean, collectively, all obligations of Obligor to Lender in connection with the Loan and Loan Documents (each as defined below), in any capacity for the payment of any money owed by Obligor to the Lender on account of a certain Building Loan Note, dated June 27, 2019 (the "Note"), in the principal sum of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00 [the "Loan"]), given by Obligor to Lender, together with that certain Building Loan Mortgage (dated June 27, 2019) given by Obligor to Lender in connection with the Loan, to be recorded in the Saratoga County Clerk's Office (the "Mortgage"), a certain Building Loan Agreement, Loan and Security Agreement, and all other documents executed, acknowledged and delivered by the Obligor to the Lender in connection with the Loan (collectively the "Loan Documents"), however evidenced, regardless of kind, class or form, whether for the payment of any principal, interest, fee, charge, cost or expense or otherwise (including, without limitation, to the extent permitted by law, reasonable attorneys' fees and legal expenses), now existing or hereafter arising or accruing, created directly or by any assignment or other transfer, direct or indirect, absolute or contingent, whether pursuant to any guaranty, endorsement or other assurance of payment or otherwise, whether related to foreign exchange obligations, treasury management services or obligations under any interest rate protection agreements ("Swap Obligations"), whether similar or dissimilar or related or unrelated and whether or not arising or accrued subsequent to any commencement of or made, proved, voted or allowed as a claim in any case or other proceeding pursuant to any bankruptcy, insolvency or similar statute, that have been heretofore or are hereafter incurred by, in any capacity and whether alone or otherwise, Borrower or, if Borrower is not an individual, any direct or indirect successor of Borrower or any direct or indirect transferee of all or substantially all of the assets of Borrower together with all amendments, extensions, renewals or increases thereof.

(b)      Each portion of the Obligations now or hereafter (i) paid or satisfied or (ii) received, applied or retained by Lender and later recovered from Lender as a result of any claim (including, without limitation, any claim involving any allegation that any money constituted trust funds or that the receipt, application or retention of any payments or the grant, creation or perfection of any security interest or lien on any collateral constituted a

1

preference or a fraudulent conveyance or transfer), shall be reinstated as part of the Obligations for purposes of this Guaranty as of the date it originally arose or accrued and shall survive the termination of the Guaranty.

(c)     "Collateral" shall mean all property, real, personal (including both tangible and intangible personal property), and mixed, wheresoever located now owned or hereafter acquired, upon which there has been conveyed or will be conveyed a security interest, pledge or mortgage to secure the payment of the Obligations;

(d)     Each Guarantor shall pay to Lender on demand each reasonable cost and expense (including, but not limited to, if Lender retains counsel for advice, litigation or any other purpose, reasonable attorneys' fees and disbursements) hereafter incurred by Lender in endeavoring to enforce any obligation of such Guarantor pursuant to this Guaranty or preserve or exercise any right or remedy of Lender pursuant to this Guaranty.

(e)     "Event of Default" shall mean any of the items listed in paragraph "7" of this Guaranty, or as otherwise defined in the Loan Documents, which occur and continue beyond any applicable cure or grace periods as provided in the Loan Documents.

2.     (a) Guarantor does hereby unconditionally, and jointly and severally, guaranty the punctual performance and payment to the Lender of each and all of the Obligations, without limitation, strictly in accordance with all the terms and provisions of the Obligations and subject to all rights of the Lender arising from or relating to the Obligations. The duty, liability and obligation of the Guarantor pursuant to this Guaranty shall not be diminished, altered, terminated, or changed in any respect, notwithstanding any law, regulation, decree, action, proceeding, equitable doctrine or other circumstances whatsoever which would otherwise diminish, alter, terminate, void or change the liability or obligation of either Obligor, any other Guarantors or any other entity or person to pay any or all of the Obligations. Any payments required to be made pursuant to this Guaranty shall be made in United States dollars in immediately available funds at such place and time as shall be designated by the Lender. Additionally, the duty, liability and obligation of the Guarantor shall continue until such time as specifically released by the Lender in writing.

(b)     A Guarantor shall not or shall not be deemed to guaranty Swap Obligations if all or any portion of its guaranty or the grant by such Guarantor of a security interest to secure such Swap Obligations is or becomes illegal under the Commodity Exchange Act, 7 U.S.C. 1a (as amended from time to time and together with any successor statute, the "Commodity Exchange Act") or any other applicable law or regulation by virtue of such Guarantor's failure for any reason to constitute an "eligible contract participant" (or any successor thereto, as defined under the Commodity Exchange Act) at the time this Guaranty or such grant of a security interest becomes effective with respect to the Swap Obligations. This subsection (b) shall not affect any Obligations other than Swap Obligations, nor shall it affect the guaranteed Obligations of any Guarantor who qualifies as an "eligible contract participant" under the Commodity Exchange Act. If a Swap Obligation arises under a master agreement governing more than one swap, such exclusion shall apply only to the portion of such Swap Obligation

2

that is attributable to swaps for which such guaranty or security interest is or becomes illegal

3.     This Guaranty is a continuing agreement and applies to all present and future Obligations under the Loan Documents until such time as all of the Obligations under the Loan Documents have been paid in full. This Guaranty shall be construed at all times to be a guaranty of payment and not a guaranty of collection.

4.     (a)     Guarantor shall provide the Lender, on or before April 30 of each calendar year, full and complete financial statements and a certified public accountant prepared federal income tax return of Guarantor, with all Schedules and K-1s for each business entity owned by Guarantor, together with a signed personal financial statement.

(b)     Such other reasonable financial information relating to the Guarantor as the Lender may request from time to time.

(c)     All financial statements, at the Lender's option, shall be on forms provided by the Lender.

5.     The Lender, in its sole discretion and without notice to or further assent from the Guarantors at any time or from time to time, either before or after the occurrence of an Event of Default, and without diminishing, altering, terminating or changing in any respect the liability and obligation the Guarantors pursuant to this Guaranty, may, in accordance with the Loan Documents:

(a)     increase or decrease the amount of, extend, change, or amend the time, manner, place, amount, or terms of payment of any or all of the Obligations or any other terms or provisions of the Obligations, including those relating to the Guarantor or the Collateral;

(b)     exchange, release, surrender, substitute, or sell any collateral, or fail unintentionally or otherwise to perfect its interest or create a valid security interest in any of the Collateral;

(c)     waive, fail to exercise, or delay in exercising any right or remedy granted to it by any agreement or by law with respect to the Obligors, any of the Obligations, any guarantor, or any of the Collateral;

(d)     release, agree not to sue, settle or compromise with either Obligor, any guarantor, or any other entity or person who is otherwise obligated to pay any or all of the Obligations;

(e)     subordinate the payment of any or all of the Obligations to the payment of any other debt owed by either Obligor to any other person or entity;

(f)     sell or purchase all or any part of the Collateral at any public or private sale, and after deduction of all expenses incurred therefor, including reasonable attorney's fees, apply the proceeds to the Obligations in such manner as it deems appropriate;

3

(g)    apply any payments or proceeds relating to the Obligations in such manner and order as it deems appropriate; and

(h)    refuse to act in any manner which might constitute an unintended legal or equitable discharge or defense of a guarantor.

6.    It shall be an Event of Default for purposes of this Guaranty if:

(a)    Obligor defaults in the payment when due, subject to any applicable grace Period, of any of the Obligations;

(b)    Obligor otherwise defaults, subject to any applicable grace period, in the performance of any of the terms of any of the Obligations, or the payment of any of the Obligations is demanded in full or is accelerated pursuant to the terms and provisions of the Obligations;

(c)    any representation or warranty made by either Obligor to the Lender in connection with any of the Obligations or a representation or warranty made by the Guarantors to the Lender in connection with this Guaranty proves to be incorrect or misleading in any material respect at the time it was made;

(d)    Obligor or a Guarantor fails to pay when due any other obligation for borrowed money, and as a result, the maturity of any such obligation is accelerated and the risk of non-performance or non-payment of the Obligations under this Loan are materially increased;

(e)    Obligor or a Guarantor challenges or institutes any proceedings to challenge the validity, binding effect or enforceability of this Guaranty or any of the Obligations;

(f)    a judgment or judgments are rendered against either Obligor, or against a Guarantor where the Lender reasonably determines that such judgment has or may impair the Lender's ability to collect payment under the Note or the Mortgage, in an aggregate amount which exceeds $50,000 as to that Guarantor or Obligor and which remains for a period of sixty (60) days or longer, or an attachment or levy is made upon or lien filed against any assets of, of a Guarantor where the Lender reasonably determines that such attachment or levy has or may impair the Lender's ability to collect payment under either Note or Mortgage, and the same is not released or bonded within 30 days thereafter;

(g)    Obligor, or a Guarantor where the Lender reasonably determines that such insolvency has or may impair the Lender's ability to collect payment under either or Mortgage, becomes insolvent or unable to meet its debts as they mature, or is generally not paying its debts as they become due, or suspends or ceases its present business, or a custodian, as defined in Title 11 of the United States Code, of substantially all of its property shall have been appointed or shall have taken possession of any assets of an Obligor or a Guarantor;

4

(h)    a case under Title 11 of the United States Code, or any proceeding under any other federal or state bankruptcy, insolvency or other law relating to the relief of debtors, the readjustment, composition or extension of indebtedness or reorganization, including, but not limited to, a receivership, committee, or an assignment for the benefit of creditors, is commenced by or against either Obligor, or against a Guarantor and not discharged within one hundred twenty (120) days where the Lender reasonably determines that its ability to collect payment under the Notes or Mortgage may be impaired;

(i)    either Obligor, or where the Lender reasonably determines that its ability to collect payment under either of the Notes or Mortgage may be impaired a Guarantor, makes any payment on account of any indebtedness subordinated to any of the Obligations in contravention of the terms of such subordination or of the Obligations;

(j)    Guarantor dies and the Obligor fails to cure within 120 days of the death of Guarantor, by providing a substitute Guaranty having financial statements which are acceptable to the Lender;

(k)    either Obligor or where the Lender reasonably determines that its ability to collect payment under either of the Note or Mortgage may be impaired a Guarantor, is dissolved, or loses its franchise or charter or is a party to any merger or consolidation or sells, transfers or otherwise disposes of (or attempts to do any of the foregoing) a substantial portion of its assets or makes or attempts to make a "bulk transfer" as such term is defined in Article 6 of the New York Uniform Commercial Code without the prior written consent of the Lender;

(m)    any other event occurs which, in the reasonable opinion of the Lender, adversely affects the financial condition of either Obligor or a Guarantor and which in the reasonable opinion of the Lender materially increases the risk of loss to the Lender with respect to any of the Obligations or this Guaranty.

If either Obligor or Guarantor shall default in the performance of any of its covenants, agreements or obligations under any agreement or obligation to the Lender, Guarantor shall have such longer period as may be specifically provided for under any Loan Document, after its receipt of written notice of such default from the Lender, to cure the default, provided that if the nature of the default is such that it cannot reasonably be cured within such thirty (30) day period, then so long as an Obligor or Guarantor commences to cure such default within said thirty (30) day period, and, thereafter, diligently, in good faith and expeditiously proceeds to cure such default, Obligors or Guarantor shall have a reasonable period of time in which to cure such default, provided however that the cure period shall not be so extended if the Lender determines, in its sole discretion, that there is or will be a materially adverse change in the value of, or its security in the Mortgaged Property or Collateral, or the ability of either Obligor or any Guarantor to pay the Indebtedness may or will become impaired during any such extension.

7.    Upon the occurrence of any Event of Default beyond any applicable cure period, or at any time thereafter, any or all of the Obligations, at the sole option and discretion of the Lender, shall immediately become due and payable in full, together with

interest and all the costs and expenses of enforcing this Guaranty or any of the Obligations, including court costs and reasonable attorneys' fees. In such circumstances, the liability of Guarantors to the Lender, shall be joint and several, fixed and absolute, and it shall not constitute a defense, counterclaim, set-off, or recoupment thereto that the Lender has not made any demand or protest or instituted any action or proceeding for all or any of the Obligations or that the Lender has not validly taken or perfected a security interest in the Collateral or has not or has improperly foreclosed upon the collateral or any part of it, nor shall the Lender be required to perform any of the above acts against either Obligor, any guarantor or the Collateral as a condition of enforcing its rights against the Guarantors or any one of them, in accordance with the terms of this Guaranty.

8.    (a) If this Guaranty is executed by two or more persons or entities or two or more persons or entities execute similar agreements to this Guaranty covering the Obligations, they shall be jointly and severally liable, and all provisions of this Guaranty shall apply to each and all of them. The termination of this Guaranty or similar agreement as to one or more of such persons or entities shall not terminate this Guaranty or similar agreement as to any remaining persons or entities.

(b) This Guaranty shall be binding upon the heirs, executors, trustees, transferees, administrators, assigns and successors of each Guarantor and shall inure to the benefit of and be enforceable by the Lender, its successors, transferees and assigns.

(c) Any provision of this Guaranty which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of the Guaranty in that jurisdiction or affecting the validity or enforceability of such provision in any other jurisdiction.

(d) This Guaranty constitutes the final, complete and exclusive agreement between the Lender and the Guarantor with respect to the guarantee by Guarantor of the Obligations. It supersedes all other agreements and may not be supplemented or modified except as provided for in this Guaranty. No statements, agreements or representations have been made concerning this Guaranty which do not appear in writing in this Guaranty and Guarantor affirms that it does not rely upon and has not been induced to execute this Guaranty based upon any such statements, agreements or representations.

(e) No delay by the Lender in exercising any right hereunder, or under any of the Obligations, shall operate as a waiver thereof, nor shall any single or partial exercise of any right preclude other or further exercises thereof or the exercise of any other right. No waiver, amendment, or termination of this Guaranty or any provision of this Guaranty or of any of the Obligations shall be enforceable against the Lender unless it is in writing. In the case of a waiver or amendment, the writing must also be signed by an officer of the Lender and expressly refer to the provisions affected, and any waiver shall be limited solely to the specific event waived. Any termination of this Guaranty shall not be effective until written notice thereof is actually received by the Lender by mail or personal delivery at the address identified in this Guaranty. Any such termination shall not affect any existing Obligations owed by either Obligor as well as any extension or continuation thereof, including but not limited to, any lines of credit whether or not fully

6

used, or letters of credit issued on behalf of either Obligor whether or not called upon by the beneficiary of any said letter of credit, and Guarantor's liability with respect to all such Obligations shall continue under the terms of this Guaranty subsequent to any termination. It is further agreed in the case where a Guarantor is a natural person that any termination based upon the death of the Guarantor shall likewise not affect the liability of the Guarantor or his or her trustees, estate, heirs, executors, administrators or assigns for existing Obligations owed by either Obligor prior to the Guarantor's death, as well as any extensions or continuations thereof, including but not limited to any lines of credit, whether or not used, or letters of credit issued on behalf of either Obligor whether or not called upon by the beneficiary of said letter of credit as long as said Obligations were incurred or committed to prior to the death of said Guarantor.

(f)    All rights granted the Lender pursuant to this Guaranty shall be cumulative and shall be in addition to those granted or available to the Lender with respect to the Obligations or under applicable law and nothing herein shall be construed as limiting any such other right.

(g)    Guarantor represents and warrants that the execution, delivery and performance of this Guaranty does not and will contravene any law, any agreement, charter, by-law or undertaking to which it is a party or by which it may in any way be bound.

(h)    This Guaranty shall be governed by and interpreted and enforced in accordance with the laws of the State of New York.

(i)    Guarantor waives the right to a trial by jury in any action or proceeding between it and the Lender and waive the right to assert in any action or proceeding with regard to this Guaranty or any of the Obligations any offsets or counterclaims which they may otherwise have relating to the same.

(j)    Guarantor waives notice of presentment, dishonor and protest of any or all of the Obligations and of this Guaranty, and furthermore waive promptness in the commencement of any action relating to this Guaranty or the Obligations and in the giving of notice or making of demand upon it or upon any other entity or person.

(k)    In the event any payment is received by the Lender with respect to the Obligations during the time that this Guaranty is effective and such payment is subsequently invalidated, declared fraudulent or preferential, or otherwise set aside under the terms of any federal or state law or equitable doctrine, then the Guarantor shall, be responsible for such payment to the Lender under the terms of this Guaranty, notwithstanding the fact that this Guaranty was terminated voluntarily or by law at the time that the payment was set aside or invalidated as described above.

(l)    Words of the neuter gender shall mean and include correlative words of the masculine and feminine gender as appropriate and vice versa. Words noting the singular number shall mean and include the plural number as appropriate and vice versa.

7

(m)    This Guaranty shall be effective as of the date of execution even though it may be delivered to the Lender at a later date.

(n)    Any notice to the Lender under this Guaranty shall not be effective until written notice thereof is actually received by the Lender by Certified Mail Return Receipt Requested, overnight mail or personal delivery at the following address:

Ballston Spa National Bank
990 State Route 67, P.O. Box 70
Ballston Spa, NY 12020

(o)    Any notice hereunder to the Guarantor shall be in writing and will be effective when personally delivered or sent by Certified Mail Return Receipt Requested to the address set forth herein or such other address as provided by such party.  All notices shall be deemed given upon delivery or attempted delivery.

(p)    To the fullest extent permitted by applicable law, each Guarantor shall not assert, and hereby waives any claim against Lender, on any theory of liability, for special, indirect, consequential or punitive damages (but excluding direct or actual damages or on a compulsory counterclaim) arising out of, in connection with or as a result of, this Guaranty, any related loan documents, the transactions contemplated hereby or thereby or any loan or the use of the proceeds.

(q)    This Guaranty may be executed in one or more counterparts, each of which shall be considered an original.

(r)    By signing below, each Guarantor who is an individual provides written authorization to Lender or any holder of either Note to obtain Guarantor's personal credit profile from one or more national credit bureaus.  Such authorization shall extend to obtaining a credit profile in considering this Guaranty and subsequently for the purpose of update, renewal or extension of such credit or additional credit and for reviewing or collecting the resulting account.

(s)    To the fullest extent permitted by applicable law, each Guarantor shall not assert, and hereby waives any claim against Lender, on any theory of liability, for special, indirect, consequential or punitive damages (but excluding direct or actual damages) arising out of, in connection with or as a result of, this Guaranty, any related loan documents, the transactions contemplated hereby or thereby or any loan or the use of the proceeds.

9.    LEGAL PROCEEDINGS.

**(a)    JURISDICTION AND VENUE.    EACH GUARANTOR KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY (i) CONSENTS IN EACH ACTION AND OTHER LEGAL PROCEEDING COMMENCED BY LENDER AND ARISING OUT OF OR OTHERWISE RELATING TO THIS GUARANTY, ANY OF THE OBLIGATIONS OR ANY COLLATERAL TO THE NONEXCLUSIVE PERSONAL JURISDICTION OF ANY COURT THAT IS EITHER A COURT OF RECORD OF THE STATE OF**

NEW YORK IN SARATOGA COUNTY OR A COURT OF THE UNITED STATES LOCATED IN THE NORTHERN DISTRICT OF THE STATE OF NEW YORK, AND (ii) WAIVES EACH OBJECTION TO THE LAYING OF VENUE OF ANY SUCH ACTION OR OTHER LEGAL PROCEEDING.

(b)   WAIVER OF JURY TRIAL.   GUARANTOR AND LENDER KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO, AND IN, ANY ACTION OR OTHER LEGAL PROCEEDING OF ANY NATURE, RELATING TO (i) THIS GUARANTY, ANY RELATED LOAN DOCUMENT OR ANY COLLATERAL RELATED HERETO, (ii) ANY TRANSACTION CONTEMPLATED BY ANY SUCH DOCUMENT OR (iii) ANY NEGOTIATION, PERFORMANCE OR ENFORCEMENT OF THIS GUARANTY, OR ANY COLLATERAL RELATED HERETO.   EACH GUARANTOR ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL AS NECESSARY AND APPROPRIATE.

*[SIGNATURES ONLY ON FOLLOWING PAGE]*

9

IN WITNESS WHEREOF, each Guarantor has executed this Payment Guaranty effective as of the date set forth above.

GUARANTORS

_____
HOWARD N. BLITMAN, P.E.

Address: 3 Elmsdorf Drive
Scarsdale, NY 10583

STATE OF NEW YORK     )
                      )     ss.:
COUNTY OF ~~ALBANY~~   )
         Westchester

On the 26th day of June 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared **HOWARD N. BLITMAN, P.E.**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacities, and that by his signatures on the instrument, the individual, or the persons on behalf of which the individual acted, executed the instrument.

_____
Notary Public, State of New York

EMILIA SCHNELL
Notary Public, State of New York
Registration #01SC6156460
Qualified in Westchester County
Commission Expires Nov. 27, 20 22

Signature Page to Payment Guaranty

10

**GUARANTORS:**

_____

GARY S. PERESIPER

Address: 250 Waverly Avenue
East Rockaway, NY 11518

STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF ALBANY     )

On the 27th day of June 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared **GARY S. PERESIPER**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacities, and that by his signatures on the instrument, the individual, or the persons on behalf of which the individual acted, executed the instrument.

_____

Notary Public, State of New York

FRANK C. O'CONNOR III
Notary Public, State of New York
Qualified in Albany County
Reg. No. 4862527
Commission Expires May 19, 20 22

Signature Page to Payment Guaranty

11

**GUARANTORS:**

SCOTT P. VARLEY

Address: 13 Joshua Road
Saratoga Springs, NY 12866

STATE OF NEW YORK        )
                         )        ss.:
COUNTY OF                )

On the 27th day of June 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared **SCOTT P. VARLEY**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacities, and that by his signatures on the instrument, the individual, or the persons on behalf of which the individual acted, executed the instrument.

Notary Public, State of New York

FRANK C. O'CONNOR III
Notary Public, State of New York
Qualified in Albany County
Reg. No. 4862527
Commission Expires May 19, 20 22

Signature Page to Payment Guaranty

12

# LIMITED GUARANTY

THIS LIMITED GUARANTY ("Limited Guaranty") is made effective as of the 27th day of June 2019, by **JAMES G. GOREN and ALEXANDER M. GOREN**, individuals with mailing addresses as set forth below (individually and together the "Guarantor"), and given to **BALLSTON SPA NATIONAL BANK**, a national banking association, with an address of 990 State Route 67, P.O. Box 70, Ballston Spa, NY 12020 (the "Lender"). In consideration of all loans, advances, extensions of credit or other financial accommodations previously extended or to be extended or continued from time to time by the Lender to, or on the guarantee, endorsement or other assurance of **Blitman Saratoga, LLC** (the "Obligor"), each Guarantor does hereby agree and make this Limited Guaranty as follows:

1.      As used in this Limited Guaranty:

(a)     "Obligations" shall mean, collectively, all obligations of Obligor to Lender in connection with the Loan and Loan Documents (each as defined below), in any capacity for the payment of any money owed by Obligor to the Lender on account of a certain Building Loan Note, dated June 27, 2019 (the "Note"), in the principal sum of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00 [the "Loan"]), given by Obligor to Lender, together with that certain Building Loan Mortgage (dated June 27, 2019) given by Obligor to Lender in connection with the Loan, to be recorded in the Saratoga County Clerk's Office (the "Mortgage"), a certain Building Loan Agreement, Loan and Security Agreement, and all other documents executed, acknowledged and delivered by the Obligor to the Lender in connection with the Loan (collectively the "Loan Documents"),  however evidenced, regardless of kind, class or form, whether for the payment of any principal, interest, fee, charge, cost or expense or otherwise (including, without limitation, to the extent permitted by law, reasonable attorneys' fees and legal expenses), now existing or hereafter arising or accruing, created directly or by any assignment or other transfer, direct or indirect, absolute or contingent, whether pursuant to any Limited Guaranty, endorsement or other assurance of payment or otherwise, whether related to foreign exchange obligations, treasury management services or obligations under any interest rate protection agreements ("Swap Obligations"), whether similar or dissimilar or related or unrelated and whether or not arising or accrued subsequent to any commencement of or made, proved, voted or allowed as a claim in any case or other proceeding pursuant to any bankruptcy, insolvency or similar statute, that have been heretofore or are hereafter incurred by, in any capacity and whether alone or otherwise, Borrower or, if Borrower is not an individual, any direct or indirect successor of Borrower or any direct or indirect transferee of all or substantially all of the assets of Borrower together with all amendments, extensions, renewals or increases thereof.

(b)     Each portion of the Obligations now or hereafter (i) paid or satisfied or (ii) received, applied or retained by Lender and later recovered from Lender as a result of any claim (including, without limitation, any claim involving any allegation that any money constituted trust funds or that the receipt, application or retention of any payments or the

1

grant, creation or perfection of any security interest or lien on any collateral constituted a preference or a fraudulent conveyance or transfer), shall be reinstated as part of the Obligations for purposes of this Limited Guaranty as of the date it originally arose or accrued and shall survive the termination of the Limited Guaranty.

(c)    "Collateral" shall mean all property, real, personal (including both tangible and intangible personal property), and mixed, wheresoever located now owned or hereafter acquired, upon which there has been conveyed or will be conveyed a security interest, pledge or mortgage to secure the payment of the Obligations;

(d)    Each Guarantor shall pay to Lender on demand each reasonable cost and expense (including, but not limited to, if Lender retains counsel for advice, litigation or any other purpose, reasonable attorneys' fees and disbursements) hereafter incurred by Lender in endeavoring to enforce any obligation of such Guarantor pursuant to this Limited Guaranty or preserve or exercise any right or remedy of Lender pursuant to this Limited Guaranty.

(e)    "Event of Default" shall mean any of the items listed in paragraph "7" of this Limited Guaranty, or as otherwise defined in the Loan Documents, which occur and continue beyond any applicable cure or grace periods as provided in the Loan Documents.

2.    (a) Guarantor does hereby unconditionally, and jointly and severally, guaranty the punctual performance and payment to the Lender of each and all of the Obligations, as limited by the provisions of section "9" below, but without other limitation, strictly in accordance with all the terms and provisions of the Obligations and subject to all rights of the Lender arising from or relating to the Obligations. The duty, liability and obligation of the Guarantor pursuant to this Limited Guaranty shall not be diminished, altered, terminated, or changed in any respect, notwithstanding any law, regulation, decree, action, proceeding, equitable doctrine or other circumstances whatsoever which would otherwise diminish, alter, terminate, void or change the liability or obligation of either Obligor, any other Guarantors or any other entity or person to pay any or all of the Obligations. Any payments required to be made pursuant to this Limited Guaranty shall be made in United States dollars in immediately available funds at such place and time as shall be designated by the Lender. Additionally, the duty, liability and obligation of the Guarantor shall continue until such time as specifically released by the Lender in writing.

(b)    A Guarantor shall not or shall not be deemed to guaranty Swap Obligations if all or any portion of its Limited Guaranty or the grant by such Guarantor of a security interest to secure such Swap Obligations is or becomes illegal under the Commodity Exchange Act, 7 U.S.C. 1a (as amended from time to time and together with any successor statute, the "Commodity Exchange Act") or any other applicable law or regulation by virtue of such Guarantor's failure for any reason to constitute an "eligible contract participant" (or any successor thereto, as defined under the Commodity Exchange Act) at the time this Limited Guaranty or such grant of a security interest becomes effective with respect to the Swap Obligations. This subsection (b) shall not affect any Obligations other than Swap Obligations, nor shall it affect the guaranteed

2

Obligations of any Guarantor who qualifies as an "eligible contract participant" under the Commodity Exchange Act. If a Swap Obligation arises under a master agreement governing more than one swap, such exclusion shall apply only to the portion of such Swap Obligation that is attributable to swaps for which such Limited Guaranty or security interest is or becomes illegal

3.    This Limited Guaranty is a continuing agreement and applies to all present and future Obligations under the Loan Documents until such time as all of the Obligations under the Loan Documents have been paid in full. This Limited Guaranty shall be construed at all times to be a guaranty of payment and not a guaranty of collection.

4.    (a)    Guarantor shall provide the Lender, on or before April 30 of each calendar year, full and complete financial statements and a certified public accountant prepared federal income tax return of Guarantor, with all Schedules and K-1s for each business entity owned by Guarantor, together with a signed personal financial statement.

(b)    Such other reasonable financial information relating to the Guarantor as the Lender may request from time to time.

(c)    All financial statements, at the Lender's option, shall be on forms provided by the Lender.

5.    The Lender, in its sole discretion and without notice to or further assent from the Guarantor at any time or from time to time, either before or after the occurrence of an Event of Default, and without diminishing, altering, terminating or changing in any respect the liability and obligation the Guarantors pursuant to this Limited Guaranty, may, in accordance with the Loan Documents:

(a)    increase or decrease the amount of, extend, change, or amend the time, manner, place, amount, or terms of payment of any or all of the Obligations or any other terms or provisions of the Obligations, including those relating to the Guarantor or the Collateral;

(b)    exchange, release, surrender, substitute, or sell any collateral, or fail unintentionally or otherwise to perfect its interest or create a valid security interest in any of the Collateral;

(c)    waive, fail to exercise, or delay in exercising any right or remedy granted to it by any agreement or by law with respect to the Obligors, any of the Obligations, any guarantor, or any of the Collateral;

(d)    release, agree not to sue, settle or compromise with either Obligor, any guarantor, or any other entity or person who is otherwise obligated to pay any or all of the Obligations;

(e)    subordinate the payment of any or all of the Obligations to the payment of any other debt owed by either Obligor to any other person or entity;

3

(f)   sell or purchase all or any part of the Collateral at any public or private sale, and after deduction of all expenses incurred therefor, including reasonable attorney's fees, apply the proceeds to the Obligations in such manner as it deems appropriate;

(g)   apply any payments or proceeds relating to the Obligations in such manner and order as it deems appropriate; and

(h)   refuse to act in any manner which might constitute an unintended legal or equitable discharge or defense of a guarantor.

6.   It shall be an Event of Default for purposes of this Limited Guaranty if:

(a)   Obligor defaults in the payment when due, subject to any applicable grace Period, of any of the Obligations;

(b)   Obligor otherwise defaults, subject to any applicable grace period, in the performance of any of the terms of any of the Obligations, or the payment of any of the Obligations is demanded in full or is accelerated pursuant to the terms and provisions of the Obligations;

(c)   any representation or warranty made by either Obligor to the Lender in connection with any of the Obligations or a representation or warranty made by the Guarantors to the Lender in connection with this Limited Guaranty proves to be incorrect or misleading in any material respect at the time it was made;

(d)   Obligor or Guarantor fails to pay when due any other obligation for borrowed money, and as a result, the maturity of any such obligation is accelerated and the risk of non-performance or non-payment of the Obligations under this Loan are materially increased;

(e)   Obligor or Guarantor challenges or institutes any proceedings to challenge the validity, binding effect or enforceability of this Limited Guaranty or any of the Obligations;

(f)   a judgment or judgments are rendered against either Obligor, or against a Guarantor where the Lender reasonably determines that such judgment has or may impair the Lender's ability to collect payment under the Note or the Mortgage, in an aggregate amount which exceeds $50,000 as to that Guarantor or Obligor and which remains for a period of sixty (60) days or longer, or an attachment or levy is made upon or lien filed against any assets of, of a Guarantor where the Lender reasonably determines that such attachment or levy has or may impair the Lender's ability to collect payment under either Note or Mortgage, and the same is not released or bonded within 30 days thereafter;

(g)   Obligor, or a Guarantor where the Lender reasonably determines that such insolvency has or may impair the Lender's ability to collect payment under either or Mortgage, becomes insolvent or unable to meet its debts as they mature, or is generally not paying its debts as they become due, or suspends or ceases its present business, or a custodian, as defined in Title 11 of the United States Code, of substantially all of its

4

property shall have been appointed or shall have taken possession of any assets of an Obligor or a Guarantor;

(h)    a case under Title 11 of the United States Code, or any proceeding under any other federal or state bankruptcy, insolvency or other law relating to the relief of debtors, the readjustment, composition or extension of indebtedness or reorganization, including, but not limited to, a receivership, committee, or an assignment for the benefit of creditors, is commenced by or against either Obligor, or against a Guarantor and not discharged within one hundred twenty (120) days where the Lender reasonably determines that its ability to collect payment under the Notes or Mortgage may be impaired;

(i)    either Obligor, or where the Lender reasonably determines that its ability to collect payment under either of the Notes or Mortgage may be impaired a Guarantor, makes any payment on account of any indebtedness subordinated to any of the Obligations in contravention of the terms of such subordination or of the Obligations;

(j)    Guarantor dies and the Obligor fails to cure within 120 days of the death of Guarantor, by providing a substitute Limited Guaranty having financial statements which are acceptable to the Lender;

(k)    either Obligor or where the Lender reasonably determines that its ability to collect payment under either of the Note or Mortgage may be impaired a Guarantor, is dissolved, or loses its franchise or charter or is a party to any merger or consolidation or sells, transfers or otherwise disposes of (or attempts to do any of the foregoing) a substantial portion of its assets or makes or attempts to make a "bulk transfer" as such term is defined in Article 6 of the New York Uniform Commercial Code without the prior written consent of the Lender;

(m)    any other event occurs which, in the reasonable opinion of the Lender, adversely affects the financial condition of either Obligor or a Guarantor and which in the reasonable opinion of the Lender materially increases the risk of loss to the Lender with respect to any of the Obligations or this Limited Guaranty.

If either Obligor or Guarantor shall default in the performance of any of its covenants, agreements or obligations under any agreement or obligation to the Lender, Guarantor shall have such longer period as may be specifically provided for under any Loan Document, after its receipt of written notice of such default from the Lender, to cure the default, provided that if the nature of the default is such that it cannot reasonably be cured within such thirty (30) day period, then so long as an Obligor or Guarantor commences to cure such default within said thirty (30) day period, and, thereafter, diligently, in good faith and expeditiously proceeds to cure such default, Obligors or Guarantor shall have a reasonable period of time in which to cure such default, provided however that the cure period shall not be so extended if the Lender determines, in its sole discretion, that there is or will be a materially adverse change in the value of, or its security in the Mortgaged Property or Collateral, or the ability of either Obligor or any Guarantor to pay the Indebtedness may or will become impaired during any such extension.

5

7.    Upon the occurrence of any Event of Default beyond any applicable cure period, or at any time thereafter, any or all of the Obligations, at the sole option and discretion of the Lender, shall immediately become due and payable in full, together with interest and all the costs and expenses of enforcing this Limited Guaranty or any of the Obligations, including court costs and reasonable attorneys' fees. In such circumstances, the liability of Guarantors to the Lender, shall be joint and several, fixed and absolute, and it shall not constitute a defense, counterclaim, set-off, or recoupment thereto that the Lender has not made any demand or protest or instituted any action or proceeding for all or any of the Obligations or that the Lender has not validly taken or perfected a security interest in the Collateral or has not or has improperly foreclosed upon the collateral or any part of it, nor shall the Lender be required to perform any of the above acts against either Obligor, any guarantor or the Collateral as a condition of enforcing its rights against the Guarantors or any one of them, in accordance with the terms of this Limited Guaranty.

8.    (a) If this Limited Guaranty is executed by two or more persons or entities or two or more persons or entities execute similar agreements to this Limited Guaranty covering the Obligations, they shall be jointly and severally liable, and all provisions of this Limited Guaranty shall apply to each and all of them. The termination of this Limited Guaranty or similar agreement as to one or more of such persons or entities shall not terminate this Limited Guaranty or similar agreement as to any remaining persons or entities.

(b)  This Limited Guaranty shall be binding upon the heirs, executors, trustees, transferees, administrators, assigns and successors of each Guarantor and shall inure to the benefit of and be enforceable by the Lender, its successors, transferees and assigns.

(c) Any provision of this Limited Guaranty which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of the Limited Guaranty in that jurisdiction or affecting the validity or enforceability of such provision in any other jurisdiction.

(d) This Limited Guaranty constitutes the final, complete and exclusive agreement between the Lender and the Guarantor with respect to the guarantee by Guarantor of the Obligations. It supersedes all other agreements and may not be supplemented or modified except as provided for in this Limited Guaranty. No statements, agreements or representations have been made concerning this Limited Guaranty which do not appear in writing in this Limited Guaranty and Guarantor affirms that it does not rely upon and has not been induced to execute this Limited Guaranty based upon any such statements, agreements or representations.

(e) No delay by the Lender in exercising any right hereunder, or under any of the Obligations, shall operate as a waiver thereof, nor shall any single or partial exercise of any right preclude other or further exercises thereof or the exercise of any other right. No waiver, amendment, or termination of this Limited Guaranty or any provision of this Limited Guaranty or of any of the Obligations shall be enforceable against the Lender unless it is in writing. In the case of a waiver or amendment, the writing must also be

signed by an officer of the Lender and expressly refer to the provisions affected, and any waiver shall be limited solely to the specific event waived. Any termination of this Limited Guaranty shall not be effective until written notice thereof is actually received by the Lender by mail or personal delivery at the address identified in this Limited Guaranty. Any such termination shall not affect any existing Obligations owed by either Obligor as well as any extension or continuation thereof, including but not limited to, any lines of credit whether or not fully used, or letters of credit issued on behalf of either Obligor whether or not called upon by the beneficiary of any said letter of credit, and Guarantor's liability with respect to all such Obligations shall continue under the terms of this Limited Guaranty subsequent to any termination. It is further agreed in the case where a Guarantor is a natural person that any termination based upon the death of the Guarantor shall likewise not affect the liability of the Guarantor or his or her trustees, estate, heirs, executors, administrators or assigns for existing Obligations owed by either Obligor prior to the Guarantor's death, as well as any extensions or continuations thereof, including but not limited to any lines of credit, whether or not used, or letters of credit issued on behalf of either Obligor whether or not called upon by the beneficiary of said letter of credit as long as said Obligations were incurred or committed to prior to the death of said Guarantor.

(f)    All rights granted the Lender pursuant to this Limited Guaranty shall be cumulative and shall be in addition to those granted or available to the Lender with respect to the Obligations or under applicable law and nothing herein shall be construed as limiting any such other right.

(g)    Guarantor represents and warrants that the execution, delivery and performance of this Limited Guaranty does not and will contravene any law, any agreement, charter, by-law or undertaking to which it is a party or by which it may in any way be bound.

(h)    This Limited Guaranty shall be governed by and interpreted and enforced in accordance with the laws of the State of New York.

(i)    Guarantor waives the right to a trial by jury in any action or proceeding between it and the Lender and waive the right to assert in any action or proceeding with regard to this Limited Guaranty or any of the Obligations any offsets or counterclaims which they may otherwise have relating to the same.

(j)    Guarantor waives notice of presentment, dishonor and protest of any or all of the Obligations and of this Limited Guaranty, and furthermore waive promptness in the commencement of any action relating to this Limited Guaranty or the Obligations and in the giving of notice or making of demand upon it or upon any other entity or person.

(k)    In the event any payment is received by the Lender with respect to the Obligations during the time that this Limited Guaranty is effective and such payment is subsequently invalidated, declared fraudulent or preferential, or otherwise set aside under the terms of any federal or state law or equitable doctrine, then the Guarantor shall, be responsible for such payment to the Lender under the terms of this Limited Guaranty,

7

notwithstanding the fact that this Limited Guaranty was terminated voluntarily or by law at the time that the payment was set aside or invalidated as described above.

(1)    Words of the neuter gender shall mean and include correlative words of the masculine and feminine gender as appropriate and vice versa. Words noting the singular number shall mean and include the plural number as appropriate and vice versa.

(m)    This Limited Guaranty shall be effective as of the date of execution even though it may be delivered to the Lender at a later date.

(n)    Any notice to the Lender under this Limited Guaranty shall not be effective until written notice thereof is actually received by the Lender by Certified Mail Return Receipt Requested, overnight mail or personal delivery at the following address:

Ballston Spa National Bank
990 State Route 67, P.O. Box 70
Ballston Spa, NY 12020

(o)    Any notice hereunder to the Guarantor shall be in writing and will be effective when personally delivered or sent by Certified Mail Return Receipt Requested to the address set forth herein or such other address as provided by such party. All notices shall be deemed given upon delivery or attempted delivery.

(p)    To the fullest extent permitted by applicable law, each Guarantor shall not assert, and hereby waives any claim against Lender, on any theory of liability, for special, indirect, consequential or punitive damages (but excluding direct or actual damages or on a compulsory counterclaim) arising out of, in connection with or as a result of, this Limited Guaranty, any related loan documents, the transactions contemplated hereby or thereby or any loan or the use of the proceeds.

(q)    This Limited Guaranty may be executed in one or more counterparts, each of which shall be considered an original. This Limited Guaranty may be executed and transmitted electronically, whereupon an electronic copy hereof shall have the same force and effect, and shall in all respects be treated as an original.

(r)    By signing below, each Guarantor who is an individual provides written authorization to Lender or any holder of either Note to obtain Guarantor's personal credit profile from one or more national credit bureaus. Such authorization shall extend to obtaining a credit profile in considering this Limited Guaranty and subsequently for the purpose of update, renewal or extension of such credit or additional credit and for reviewing or collecting the resulting account.

(s)    To the fullest extent permitted by applicable law, each Guarantor shall not assert, and hereby waives any claim against Lender, on any theory of liability, for special, indirect, consequential or punitive damages (but excluding direct or actual damages) arising out of, in connection with or as a result of, this Limited Guaranty, any related loan documents, the transactions contemplated hereby or thereby or any loan or the use of the proceeds.

8

9.    LIMITATIONS.

Notwithstanding anything to the contrary herein, or in the Loan Documents, each Guarantor hereunder guarantees, as primary obligor, not surety, and without any setoff or other deduction, the payment when due, whether by acceleration or lapse of time or otherwise, of the Obligations, as defined herein, provided that each Guarantor's maximum aggregate liability under this Limited Guaranty shall not exceed an amount equal to the aggregate of twenty-five percent (25%) of the aggregate amount (computed without giving effect to any reductions thereof by reason of Lender's collection or realization upon any other guaranty or other security) of the Obligations plus (ii) all amounts required by Section 1(d) in the enforcement of this Limited Guaranty against said Guarantor; provided further, that if any Obligations shall have been paid by Guarantor under this Limited Guaranty prior to Lender's written demand for payment under this Guaranty, Lender shall have no obligation to refund all or any part of the Obligations so paid, notwithstanding that Guarantor's liability under subsection (i) may be less, as of that demand, than all or any part of the Obligations so paid.

10.    LEGAL PROCEEDINGS.

(a)    **JURISDICTION AND VENUE. EACH GUARANTOR KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY (i) CONSENTS IN EACH ACTION AND OTHER LEGAL PROCEEDING COMMENCED BY LENDER AND ARISING OUT OF OR OTHERWISE RELATING TO THIS LIMITED GUARANTY, ANY OF THE OBLIGATIONS OR ANY COLLATERAL TO THE NONEXCLUSIVE PERSONAL JURISDICTION OF ANY COURT THAT IS EITHER A COURT OF RECORD OF THE STATE OF NEW YORK IN SARATOGA COUNTY OR A COURT OF THE UNITED STATES LOCATED IN THE NORTHERN DISTRICT OF THE STATE OF NEW YORK, AND (ii) WAIVES EACH OBJECTION TO THE LAYING OF VENUE OF ANY SUCH ACTION OR OTHER LEGAL PROCEEDING.**

(b)    **WAIVER OF JURY TRIAL. GUARANTOR AND LENDER KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO, AND IN, ANY ACTION OR OTHER LEGAL PROCEEDING OF ANY NATURE, RELATING TO (i) THIS LIMITED GUARANTY, ANY RELATED LOAN DOCUMENT OR ANY COLLATERAL RELATED HERETO, (ii) ANY TRANSACTION CONTEMPLATED BY ANY SUCH DOCUMENT OR (iii) ANY NEGOTIATION, PERFORMANCE OR ENFORCEMENT OF THIS LIMITED GUARANTY, OR ANY COLLATERAL RELATED HERETO. EACH GUARANTOR ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL AS NECESSARY AND APPROPRIATE.**

*[SIGNATURES ONLY ON FOLLOWING PAGE]*

IN WITNESS WHEREOF, each Guarantor has executed this Limited Guaranty effective as of the date set forth above.

**LIMITED GUARANTORS**

_____
ALEXANDER M. GOREN

Address: 1175 Park Avenue
New York, NY 10128

WITNESS
Print Name: Brooke Kroeger

Signature Page to Limited Guaranty

10

LIMITED GUARANTORS:

JAMES G. GOREN

Address: 163 Washington Vly Road
Warren, NJ 07059

_Emilia Schnell_
WITNESS
Print Name: _Emilia Schnell_

Signature Page to Limited Guaranty

11