UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| -----------------------------------------------------------x | |
| In re: | Chapter 11 |
| Blitman Saratoga LLC, | Case No. 20-23177 (RDD) |
| Debtor. | |
| -----------------------------------------------------------x | |

**FINAL ORDER APPROVING AND AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 362 AND 364(c)**

Upon the motion (ECF No. 6) (the ñDIP Financing Motionò)[1] of Blitman Saratoga LLC (the ñDebtorò), pursuant to sections 362, 364(c) and 507 of title 11 of the United States Code (the ñBankruptcy Codeò), and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the ñBankruptcy Rulesò), seeking entry of an interim order (the ñInterim Orderò) and final order (ñFinal Orderò) (collectively, the ñFinance Ordersò), *inter alia*, (i) authorizing the Debtor to borrow the sum of up to $3,100,000 (the ñDIP Loansò) from Saratoga Funding LLC (the ñDIP Lenderò), an entity affiliated with James Goren and Alex Goren, or their partnership or limited liability company, pursuant to 11 U.S.C. §364(c), to (a) replace the existing outstanding loans in the amount of $1,893,438.92 (as of November 27, 2020) plus accruing interest or fees (the ñBSNB Loansò) payable to Ballston Spa National Bank (ñBSNBò) (since completed under the Interim Order); and (b) advancing the balance of funds under the Budgets to enable the Debtor to resume and complete construction of the eight residential one-family homes under contract; (ii) modifying the automatic stay to perfect and record mortgage liens relating to the Finance Orders; and (iii) scheduling a final hearing to consider the relief requested in the DIP Financing Motion; and this Court having previously entered the Interim Order (ECF No. 21); and

[1] All terms defined in the Interim Order and DIP Financing Motion shall have the same meanings for purposes of this Final Order.

the Debtor having thereafter closed with Ballston Spa National Bank on the refinancing of the BSNB Loans based on an assignment thereof pursuant to RPL §275; and no objections have been filed in connection with the Final Order; and based upon all of the prior Findings of Fact and Conclusions of Law made in the Interim Order, which are carried forward and incorporated herein by reference; and after due deliberation; and for good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that:

1. Approval. The DIP Financing Motion is GRANTED, on a final basis, and the Debtor is authorized to borrow the balance of funds as provided in the DIP Financing Motion to complete the Remaining Project in accordance with the Budgets. Thus, the Debtor is hereby authorized and, pursuant to the terms of the Interim Order, the Final Order and the Budgets, to borrow up to the total sum of $3,100,000.

2. Authorization of the DIP Loans With the Continuing Clarifications. The Interim Order, including, but not limited to any and all modifications to the DIP Financing Motion, the DIP Loans, the Note, the BSNB Loans and the BSNB Loan Documents contained therein, including, but not limited to the Clarifications (as defined in the Interim Order), shall continue in full force and effect, and all Clarifications shall also apply with respect to any and all borrowings or advances authorized under this Final Order. Notwithstanding anything to the contrary in this Final Order and the DIP Financing Motion: (i) the Note shall not be consolidated with the existing BSNB Loans but instead shall constitute a separate note for the construction-related advances subject to a subordinated lien, and other super priority rights and carve-outs; (ii) the personal guarantees held by BSNB and now assigned to the DIP Lender shall relate only to the BSNB Loans and not to the Note; (iii) repayments of the BSNB Loans and the DIP Loans shall

be applied first to the satisfaction of all obligations under the BSNB Loans previously assigned and as modified pursuant to the Interim Order; and (iv) the obligations under the BSNB Loans and the DIP Loans shall not become due until the Revised Maturity Date, as defined in this Final Order (items (i), (ii), (iii) and (iv), collectively the ñClarificationsò, as previously defined in the Interim Order and as restated, as modified, in this Final Order). The Debtor is further authorized and empowered to execute, or cause to be executed, all customary documents and instruments relating to the DIP Loans consistent herewith, including final execution of the Note; and to incur and to perform all obligations in accordance with, and subject to, the terms of this Final Order, and to deliver all instruments and documents which may be required or necessary for the performance by the Debtor under this Final Order and the creation and perfection of the Junior Mortgage (as hereinafter defined) pursuant to 11 U.S.C.§364(c).

3. Final Order. This Final Order incorporates the Interim Order, and shall constitute and evidence valid and binding obligations of the Debtor with respect to funds advanced pursuant to this Final Order, and shall be enforceable against the Debtor, its Estate and any successors thereto, including, without limitation, any trustee appointed or elected in this chapter 11 case or a case under chapter 7 of the Bankruptcy Code.

4. Junior Mortgage. The entry of this Final Order again confirms: (a) the DIP Lender is hereby granted a valid, binding, enforceable, and perfected subordinate mortgage (the ñJunior Mortgageò) on the Debtorôs remaining lots, either under construction or vacant, together with all improvements thereon pursuant to 11 U.S.C. §364(c) in the amount of approximately $1,200,000 (excluding the assignment of the BSNB Loan Documents) with such Junior Mortgage remaining subject to any valid pre-petition liens and security interests (the ñExisting Liensò), including, but not limited to liens and security interests with respect to the BSNB Loan

Documents and all valid pre-existing mechanicsô liens (the ñMechanicsô Liensò). The Junior Mortgage and related security interest shall be valid and enforceable against any trustee appointed or elected in this chapter 11 case or a case under chapter 7 of the Bankruptcy Code.

5. DIP Superpriority Claim. Upon entry of this Final Order, the DIP Lender is hereby granted, pursuant to section 364(c)(1) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in this chapter 11 case (collectively, the ñDIP Superpriority Claimò) in the amount of the post-petition advances for construction and related expenses pursuant to the Budgets for the remainder of the Remaining Project of up to $1,200,000, including the advances under the Interim Order. The DIP Superpriority Claim shall be subordinate only to the Carve Out defined below, and shall otherwise have priority over any and all administrative expenses and unsecured claims against the Debtor.

6. Use of DIP Loan Proceeds. The Debtor shall use the loan proceeds advanced hereunder only for the purposes specifically set forth in the Budgets for the remainder of the Remaining Project.

7. Carve-Out. The Junior Mortgage shall be junior only to (i) Existing Liens and (ii) to the carve out for the following items (the ñCarve Outò): (a) all fees required to be paid to the U.S. Trustee pursuant to 28 U.S.C. §1930(a), plus any fees owed to the Clerk of the Court; (b) the reasonable fees and expenses of up to $100,000 incurred by the Debtorôs counsel, subject to the filing of an application and notice therefore pursuant to 11 U.S.C. §330 and 331; and (c) payment of up to $10,000 for any fees incurred by a chapter 7 trustee and his or her professionals should this chapter 11 case be subsequently converted to chapter 7. The foregoing shall not be deemed to be a waiver of any right to seek to surcharge the Debtorôs property pursuant section

506(c) of the Bankruptcy Code or a waiver of the right of the DIP Lender to contest any surcharge.

8. Events of Default. The occurrence of any of the following events shall constitute an event of default after ten (10) days prior written notice with opportunity to cure (collectively, ñEvents of Defaultò):

(a) The Debtor shall fail to pay real estate taxes and other charges when due.

(b) The Court shall enter an order dismissing this chapter 11 case or converting it to a case under chapter 7 of the Bankruptcy Code, or, without the consent of the DIP Lender (i) appointing a trustee in this chapter 11 case or (ii) appointing a responsible officer.

(c) The Debtor shall fail to pay accrued interest and principal to the DIP Lender as and when due following the sale of a particular unit or home.

(d) The Debtor fails to maintain adequate insurance for the Remaining Project.

(e) The Debtor breaches any other covenants, representation or warranty as set forth in the BSNB Loan Documents, as modified and assigned.

9. Modification of the Automatic Stay. The automatic stay imposed under Bankruptcy Code section 362(a) is modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the DIP Lender to record the Junior Mortgage; and (b) permit the Debtor to perform such acts as the DIP Lender may request in its reasonable discretion to assure the perfection of the Junior Mortgage.

10. Perfection of Junior Mortgage. This Final Order reaffirms that it shall be sufficient and conclusive evidence of the validity, perfection and priority of the Junior Mortgage with respect to funds advanced for the resumption of construction under the Budgets. Notwithstanding the foregoing, the DIP Lender is authorized to file, as it deems necessary or

advisable, such financing statements, mortgages, notices and other instruments or documents in accordance with applicable non-bankruptcy law to record, perfect or evidence the Junior Mortgage.

11. Good Faith Under Section 364(e) of the Bankruptcy Code. Even though the DIP Lender is an affiliate of the Debtor, the DIP Lender was represented by separate counsel. The DIP Lender has acted in good faith in connection with the DIP Loans and this Final Order. Thus, in the event that any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this or an appellate court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code with respect to funds advanced for the resumption and completion of construction pursuant to this Final Order.[2]

12. Modification of BSNB Loan Documents. The terms of the BSNB Loan Documents, as modified by the Interim Order, and as further modified by this Final Order, shall provide:

(a) The BSNB Loans and the BSNB Loan Documents are extended to the Revised Maturity Date. Accordingly, all interest shall accrue at the Interest Rate beginning as of the first day when the DIP Loans are made on a revolving basis until the Revised Maturity Date or the debt is accelerated following an uncured Event of Default.

(b) The term ñ**Interest Rate**ò shall be redefined to mean the prime lending rate, without default interest, except that the BSNB Loan Documents shall

[2] Notwithstanding anything contained in this Final Order to the contrary, any findings of good faith relate solely to the DIP Lender for purposes of the DIP Loans, and not to any of its affiliates, including, but not limited to the Goren Brothers, James Goren and Alex Goren.

accrue interest at the nine (9%) percent legal interest rate on or after the Revised Maturity Date.

(c) The term ñ**Revised Maturity Date**ò shall be thirty (30) days after the sale of the last home and all vacant lots.

13. Effect of this Order. This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 with respect to funds advanced pursuant to this Final Order.

Dated: White Plains, NY
February __, 2021

_________________________
Hon. Robert D. Drain
United States Bankruptcy Judge