WARNING: NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").

**CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT**

**NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.**
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

# Residential Contract of Sale

**Contract of Sale** made as of October ___, 2021

between:

**Scott Varley**
Address: 382 Broadway Saratoga Springs, NY 12866

Social Security Number/Fed. I. D. No(s): hereinafter called "Seller" and

**Blitman Saratoga LLC,** with offices at 11 New Karner Road Guilderland, NY

Social Security Number/Fed. I. D. No(s): hereinafter called "Purchaser"

**The parties hereby agree as follows:**

1. **Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively, the "Premises"), ~~more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and~~ also known as:
Street Address: **4 Pamela Ln, Saratoga Springs, NY 12866 which comprises the model home at Beaver Pond Village**

Tax Map Designation: **Section: 177.16 ; Block: 3 ; Lot: 27**

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

2. **Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, ~~except any existing mortgage to which this sale may be subject~~. They include, but are not limited to: plumbing, heating, lighting fixtures, cooking fixtures, chandeliers, bathroom and kitchen cabinets, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting, playground, and built-ins**, if any,** not excluded below (*strike out inapplicable items*)**, strictly as same may presently exist in their "as is" and "where is" condition as of the date hereof, subject to reasonable wear and tear accepted. The sale also includes all furniture and furnishings located in the model home.**

Excluded from this sale are furniture and household furnishings

**3. Purchase Price.** The purchase price is based upon the agreed land value of **$145,000** payable as follows:

(a) on the signing of this contract, by **wire transfer, or** Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"): **$ 00.00**

(b) by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed: $ NONE

(c) by a purchase money note and mortgage from Purchaser to Seller: $ NONE

(d) balance at Closing in accordance with paragraph 7: **$145,000.00**

**4. Existing Mortgage.** (*Intentionally Deleted*).

**5. Purchase Money Mortgage.** (*Intentionally Deleted*).

**6. Downpayment in Escrow.** (a) Seller's attorney ("Escrowee") not be required to collect for Seller's account in escrow in a segregated bank account at **Not applicable**, until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in an interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, nonappealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that, although Escrowee is holding the Downpayment for Seller's account, for all other purposes Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally agree to defend, indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from acting upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

**7. Acceptable Funds.** All money payable under this contract, unless otherwise specified, shall be paid by:

(a) **Wire transfer, or** Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon not less than 3 business days notice (by telephone or otherwise) to Purchaser;

(b) As otherwise agreed to in writing by Seller or Seller's attorney.

**8. Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;
(d) Real estate taxes that are a lien, but are not yet due and payable; and
(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

**9. Governmental Violations and Orders.** (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

**10. Seller's Representations.** (a) Seller represents and warrants to Purchaser that:

(i) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

(ii) Seller is not a "foreign person," as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

(iv) The Premises are not affected by any exemptions or abatements of taxes; and

(v) Seller has been known by no other name for the past ten years

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

**11. Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all personal property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of closing, without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

**12. Insurable Title.** Seller shall give and Purchaser shall accept such title as any reputable title company described in paragraph 21(a) shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

**13. Closing, Deed and Title.** (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a **Bargain and Sale Deed without Covenant against Grantor's Acts** deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated.

**14. Closing Date and Place.** Closing is conditioned upon Bankruptcy Court approval and shall take place simultaneously with the resale of the Premises by Purchaser to Robert and Naomi McGehee whereupon Seller shall be paid the sum of $145,000 at the simultaneous closing whenever it occurs **(the "Closing Date")**.

**15. Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

Simultaneous resale of the Premises and Bankruptcy Court approval of this transaction.

**16. Deed Transfer and Recording Taxes.** Unless exempt, at Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

**17. Apportionments and Other Adjustments; Water Meter and Installment Assessments.** None.

**18. Purchaser's Lien.** All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**19. Notices.** Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered.

**20. Assignment.** This Contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

**21. Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any real estate broker in connection with this sale.

**22. Miscellaneous.** (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

IN WITNESS WHEREOF, this contract has been duly executed by the parties hereto.

DocuSigned by:
55DB064190D34D5...
Scott Varley *Seller*

BLITMAN SARATOGA LLC
DocuSigned by:
Thomas P Keaney
30EF113925F742D...
By: Thomas Keaney *Manager*

RIDER TO RESIDENTIAL CONTRACT OF SALE
DATED AS OF OCTOBER ____, 2021
BETWEEN
SELLER,
AND
PURCHASER

29. If there is any conflict or inconsistency between any of the provisions of this Rider and any of the provisions of the printed portion of Residential Contract of Sale to which this Rider is attached or any other rider, all such conflicts and inconsistencies shall be resolved in favor of the provisions of this Rider.

30. Supplementing Paragraph 9: The Premises shall be sold and conveyed subject to the following matters, in addition to those matters listed in Paragraph 9:

(f) Rights, if any, of the municipality in which the Premises are located or of any public utility, telephone or cable television company, to lay, install, maintain, operate and/or repair pipes, wires, cables, poles and related equipment in, over and upon the Premises, provided same do not impose any monetary obligation on the Purchaser;

(g) Any lien or encumbrance which Seller uses any portion of the cash balance of the purchase price to pay or discharge pursuant to Paragraph 20;

(h) Encroachments of stoops, areas, cellar steps, trim, cornices, lintels, window sills, awnings, canopies, ledges, fences, walls, retaining walls, driveways, and sidewalks upon public streets or highways;

(i) Encroachments of fences, trees, hedges and other plantings;

(j) Variations between record lines and fences and retaining walls;

(k) Liens relating to installments of assessments payable by Purchaser pursuant to Paragraph 18(d);

(l) Any state of fact shown in an accurate survey, provided same does not render title unmarketable. Variations of fences, curbs, hedges and retaining walls with record lines shall not be deemed an objection to title provided a title insurance company does not deem the owner out of possession of the affected portion of the Premises;

(m) Covenants, restrictions, easements and agreements of record provided same are not violated by the present structures now existing. The violation of any of the aforesaid shall not be deemed an objection to title provided that a title company agrees to insure that such improvements may remain in their present location so long as they shall stand;

(n) Building restrictions and regulations of the applicable governmental authorities and amendments and additions thereto in effect at the time of closing of title;

(o) Notes and easements, if any, on the filed subdivision map wherein the Premises are a part;

(p) Variations between tax map and record lines, if any;

(q) Standard printed exceptions contained in the form of fee title insurance policy then issued by the title insurance company insuring Purchaser's title to the Premises;

(r) Any other matter as the title company or any other reputable title insurance company licensed to do business in the State of New York shall be willing, without special or additional premium, to omit as exception to coverage.

31. Seller shall not be liable or bound by any verbal or written statements, representations, real estate broker "set-ups" or information pertaining to the Premises furnished by any real estate broker, agent, employee, officer, servant or any other person, unless the same are specifically set forth herein. All oral or written prior statements, representations, or promises, if any, and all prior negotiations and agreements are superseded by this contract and merged herein.

32. Purchaser has examined the Premises agreed to be sold and is familiar with the physical condition thereof. Seller has not made and does not make any representation as to the physical condition, income, expenses, operation or other matters or things affecting or related to the aforesaid Premises, except as herein specifically set forth, and Purchaser expressly acknowledges that no such representations have been made. Purchaser's obligation to close is not contingent upon the issuance a Certificate of Occupancy, Certificate of Compliance, Certificate of Completion or other authorization or evidence that none is required, for any building(s) or other improvements located on the Premises (collectively referred to as a "C/O"). Seller has no obligation to close out open building permit applications or obtain a C/O. Purchaser further acknowledges that Purchaser has inspected the Premises and agrees to take the Premises "AS IS" as of the date hereof. Purchaser's right to enter and inspect the Premises shall be exercised only at a reasonable hour and only upon reasonable prior notice to Seller and shall be at a time which is at Seller's reasonable convenience.

33. The acceptance of a deed by Purchaser shall be deemed to be a full performance and discharge of every agreement and obligation on the part of Seller to be performed pursuant to the provisions of this contract except those, if any, which are herein specifically stated to survive the delivery of the deed.

34. This Contract, an assignment, or memorandum thereof, may not be recorded. Purchaser's violation of this Contract term shall be deemed a substantial and willful breach, and Seller may cancel this Contract and retain the deposit as liquidated damages.

35. OMITTED.

36. Purchaser represents that Purchaser has made diligent and thorough independent investigation of all expenses relating to the Premises including, but not limited to, taxes and utilities. Purchaser was given the opportunity to examine a complete set of heating and/or cooling bills under the Truth in Heating Law, or Purchaser has waived such opportunity, and Seller makes no representations with regard to same.

37. In the event the Purchaser receives a tax refund after closing as a result of any real property tax certiorari proceedings which affect the Premises either pending or instituted prior to closing, Purchaser agrees, upon receipt thereof, to pay to Seller the proportionate share of the tax refund attributable to the period the Premises are owned by the Seller. This provision shall survive Closing.

38. The parties hereto have been advised by counsel of their choice, and each knowingly and intentionally waives the applicability of any rule of construction which provides that in the event of ambiguity, the provision in question is to be construed to the detriment of the party responsible for drafting the document.

39. This document is not an offer to sell by Seller nor an offer to purchase by Purchaser and under no circumstances shall this contract, nor the terms set forth herein, be binding upon either party hereto unless and until it has been executed by and delivered to all parties.

40. In the event that a check is given as the Downpayment hereunder and the same is dishonored for insufficient funds by the bank upon which it is drawn, then the Seller, in addition to any other rights and remedies which Seller may have, at Seller's option, may declare this Contract null and void and at an end. Thereupon, Seller shall be relieved and released from all obligations hereunder.

41. Purchaser shall promptly apply for a title report and shall notify Seller at least fifteen (15) days prior to the date set forth herein for Closing of any objections then shown or disclosed by such report of title. If any of the objections cannot be cleared by the Seller by the time set forth for the Closing of title herein, then Seller, shall be entitled to a thirty (30) day adjournment for the purpose of removing such objections.

42. Nothing in this contract shall be deemed to require Seller to institute any lawsuit for the purpose of (i) conveying the Premises free of any notes or notice of violations pursuant to paragraph 10, or (ii) transferring title to Purchaser in accordance with this Contract. Seller shall not be required to bring any action or proceeding or otherwise incur any expense to render the title to the Premises marketable or to cure any violations against the Premises. Purchaser may, nevertheless, accept such title as Seller may be able to convey without reduction of the Purchase Price or any credit or allowance against the same and without any liability on the part of Seller. If Purchaser shall be unwilling to accept such title as Seller may be able to convey, then Seller may rescind this Contract, and upon Escrowee returning to the Purchaser all sums paid on the signing hereof, all further liability on the part of Seller hereunder shall cease and terminate, and this Contract shall be canceled and of no further force and effect, and Seller shall not be liable for any other costs or damages whatsoever.

43. Supplementing and modifying paragraph 25, the parties hereto agree that all notices and communications in connection with this contract sent by facsimile and electronic mail transmission shall have the same binding effect as though they were personally delivered. Notice given by facsimile or e-mail shall be deemed given when received. Notwithstanding anything to the contrary herein, any notice or change of address shall be effective only upon receipt thereof. The attorneys for the parties hereto are hereby authorized to agree to extensions of time and/or adjournment of Closing. Notice hereunder shall be deemed sufficient if signed by the attorney for the party sending such notice. Each Notice shall be given to the attorney for the party for whom the Notice is to be given, as follows:

If the Notice is to be given to Seller, a copy to:

________N/A________
___________________
___________________

If the Notice is to be given to Purchaser, a copy to:

_________N/A______

____________________

____________________

44. The parties agree that in lieu of Seller providing Purchaser with a Property Disclosure State, pursuant to the so-called Property Condition Disclosure Act under Article 14 of the New York Real Property Law, at Closing, Purchaser shall receive a $500.00 credit against the Purchase Price as Purchaser's sole and exclusive right and remedy at law and equity.

46. This Contract may be executed and delivered in one or more counterparts, each of which, when so executed and delivered, shall be deemed an original. For the purposes of this Contract, facsimile, PDF, and/or photocopied signatures shall be deemed original signatures and shall have the same force and effect as if written in original ink.

SELLER

DocuSigned by:

55DB064190D34D5...

Scott Varley

BLITMAN SARATOGA LLC

DocuSigned by:

Thomas P Keaney

30EF113925F742D...

By: Thomas Keaney, Manager