UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                                    Chapter 11

Blitman Saratoga LLC,                                      Case No. 20-23177 (RDD)

                                   Debtor.
------------------------------------------------------------x

## DEBTOR'S LIQUIDATING PLAN OF REORGANIZATION

Blitman Saratoga LLC (the "Debtor") hereby proposes the following Chapter 11 liquidating plan of reorganization (the "Plan") pursuant to the provisions of Title 11 of the United States Code (the "Bankruptcy Code").

### FRAMEWORK OF THE PLAN

As has been well-chronicled during the Chapter 11 case, the Debtor is a real estate development company which sought Chapter 11 relief with the goal of completing its residential home development known as "Beaver Pond Village" in Saratoga Springs, NY (the "Project"). At the time of the bankruptcy filing, the Debtor was a party to eight (8) pending purchase agreements (with rights to the model home and ownership of various vacant lots) and had exhausted its borrowing eligibility under pre-petition loans with Ballston Spa National Bank ("BSNB"). Internally, the Debtor was also plagued by a falling-out among investors who lost confidence in the leadership of Howard Blitman, and his daughter, Robin Winter, to manage and finish the Project, which led to State Court litigation. Additionally, the Chapter 11 coincided with the ongoing Covid-19 pandemic, which created shortages in manpower and materials, and exacerbated the delays in completion of the Project. Thus, the decision was made to seek Chapter 11 relief as a means to address BSNB's claims head-on and resume construction based

upon DIP financing provided by Saratoga Funding LLC, an affiliated company headed by James Goren (the "DIP Lender").

The Debtor obtained final authorization to borrow up to the sum of $3,100,000 (the "DIP Loan") pursuant to Order dated February 5, 2021 (ECF No. 38), which included refinancing the pre-petition debts owed BSNB in the total sum of $1,893,438.92 based upon an assignment of the loan documents to the DIP Lender. With refinancing in place, the Debtor has resumed construction on all eight (8) homes. To date, the Debtor has closed on two (2) homes (including the model home), and is close to completing the sale of an additional three (3) homes by early March 2022. This leaves the remaining four (4) homes to sell, which should be finished by the summer or fall of 2022.

Contemporaneously with the ongoing sale activity, the Debtor is seeking to exit bankruptcy under the terms of this Plan, which has received the support of the Creditor's Committee based upon the proposed treatment of Class 2 Non-Insider Unsecured Creditors. Fundamentally, the Plan contemplates (i) a "roll-up" of the debts and obligations arising under the DIP Loan to be paid-out through ongoing post-confirmation sales of the Homes and Vacant Lots; and (ii) the creation of a separate cash fund of approximately $600,000 (defined below as the "Confirmation Fund") to fund a cash dividend equal to 50% of the allowed Class 2 claims of each non-insider contractor, service provider and vendors, plus pay allowed Administrative Expenses and Priority Taxes. The Confirmation Fund shall be established by the Debtor with the consent of the DIP Lender from the proceeds of sale generated by the pending immediate sales of 47 Jane Street and 49 Jane Street. The sum of $600,000 shall be carved-out at closing, and deposited into escrow with the Debtor's counsel, Goldberg Weprin Finkel Goldstein LLP, to insure that necessary cash funds are available at Confirmation.

2

# ARTICLE I

## DEFINITIONS

All capitalized terms used herein shall have the meanings set forth below.

1.1    **"Administrative Expense Claim"** means a Claim for the costs and expenses of administering the Chapter 11 case allowed under §§ 503(b) and 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of constructing and completing the sale of the Homes and Vacant Lots, together with related closing costs and brokerage; and (b) the Professional Fees as may be awarded to Goldberg Weprin Finkel Goldstein LLP as the Debtor's bankruptcy counsel and Nolan Heller Kauffman LLP as the Creditor's Committee counsel.

1.2    **"Allowed"** means, with reference to any Claim, proof of which was timely and properly filed or, if no proof of Claim was filed, that has been or hereafter is listed by the Debtor on its Schedules of Assets and Liabilities as liquidated in amount and not disputed or contingent and, in each case, as to which: (a) no objection to allowance has been interposed within the applicable period fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or the Bankruptcy Court; or (b) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order.

1.3    **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York.

1.4    **"Bar Date"** means March 19, 2021, as the last date set by the Bankruptcy Court to file a Claim against the Debtor.

1.5    **"Claim"** means a claim against the Debtor as defined in Bankruptcy Code § 101(5).

1.6    **"Claim Objection Deadline"** shall mean thirty (30) days after the Effective Date of the Plan.

1.7    **"Confirmation"** means approval of the Plan by the Bankruptcy Court.

1.8    **"Confirmation Fund"** means the monies deposited by the Debtor and the DIP Lender with the Disbursing Agent to pay Allowed Administrative Expense Claims, Priority Tax Claims, U.S. Trustee Fees, and the pro rata 50% cash dividend to Allowed Class 2 Claims of Unsecured Creditors.

1.9    **"Confirmation Hearing"** means the hearing or hearings before the Bankruptcy Court to consider approval of the Plan.

1.10    **"Confirmation Order"** means the order of the Bankruptcy Court approving the Plan pursuant to Bankruptcy Code § 1129.

3

1.11   "**Creditor**" means the holder of a Claim against the Debtor.

1.12   "**Creditors' Committee**" means the Official Committee of Unsecured Creditors appointed by the Office of the U.S. Trustee on December 21, 2020 (ECF No. 23), comprising Appolo Heating, Curtis Lumber Co., Inc. and Northway Tile LLC.

1.13   "**Disbursing Agent**" means Goldberg Weprin Finkel Goldstein LLP.

1.14   "**Effective Date**" means the first business day on which the Confirmation Order becomes a Final Order.

1.15   "**Final Order**" means an order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified, or amended and as to which the time to appeal has expired.

1.16   "**Homes**" means the homes and lots owned by the Debtor under contract and/or construction as of the Petition Date (some of which have been sold), located at 4 Pamela Lane, 6 Jane Street, 9 Jane Street, 11 Jane Street, 47 Jane Street, 49 Jane Street, 57 Jane Street, 59 Jane Street and 8 Katie Lane.

1.17   "**Interests**" means, collectively, the equity and membership interests of the Debtor's members and their legal representatives.

1.18   "**Operating Officer**" means Thomas Keaney.

1.19   "**Petition Date**" means November 6, 2020, the date on which the voluntary petition commencing this Chapter 11 case was filed.

1.20   "**Priority Tax Claim**" means any Claim of a federal, state or local taxing authority against the Debtor.

1.21   "**Reorganized Debtor**" means the Debtor after confirmation of the Plan.

1.22   "**Sale Proceeds**" means the total proceeds generated from the Sale of the Homes and Vacant Lots.

1.23   "**Unsecured Claim**" means an Allowed general unsecured claim of contractors, vendors and service providers, excluding the claims of insiders or affiliates of Howard Blitman or Robin Winter.

1.24   "**Unsecured Creditor**" means the holder of an Allowed Unsecured Claim against the Debtor excluding the claims of insiders or affiliates of Howard Blitman or Robin Winter.

1.25   "**U.S. Trustee Fees**" means fees payable pursuant to 28 U.S.C. § 1930, together with any statutory interest.

1.26  **"Vacant Lots"** means the remaining thirteen (13) unsold and undeveloped lots still owned by the Debtor comprising part of the Beaver Pond Village.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1  The Claims and Interests as defined by the Plan hereunder are classified as follows:

**Class 1** – The Claim of Saratoga Funding LLC as the DIP Lender and assignee of BSNB.

**Class 2** – Allowed Claims of Non-Insider Unsecured Creditors.

**Class 3** – Allowed Insider Claims

**Class 4** – The Membership Interests in the Debtor

## ARTICLE III

## UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims, Priority Tax Claims or U.S. Trustee Fees, all of which shall be paid in full as required by 11 U.S.C. §1129(a)(9).

3.1  **Administrative Expense Claims**.  Administrative Expense Claims consist primarily of Professional Fees and Expenses plus any unpaid post-petition invoices, bills and expenses to complete construction and sell the Homes, including closings costs and related fees and brokerage.  Except for Professional Fees, the holders of Administrative Expense Claims shall be paid in the ordinary course of business or at the closing with respect to the post-confirmation sale of the remaining Homes).

3.2  **Professional Fees and Expenses**.  The requests for allowance of professional fees and expenses by the Debtor's counsel and the Creditors' Committee Counsel for services rendered during the Chapter 11 case prior to the Effective Date shall be filed no later than thirty

5

(30) days after the Effective Date, and remain subject to Bankruptcy Court approval. After notice and a hearing, as applicable, the allowed Professional Fees and Expenses shall be paid from the Confirmation Fund pursuant to appropriate Orders awarding such fees and expenses.

3.3 **Priority Tax Claims**. All residual Priority Tax Claims relating to the Debtor shall be paid in full from the Confirmation Fund on the Effective Date.

3.4 **U.S. Trustee Fees**. The Debtor shall pay all accrued and billed U.S. Trustee Fees, together with any interest thereon, until the Chapter 11 case is closed by entry of a Final Decree.

## ARTICLE IV

## CLASSIFICATION AND TREATMENT OF CLAIMS

The Plan classifies Claims and Interests against the Debtor consistent with the applicable provisions of the Bankruptcy Code.

**Summary**. The categories listed below classify Claims and Interests against the Debtor for all purposes, including voting, confirmation and distribution pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code, as summarized below:

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| Class 1 | Allowed Secured Claim of the DIP Lender | Yes | Ye |
| Class 2 | Allowed Unsecured Claims | Yes | Yes |
| Class 3 | Allowed Insider Claims | N/A | N/A |
| Class 4 | Membership Interests | N/A | N/A |

4.1 **Class 1: The Allowed Claim of The DIP Lender**

**Classification** – Class 1 consists of the Allowed Claim of the DIP Lender.

**Background** – Prior to the Petition Date, the Debtor was party to various mortgage loans held by BNSB aggregating $1,893,438.92. The Debtor sought and obtained authorization to refinance these mortgaged as part of the DIP Loan. On February 5, 2021 (ECF No. 38), the

6

Bankruptcy Court authorized the Debtor to enter into the post-petition financing loan with the DIP Lender, including the assignment of the BNSB loan documents as modified thereunder. Since entry of the Final DIP Order, the Debtor owes the DIP Lender the net sum of $2,749,824 as of February 1 2022, plus accrued interest.

**Treatment** – On and after the Effective Date, the Debtor shall continue to sell the remaining Homes and Vacant Lots, and the DIP Lender shall be paid from the Sale Proceeds until such time as all outstanding sums under the DIP Loan are paid in full with all accrued interest, fees and expenses.

4.2    **Class 2: Unsecured Claims**

**Classification** – Class 2 consists of the Allowed Unsecured Claims.

**Background** – For purposes of this Plan, all contractors, service providers and vendors which provided work, labor and services to the Project are all being treated as Unsecured Creditors regardless of whether any mechanic's liens were filed, which were subordinate to BSNB in any event.

**Treatment** – Class 2 Unsecured Creditors shall receive a cash payment equal to fifty (50%) percent of their Allowed Claims from the Confirmation Fund on the Effective Date. If a Class 2 Claim is subject to an objection filed on or before the Claim Objection Date, then in such event, a separate reserve shall be established with the Disbursing Agent in an amount sufficient to pay the disputed Class 2 Claim in full, should the Claim in question become an Allowed Claim pursuant to Final Order or agreement with the Debtor. A schedule showing projected distributions to Class 2 Unsecured Creditors is attached hereto as Exhibit "A".

7

4.3   **Class 3: Insider Claims**

**Classification** – Class 3 consists of the Allowed Claims of Insiders, many of which are currently disputed. Indeed, while various proofs of claim have been filed by or on behalf of Howard Blitman by Robin Winter (Claims 21, 22 and 23, as duplicated by Claims 29, 30 and 31), as well as by Howard Blitman's companies, Blitman Development Corp. (Claim No. 24) and Changebridge Construction Corp. (Claim No. 25) (collectively, Claims 21, 22, 23, 24, 25, 29, 30 and 31 are the "Blitman Claims"), the Debtor only recognizes the Claim of Goren Cousins I LLC as being valid. For purposes of the Plan, the Debtor is hereby deeming the insider Blitman Claims as disputed. Accordingly, the Insider Blitman Claims shall not receive any dividend under the Plan absent an Order of the Bankruptcy Court allowing the same in whole or in part.

**Treatment** – The distribution to the Allowed Insider Class 3 Claim(s) is subordinated to the Allowed Claims of Class 2 Unsecured Creditors as provided above. The Allowed Class 3 Claim(s) shall receive the residual Sale Proceeds after payment of Allowed Administrative Expense Claims, Priority Tax Claims, U.S. Trustee Fees and Allowed Class 1 and Class 2 Claims in full.

4.4   **Class 4: Membership Interests**

**Classification** – Class 4 consists of the Equity Interests of the pre-petition members of the Debtor, as follows:

| | |
|---|---|
| Saratoga Goren Trust | 50% |
| Howard Blitman | 15% |
| Gary Peresiper | 15% |
| Scott Varley | 15% |
| Thomas P. Keaney | 5% |

8

**Treatment** – The rights, remedies and claims of holders of Class 4 Equity Interests shall remain unchanged and subject to the Debtor's underlying Operating Agreement and applicable law. All prior litigation by and involving the members and Robin Winter shall resume in the State Courts following the Effective Date. Any residual surplus from the Sale Proceeds shall be distributed to Class 4 Members, *pro rata*, after payment in full of all Allowed Administrative Expenses, Priority Tax Claims, U.S. Trustee Fees, and the Class 1, Class 2 and Class 3 claims.

## ARTICLE V

## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

5.1     The Plan shall be implemented by the continued sale of the remaining Homes and Vacant Lots following the Effective Date. Approval and confirmation of the Plan shall be deemed ratification of the Debtor's continuing authority to pursue and consummate the sale of the remaining Homes and Vacant Lots without the need for further Bankruptcy Court approval (the "**Post-Effective Date Sales**"). All of the net Sale Proceeds (after closing costs and brokerage) generated from the Post-Effective Date Sales shall be paid first to the DIP Lender at the closings thereon to reduce the outstanding DIP Loan until such time as the Class 1 Claim of the DIP Lender is paid in full, together with all accrued interest, fees and expenses, and then to the Class 3 Allowed Insider Claim(s). In the interim, the liens and mortgages of the DIP Lender shall continue and survive confirmation of the Plan, provided, however, the DIP Lender shall issue a partial release of mortgage liens to complete each of the Post-Effective Date Sales.

5.2     The Post-Effective Date Sales shall be pursued with existing contract vendees or third-party buyers at market prices. The Reorganized Debtor shall retain full authority to market and sell the remaining Homes and Vacant Lots in the same manner which existed prior to the Effective Date. At the closings thereon, the Reorganized Debtor is authorized to pay all customary closing costs, brokerage and other usual fees and expenses.

5.3     **Sale Free and Clear of All Claims, Liens, Taxes and Interests.** The remaining Homes and Vacant Lots shall continue to be sold free and clear of all liens, claims, taxes and interests pursuant to 11 U.S.C. §§ 363(b) and (f) and 1123(a)(5), with the DIP Lien to attach to the net Sale Proceeds.

5.4     **Transfer Taxes**. The sale of each of the remaining Homes and Vacant Lots constitutes the making or delivery of an instrument of transfer of property or otherwise, pursuant to or in connection with confirmation of the Plan, and, therefore, all Post-Effective Date Sales shall be exempt from the payment of any local or state stamp, real estate transfer or other similar tax or governmental assessment pursuant to 11 U.S.C. §1146(a).

5.5     **Disbursing Agent**.

The Confirmation Order shall approve the appointment of the Disbursing Agent to assist the Debtor in carrying out the following functions:

(i)     To pursue and consummate the sale of the remaining Homes and Vacant Lots with third-party purchasers at market prices;

(ii)    To establish the Confirmation Fund;

(iii)   To review, settle, compromise, negotiate or otherwise resolve all Claims in dispute as of the Claim Objection Deadline;

(iv)    To implement and effectuate the provisions of this Plan; and

(v)     To move for entry of the final decree closing the Chapter 11 case.

5.6     **Preservation of Causes of Action**. Except as otherwise provided in the Plan, all pre-petition and post-petition claims and causes of action arising under federal or state law belonging, accruing or held by the Debtor as of the Effective Date shall vest in the Reorganized Debtor and may be enforced by the Disbursing Agent on behalf of the Reorganized Debtor following the Effective Date.

**TREATMENT OF EXECUTORY CONTRACTS**

6.1 **Executory Contracts**. The Debtor's executory contract consist of the pre-petition purchase agreements to sell the various homes, some of which have been assumed and closed, and some of which have been terminated and are designated for resale. The Debtor and Reorganized Debtor shall continue efforts to negotiate with existing buyers regarding the closings on the remaining unsold Homes. The Debtor reserves the right to reject any purchase agreement not otherwise resolved and settled as of the Effective Date. To the extent the Debtor exercises is right to reject a purchase agreement, the Confirmation Order shall contain provisions authorizing the rejection of such purchase agreement, with the counterparty thereto directed to file any claim for damages within thirty (30) days after the Effective Date.

## ARTICLE VI

## NO DISCHARGE AND NO THIRD PARTY RELEASES

7.1 **Binding Effect**. On the Effective Date, the terms of this Plan shall be effective and enforceable and shall bind all holders of Claims against or interests in and against the Debtor, whether or not such holders voted to accept the Plan.

7.2 **No Discharge**. Pursuant to Section 1141(d)(3) of the Bankruptcy Code, neither the Plan nor confirmation thereof shall discharge any Claim against the Debtor, except that receipt of a distribution shall constitute a valid and binding settlement of all outstanding claims and liabilities.

7.3 **Injunction.** Except as otherwise provided herein, all creditors (except the DIP Lender) which have held, currently hold, or may hold Claims, Liens, Equity Interests or Causes of Action against or in the Debtor are permanently enjoined from taking any of the following actions: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affecting the Debtor's assets, on account of

or in connection with or with respect to any such Claim, Lien, Equity Interest, or Cause of Action other than as contemplated by the Plan; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Debtor's assets on account of or in connection with or with respect to any such Claim, Lien, Equity Interest or Cause of Action; and (iii) asserting any set-off, right of subrogation or recoupment of any kind directly or indirectly against the Debtor's assets on account of or in connection with or with respect to any such Claim, Lien, Equity Interest, or Cause of Action.

7.4    **No Third Party Releases.**  Nothing contained in this Plan shall constitute a release of any third parties with respect to any obligations, liabilities or debts arising out of or in connection with the Debtor and its business and legal affairs, including all guaranties. Following the Effective Date, neither the DIP Lender nor the Debtor's Equity Holders are restricted, stayed or precluded from continuing or commencing legal action in the State Courts, including pursuit of all claims against the Estate of Howard Blitman or Robin Winter. The Bankruptcy Court shall not exercise any continuing post-confirmation jurisdiction over any claims by and among non-debtor third parties relating to the Debtor's prior business or legal affairs, which shall be remanded to the State Court as applicable.

## ARTICLE VII

## MISCELLANEOUS PROVISIONS

8.1    **Orders in Aid of Consummation.**  Pursuant to applicable provisions of the Bankruptcy Code, the Bankruptcy Court may enter order(s), as warranted in aid of implementation the Plan.

8.2    **Compliance with Tax Requirements**. The Debtor and the Reorganized Debtor shall comply with all reporting and tax requirements imposed by federal or state law; provided,

however, that the transfer of the Homes and Vacant Lots shall not be subject to any local or state transfer taxes as provided under section 1146(a) of the Bankruptcy Code.

8.3     **Modification.**  The Plan may be further amended or modified on motion of the Debtor prior to substantial consummation thereof.

8.4     **Successors and Assigns.**  The rights, benefits and obligations relating to the Plan shall be binding on, and shall inure to the benefit of the Debtor and all creditors and Equity Holders, together with their respective heirs, assigns and successor.

8.5     **Plan Controls.**  In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement or any prior Order of the Bankruptcy court, the provisions of the Plan shall control.

## ARTICLE VIII

## RETENTION OF JURISDICTION

9.1     **Retention of Jurisdiction.**  The Bankruptcy Court shall retain post-confirmation jurisdiction, pending the entry of a Final Decree, relating to the following matters:

   a. Resolve all matters arising under or relating to the enforcement and implementation of the Plan;

   b. Resolve all matters or dispute that may arise in connection with the sake of Homes and Vacant Lots;

   c. Allow, disallow, determine, liquidate, classify or establish the priority of any Claim or Interest;

   d. Grant or deny final applications for allowance of Professional Fees and Expenses;

   e. Decide all applications, motions, adversary proceedings, contested or litigated matters, and any other matters involving the Debtors that may be pending on the Effective Date;

   f. Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments and other agreements or documents created in connection with the Plan; and

13

g.     Enter an Order and Final Decree closing the Chapter 11 case.

14

# ARTICLE IX

## CLOSING THE CASE

10.1  **Bankruptcy Fees**. All Bankruptcy Fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 will be paid until the actual closing of the bankruptcy cases.

10.2  **Post-Confirmation Reporting**. The Disbursing Agent shall file reports with the Bankruptcy Court on a quarterly basis, reflecting disbursements made Post-Effective Date. The reports shall be filed within 15 days after the conclusion of each such period until the entry of a final decree closing the Debtor's Chapter 11 case. Any such reports shall be prepared consistent with (both in terms of content and format) the applicable Bankruptcy Court and United States Trustee's Guidelines for such matters.

10.3  **Closing the Case**. The Disbursing Agent shall move for the entry of a final decree closing the bankruptcy cases upon substantial consummation of the Plan.

Dated: New York, New York
       January 31, 2022

| | |
|---|---|
| Blitman Saratoga LLC | Goldberg Weprin Finkel Goldstein LLP<br>Attorneys for the Debtor<br>1501 Broadway 22nd Floor<br>New York, New York<br>(212) 221-5700 |
| By: /s/ Thomas Keaney<br>    Thomas Keaney<br>    Manager | By: /s/ Kevin J. Nash<br>    Kevin J. Nash |

# EXHIBIT A

Blitman Saratoga Claims Report

| General Unsecured Claims | Allowed | Dividend |
|---|---|---|
| 518 Contracting LLC | $7,425.00 | $3,712.50 |
| Alerdice Building Supply Inc. | $0.00 | $0.00 |
| Appolo Heating Inc. | $35,235.75 | $17,617.88 |
| Arthur J. Gallagher Risk Management | $0.00 | $0.00 |
| Beaver Pond Village HOA, Inc. | $747.75 | $373.88 |
| Boswell Engineering | $36,835.50 | $18,417.75 |
| Casella Waste Services | $1,931.48 | $965.74 |
| Clemente Callanan Industries | $26,582.04 | $13,291.02 |
| Curtis Lumber | $246,231.60 | $123,115.80 |
| Daigle Cleaning Systems Inc. | $1,942.85 | $971.43 |
| Eagle Associates Concrete | $0.00 | $0.00 |
| Eric & Laura Lyeth | Disputed | $0.00 |
| Erie Materials | $0.00 | $0.00 |
| Evans Architects AIA | $0.00 | $0.00 |
| Floor Source Inc. | $29,287.64 | $14,643.82 |
| Frank G. & Margaret E. Colone | Disputed | $0.00 |
| Graig & Giovanna Eastin | Disputed | $0.00 |
| Granite and Marble Works Inc. | $10,201.06 | $5,100.53 |
| John D. Marcella Appliances | $8,400.00 | $4,200.00 |
| Lance Plumbing | $2,730.00 | $1,365.00 |
| Lazio Masonry LLC | $3,720.00 | $1,860.00 |
| Lucarelli Sand and Gravel | $8,300.00 | $4,150.00 |
| Lucio DeCarlo Trimming | $3,967.75 | $1,983.88 |
| Madsen Overhead Doors Inc. | $2,414.00 | $1,207.00 |
| Mazars | $4,175.00 | $2,087.50 |
| Michael & Lisa Akker | $0.00 | $0.00 |
| National Grid | $0.00 | $0.00 |
| Northway Tile LLC | $27,215.00 | $13,607.50 |
| N.Y. Atyy General/Consumer Fraud | $0.00 | $0.00 |
| Precision Concrete Pumping Inc. | $2,591.00 | $1,295.50 |
| Precision Upstate | $1,376.37 | $688.19 |
| Pro Tech Automatic | $13,344.35 | $6,672.18 |
| Richard & Catherine Bennice | $0.00 | $0.00 |
| Ross Concrete | $18,349.50 | $9,174.75 |
| Ruszard & Beata Lesiak | $0.00 | $0.00 |
| Saratoga Sod Farm | $1,814.88 | $907.44 |
| Sheft Electric | $0.00 | $0.00 |
| SMC Carpentry | $0.00 | $0.00 |
| Snyder's Drywall | $98,610.00 | $49,305.00 |
| SPHS - Saratoga Springs Co. | $0.00 | $0.00 |
| Staples, Inc | $76.87 | $38.44 |
| Stephen & Susan Dorsey | $0.00 | $0.00 |
| Stone Industries LLC | $207.15 | $103.58 |

| | | |
|---|---:|---:|
| Sunshine Landscaping | $13,040.00 | $6,520.00 |
| Time Warner Cable/Spectrum | $0.00 | $0.00 |
| Tom & Marlene Guiffre | Disputed | $0.00 |
| Town & Country Painting | Disputed | $0.00 |
| TPK Development Inc. | $53,265.00 | $26,632.50 |
| Williams Scotsman Inc. | $973.70 | $486.85 |
| Totals: | $660,991.24 | $330,495.62 |