UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

Blitman Saratoga LLC,

                                 Debtor.
------------------------------------------------------------x

Return Date: February 18, 2022
10:00 A.M.

Chapter 11

Case No. 20-23177 (RDD)

## DEBTOR'S RESPONSE TO THE OBJECTION FILED BY ROBIN WINTER TO THE DEBTOR'S OMNIBUS SALE MOTION

The Debtor herein, Blitman Saratoga, LLC (the "Debtor"), as and for its Response to the objection of Robin Winter ("Winter"), to the Debtor's Omnibus Sale Motion (the "Motion") respectfully states as follows:

### PRELIMINARY STATEMENT

1. Winter, acting on behalf of the Estate of her deceased father Howard Blitman, filed an Objection to the Debtor's Motion seeking approval of the pending sale contracts relating to 47 Jane Street and 49 Jane Street. Winter is the lone Objector - the proposed sales have already gained the support of the Official Committee of Unsecured Creditors (the "Committee"), which recognized the legitimacy of the Debtor's exercise of its business judgment, particularly, since a substantial part of the sale proceeds are dedicated to funding the immediate cash requirements under the Debtor's proposed Plan of Reorganization, including a 50% cash dividend to non-insider general creditors and contractors.

2. Nevertheless, Winter has "objected" to, or "questioned", various aspects of the Motion, cherry-picking certain items, presumably because she believes they undermine her personal interests even though all of the claims of the Blitman Estate are highly disputed. For the reasons set forth below, the concerns raised by Winter should be overruled, as there is no valid basis to parse the terms of the proposed sales to suit a personal agenda. The Debtor presented the

sale contracts in their entirety (<u>cum onere</u>) and the Court should approve the sale contracts in order to facilitate prompt closings and engender confidence in the local markets.

### PAYMENT OF BROKERAGE COMMISSIONS ARE A NECESSARY PART OF THE SALE PROCESS

3.   At this juncture, the Estate of Blitman has been a bystander in a time-consuming and expensive process dedicated to completing construction of the remaining homes under trying circumstances, addressing the concerns of existing and would-be home buyers, and moving the bankruptcy case forward towards confirmation based on negotiations with the Committee. Considering that the other members of the Debtor blame the Blitman family for the stalled development, the reality is that the Debtor has done everything reasonable to preserve cash resources. The Debtor would like to avoid paying brokerage, but that is not practical [penny wise, pound foolish as they say] and would only hamper future sales activity. The Motion made pointed reference that Scott Varley is a minority member of the Debtor. However, Mr. Varley through his current firm (Keller Williams), and a prior firm have been the listing broker on the project since inception, having brokered seventy (70) or more sales. Mr. Varley was initially brought on board as the broker for the project by Howard Blitman. Moreover, Mr. Varley thereafter became a 15% member in the Debtor with the consent of Howard Blitman after buying-out another partner several years ago.

4.   To the Debtor's knowledge Mr. Varley is not a principal of Keller Williams, which is otherwise a respected brokerage company in the area. The proposed commission (5% including co-brokers as applicable) is competitive in the market and are viewed as being incurred and paid in the ordinary course of the Debtor's business. The commission arrangements were prominently disclosed in the Motion, and include a co-broker for 47 Jane Street (Roohan Realty). Moreover, it makes little sense to change brokers with about five (5) homes left to sell. Thus, all things

considered, the Debtor is seeking authorization to pay the brokerage as part of the sale process because in the Debtor's view, the overall benefits (short-term and long-term) outweigh the costs.

### THE USE OF THE NET SALE PROCEEDS TO FUND THE PROPOSED PLAN OF REORGANIZATIONS IS PERMISSIBLE

5. As noted in the Motion, the Debtor intends to use the net sale proceeds for multiple purposes. Some part of the proceeds will be used to pay-down the existing mortgage debt assigned to the DIP Lender by BNSB (about $200,000), but most of the sale proceeds are dedicated for plan purposes. The Debtor negotiated with the Committee to allocate approximately $600,000 from the sale to fund the Plan, and thereby, enable the Debtor to exit Chapter 11 by the spring.

6. The Final DIP Order should not be read to preclude utilizing sale proceeds for Plan funding for the benefit of priority and non-insider unsecured creditors. Third-party creditors have better rights to the disposition of the sale proceeds than the Estate of Blitman, which at this point holds disputed insider claims. Accordingly, approval of the sale contracts should not be conditioned upon any limitation regarding Plan funding (or, for that matter the terms of the proposed Plan of Reorganization). The Debtor intends to file a Disclosure Statement after the hearing on the Motion, at which point the Debtor can better assess its ability to proceed as contemplated.

7. Insofar as Winter's commentary regarding the proposed treatment of insider claims under the proposed Plan is concerned, it should not be a surprise to anyone that the Debtor is disputing all of the Blitman claims. Moreover, that the Debtor recognizes the claim of Goren Cousins I LLC ("Goren Cousins") is not disparate treatment, but consistent with the fact that Howard Blitman himself personally guaranteed the claim of Goren Cousins, which gives if far more legitimacy that his own personal claims. A copy of the Goren Cousins proof of claim attaching the Howard Blitman Guaranty is attached as hereto Exhibit "A". The proposed Plan

provides that all insider disputes will be litigated in the State Court following confirmation to eliminate the need for future Bankruptcy Court involvement over any matters relating to the insiders, all of whom are non-debtor third-parties.

8. The balance of the Winter comments do not make substantial points and will be addressed informally with counsel.

**WHEREFORE**, for all of the reasons set forth above, the Objection filed by Winter should be overruled.

Dated: New York, New York
February 16, 2022

                                        Goldberg Weprin Finkel Goldstein LLP
                                        Attorneys for the Debtor
                                        1501 Broadway, 22nd Floor
                                        New York, New York 10036
                                        (212) 221-5700

                                        By: _____
                                               Kevin J. Nash

X:\GWFG\new data\Yen\word\Blitman Saratoga, LLC\Debtor's Response to Robin Winter's Obj to Debtor's Omnibus Mtn 2-16-21 v1.docx

4