**EXHIBIT A**

# THE SGAMBETTERA LAW FIRM
*A Commercial Transaction and Litigation Law Firm*

Matthew J. Sgambettera, Esq.
msgambettera@gmail.com

480 Broadway, Suite 316
Saratoga Springs, New York 12866
(518) 505-4962
FAX: (518) 587-0575

October 27, 2022

**VIA EMAIL**
Kevin J. Nash, Esq.
Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, New York 10036

Re: Blitman Saratoga, LLC to Tom and Marlene Guiffre
Lot 14, Beaver Pond Village, Saratoga Springs, New York

Dear Attorney Nash:

Per our discussion last week, this letter shall confirm that my clients Tom and Marlene Guiffre have agreed to purchase and Blitman Saratoga, LLC has agreed to sell Lot 14, Beaver Pond Village, Saratoga Springs, New York for a total of $538,000.00.

If you have any questions or concerns, please feel free to contact me at any time to discuss the same. Also, I thank you for working with me to reach an amicable resolution of this matter.

Very truly yours,

Matthew J. Sgambettera

Enclosures
cc: Tom and Marlene Guiffre (via email)
Michele Anderson, Esq. (via email)

# BEAVER POND VILLAGE HOMEOWNERS' ASSOCIATION, INC.
## PURCHASE AGREEMENT

AGREEMENT made and dated _____December 17, 2018__, between Blitman Saratoga LLC, a New York limited liability company having a place of business located at 222 Bloomingdale Road, Suite 404, White Plains, New York 10605, hereinafter called the "Seller" or "Sponsor", and __Tom and Marlene Guiffre_____, residing at ___113 Cedar Lane, Broadalbin_____, hereinafter called the "Purchaser".

**WHEREAS**, the Seller desires to offer for sale single-family homes to be situated on the land owned by it located in the City of Saratoga Springs, County of Saratoga, State of New York, and the Purchaser is desirous of purchasing a home therein (the "Project"),

**NOW, THEREFORE**, in consideration of the mutual promises and undertakings herinafter set forth, the parties hereto mutually agree as follows:

**1. Sale of Home.** The Seller agrees to sell and convey, and the Purchaser agrees to purchase: All that certain plot, piece or parcel of land, the buildings and improvements thereon erected or to be erected, situate, lying and being in the City of Saratoga Springs, County of Saratoga and State of New York, known as Lot No. __14__ on a Map entitled "Beaver Pond Village," filed in the Saratoga County Clerk's Office on December 5, 2011 as Map 2011206, as the same may be amended hereafter, including any amendments, changes and modifications to lot lines and shifting of boundaries (the "Lot" or the "Premises"). The home to be constructed on the Premises (the "Home") shall conform substantially in appearance to Model Type _____Rosewood_____ as per plans and specifications on exhibit by the Seller in the Seller's sales office.

**2. Initial Purchase Price.** The initial purchase price is $____438,000.00_____ (the "Initial Purchase Price") payable as follows:

(a) $21,900.00_____ (_5_% of the Initial Purchase Price) on the signing of this Agreement (the "Down Payment"), receipt of which is hereby acknowledged; UPON ATTORNEY'S APPROVAL

(b) $21,900.00_____ (_5_% of the Initial Purchase Price) within five (5) business days after notice of the building permit is delivered to the Purchaser (the "Additional Down Payment" which, with the Down Payment, shall collectively be referred to as the "Down Payment"), **TIME BEING OF THE ESSENCE** relative to the Additional Down Payment.

(c) $394,200.00_____ (_90_% of the Initial Purchase Price) by unendorsed certified check or cashier's check, drawn on a New York Bank, payable directly to the order of Seller or Seller's designee, due at Closing of title (as hereinafter defined).

Any payment made by personal check is accepted by the Seller subject to collection. If any check tendered is not honored, the Purchaser shall provide a certified check or cashier's check payable as directed by the Seller within seventy-two (72) hours after demand for replacement thereof.

Notwithstanding the foregoing, if for any reason whatsoever any personal check given by the Purchaser for the Down Payment hereunder is dishonored, the Seller shall have the right to cancel this Agreement. The Seller's election to cancel shall not be deemed a waiver by the Seller of its right to pursue other remedies.

ALL PAYMENTS AT CLOSING PURSUANT TO THIS AGREEMENT ARE TO BE MADE BY GOOD UNENDORSED CERTIFIED CHECK OR CASHIER'S CHECK MADE PAYABLE DIRECTLY TO THE ORDER OF THE SELLER OR AS DIRECTED BY SELLER AND DRAWN ON A BANK WHICH IS A MEMBER OF THE NEW YORK CLEARING HOUSE. UNCERTIFIED CHECKS OF A FUNDING COMPANY OR ATTORNEYS' ESCROW ACCOUNT WILL NOT BE ACCEPTED BY THE SELLER ON ACCOUNT OF PROCEEDS DUE FROM THE PURCHASER.

Title to all items of personal property shall be delivered free and clear of all liens and encumbrances, except the lien of the mortgage applied for by Purchaser herein, if any.

All sums paid on account of this Agreement are hereby made liens upon said Premises, but such liens shall not continue after default by the Purchaser under this Agreement.

3. **Mortgage Contingency.** This Agreement is subject to and conditioned upon issuance of a written commitment (the "Commitment") for a conventional (fixed or adjustable rate) mortgage loan encumbering the Premises for a term not to exceed thirty (30) years, at the prevailing rate of interest, in an amount as applied for by the Purchaser, not to exceed $___394,200.00___ (the "Loan"). The Purchaser further agrees to apply to two (2) lending institutions if necessary to obtain said loan (the "Lender"). The Purchaser shall, within five (5) business days from the date of the acceptance of this Agreement by the Seller, diligently, truthfully and in good faith apply for the Loan and shall furnish and execute all documents required, and shall pay all costs and expenses required by the Lender to process the application and issue the Commitment. Failure to make application to the Lender within five (5) business days shall be deemed a waiver of this contingency by the Purchaser. The Purchaser shall also pay all applicable fees connected therewith such as origination fees, fees for credit reports, the cost of appraisal and inspection fees, private mortgage insurance where applicable, mortgage tax (provided that any credit received as result of mortgage tax previously paid in connection with the building loan mortgage will inure to the Seller and will be paid by the Purchaser to the Seller at Closing), title insurance, bank attorneys' fees for preparation of the documents necessary for the mortgage loan, including the building loan if said loan is being extended and/or consolidated with the Purchaser's mortgage, all recording fees and all other bank or governmental charges assessed on the loan.

(a) The Purchaser shall, at the Seller's request, furnish Seller with a copy of its application for the Loan and with the name and address of the Lender. Purchaser shall promptly notify the Seller in writing after receipt of either the Commitment or written denial of the application for the Loan, enclosing a copy of the Commitment or denial letter with the notice.

(b) In the event the Purchaser has not received the Commitment within forty-five (45) days from the date of the acceptance of this Agreement by the Seller, then either party hereto may elect to cancel this Agreement within five (5) business days thereafter and, provided the Purchaser shall have complied with all of the provisions hereof, the Down Payment made hereunder shall be returned to the Purchaser, and all rights and obligations between the parties shall cease and terminate, except for those herein which expressly survive termination of this Agreement. If the Purchaser does not cancel as set forth, this contingency shall thereafter be deemed waived. Notwithstanding the foregoing, the Seller may, in its sole discretion, extend the Purchaser's time to obtain the Commitment for a period not to exceed thirty (30) days, and the Purchaser's notice of cancellation shall not be deemed effective until the expiration of such additional time. In the event the Seller elects to extend the Purchaser's time to obtain the Commitment, then the Purchaser shall continue to diligently pursue the issuance of the Commitment within such additional time.

(c) The Purchaser represents that it has no judgments outstanding or proceedings pending against it in any Court, nor has it ever been adjudicated as bankrupt. Purchaser has inquired and is familiar with the requirements to obtain the Commitment and believes it has sufficient income and assets to qualify for same. The Purchaser agrees that it will not negatively alter its financial condition prior to Closing.

(d) Upon issuance of the Commitment, the provisions of paragraph shall be deemed satisfied and of no further force and effect, even if the Commitment shall expire prior to Closing. In the event the Commitment

contains a provision that it is conditioned upon the sale of any real estate or other assets owned by the Purchaser, then such condition in the Commitment shall not be grounds for the Purchaser to cancel this Agreement, and to that extent the Commitment shall be deemed unconditional.

4. **Closing of Title and Delivery of Deed.**

(a) "Closing" shall mean the settlement of the parties' obligations to each other under this Agreement, including, but not limited to, Seller's delivery of the deed and possession of the Premises to the Purchaser, and Purchaser's payment of the balance of the Total Purchase Price, Total Purchase Price to include the Initial Purchase Price and the costs of upgrades. Closing shall take place at the office of Seller's attorneys, Mazzotta & Vagianelis, P.C., at 9 Washington Square, Albany, New York 12205 on or about 180 days from building permit, or at another date and time designated by the Seller or its attorneys upon seven (7) days' written notice mailed to the Purchaser at its address hereinabove set forth with a copy of a temporary or permanent Certificate of Occupancy. Alternatively, Closing may take place at the location required by the Purchaser's lender.

(b) The Seller shall be entitled to a reasonable adjournment in the closing of title as set forth in Paragraphs 7 and 21 of this Agreement or as otherwise provided herein. If the Purchaser is not willing or able to close title at the date and time fixed pursuant to this Agreement, any adjournment exceeding seven (7) business days granted at the request of the Purchaser shall be upon the condition that the Purchaser shall (i) pay interest to the Seller at closing on the balance of the Total Purchase Price computed from the date originally fixed for closing to the actual date of closing at a rate equal to four (4%) percent over the prime rate as published in the Wall Street Journal as of the date of closing, and (ii) all adjustments including, but not limited to, real estate taxes, Association Assessments, water, electric, sewer and gas shall be made as of the date originally fixed for closing. Nothing herein contained shall be construed to require the Seller to grant any adjournment. In the event the Home or its environs are not fully completed and Final Inspection Sheet items as defined below exist, such Final Inspection Sheet items shall not be a basis for a delay of Closing by Purchaser provided a Temporary Certificate of Occupancy or a Certificate of Occupancy has been issued by the municipality. Issuance of a Temporary Certificate of Occupancy or a Certificate of Occupancy shall signify that a Home is substantially complete and habitable. Purchaser shall have the right to a final walk through of the Premises no sooner than five (5) business days prior to closing.

(c) In the event the Seller and the Purchaser convene to close title and the Purchaser requires an adjournment of closing due to the Purchaser's failure to comply with any terms or conditions of this Agreement or of its mortgage commitment or for any reason beyond the control of the Seller, or the Purchaser or its attorney fails to attend a scheduled closing or causes a closing to be adjourned without having obtained an adjournment as hereinabove provided, then, in addition to any amount due as set forth above for an adjournment, the Purchaser shall pay to the Seller's attorney the sum of $500.00 Dollars as its fee for attendance at any such closing.

5. **Closing Costs and Adjustments.**

(a) The Purchaser agrees to pay at Closing the applicable New York State Real Estate Transfer Tax, all recording fees, a survey fee of $850.00, any application fee(s) for water and sewer new service connection, if such is established by resolution of the City Council, City of Saratoga Springs, a meter installation charge of $350.00, and the Purchaser's prorated Homeowners' Association fee.

(b) In the event the Purchaser shall obtain a mortgage to finance a portion of the Total Purchase Price, the Purchaser shall also pay all applicable fees in connection therewith as stated in paragraph 3 herein.

(c) The Purchaser shall pay at Closing all applicable real estate taxes and other usual and normal closing charges and any Association Assessments assessed during the month that title closes or established as a reserve shall be adjusted as of the closing date, based upon the last bill rendered for such taxes or charges. With respect to any period for which taxes are not or will not be separately billed with respect to the Premises, taxes shall be allocated to such Premises as follows: The amount of such Undivided Tax Bill allocable to each lot shall be

determined by allocating the portion of such bill attributable to land in equal shares among the lots covered by such bill (disregarding the common areas for such purpose), and by allocating the portion of such bill attributable to buildings, if any, among the lots covered by such bill in accordance with the tax assessor's determination of the respective values of the buildings on the affected lots.

(d) The Purchaser shall pay the fee of his own attorney and $1,250.00 to the Seller's counsel representing a fee for services in connection with preparing the deed and coordinating the Closing. The Purchaser shall also pay an additional amount to the Seller's attorney of $250.00, if the Purchaser's lender requires that Closing take place outside Albany, Schenectady, Rensselaer or Saratoga County.

(e) The Purchaser shall pay the premium and other costs for a fee title insurance policy, if Purchaser desires such coverage.

(f) Any errors or omissions in computing apportionments or any other sums payable under this Paragraph which are communicated to the other party within one (1) year after Closing shall be corrected and payment made to the proper party promptly after such communication.

The provisions of this Paragraph shall survive Closing.

6. **Deed and Subject To.** At Closing, Seller shall deliver to Purchaser a Bargain and Sale Deed with Covenant Against Grantors Acts, duly executed and acknowledged by the Seller, in proper statutory form for recording, so as to convey to the Purchaser fee simple title to the Premises, free and clear of all liens and encumbrances, except as herein stated, and shall also contain the covenant required by subdivision 5 of Section 13 of the New York Lien Law. The Purchaser shall accept such title as any reputable title insurance company, which is a member of the New York Board of Title Underwriters, will accept and insure in accordance with its standard form of fee title insurance policy, subject only to those matters set forth herein. Title to the premises is sold and shall be conveyed subject to:

(a) Ordinances, laws and regulations of competent municipal or other governmental authorities.

(b) Easements given or to be given to municipalities, special districts, electric, light, gas, telephone and other public utility companies or the Association for the erection and maintenance of improvements, and for drainage and sewer purposes, provided any such easements made after the date of this Contract do not render title uninsurable.

(c) Easements for conservation, landscaping, screening, buffers, scenic purposes, planting and snow removal.

(d) Unpaid taxes and liens, not yet due and payable, subject to apportionment as described in Paragraph 5 of this Agreement.

(e) State of facts, notes and easements on the Subdivision map, as described in Paragraph 1 of this Agreement, as it may be amended, provided that neither the size nor the approximate location of the Lot covered by this Agreement may be changed without the Purchaser's consent (which consent shall not be unreasonably refused in the case of minor changes necessitated by conditions encountered during construction).

(f) Rights of others to the free and unobstructed flow of any brooks or watercourses on the Project property.

(g) Encroachments of driveway, lawn, landscaping, walls, fences, walks, trim, if any, onto adjacent residences or of adjoining residences onto this Property as may exist as of closing.

(h) Health Department Covenants.

(i) Subject to any easements made pursuant to rights reserved by Seller or the Association under the Declaration.

(j) Any additional easements, rights of way, covenants, agreements and consents that may be required by any utility company, municipality and/or otherwise required for the construction of the Project, provided same do not render title uninsurable.

(k) Any state of facts an accurate survey of the Premises would show provided same do not render title uninsurable.

(l) Declaration of Protective Covenants, Conditions, Restrictions, Easements, Charges and Liens of the Association dated December 19, 2011 and recorded April 4, 2012 in the Saratoga County Clerk's Office as Instrument #2012013160.

(m) Amendment to Declaration of Protective Covenants, Conditions, Restrictions, Charges and Liens of the Association dated February 28, 2013 and recorded March 6, 2013 in the Saratoga County Clerk's Office as Instrument #2013010158.

(n) Supplemental Declaration of Protective Covenants, Conditions, Restrictions, Charges and Liens of the Association dated March 11, 2014 and recorded March 26, 2014 in the Saratoga County Clerk's Office as Instrument #2014008390.

(o) Second Supplemental Declaration of Protective Covenants, Conditions, Restrictions, Charges and Liens of the Association dated November 16, 2015 and recorded November 20, 2015 in the Saratoga County Clerk's Office as Instrument #2015034936.

(p) Third Supplemental Declaration of Protective Covenants, Conditions, Restrictions, Charges and Liens of the Association dated May 24, 2017 and recorded June 6, 2017 in the Saratoga County Clerk's Office as Instrument #2017017358.

(q) Fourth Supplemental Declaration of Protective Covenants, Conditions, Restrictions, Charges and Liens of the Association dated December 21, 2017 and recorded January 8, 2018 in the Saratoga County Clerk's Office as Instrument #2018000658.

7. **Title Report.** The Purchaser shall proceed, at its expense, to have title to the Premises examined by Sneeringer Monahan Provost Redgrave Title Agency, Inc. (contact Timothy J. Provost, 518-885-8700), or any title insurance company of Purchaser's choice, and shall deliver a full copy of the title report to the Seller's counsel as soon as the same is received, but in no event later then sixty (60) days prior to the date of Closing, with a notice of any liens, encumbrances or other defects of title which Seller is obligated to remove hereunder, and as to which the Purchaser is unwilling to accept title subject to.

In the event that on the date of Closing, the Seller's title to the Premises is subject to liens, encumbrances or objections, other than those subject to which Purchaser is obligated to accept title hereunder, and if the Purchaser is unwilling to waive the same and to close this transaction without abatement of the purchase price or allowance of any kind, after Seller has first complied with its obligations under this paragraph, the Seller shall have the right, at the Seller's sole election, to either (a) take such action as the Seller deems advisable to remove, remedy or comply with such liens, encumbrances, or objections or (b) cancel this Agreement.

In the event that the Seller elects to take action to remove, remedy or comply with such liens, encumbrances, or objections, the Seller shall be entitled to an adjournment of the Closing for a period not to exceed ninety (90) days. If the Seller has not succeeded in removing, remedying or complying with such liens, encumbrances, or objections within ninety (90) calendar days, the Seller shall give the Purchaser written notice that it has not so succeeded and the Purchaser shall have fifteen (15) calendar days from the mailing of such

written notice to purchase the Lot, subject to such liens, encumbrances, objections, etc., with a credit against the Total Purchase Price equivalent to the cost to remove, remedy or comply with, such liens, encumbrances or objections, as reasonably estimated by the Seller and the Purchaser's title insurer. If the Purchaser is unwilling to so close this transaction, then this Agreement shall be deemed to be cancelled.

In the event of the cancellation of this Agreement under any of the circumstances provided in this paragraph, this Agreement shall cease, terminate and come to an end, and neither party hereto shall have any rights, obligations or liabilities against or to the other, except that the Purchaser shall be entitled to the refund of the Down Payments made hereunder by the Purchaser. Nothing herein contained shall obligate the Seller to bring any action or proceeding or otherwise incur any expense in order to render title to the Premises marketable.

8. **Beaver Pond Village Homeowner's Association, Inc. (the "Association")**. The Seller has exhibited and delivered to the Purchaser prior to accepting any Down Payment, and the Purchaser has read and agrees to be bound by, the Declaration of Protective Covenants, Conditions, Restrictions, Easements, Charges and Liens of the Association, By-Laws of the Association, and Offering Plan of the Association with the Exhibits attached thereto, as the same may from time to time be amended, all of which are incorporated by reference and made a part of this Agreement with the same force and effect as if set forth in full herein. With the purchase of the Home, the Purchaser acknowledges that the Purchaser will automatically become a member of the Association and subject to its rules and regulations and liable for its assessments, and that the Total Purchase Price of the Home includes the cost of membership in the Association.

9. **Breach of Purchase Agreement by Purchaser**. Should the Purchaser be in default under any of the terms of this Agreement, which monetary default remains uncured for ten (10) calendar days or non-monetary default remains uncured for thirty (30) days after written notice of such default from the Seller, the Seller may, at its option, upon notice to the Purchaser, retain all or any part of the monies paid on account hereunder (including without limitation any amounts paid on account of upgrades consisting of extra's, additional charge selections, and any options ordered), as liquidated damages, in which event the parties shall be discharged of all further liability hereunder. The provisions shall apply whether or not construction has commenced and regardless of any sale of the Premises subsequent to the Purchaser's default.

10. **Subordination of Purchase Agreement to Building Loan Mortgage**. The Purchaser agrees that all terms and provisions of this Agreement are and shall be subject and subordinate to the lien of any building loan mortgage heretofore or hereafter made, and any advances heretofore or hereafter made thereon, and any payments or expenses already made or incurred, or which may hereafter be made or incurred, pursuant to the terms thereof, to the full extent thereof, without the execution of any further legal documents by the Purchaser. This subordination shall apply whether such advances are voluntary or involuntary, and whether made in accordance with the building loan schedule of payments, or accelerated thereunder by virtue of the lender's right to make advances before they become due in accordance with the schedule of payments. The Seller shall satisfy all such mortgages or obtain a release of the Premises from the lien of such mortgage, at or prior to Closing, except for the individual mortgage covering the mortgage loan taken out by the Purchaser, if any, whether same be by extension, assumption, consolidation or otherwise.

11. **Risk of Loss**. The risk of loss or damage to the Premises by fire or any other cause until the delivery of the deed is assumed by the Seller.

12. **Lack of Labor/Materials; Seller's Right to Cancel**. The parties hereto do hereby agree that the Seller may cancel this Agreement by forwarding its check in the full amount paid by the Purchaser hereunder, together with a notice in writing, addressed to the Purchaser at Purchaser's address hereinabove set forth in the event of the occurrence of either of the following:

(a) that any governmental bureau, department or subdivision thereof shall impose restrictions on the manufacture, sale, distribution and/or use of materials from its regular suppliers or from using same in the construction and/or completion of the Home; or

(b) that the Seller is unable to obtain materials from its usual sources due to strikes, lockouts, war (declared or undeclared), military operations, oil embargoes and requirements or national emergencies, or the installation of public utilities is restricted or curtailed.

13. **Possession by Purchaser Prior to Closing.** It is expressly understood and agreed that the Purchaser shall in no event take possession of the Premises prior to the time of delivery of the deed and full compliance by the Purchaser with the terms of this Agreement, nor shall the Purchaser enter the Home or have his contractors, inspectors, or agents enter the home to perform work or for any other reason prior to closing without the written authorization of the Seller and accompanied by a representative of the Seller. The Seller shall have the right to remove all unauthorized work and charge the Purchaser for such removal. If the Purchaser does not pay the Seller the cost of such removal within fourteen (14) days of notice, such refusal shall constitute a default of this Agreement by the Purchaser. Should the Purchaser violate this provision and take possession of the Premises prior to Closing without the written permission of Seller, the Purchaser consents that the Seller shall have the right to remove him from the Premises as a squatter and intruder by summary proceedings and Purchaser shall be liable for all Seller's costs in relation to such proceeding, including reasonable attorneys' fees. Upon the Purchaser's unauthorized possession, the Purchaser shall be deemed in default hereunder at the option of the Seller, and upon such election, all amounts paid hereunder shall belong to the Seller as liquidated damages and this Agreement shall be deemed canceled. It is further understood and agreed that the Seller will not be responsible for damage or loss to any property belonging to the Purchaser whether same is delivered to the Premises on or after the Closing of title herein.

14. **Seller's Failure to Convey.** Except in case of its own, willful default, the Seller's liability under this Agreement for failure to complete and/or deliver title for any reason, shall be limited to the return of the Down Payment paid hereunder, and upon the return of said Down Payment, this Agreement shall be null and void and the parties hereto released from any and all liability hereunder. In any event, the Seller shall not be required to bring any action or proceeding or otherwise incur any unreasonable expense to render the title to the Premises marketable or to cure any objection to title.

15. **Acceptance of Deed; Full Compliance by Seller; Waiver of Jury Trial.** Notwithstanding anything to the contrary herein contained, it is specifically understood and agreed by the parties hereto that the acceptance of the delivery of the deed at Closing shall constitute full compliance by the Seller with the terms of this Agreement, and none of the terms hereof, except as otherwise herein expressly provided, shall survive the delivery and acceptance of the deed. The parties hereto do hereby agree that trial by jury in any action, proceeding or counterclaim arising out of or from this Agreement is hereby waived.

16. **Municipal Certificates.** At Closing the Seller will deliver either a temporary or permanent Certificate of Occupancy covering the Home (the "C.O.").

17. **Construction of Home by Seller.**

(a) The Seller agrees, at its own cost and expense, to erect and complete the aforementioned Home in accordance with the requirements as to materials and workmanship of the Building Department of the City of Saratoga Springs (the "Building Department"), and further agrees that when complete, same will be in substantial accordance with the plans as filed with the Building Department. The issuance of a temporary or permanent Certificate of Occupancy shall mean that the Home is substantially complete. In the event a permanent Certificate of Occupancy is not issued as of the date of Closing of a Home, Seller will obtain the permanent Certificate of Occupancy within two (2) years of the Closing. In addition, Seller will obtain the permanent Certificate of Occupancy prior to the expiration of any temporary Certificate of Occupancy, unless the temporary Certificate of Occupancy is extended.

(b) The Seller shall construct and complete the Home in substantial compliance with the Plans and Specifications of the Model Type selected, attached hereto and incorporated herein. The Seller reserves the right, however, to locate and orient the Home on the Lot, to construct a mirror image of the house, to provide

exterior color choices for the Home, and to determine grades and elevations of the Home to fit the general pattern of the development in the Project, to meet municipal requirements and to conform to topographical and other site conditions. Based on specific site conditions, Seller reserves the right to alter the size and number of windows and doors, and size and configurations of any basement area. Seller also reserves the right to make variations, modifications, and substitutions to the Home Plans and Specifications by substituting materials, equipment, and fixtures provided they are of equal or similar quality and design to those set forth in the Plans and Specifications. All portions of the Premises which are disturbed in the course of construction shall be graded and seeded by the Seller. The Seller shall determine placement and nature of retaining walls and site specific grading, as needed. Certain items of outside work, i.e. grading, seeding and/or driveway surfacing may not be completed prior to Closing. The Seller agrees to complete such items after Closing as soon as practical and weather permitting. The Purchaser agrees that there will be no escrow of any part of the Total Purchase Price with respect to any incomplete items of construction or the Seller's performance. The issuance of a temporary or permanent Certificate of Occupancy shall constitute presumptive evidence that the Home has been substantially completed in accordance with this Agreement and relevant laws and regulations pertaining to issuance of the C.O.

(c) Prior to Closing, the parties shall inspect the Premises together and create a Final Inspection Sheet detailing the unfinished items which the Seller shall complete within a reasonable time after Closing. Outstanding Final Inspection Sheet items shall not be a basis for a delay of Closing provided a C.O. has been issued. The Seller shall not be obligated to withhold or retain monies in escrow with respect to Final Inspection Sheet items to be completed by the Seller after Closing unless requested by the Purchaser's lending institution and said request is satisfactory to the Seller.

(d) The Purchaser shall permit the Seller, its agents, servants and/or employees to enter upon the Premises and shall provide reasonable access thereto subsequent to Closing to complete any incomplete items. In the event the Seller is required to make any repair or complete any item of work to be performed by the Seller after Closing, the limit of the Seller's liability shall be to make said repair and/or to complete such item.

The provisions of this Paragraph shall survive the delivery of the deed.

18. **Changes in Materials, Etc.** Notwithstanding and in accordance with paragraph 17, the Seller reserves the right to:

(a) make changes and/or substitutions of materials or construction for items as originally set forth in the Plans and Specifications of the Model Type home, as the case may be, provided any such changes are of substantially equal or better value and quality;

(b) limit the exterior color and design choices available, and location, of homes and the landscaping and grading of all plots, to fit into the general pattern of the Project and other improvements therein;

(c) determine the elevation and location of all foundations, walks, driveways, garage door entries, and streets;

(d) fix the location of a house (including setbacks) within lot lines;

(e) determine whether trees or shrubs currently on the premises are to be removed;

(f) determine the ultimate number of homes and house type mix to be constructed in the Project;

(g) add or remove retaining walls on the lots or common areas where required by grade conditions;

(h) determine the location of electric, gas and water meters, electric transformers, condensers, heat pump units and hose bibs, and HVAC pump units;



(i) vary the number of steps into a home from the front, rear and garage due to topographical conditions; and

(j) make any other changes required by the City of Saratoga Springs or any other governmental authority.

The Seller agrees to notify the Purchaser of any changes, modifications, deviations, additions or deletions that may be beyond the scope of the enumerated reservation of rights set forth above which are determined by the Seller, in its sole discretion, to be considered material. A material change requiring notification to the Purchaser shall include the substitution of lots in the event topographical or other conditions on the Lot selected are not conducive to construction of a particular model type on that Lot. If a change, modification, deviation, addition or deletion affects the facts and circumstances contained in the original Association offering plan, including any amendment thereto, the Seller shall cease sales and submit a filed amendment to the offering plan.

19. **Options and Extras.**

(a) The Seller has provided the Purchaser with color and option selection materials reflecting decisions required of the Purchaser regarding the construction of the Home. The Purchaser agrees to make all color and option selections from choices offered by the Seller on or before the dates set forth by the Seller. The Seller will advise the Purchaser of the date(s) by which specific selections must be made. If the Purchaser fails to make any selection on or before the designated date applicable to such selection, the Seller may, but need not, make such selection at any time thereafter from such choices as had been offered by the Seller without additional charge. All selections made by the Purchaser and/or the Seller shall be deemed final. The Purchaser understands and agrees that any delay in making selections beyond the applicable selection date may result in a delay of the Closing. Accordingly, in the event that the Closing shall have been delayed as a result of the Purchaser's failure to timely make a selection, the provisions of paragraph 4(b) regarding payments for adjournments shall then apply for the period of such delay. The Seller shall have the right to limit exterior options so as to avoid houses too similar adjacent to each other and to maintain an overall harmonious design of the Project.

(b) The Seller may, but shall not be obligated to, furnish and/or perform any extras, upgrades, framing changes, foundation changes, additions or other changes to the Plans or Specifications as requested by the Purchaser. If the Purchaser hereafter makes a selection or requests a change that requires payment of additional costs and if the Seller agrees to make such changes or install such extras, a written agreement or change order shall amend this Agreement and shall specifically set forth such upgrades, changes and extras with associated additional costs (the "Change Order") and shall be executed by the parties. Payment of one hundred (100%) percent of such additional costs may be required by the Seller at time of execution of the Change Order, which sums shall be paid directly to the Seller for its use in providing such upgrade, change or extra. Change Orders are subject to an additional, nonrefundable administrative fee of $500.00 Dollars, which shall be paid directly to the Seller at the time the Change Order is executed by the parties. The Seller does not guarantee that any selections, upgrades, options or extras now or hereafter offered will continue to be offered. In addition, choices which are now offered without charge may become subject to an additional charge and those choices subject to an additional charge may become subject to an increased charge at any time in the future at the sole discretion of the Seller and without notice to the Purchaser. Failure by the Purchaser to comply with required payments pursuant to any Change Order shall be considered a material breach of this Agreement and default hereunder, entitling the Seller, at the Seller's discretion, to terminate the Agreement and to retain Down Payments paid on account of this Agreement, plus the cost of any upgrades or extras, as liquidated damages.

(c) If the Seller fails to comply with any executed Change Order, the Seller's only obligation shall be to refund any payments made by the Purchaser on account of Change Order and the Purchaser shall have no further recourse.

20. **Execution of Required Documents, Etc.** The Purchaser agrees to deliver to the Seller all documents, and to perform all acts required by the Seller, to carry out the provisions of all applicable laws and regulations. This paragraph shall survive delivery of the deed.

21. **Delay in Closing; Purchaser's Option to Cancel.** In the event the Seller shall be unable to complete the Home on or before twelve (12 months) after the proposed Closing date set forth herein for any reason other than delays due to strikes, acts of God, wars, lockouts, acts of nature, delays in issuing necessary permits, acts of governmental bodies, military operations, national emergencies, installation of public utilities, governmental restrictions preventing the Seller from obtaining necessary supplies and/or materials, damage from fire, severe weather conditions, or other delays beyond the Seller's control, in which event the period shall be extended to eighteen (18) months, and provided the Purchaser shall not be in default hereunder, the Purchaser shall have the option to cancel this Agreement, and to have the Down Payment advanced by him returned to the Purchaser with interest, to the extent any was earned. The Seller must receive the Purchaser's written notice of his intention to exercise such option to cancel no later than ten (10) days after the twelve (12) months or eighteen (18) months, whichever is applicable, from the Closing date set forth herein. Failure to so notify the Seller shall be deemed a waiver of this provision, and the Purchaser shall continue to be bound by the terms of this Agreement.

22. **Assignability.** The parties agree that the stipulations and agreements herein contained shall be binding upon them, and their respective heirs, executors, administrators and/or assigns. The Purchaser agrees that he shall not indirectly or directly record or assign this Agreement or any of his rights hereunder without the written consent of the Seller. In the event the Seller, in its discretion, permits an assignment of this Agreement, it may elect to impose an assignment fee of ten (10%) percent of the Total Purchase Price and the assignment shall be subject to all provisions of this Agreement. In no way should this be construed as a requirement that the Seller must consent to any assignment, and the Seller reserves the right to refuse to permit an assignment of this Agreement.

23. **LIMITED WARRANTY.** THE SELLER HEREIN MAKES NO HOUSING MERCHANT IMPLIED WARRANTY OR ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, IN CONNECTION WITH THE PURCHASE AGREEMENT OR HOME COVERED HEREBY AND ALL SUCH WARRANTIES ARE EXCLUDED, EXCEPT AS PROVIDED IN THE LIMITED WARRANTY ANNEXED HERETO AS EXHIBIT "A". THE TERMS OF THE LIMITED WARRANTY ARE HEREBY INCORPORATED INTO THIS PURCHASE AGREEMENT AND THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE FACE HEREOF. THE PURCHASER HEREBY ACKNOWLEDGES THAT A WRITTEN COPY OF THE TERMS OF THE ANNEXED LIMITED WARRANTY HAS BEEN PROVIDED BY THE SELLER TO THE PURCHASER FOR THE PURCHASER'S EXAMINATION AND THAT A REASONABLE PERIOD OF TIME FOR ITS EXAMINATION BY THE PURCHASER HAS BEEN AFFORDED TO THE PURCHASER PRIOR TO THE TIME OF THE PURCHASER'S EXECUTION OF THIS PURCHASE AGREEMENT. THE PURCHASER UNDERSTANDS AND ACCEPTS THE ANNEXED WARRANTY TO THE PURCHASE AGREEEMENT IN LIEU OF ANY OTHER EXPRESS OR IMPLIED WARRANTIES IN CONNECTION WITH THIS TRANSACTION. THE ANNEXED WARRANTY WILL BE FULLY EFFECTIVE WITHOUT THE EXECUTION OF ANY OTHER DOCUMENT BY EITHER THE PURCHASER OR THE SELLER ON THE DATE THAT THE PURCHASER OR ITS FAMILY SHALL FIRST OCCUPY THE HOME WHICH IS THE SUBJECT OF THIS AGREEMENT AS A RESIDENTIAL HOME OR THE DATE THAT THE DEED TO SUCH HOME IS DELIVERED TO THE PURCHASER, WHICHEVER OCCURS FIRST. IN ADDITION TO THE ANNEXED LIMITED WARRANTY, THE PURCHASER WILL RECEIVE ANY MAUNUFACTURER'S WARRANTIES APPLICABLE TO THE APPLIANCES INSTALLED BY THE SELLER IN THE HOME.

The provisions of this Paragraph shall survive the delivery of the deed.

24. **Escrow/Trust Fund.** The Seller shall comply with the escrow and trust fund requirements of New York General Business Law Sections 352-e(2-b) and 352-h and Section 22.3(k) of the Department of Law's Regulations, and all Down Payment funds paid by the Purchaser shall be handled in accordance with these statutes and regulations. All Down Payments made by Purchaser prior to closing of this transaction shall be held pursuant to a written Escrow Agreement entered into between the Sponsor, the Purchaser, and the Escrow Agent, attached hereto as a Rider to the Purchase Agreement (Exhibit "B"). The Down Payments shall be held

in a segregated account entitled "Beaver Pond Village Escrow Account" at M & T Bank, 327 Great Oaks Boulevard, Albany, New York 12203. Down Payments in excess of $250,000.00 will not be federally insured in excess of the $250,000.00. Down Payments may only be released by the signature of John N. Vagianelis, Esq., a members of the law firm of Mazzotta & Vagianelis, P.C., 9 Washington Square, Albany, New York 12205, the Escrow Agent for the Seller. The Down Payments will be placed in an interest bearing account within five (5) business days after the Agreement is signed by all necessary parties, and, unless the Purchaser defaults, interest will be credited to the Purchaser at the Closing. The interest rate to be earned will be the prevailing rate for these types of accounts. Sponsor shall bear any administrative cost for maintenance of the Escrow Account.

Within ten (10) business days after the Escrow Agreement is signed by all necessary parties, the Escrow Agent shall notify the purchaser in writing that such funds have been deposited into the attorney Escrow Account and will provide the Purchaser with the account number and initial interest rate. If the Purchaser does not receive notice of such deposit within fifteen (15) days after tender of the Down Payment, the Purchaser may cancel the purchase and rescind within ninety (90) days after tender of the Down Payment. Complaints concerning the failure to honor such cancellation requests may be referred to the New York State Department of Law, Real Estate Finance Bureau, 120 Broadway, 23rd Floor, New York, New York 10271.

**25. Surety Bond.** Subsequent to approval by the Attorney General, the Sponsor may post a surety bond issued by an insurance company licensed to write insurance in the State of New York, securing repayment of funds, in the event the Purchaser is entitled to such amount under the terms of this Agreement. The Sponsor shall cause the surety to mail or personally deliver the surety bond to the Purchaser before the funds are released to the Sponsor from the Escrow Account. Such funds shall subsequently be released by the Escrow Agent to the Sponsor. For any funds already deposited prior to approval by the Attorney General of use of surety bonds, a written consent of each affected Purchaser shall be obtained acknowledging subsequent amendment to the Plan calling for potential release of funds and consent thereto and if no consent is given, continuation of escrow of funds.

**26. Broker.** Each party represents that it dealt with no broker in connection with this transaction other than the Seller's sales office and/or Keller Williams. The Seller is responsible for paying any broker commission upon the closing of title pursuant to separate agreement. The Purchaser agrees to indemnify the Seller and hold the Seller harmless for any claims, costs, and expenses, including reasonable attorneys' fees, brought for brokerage fees based upon the Purchaser's acts or asserted by any other broker claiming to have dealt with Purchaser. The provisions of this Paragraph shall survive delivery of the deed.

**27. Prohibition against Advertising of Home for Sale.** The placing of an advertisement for the sale of the Premises by Purchaser in any newspaper or other publication or media or listing the Home with any real estate broker prior to Closing will constitute a material breach of this Agreement and default hereunder, entitling the Seller to terminate the Agreement and to retain Down Payments paid on account of this Agreement, plus the cost of any upgrades or extras, as liquidated damages.

**28. Completion of Construction.** The Purchaser shall accept title (without abatement in or credit against the purchase price or provision for Escrow) notwithstanding that construction of (a) other homes, (b) landscaped areas, (c) utilities other than to service the Premises, (d) other portions of the common areas, or (e) roadway top course have not been completed. The Purchaser acknowledges that the Project may be improved with new roads, utilities and new home construction after the Closing. The Purchaser agrees that the aforementioned construction and any nuisances, noise, dust or disruption in services that are caused thereby shall not be deemed by the Purchaser as a breach of the Purchaser's rights to quiet enjoyment of the Premises. The provisions of this Paragraph shall survive the delivery of the deed.

**29. Site Inspection.** The Purchaser shall not visit the Lot, Home or surrounding Project construction sites unless specifically agreed to by the Seller and accompanied by a duly authorized representative of the Seller. Any such unauthorized visits by the Purchaser are subject to a charge by the Seller of $500.00 per unauthorized visit, which the Purchaser agrees to pay the Seller within ten (10) days of billing thereof. The Purchaser acknowledges that unauthorized visits present a dangerous circumstance and could incur liability to the Seller,

its agents and/or contractors. The Purchaser hereby releases and agrees to indemnify, defend and hold the Seller, its agents and contractors harmless for all claims and liabilities incurred by the Seller resulting from the presence of the Purchaser, the Purchaser's family members or invitees on the Premises or the Project during the term of this Agreement. Failure by the Purchaser to comply with requirements of this paragraph shall be considered a material breach of this Agreement and default hereunder, entitling the Seller, at the Seller's discretion, to terminate the Agreement and to retain Down Payments paid on account of this Agreement, plus the cost of any upgrades or extras, as liquidated damages

30. **Signs.** The Purchaser for himself, his successors, distributees and/or assigns, does hereby covenant and agree that for a period of four (4) years after the date of the Closing of title hereunder, the Purchaser will not place any sign or signs, except a house number, upon the Premises herein described or any part thereof, without the prior written consent of the Seller. These signs include, but are not limited to, "For Sale" signage. This paragraph shall survive the delivery of the deed.

31. **Purchasers as Agents for Each Other.** If two or more persons are named as the Purchaser herein, any one of them is hereby made agent for the other in all matters of any and every kind or nature affecting the Premises herein or this Agreement.

32. **Purchaser Interference.** The Purchaser acknowledges that it may not interfere with the Seller's ability to construct Purchaser's Home or other homes or facilities, including interference with work performed on site by Seller's staff in connection with the construction of Purchaser's Home or any other home in the Project, attempts to hire any of Seller's staff or contractors, and attempts to bring contractors, material men, subcontractors or workers onto the site for the Purchaser's residence prior to Closing of title to the Home, unless otherwise agreed to in writing by the Seller.

33. **Notices.** Unless otherwise provided for herein, any notice required to be given or given hereunder shall be given by depositing such notice in a post-paid wrapper, certified mail, return receipt requested, in an official depository under the exclusive care and custody of the United States Postal Service, or by Express Mail, Federal Express, other overnight delivery service or messenger service (with proper receipt therefor), or facsimile transmission, addressed to the party at the address hereinabove set forth, with a copy of any such notice by regular mail to the attorney for such party as follows:

IF TO SELLER:   Blitman Saratoga LLC
                222 Bloomingdale Road, Suite 404
                White Plains, New York 10605
                Attn: Robin Winter

                Mazzotta & Vagianelis, P.C.
                9 Washington Square
                Albany, New York 12205
                Attn: Nancy M. Greene, Esq.

IF TO ESCROW AGENT:   Mazzotta & Vagianelis, P.C.
                      9 Washington Square
                      Albany, New York 12205
                      Attn: John N. Vagianelis, Esq.

IF TO PURCHASER:

Any notice may be given by the attorney for a party and shall have the same force as if given by the party. Either party may, by notice, change the address at which notices are to be given hereunder.

34. **Site Work.** The following provisions of this Paragraph shall survive delivery of the deed

(a) The Seller shall install, at its sole cost and expense, sewers, streets and curb cuts adjacent to the Premises as required by the municipality.

(b) The Purchaser shall not install a circular driveway or make any other installations, improvements or changes to the existing drainage pipes or structures, sidewalks, streets, driveways, driveway curbs or aprons until such time as the streets and any other public improvements are dedicated to the appropriate governmental authorities, and all bonds posted thereof have been released. In the event the Purchaser makes any such unauthorized alterations after Closing, the Purchaser agrees to restore same to comply with applicable municipal specifications within ten (10) calendar days of the Seller's written demand therefor.

(c) If the Closing shall occur between November 1 and May 1, the Premises may be delivered with incomplete grading, landscaping, if any, and a temporary driveway. In such event, the Seller shall provide the Purchaser with a letter ensuring that the grading, landscaping, if any, and driveway shall be completed as conditions permits.

(d) If the Premises or any other parcels on the same side of the street shall not have been fully graded at Closing, then the Seller, its agents, servants or employees shall have the right to enter upon the Premises for a period of two (2) years thereafter to complete grading and any other work deemed necessary, and, in connection therewith, to remove any excess top soil or fill. The Seller reserves title to any excess topsoil or fill created by such grading and the Purchaser consents to the removal thereof by the Seller during such period. The Seller shall repair damage to landscaping, if any, caused by such grading.

(e) It is understood and agreed that the Seller makes no representation or warranty with regard to the number, nature, quality or condition of trees and shrubbery now on the Premises, and the Seller expressly reserves the right in its sole discretion to remove any existing trees and shrubbery now on the Premises. The Seller shall not furnish, nor be obligated for, any tree surgery, treatment or care of trees and shall not be obligated to remove any trees. The Seller shall not furnish, nor be obligated to furnish, retaining walls, dry wells or tree wells unless required by the municipality. The Seller shall have the sole and exclusive right to determine the final grade of the Lot and the location of the Home on the Premises. Notwithstanding the foregoing, the Purchaser expressly acknowledges that the Seller shall only be responsible for clearing trees and/or shrubbery from the Premises. In addition, the Purchaser expressly acknowledges that the location and number of dry wells or other drainage devices on the Premises shall be determined at the sole discretion of the Seller, in compliance with the requirements of the City of Saratoga Springs.

35. **Location of Electrical Service Box.** While the Seller will endeavor to locate the electrical service box in an inconspicuous location, the Seller reserves the right to locate said electrical box in any location it deems proper and in accordance with the specifications of the utility company having jurisdiction thereof.

36. **No Oral Changes.** This Agreement cannot be changed or any provision waived orally. Any changes or additional provisions or waivers must be set forth in a rider attached hereto or in a separate written agreement executed by both parties.

37. **Captions and Headings.** The captions and headings used in this Agreement are intended for convenience and reference only and shall not imply or convey any additional meanings to the contents of their respective provisions.

38. **Applicable Law/Severability.** This Agreement shall be interpreted and enforced in accordance with the laws of the State of New York. If any provisions of this Agreement shall be unenforceable or invalid, the same

shall not affect the remaining provisions of this Agreement, and to this end, the provisions of this Agreement are intended to be and are severable.

39. **Attorney's Approval Clause.** In the event the Purchaser chooses to engage the services of an attorney regarding this transaction, then this Agreement shall be contingent upon the Purchaser obtaining approval of this Agreement by that attorney as to all matters contained herein. In any event, this contingency shall be deemed waived unless the Purchaser's attorney notifies the Seller c/o Mazzotta & Vagianelis, P.C., attn: Nancy M. Greene, Esq., of the attorney's disapproval of this Agreement no later than seven (7) business days from the date of execution of this Agreement by the last party affixing his signature thereto. Said notice shall set forth the reasons for said disapproval. This Agreement shall be deemed cancelled, null and void and all Down Payments shall be returned to the Purchaser unless the Seller agrees in writing to the proposed changes set forth in said notice in which case this Agreement together with said changes, shall remain in full force and effect. Any notice provided pursuant to this paragraph shall be sent by certified or registered mail, return receipt requested, postmarked no later than the above date and addressed to the Seller, c/o Mazzotta & Vagianelis, P.C., 9 Washington Square, Albany, New York 12205, attn: Nancy M. Greene, Esq. For purposes of expediting the execution of any amendments hereto, the Seller and the Purchaser grant limited powers of attorney for their respective attorneys to execute said amendments on their behalf with the same force and effect as if each has signed said amendments hereto.

40. **Delivery of Purchase of Agreement.** The transmittal of this proposed Agreement shall not be deemed an offer to sell, and this Agreement shall not be binding on the Seller until it is accepted by endorsement hereon by the Seller, and a fully signed copy thereof shall have been delivered or mailed to the Purchaser. If this Agreement shall not be accepted by the Seller within fifteen (15) days after it was signed by the Purchaser by the delivery or mailing to the Purchaser of such endorsed and fully signed copy, this Agreement shall be deemed to be rejected by the Seller and canceled and the Purchaser's deposit shall be promptly refunded within ten (10) calendar days thereafter provided the Purchaser returns the Offering Plan to the Seller in good condition.

41. **Interpretation.** Any singular word or term herein shall also read as in the plural, and the masculine shall be read in the feminine or neuter whenever the sense of this Agreement may so require.

42. **Radon Gas.** Radon gas is a naturally occurring radioactive gas which may accumulate in sufficient quantities within a home over time to constitute a health risk to its occupants. The Seller will not be conducting radon testing with respect to the Home and specifically disclaims any and all representations and warranties as to the absence of radon gas or radon producing conditions in connection with the Home. The Seller will make the Home available prior to Closing at a mutually convenient time for the purpose of radon testing at the Purchaser's expense and if as a result of that testing, remediation is necessary, then the Seller will perform such remediation prior to Closing at its expense so as to reduce the level of Radon Gas to four (4) pico curies per liter.

43. **Marketing.** The Purchaser authorizes the Seller to take photographs of the exterior of the Home and publish them after the Closing for the purpose of assisting the Seller to market its homes to other purchasers.

44. **FIRPTA Representation of Sponsor.** Seller represents that it is not a "foreign person" as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended and the regulations promulgated thereunder (collectively "FIRPTA"). The provisions of this paragraph shall be deemed repeated at Closing and shall survive the Closing.

45. **Merger.** Unless otherwise stated herein, the terms of this Purchase Agreement shall merge with the deed.

Note: Floor plans, specifications and renderings of the chosen Model Type are on exhibit at the Seller's sales office. The floor plans, specifications and renderings as displayed in the Seller's sales office are artist's conceptions and are not intended to be the actual depiction of the walls, windows, walkways, driveways, landscaping or decks. All dimensions and door locations and sizes may vary from those

depicted on the Plans. Artist's renderings, specifications and plans are for illustration purposes only and may reflect included and/or optional items.

All floor plans, renderings and elevations are protected by Federal Copyright Laws. Any unauthorized use or publication of the plans is prohibited.

THIS AGREEMENT STATES THE ENTIRE UNDERSTANDING OF THE PARTIES AND THE SELLER SHALL NOT BE BOUND BY ANY ORAL REPRESENTATIONS AND/OR AGREEMENTS MADE BY THE SELLER, ITS AGENTS OR REPRESENTATIVES.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

SIGNATURES TO FOLLOW

BLITMAN SARATOGA LLC

Dated: 12/18/18    By: _____
                      Authorized Representative

Dated: _____    X _____
                      Purchaser

              X _____
                      Purchaser

15

C:\Users\Michelle\Documents\Purchase Agreement.revised 4.24.18.doc