UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
In re:

Blitman Saratoga LLC,

Debtor.
-----------------------------------------------------x

Return Date: May 9, 2023
Time: 1:00 p.m.

Chapter 11

Case No. 20-23177 (SHL)

**DEBTOR'S OMNIBUS RESPONSE TO THE OBJECTIONS FILED BY ROBIN WINTER AS EXECUTOR AND CALLANAN INDUSTRIES INC. TO APPROVAL OF THE DEBTOR'S DISCLOSURE STATEMENT**

The Debtor herein, Blitman Saratoga, LLC (the "Debtor"), as and for its Omnibus Response to the objections of Robin Winter ("Winter") and Callanan Industries Inc. ("Callanan"), to the Debtor's Disclosure Statement [ECF No. 167] (the "Disclosure Statement") respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Debtor's Revised Plan of Reorganization [ECF No. 165] (the "Revised Plan") is the product of the Debtor's extensive effort to continue construction, and complete several post-petition sales, while addressing the concerns of the City of Saratoga Springs (the "City") and the Homeowner's Association regarding infrastructure. All of this has been made possible by the DIP financing provided by the Goren family operating through Saratoga Funding LLC (the "DIP Lender"). Without the DIP loan, in which Winter and the Estate of Howard Blitman refused to participate as a 50% partner (even though Howard Blitman was the original developer), there would be no progress whatsoever, and nothing for trade creditors.

2. Instead, the Debtor was able to negotiate for two important carve-outs from the post-petition sale proceeds to make confirmation possible. First, a confirmation fund of $600,000 was established to fund the Revised Plan, and second, the infrastructure reserve of $375,000 was

recently created. Distribution of these funds are core components of the Revised Plan and were discussed with counsel for the Creditors' Committee, who directly negotiated the terms of the confirmation fund of $600,000.

3. Given the Committee's support, it is a false premise, to say the least, for Winter to argue that the Revised Plan is unconfirmable on its face merely because Winter does not like the notion that all insider disputes, claims and liabilities will be addressed elsewhere in connection with the pending state court litigation.

4. The Disclosure Statement is not a proper venue to litigate insider claims or raise confirmation objections concerning parochial disputes between insiders. *See, In re Franklin Indus. Complex, Inc.*, 386 B.R. 5, 10 (Bankr. N.D.N.Y. 2008) (noting that court should be careful "so as not to convert the disclosure statement hearing into a confirmation hearing, and to ensure that due process concerns are protected"). Yet, Winter is solely interested in minimizing her personal liability. Whether she succeeds is for the state court to determine, but the Revised Plan and Disclosure Statement should not be held hostage, particularly since the Debtor is prepared to make various clarifications in an effort to at least obtain agreement on language.

5. In the interim, the Debtor believes it warranted to respond to the objections raised by Winter, acting on behalf of the Estate of her deceased father Howard Blitman ("Blitman") as well as various affiliated entities, including Blitman Development Corp and Changebridge Construction Corp. (collectively, hereinafter "Winter"), so the genesis of the Revised Plan is fully understood.

**Scope of the Objections**

6. Winter essentially objects to approval of the Disclosure Statement on three grounds: (i) the Revised Plan allegedly impermissibly restructures the secured debt contrary to the DIP

Financing Orders; (ii) fails to resolve disputes between the insiders as to the validity of their respective claims, in favor of returning those disputes to state court for final determination under a pending pre-petition action; and (iii) improperly treats certain insider claims differently from the rest in violation of 11 U.S.C. §1122. None of these objections have any merit as a matter of law.

7. There is no question that a plan can provide for the restructuring of secured debt. Winter fails to cite any statute or case law which limits such restructuring to pre-petition claims. Indeed, one of remarkable feature of Winter's objection is that in fifteen pages she fails to cite a single case to support any of her contentions. Rather, Winter's Objection is, in large part, little more than a lengthy recitation of all of Winter's unproven accusations of wrongdoing by the other members of the Debtor. It suffices to say that from the view of the Debtor and the other investors, Blitman failed in completing the development and left a veritable mess for the Goren family, as financial investors, to clean up. The Debtor refrained from using the Disclosure Statement to take shots at Winter, and is committed to seeing the case through confirmation, which means dealing with creditors and the City. The time and place for insiders to air their grievances in the context of the two State Court lawsuits in Suffolk County, captioned Blitman Saratoga et al. v. Robin Winter, et al. (Index No. 611885/2020) and Goren Brothers Limited Partnership, et al. v. Robin Winter, et al. (Index No. 601642/2021) (defined in the Plan as the "State Court Litigations").

8. Notwithstanding that the State Court Litigations are the obvious forum for insiders, Winter asserts that the Revised Plan somehow violates Section 502 of the Bankruptcy Code and Rules 3007 and 9011 by providing that all claims of insiders against the Debtor (and each other) should be decided in the state courts in which Winter is an active litigant. On this score, the Debtor original plan recognized certain claims of the Goren Cousins and has since been modified to

provide that insider claims (both Goren and Winter/Blitman alike) will be adjudicated in the state court without preference to anyone.

9. It is well established that post-confirmation jurisdiction of the Bankruptcy Court is limited, particularly with reference to third-party claims, and there is simply no reason why claims of insiders, which the Revised Plan subordinates to all other creditors, need to be determined by this Court when there is a ready forum in which to address them.

10. Winter's third objection, concerning the treatment of claims filed by Scott Varley ("Varley") and Thomas Keaney ("Keaney") are likewise without merit, as these claims are readily distinguishable from the claims of the two primary insider groups (*i.e.*, Goren and Winter).

11. The objection filed by Callanan is also unavailing. Callanan objects to the treatment of its mechanic's liens as unsecured claims, without providing any evidence to counter the Debtor's contention that the claims are entirely undersecured by reason of the fact that the value of the remaining assets are currently less than the total of the senior liens held by the DIP Lender and are not entitled to treated as secured claims under Section 506(a). The Debtor will submit evidence of value at confirmation, but this is not an issue for hearing on approval of the Disclosure Statement.

## LEGAL ARGUMENT

### A. The Proposed Roll-Up Deferral of the DIP Secured Claims is Permissible

12. Prior to the Chapter 11 filing, the Debtor was subject to a senior secured claim held by Ballston Spa National Bank ("BSNB") based upon two credit facilities in the total sum of $1,892,438.92. DIP financing was badly needed to resume construction, leading to approval of the DIP loans in the total sum of $3,100,000 (including the refinancing of the BSNB debt). The DIP financing was approved pursuant to an Interim Order [ECF No. 21] and Final Order [ECF No.

38] (collectively, the "DIP Financing Orders"), which contain certain waterfall treatments regarding allocation of funds to the pre-petition mortgages. However, this treatment is not sacrosanct and can be modified.

13. Indeed, the DIP Financing Orders have already been modified on two occasions in connection with the DIP Lender's agreement to allow the Debtor to establish both the Confirmation Fund and Infrastructure Reserve. At this stage of the case, the Debtor's decision to roll-up all outstanding secured debt is both logical and permissible. Since there is no ability to pay down the DIP Loan until post-confirmation sales occur, in consideration for the DIP Lender's deferral, the proceeds from the post-confirmation sales are being reallocated first to the DIP Loan (post-petition) and then to the BSNB mortgage that was assigned to the DIP Lender under a LIFO-type formula.

14. Winter objects to this treatment based on the unsupported argument that the provisions of the DIP Financing Orders cannot be amended or modified, even though, as noted, they have already been modified on two prior occasions. At any rate, Section 1123(b)(5) of the Bankruptcy Code specifically provides that a plan may modify the rights of secured creditors, while Section 1123(b)(6) permits "any other appropriate provision not inconsistent with the applicable provisions of this title". The proposed treatment of the DIP Loans falls within these strictures, and there is no case law to indicate that a DIP Financing Order cannot be modified under a Revised Plan or continues in perpetuity. To the contrary, it has been held that a DIP lien can be subordinated in favor of exit financing over the objection of the DIP lender. *In re Aspen Club & Spa LLC*, 2020 WL 4251761 (10th Cir. BAP. 2020).

15. Any defenses that Winter may have to enforcement are not impacted by the Revised Plan. Quite to the contrary, the Revised Plan effectively lets the insider litigation resume in the

state court without limitation. As they say, the insiders can "have at it" but the Disclosure Statement is not the proper time or place to jockey for position in connection with the State Court Litigations.

16. Further, it is an equally false narrative that in providing for a roll-up, the Debtor is acting in the Goren's interests and not its own, or that of its creditors. The Debtor has already demonstrated that it is a proper fiduciary by obtaining the DIP Lender's agreement to the carve-outs to begin with, and it is hardly favoritism for the Revised Plan to provide that insiders can and should litigate outside the Bankruptcy Court post-confirmation.

**B. The Disputes Between the Insiders Need Not be Resolved by this Court**

17. It is axiomatic that the post-confirmation jurisdiction of the Bankruptcy Court is limited. *In re Ener1, Inc.*, 558 B.R. 91, 95 (Bankr. S.D.N.Y. 2016) (Section 1142 confers limited post-confirmation jurisdiction upon the bankruptcy court for the purpose of implementing the plan"). While claims allowance is a core proceeding, the Court need not exercise its jurisdiction over every post-confirmation claim dispute. *Id.* at 95 ("The distinction between core and non-core jurisdiction may not be particularly relevant after confirmation"). Here, there are three substantial reasons why the Court should defer to the state court.

18. First, the claims at issue are held by insiders and potentially subordinated to the claims of other creditors. Second, the claims involve loans alleged to have been by Winter and Goren to the Debtor, which are being challenged in the State Court Litigations. In fact, the State Court Litigations involve disputes between Winter and Goren which are intertwined with their respective claims against the Debtor, These disputes are plainly outside of the Bankruptcy Court's core jurisdiction under *Marathon* and *Stern*.

19. Far from somehow violating Section 502 as Winter contends, the Revised Plan's provisions for sending the insiders back to the State Court meet the relevant criteria for permissive abstention under 28 U.S.C. §1334(c)(1) "in the interest of justice," "in the interest of comity with State courts," or "respect for State law." At any rate, the scope of post-confirmation jurisdiction can be addressed at the confirmation hearing and should not delay or derail the Disclosure Statement.

**C. The Revised Plan Does Not Impermissibly Treat Insider Claims Differently**

20. Scott Varley has a claim for unpaid broker commissions for services rendered to the Debtor prior to the Chapter 11 filing. Thomas Keaney has claims for unpaid salary and fees, both pre-petition and post-petition. Winter notes that the Revised Plan separately classifies insider claims of Winter and Goren (Class 3) from general unsecured creditors (Class 2) and provides for the subordination of the Class 3 insider claims. Winter argues that Varley and Keaney are insiders whose claims are impermissibly omitted from Class 3.

21. Winter again fails to provide any legal analysis to support this contention, and in fact, Section 1122 permits "substantially similar" claims to be classified together. Here, although Varley and Keaney are "insiders" in that they each hold a minor equity interest in the Debtor (15% and 5%, respectively), their claims are not substantially similar to the claims of Winter and Goren since they rendered services as opposed to being investors.

22. The claims asserted by Winter and Goren are based upon loans, guaranties, indemnification and rights fixed by the Debtor's operating agreement. For his part, Varley provided specific services as broker for various sales of homes. While certain of the sales did not close until after the Chapter 11 case was commenced, Varley's services were provided prior to the petition. Keaney has provided invaluable day to day services to the Debtor throughout the Chapter

11 case in overseeing all construction and infrastructure and being the point person with the City dealing with infrastructure. The contribution of Keaney toward operations has been significant and his claim stands separate and apart from the others. A copy of his latest email update is annexed hereto as Exhibit "A" to assure everyone that infrastructure is being actively addressed.

23. The Debtor therefore submits that the exclusion of Varley and Keaney from the Class 3 claims of insiders is permitted under Section 1122. *See, e.g., In re Bos. Post Rd. Ltd. P'ship*, 21 F.3d 477, 483 (2d Cir. 1994), rejecting classification for the purpose of manipulating an accepting class, but permitting separate classification of similar claims upon a showing of credible proof of a legitimate reason).

**D. The Mechanic's Liens are Not Supported by Collateral and are Properly Reclassified as Class 2 General Unsecured Claims.**

24. Section 506(a) provides that a claim is secured only to the extent that there is collateral to support the lien. Thus, where, as here, a junior lien is subordinate to a senior lien that exceeds the value of the collateral, the junior lien can be reclassified as an unsecured creditor. *See, In re Heritage Highgate, Inc.*, 679 F.3d 132 (3d Cir. 2012).

25. Callanan was paid the principal amount of its lien claims at the closings on two prior sales during the Chapter 11 case. However, this was done following a determination that the time exigencies involved in closing the sales, and concerns over the delay and cost of litigating the extent of Callanan's secured claim, made it more reasonable to make partial payments to Callanan than to litigate.

26. Now, however, it appears that the sales of the remaining homes and vacant properties will likely not be sufficient to pay secured claims in full. In this circumstance, the Plan properly provides for the reclassification of the mechanic's liens as Class 2 general unsecured

claims. To the extent that a valuation proves different, adjustments can be made at or in connection with the confirmation hearing, but the issue should not delay approval of the Disclosure Statement.

WHEREFORE, the Debtor respectfully prays for the entry of an Order overruling the Objections and approving the Disclosure Statement, as modified in Exhibit "B" (red-lined version), which also includes certain language requested by the City's counsel relating to the disposition of the letters of credit identified in the Plan.

Dated: New York, NY
May 4, 2023

Goldberg Weprin Finkel Goldstein LLP
Attorneys for the Debtor
125 Park Avenue, 12th Floor
New York, New York 10017
(212) 221-5700

By: /s/ Kevin J. Nash, Esq.