UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                            Chapter 11

Blitman Saratoga LLC,                                 Case No. 20-23177 (SHL)

                            Debtor.
------------------------------------------------------------x

## DEBTOR'S SECOND REVISED PLAN OF REORGANIZATION

Blitman Saratoga LLC (the "Debtor") hereby proposes the following Chapter 11 revised plan of reorganization (the "Plan") pursuant to the provisions of Title 11 of the United States Code (the "Bankruptcy Code").

## FRAMEWORK OF THE PLAN

As well-chronicled during the Chapter 11 case, the Debtor is a real estate company which sought Chapter 11 relief in 2020 with the goal of completing a residential development project known as "Beaver Pond Village" in Saratoga Springs, NY (the "Project"). At the time of the bankruptcy filing, the Debtor had already built and sold 56 homes but lacked necessary liquidity to complete construction of the remaining eight (8) homes then under contract. Exacerbating matters, by the time of bankruptcy, the Debtor had exhausted its borrowing eligibility from Ballston Spa National Bank ("BSNB"). Accordingly, James and Alex Goren (the "Gorens") decided to seek Chapter 11 relief as a means to address the liquidity and financing issues facing the Debtor with the goal of obtaining approval of DIP financing to be provided by Saratoga Funding LLC (the "DIP Lender"), an affiliate of the Gorens, or their partnership or limited liability company.

Accordingly, the Gorens decided to seek Chapter 11 relief as a means to address the liquidity and financing issues facing the Debtor with the goal of obtaining approval of DIP

financing to be provided by an affiliate of the Gorens or their partnership or limited liability company known as Saratoga Funding LLC (the "DIP Lender").

In bankruptcy, the Debtor obtained preliminary and then final authorization to borrow up to the total sum of $3,100,000 (the "DIP Loans"), pursuant to the Interim Order Approving and Authorizing the Debtor to Obtain Replacement and New Postpetition Financing Pursuant to 11 U.S.C. §§362 and 364(c), entered on December 8, 2020 (the "Interim Order") (ECF No. 21) and the Final Order Authorizing the Debtor to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§362 and 364(c), entered on February 5, 2021 (ECF No. 38) (the "Final Order, and, collectively with the Interim Order, the "Financing Orders"). The DIP Loans included the replacement, assignment and refinancing of all pre-petition mortgage loans in the amount of $1,893,438.92 (as of November 27, 2020) plus accrued interest (the "BSNB Loans") payable to Ballston Spa National Bank ("BSNB"), plus additional loans of approximately $1.2 million for construction (the "Note").

After approval of the DIP Loans, the Debtor completed construction and sold the four (4) homes [49 Jane Street, 59 Jane Street, 47 Jane Street and 57 Jane Street], plus the model home. The remaining four (4) unsold homes [6 Katie Lane, 8 Katie Lane, 9 Jane Street and 11 Jane Street] (the "Remaining Homes") are in various stages of construction and will require additional exit financing to complete for resale. The Debtor intends to seek approval of additional financing for further construction in conjunction with the confirmation process in the total sum of $1,683,325 for completion of the Remaining Homes (hereinafter the "Additional Exit Financing"). The Debtor also owns thirteen (13) undeveloped lots that can and will be sold after the site work and infrastructure is completed with respect to Phases I – V of the Project.

In the interim, the Debtor has previously set aside a confirmation fund of $600,000 (the "Confirmation Fund") from the prior sales of 47 Jane Street and 49 Jane Street to pay creditors.

2

The funds are currently being held in escrow while the Debtor seeks to proceed with confirmation of the Plan.

The Confirmation Fund will enable the Debtor to pay administrative and priority claims in full, plus fund a *pro rata* dividend of approximately fifty (50%) percent to the holders of allowed Class 2 Non-Insider Unsecured Claims. The exact percentage of the dividend to Unsecured Creditors will depend on the final allowed administration and priority claims which have priority over Unsecured Creditors. Insofar as the DIP Loans are concerned, the Plan provides that the claims held by the DIP Lender (defined as the "Secure Debt") will be paid post-confirmation from the proceeds generated by the sales of the Remaining Homes and Vacant Lots in accordance with the Financing Orders (*i.e.*, repayment of the DIP Loans and the BSNB Loans shall be applied first to the satisfaction of all obligations under the BSNB Loans).

These payments to the DIP Lender shall begin <u>after</u> Additional Financing is repaid in full and an additional infrastructure reserve of approximately $500,000 is established from the sale of the Remaining Homes. No distributions shall be made on account of Insider Claims from the Confirmation Fund under the Plan. Instead, all Insider Claims are hereby preserved and any actions to recover on such Claims shall be pursued against the Debtor (or others) in any applicable non-bankruptcy forum of competent jurisdiction, particularly the Supreme Court, Suffolk County, where the State Court Litigation is pending.

## ARTICLE I

## DEFINITIONS

All capitalized terms used herein shall have the meanings defined in the Bankruptcy Code, unless otherwise set forth below:

    1.1    "**Administrative Expense Claim**" means a Claim for the costs and expenses of administering the Chapter 11 case allowed under §§ 503(b) and 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of

   constructing and completing the sale of the Homes and Vacant Lots, together with related closing costs and brokerage; and (b) the professional fees and expenses as may be awarded to Goldberg Weprin Finkel Goldstein LLP as the Debtor's bankruptcy counsel and Nolan Heller Kauffman LLP as the Creditor's Committee counsel (the "<u>Professional Fees and Expenses</u>").

1.2 "**Allowed**" means, with reference to any Claim, proof of which was timely and properly filed or, if no proof of Claim was filed, that has been or hereafter is listed by the Debtor on its Schedules of Assets and Liabilities as liquidated in amount and not disputed or contingent and, in each case, as to which: (a) no objection to allowance has been interposed within the applicable period fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or the Bankruptcy Court; or (b) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order.

1.3 "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York.

1.4 "**Bar Date**" means March 19, 2021, as the last date set by the Bankruptcy Court to file a Claim against the Debtor.

1.5 "**Claim**" means a claim against the Debtor as defined in Bankruptcy Code § 101(5).

1.6 "**Claim Objection Deadline**" shall mean thirty (30) days after the Effective Date of the Plan.

1.7 "**Confirmation**" means approval of the Plan by the Bankruptcy Court.

1.8 "**Confirmation Fund**" means the sum of $600,000 as provided above.

1.9 "**Confirmation Hearing**" means the hearing or hearings before the Bankruptcy Court to consider approval of the Plan.

1.10 "**Confirmation Order**" means the order of the Bankruptcy Court approving the Plan pursuant to Bankruptcy Code § 1129.

1.11 "**Creditor**" means the holder of a Claim against the Debtor.

1.12 "**Creditors' Committee**" means the Official Committee of Unsecured Creditors appointed by the Office of the U.S. Trustee on December 21, 2020 (ECF No. 23), comprising Apollo Heating, Curtis Lumber Co., Inc. and Northway Tile LLC.

1.13 "**Disbursing Agent**" means Goldberg Weprin Finkel Goldstein LLP.

1.14 "**Effective Date**" means the first business day on which the Confirmation Order becomes a Final Order.

1.15 "**Final Order**" means an order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified, or amended and as to which the time to appeal has expired.

1.16 "**Interests**" means, collectively, the equity and membership interests of the Debtor's members and their legal representatives.

1.17 "**Operating Officer**" means Thomas Keaney.

1.18 "**Petition Date**" means November 6, 2020, the date on which the voluntary petition commencing this Chapter 11 case was filed.

1.19 "**Priority Tax Claim**" means any Claim of a federal, state or local taxing authority against the Debtor.

1.20 "**Remaining Homes**" means the remaining homes still under construction located at 6 Katie Lane, 8 Katie Lane, 9 Jane Street and 11 Jane Street.

1.21 "**Reorganized Debtor**" means the Debtor after confirmation of the Plan.

1.22 "**Sale Proceeds**" means the proceeds generated from the sale of the Remaining Homes and Vacant Lots following Confirmation.

1.23 "**State Court Litigation**" shall mean the two pending lawsuits in Suffolk County, captioned Blitman Saratoga, et al v. Robin Winter, et al. (Index No.: 611885/2020) and Goren Brothers Limited Partnership, et al v. Robin Winter, et al. (Index No.: 601642/2021).

1.24 "**Unsecured Non-Insider Claim**" means all general unsecured claim of contractors, vendors and service providers, excluding the claims of the insiders or their affiliates.

1.25 "**Unsecured Creditor**" means the holder of an Allowed Unsecured Non-Insider Claim against the Debtor.

1.26 "**U.S. Trustee Fees**" means fees payable pursuant to 28 U.S.C. § 1930, together with any statutory interest.

1.27 "**Vacant Lots**" means the remaining thirteen (13) unsold and undeveloped lots still owned by the Debtor comprising part of the Beaver Pond Village.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1 The Claims and Interests as defined by the Plan hereunder are classified as follows:

5

**Class 1** – The Claim of Saratoga Funding LLC as the DIP Lender and assignee of BSNB's pre-petition secured and mortgage debt.

**Class 2** – The Claims of Non-Insider Unsecured Creditors.

**Class 3** – The Unsecured Insider Claims.

**Class 4** – The Membership and Equity Interests in the Debtor.

## ARTICLE III

## UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims, Priority Tax Claims or U.S. Trustee Fees, all of which shall be paid in full as required by 11 U.S.C. §1129(a)(9).

3.1    **Administrative Expense Claims**.  Administrative Expense Claims consist primarily of Professional Fees and Expenses plus any unpaid post-petition invoices, bills and expenses to complete construction and sell the Homes, including closings costs and related fees and brokerage.  Except for Professional Fees and Expenses, the holders of Administrative Expense Claims shall be paid in the ordinary course of business or at the closing with respect to the post-confirmation sale of the remaining Homes.

3.2    **Professional Fees and Expenses**.  The requests for allowance of Professional Fees and Expenses by the Debtor's counsel and the Creditors' Committee Counsel for services rendered during the Chapter 11 case prior to the Effective Date shall be filed no later than thirty (30) days after the Effective Date and remain subject to Bankruptcy Court approval.  After notice and a hearing, as applicable, the allowed Professional Fees and Expenses shall be paid from the Confirmation Fund pursuant to appropriate Orders awarding such fees and expenses.

3.3    **Priority Tax Claims**.  All residual Priority Tax Claims relating to the Debtor shall be paid in full from the Confirmation Fund on the Effective Date.

6

3.4    **U.S. Trustee Fees**.  The Debtor shall pay all accrued and billed U.S. Trustee Fees, together with any interest thereon, until the Chapter 11 case is closed by entry of a Final Decree.

3.5    **City of Saratoga Springs/Site Work**.  While the City of Saratoga Springs ("Saratoga") did not formally file a proof of claim in the Chapter 11 case, Saratoga retains various rights in connection with completion of required site work and infrastructure for the Project.  Prior to bankruptcy, the Debtor established four letters of credit totaling $950,000 to secure completion of the site work for all seven phases of the Project.  The immediate infrastructure needs relate to Phases I – V in which most homes have been completed and sold.  The outstanding sitework for Phases I-V involve primarily installation of street lighting, road paving, sidewalks and related landscaping.  The last two phases of the Project (Phase VI and VII) also require completion of site work, which will be done after the Remaining Homes are completed and sold.  In order to address infrastructure concerns promptly, the Debtor also established a second reserve account totaling $375,000 (the "Infrastructure Reserve") separate and apart from the Confirmation Fund.  The Infrastructure Reserve was funded from the proceeds of the recent sale of 57 Jane Street and is dedicated solely to pay for infrastructure costs for Phases I – V without the need to draw-down on the letters of credit which have been extended through May and June of 2024, respectively.  The Debtor re-engaged Boswell Engineering to oversee the site work which is now almost complete.  To date, the Debtor has expended the total sum of $319,913 from the Infrastructure Reserve, with the balance of the work to be completed within thirty (30) days.  Upon completion of the site work and the infrastructure relating to Phases I -V, the letters of credit directly related to this work (excluding Phase II) shall be cancelled with Saratoga's consent not to be unreasonably withheld.  The letters of credit securing site work for the last two Phases (VI and VII) plus Phase II shall be renewed

7

by the Debtor until completion of this work. The Debtor intends to establish an additional Infrastructure Reserve of approximately $500,000 from the sale of the Remaining Homes to fund the balance of the infrastructure and site work for Phases VI and VII and any unfinished work relating to Phases I through V (the "Additional Infrastructure Reserve").

## ARTICLE IV

## CLASSIFICATION AND TREATMENT OF CLAIMS

The Plan classifies Claims and Interests against the Debtor consistent with the applicable provisions of the Bankruptcy Code.

**Summary**. The categories listed below classify Claims and Interests against the Debtor for all purposes, including voting, confirmation and distribution pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code, as summarized below:

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| Class 1 | Allowed Secured Claim of the DIP Lender | Yes | Yes |
| Class 2 | Allowed Unsecured Claims | Yes | Yes |
| Class 3 | Allowed Insider Claims | N/A | N/A |
| Class 4 | Membership Interests | N/A | N/A |

4.1    **Class 1: The Allowed Secured Claim of The DIP Lender**

**Classification** – Class 1 consists of the Secured Claims of the DIP Lender.

**Background** – The Debtor was a party to various mortgage loans made and issued by BSNB aggregating $1,893,438.92, as of November 27, 2020. The Debtor sought and obtained authorization for the refinancing and assignment to the DIP Lender of the BSNB mortgages as part of the overall DIP Loans and post-petition financing package approved by the Bankruptcy Court pursuant to the Financing Orders. After commencement of the Chapter 11 case, the Debtor paid down the BSNB Loans from prior sales. As of August 14, 2023, the DIP Lender is owed the sum of $2,673,636 of which $1,256,874 is due under the BSNB Loans including

8

interest of $139,113 and the entire $1.2 million Note for post-petition working capital remains unpaid plus accrued interest of $85,849 as of July 31, 2023 (collectively, the "Secured Debt").

**Treatment** – Following the Effective Date, the Debtor shall continue with construction of the Remaining Homes with the goal of selling these units together with Vacant Lots to pay down the Secured Debt owed on account of the DIP Loans until such time (if ever) that the Class 1 Secured Debt is paid in full including all principal, accrued interest, fees and expenses. Payment of the Secured Debt shall be deferred, however, pending repayment of the Additional Exit Financing in full to be provided by the DIP Lender pursuant to (i) a separate application; and (ii) the establishment of the Additional Infrastructure Reserve. The net Sale Proceeds after full payment of the Additional Exit Financing shall then be paid to the DIP Lender on account of the Secured Debt (in whole or part) in accordance with the terms and allocation of the existing Financing Orders in the following order: first, to pay and satisfy in full the BSNB Loans including all principal, interest and any fees and expenses; and second, to pay and satisfy the Note, including all principal, interest and any fees and expenses.

**Impairment** – The Class 1 secured claim of the DIP Lender is impaired and eligible to vote.

4.2    **Class 2: Unsecured Claims**

**Classification** – Class 2 consists of the Allowed Non-Insider Unsecured Claims.

**Background** – All contractors, service providers and vendors which provided work, labor and services in connection with the Project are all being treated as Unsecured Creditors regardless of whether they previously filed mechanics' liens except for a settlement reached with Callanan Industries in connection with the Plan for a lump sum payment of $18,000 in full settlement of all of Callanan Industries' claims and liens.

9

**Treatment** – Excluding the claims of Callanan Industries, the holders of allowed Class 2 Non-Insider Unsecured Claims shall receive a cash distribution equal to approximately fifty (50%) percent of their Allowed Claims from the Confirmation Fund subject to final adjustment based upon the total allowed administrative and priority claims. The *pro rata* distribution shall be paid on the Effective Date in full satisfaction and settlement of all Class 2 Non-Insider Unsecured Claims. If a Class 2 Claim is subject to an objection filed on or before the Claim Objection Deadline, then in such event, a separate reserve shall be established with the Disbursing Agent in an amount sufficient to pay the allocable *pro rata* share of the disputed Class 2 Claim, should such Claim become an Allowed Claim pursuant to Final Order or agreement with the Debtor.

**Impairment** – The Class 2 claims of non-insider unsecured claims are impaired and eligible to vote on the Plan.

4.3   **Class 3:  Insider Claims**

**Classification** – Class 3 consists of all Claims of Insiders, including the Claims filed by or Robin Winter, as executor or on behalf of the estate of Howard N. Blitman (Claim Nos. 21, 22, 23, 29, 30 and 31), as well as the Claims of the estate's affiliates, Changebridge Construction Corp. (Claim No. 24) and Blitman Development Corp. (Claim No. 25), and the Claims of Goren Cousins I LLC (Claim No. 32) and Goren Brothers Limited Partnership (Claim No. 33) (collectively, the "Insider Claims").

**Treatment** – All Insider Claims are deemed subordinated to Class 2 Claims. No distributions shall be made on account of Insider Claims from the Confirmation Fund under the Plan. Instead, all Insider Claims are hereby preserved and any actions to recover on such Claims may be pursued against the Debtor (or others) in any applicable non-bankruptcy forum of competent jurisdiction.

**Impairment** – As Insiders, Class 3 claims are not eligible to vote on the Plan.

**4.4    Class 4:  Membership Interests**

**Classification** – Class 4 consists of the Interests of the pre-petition members of the Debtor, as follows:

| | |
|---|---|
| Saratoga Goren Trust | 50% |
| Howard Blitman | 15% |
| Gary Peresiper | 15% |
| Scott Varley | 15% |
| Thomas P. Keaney | 5% |

**Treatment** – The respective rights and interests of members and Class 4 Interests shall continue post-confirmation in accordance with the Debtor's Amended and Restated Operating Agreement, except that no members shall be eligible to receive any distributions in connection with the Plan on account of their membership interests.

## ARTICLE V

## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

5.1    **Distribution of Confirmation Fund and Additional Exit Financing**. The Plan shall be implemented in the first instance by the prompt distribution of the Confirmation Fund on the Effective Date.  These monies shall be used to pay all allowed claims of Administrative Expenses and Priority Claims and then fund approximately 50% *pro rata* distribution to Class 2 Non-Insider Unsecured Claims (as adjusted).  Insofar as the Class 1 Secured Claim of the DIP Lender is concerned, all liens and mortgages shall survive confirmation of the Plan in accordance with the Financing Orders.  Following the Effective Date, the Debtor is authorized to complete construction and the sale of the Remaining Homes and Vacant Lots without the need for further Bankruptcy Court approval (the "Post-Effective Date Sales").  Based upon current projections, the Debtor will require Additional Exit Financing of up to $1,683,325 to complete construction of the Remaining Homes, with hard costs projected as follows: (a) 6 Katie Lane - $325,000; (b) 8

Katie Lane - $275,000; (c) 9 Jane Street - $325,000; and (d) 11 Jane Street - $425,000. The Debtor shall separately move for approval of the Additional Exit Financing in conjunction with hearings to confirm the Plan. As a condition of Additional Exit Financing, the Debtor intends to terminate pending contracts with respect to 9 Jane Street (Lyeth family) and 6 Katie Lane (Lesiak family) voluntarily or pursuant to 11 U.S.C. §365. All of the net Sale Proceeds (after closing costs and brokerage) generated from the Post-Effective Date Sales shall be paid at the closings thereon in the following order: first, to pay and satisfy the Additional Exit Financing in full with interest; second, to establish the Additional Infrastructure Reserve of approximately $500,000; and third, to pay and satisfy the Secured Debt owed in connection with the balance of the DIP Loans consistent with the terms and allocations set forth in the Financing Orders in the following order: first, to pay and satisfy in full the BSNB Loans, including all principal, interest, and any fees and expenses; and second, to pay and satisfy the Note, including all principal, interest, and any fees and expenses. The Reorganized Debtor shall retain full authority and discretion to market and sell the remaining Homes and Vacant Lots as the Debtor's current management believes appropriate to maximize value.

  5.2 **Sale Free and Clear of All Claims, Liens, Taxes and Interests.** The Remaining Homes and Vacant Lots shall continue to be sold free and clear of all liens, claims, taxes and interests pursuant to 11 U.S.C. §§ 363(b) and (f) and 1123(a)(5), with the liens arising under the DIP Loans to attach to the net Sale Proceeds in accordance with the Financing Orders.

  5.3 **Transfer and Mortgage Taxes**. The sale of each of the Remaining Homes and Vacant Lots (together with related Additional Exit Financing) constitutes the making or delivery of an instrument of transfer pursuant to or in connection with confirmation of the Plan. Therefore, the Additional Exit Financing, as well as Post-Effective Date Sales, shall be exempt

from the payment of any mortgage recording or local or state stamp, real estate transfer or other similar taxes pursuant to 11 U.S.C. §1146(a).

    5.4    **Disbursing Agent**.  The Confirmation Order shall continue the appointment of Goldberg Weprin Finkel Goldstein LLP to act as Disbursing Agent to perform the following functions:

    (i)    To assist local counsel (John Hayko, Esq.) in consummating the sale of the Remaining Homes and Vacant Lots;

    (ii)    To maintain and disburse the Confirmation Fund;

    (iii)    To review, settle, compromise, negotiate or otherwise resolve all Claims in dispute as of the Claim Objection Deadline;

    (iv)    To implement and effectuate the provisions of this Plan, including rejection and termination of the purchase agreements relating to 9 Jane Street and 6 Katie Lane; and

    (v)    To move for entry of a Final Decree closing the Chapter 11 case.

    5.5    **Preservation of Causes of Action**.  Except as otherwise provided in the Plan, all pre-petition and post-petition claims and causes of action arising under federal or state law belonging, accruing or held by the Debtor as of the Effective Date shall vest in the Reorganized Debtor and may be enforced by the Reorganized Debtor following the Effective Date.

## ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS

    6.1    **Executory Contracts**.  The Debtor and Reorganized Debtor intend to negotiate to terminate the contracts to sell 6 Katie Lane and 9 Jane Street and return all deposits.  If terminations of these agreement cannot be obtained voluntarily, the Debtor reserves the right to reject these agreements under 11 U.S.C. §365 as burdensome to the Debtor's estate.

# ARTICLE VII

## NO DISCHARGE AND NO THIRD-PARTY RELEASES

7.1     **Binding Effect**.  On the Effective Date, the terms of this Plan shall be effective and enforceable and shall bind all holders of Claims against or Interests in and against the Debtor, whether or not such holders voted to accept the Plan.

7.2     **No Discharge**.  Pursuant to Section 1141(d)(3) of the Bankruptcy Code, neither the Plan nor confirmation thereof shall discharge any Claim against the Debtor, except that receipt of a distribution under the Plan on account of such Claim shall constitute a valid and binding settlement of such Claim.  All claims by and against Insiders shall not be affected by the Plan.  Thus, Insiders shall retain all legal rights and remedies against the Debtor and each other, subject to the Financing Orders.

7.3     **Injunction.**  Except as otherwise provided herein, all creditors (except the DIP Lender and Insiders or holders of Insider Claims) which have held, currently hold, or may hold Claims, Liens, Interests or causes of action against or in the Debtor or the Project are permanently enjoined from taking any of the following actions:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affecting the Debtor or the Project on account of or in connection with or with respect to any such Claim, Lien, Interest, or cause of action other than as permitted or contemplated by the Plan; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Debtor or the Project on account of or in connection with or with respect to any such Claim, Lien, Interest or cause of action; and (iii) asserting any set-off, right of subrogation or recoupment of any kind directly or indirectly against the Debtor's assets on account of or in connection with or with respect to any such Claim, Lien, Interest, or cause of action.  Notwithstanding anything

14

contained in the Plan to the contrary, the Debtor may be a party to or in any suit, action or other proceeding concerning Insiders, and any holders of Insider Claims may pursue or prosecute any actions or claims to recover on Insider Claims against the Debtor (or any other person, entity or party) following the Effective Date, with any such action or claim having deemed to have been filed or commenced on the Petition Date, provided, however, that any action seeking a recovery against the Debtor or its property concerning an Insider Claim shall be deemed further tolled until payment, in full, of the Secured Debt.

       7.4    **No Third-Party Releases**.  Nothing contained in the Plan shall constitute a release of any third parties with respect to any guarantees, liabilities or debts arising out of or in connection with the Debtor or the Project.  All existing personal guarantees of the pre-petition loans held by BSNB and assigned to the DIP Lender shall continue post-confirmation as may be enforced in state court or other non-bankruptcy forum of competent jurisdiction after the Effective Date, subject to the Financing Orders.  Moreover, neither the DIP Lender, the estate of Howard N. Blitman, Robin Winter, any of the Debtor's members, any guarantors of the BSNB Loans, nor any other party in the State Court Litigation, or any of their representatives, are restricted, stayed or precluded from prosecuting or defending any claims, cross-claims or counterclaims, or commencing or continuing any actions in state court or in any other non-bankruptcy forum of competent jurisdiction, including the State Court Litigation. The Bankruptcy Court shall not exercise any post-confirmation jurisdiction over such third-party claims involving Debtor's members and guarantors of the BSNB Loans, provided, however, that the Bankruptcy Court shall retain jurisdiction with respect to its orders, including the enforcement and interpretation of such orders, including the Financing Orders.

# ARTICLE VIII

## MISCELLANEOUS PROVISIONS

8.1     **Orders in Aid of Consummation**.  Pursuant to applicable provisions of the Bankruptcy Code, the Bankruptcy Court may enter order(s), as warranted in aid of implementation the Plan.

8.2     **Compliance with Tax Requirements**.  The Debtor and the Reorganized Debtor shall comply with all reporting and tax requirements imposed by federal or state law; *provided*, however, that the financing and sale of the Remaining Homes and Vacant Lots shall not be subject to mortgage recording or transfer taxes as provided under Section 1146(a) of the Bankruptcy Code.

8.3     **Modification**.  The Plan may be further amended or modified on motion of the Debtor prior to substantial consummation thereof.

8.4     **Successors and Assigns**.  The rights, benefits and obligations relating to the Plan shall be binding on and shall inure to the benefit of the Debtor and all Creditors and Interest Holders, together with their respective heirs, assigns and successors.

8.5     **Plan Controls**.  To the extent that any provision of the Plan is inconsistent with any prior Order of the Bankruptcy Court, other than the Financing Orders, the Plan and the Confirmation Order shall control.

# ARTICLE IX

## RETENTION OF JURISDICTION

9.1     **Retention of Jurisdiction**. The Bankruptcy Court shall retain post-confirmation jurisdiction, pending the entry of a Final Decree, relating to the following matters:

   a.    Resolve all matters arising under or relating to the enforcement and implementation of the Plan, including any disputes regarding completion of site

        work and infrastructure relating to Phases I – V and the letters of credit securing the same.

b.    Resolve all matters or dispute that may arise in connection with the sale of the Remaining Homes and Vacant Lots;

c.    Allow, disallow, determine, liquidate, classify or establish the priority of any Claim or Interest;

d.    Grant or deny final applications for allowance of Professional Fees and Expenses;

e.    Decide all applications, motions, adversary proceedings, contested or litigated matters, and any other matters involving the Debtors that may be pending on the Effective Date;

f.    Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments and other agreements or documents created in connection with the Plan; and

g.    Enter an Order and Final Decree closing the Chapter 11 case.

## ARTICLE X

## CLOSING THE CASE

10.1    **Bankruptcy Fees**. All Bankruptcy Fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 will be paid until the actual closing of the bankruptcy cases.

10.2    **Post-Confirmation Reporting**. The Disbursing Agent shall file reports with the Bankruptcy Court on a quarterly basis, reflecting disbursements made by the Debtor Post-Confirmation pending entry of the Final Decree as required by United States Trustee Guidelines.

17

10.3    **Closing the Case**.  The Disbursing Agent shall move for the entry of a Final Decree closing the Debtor's bankruptcy case upon substantial consummation of the Plan.

Dated: New York, New York
       August 16, 2023

| Blitman Saratoga LLC | Goldberg Weprin Finkel Goldstein LLP |
| --- | --- |
| | Attorneys for the Debtor |
| | 125 Park Avenue, 12th Floor |
| | New York, New York 10017 |
| | (212) 221-5700 |
| By: /s/ Thomas Keaney | By: /s/ Kevin J. Nash |
|     Thomas Keaney, Manager |     Kevin J. Nash |