**Hearing Date and Time: 09/27/2023 at 10:00 a.m.**

WHITEFORD, TAYLOR & PRESTON L.L.P.
444 Madison Avenue, 4th Floor
New York, NY 10022
(914) 761-8400
klewis@whitefordlaw.com
Kenneth M. Lewis

*Attorneys for Robin Winter, as Executor*
*of the Estate of Howard N. Blitman*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| BLITMAN SARATOGA LLC, | ) | Case No. 20-23177-shl |
| Debtor. | ) | |

### OBJECTION OF ROBIN WINTER, AS EXECUTOR OF THE ESTATE OF HOWARD N. BLITMAN, TO DEBTOR'S SECOND REVISED PLAN OF REORGANIZATION

Robin Winter, as Executor of the Estate of Howard N. Blitman, by her attorneys, Whiteford, Taylor & Preston L.L.P., respectfully submits this Objection to Debtor's Second Revised Plan of Reorganization [Doc. No. 190].

1. While the Second Revised Plan resolves some of the issues addressed at the May 9. 2023 hearing on Debtor's Disclosure Statement,[1] a few dispositive issues remain for the Court

---

[1] Debtor revised § 4.3 of the Plan to no longer provide, as it did in *Debtor's Liquidating Plan of Reorganization* [Doc. No. 99] filed on January 31, 2022, that all of the Claims filed by Robin Winter, as executor or on behalf of the estate of Howard N. Blitman, as well as the Claims of the estate's affiliates are deemed disallowed, while the claims filed by the Gorens' affiliates are allowed, and would receive distributions under the Plan; and § 7.04 of the Plan to no longer provide for the alteration of the paydown provisions of the DIP Financing Orders. Additionally, Mr. Blitman's estate agreed not to object to having the claim held by TPK Development Inc.,

to resolve.

2.  First, the Plan provides that payment of the BSNB Loans[2] will be deferred pending repayment of the Additional Exit Financing in full to be provided by the DIP Lender pursuant to (i) a separate application; and (ii) the establishment of the Additional Infrastructure Reserve. *See* Plan, § 4.1. This is both a material and a new provision, and was therefore not addressed at the May 9 hearing.

3.  Aside from the fact that Debtor has still not filed any application seeking approval of the Additional Exit Financing, priming the BSNB Loans would have the effect of causing Mr. Blitman's estate to fund a portion of Debtor's operations, as Mr. Blitman (as well as other members of the Debtor) provided a partial guaranty of the BSNB Loans.

4.  This is not the first, or even second time that the Gorens have attempted to force Mr. Blitman, and now his estate, to fund Debtor's operations.

5.  As discussed at length in Mr. Blitman's *Objection to Debtor's Motion, Pursuant to §§ 362, 364 and 507, For an Order Authorizing Debtor to Obtain Replacement and New Postpetition DIP Financing* [Doc. No. 11] and *Objection of Robin Winter, as Executor of the Estate of Howard N. Blitman, to Debtor's Motion For Order (A) Approving Disclosure Statement; and (B) Scheduling a Hearing to Consider Confirmation of the Plan* [Doc. No. 171],

---

which, upon information and belief, is either wholly owned or controlled by Thomas P. Keaney, Debtor's current managing member, treated as a Class 2 Non-Insider Claim, rather than a Class 3 Insider Claim; or for the resolution of the Class 3 Insider Claims in any applicable non-bankruptcy forum of competent jurisdiction, rather than this Court. In that regard, Debtor clarified §§ 7.3 and 7.4 of the Plan to provide for the prosecution and defense of claims held by Insiders against Debtor, and each other, in any applicable non-bankruptcy forum of competent jurisdiction.

However, what Debtor has giveth, the Debtor has taketh, as it has now added a new provision in which Debtor proposes to prime the BSNB Loans with the proposed Additional Exit Financing.

[2] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Second Revised Plan.

prior to the Petition Date, and until his removal on June 25, 2020, Mr. Blitman was Debtor's managing member. Scott Varley, also a member of the Debtor, served as the sales manager for the Project since its inception, initially through Realty USA and then through Keller Williams, and was appointed as managing member following Mr. Blitman's removal on June 25, 2020. Following Mr. Varley's resignation, Thomas P. Keaney, who was the project manager from in or about July 2015 until he resigned on June 19, 2020, became Debtor's managing member, and currently serves in that capacity, as well as Debtor's project manager. Gary Peresiper, another member of the Debtor, performed the chief financial officer function of the Debtor until April 30, 2020.

6. In May 2020, upon reviewing Debtor's books and records, Robin Winter, Mr. Blitman's daughter, discovered a number of issues and discrepancies, including finding approximately $750,000 in accounts payable that were not previously accounted for or reported to Mr. Blitman.

7. Upon these discoveries, Robin Winter contacted James and Alex Goren (holders of a 50% membership interest in Debtor) to address those issues, and raised with the Gorens various proposals to fund the Project to completion. Those proposals incorporated the capital call provisions of Section 3.8 of the Blitman Saratoga Operating Agreement, which is the mechanism by which the Debtor can obtain needed capital from its members without incurring borrowing costs, including interest.

8. The proposals also recommended installing a new management team or retaining an independent real estate consultant to ensure the same mistakes would not be repeated.

9. The Gorens rejected them all, insisting that, pursuant to an alleged longstanding oral "umbrella" agreement spanning several real estate projects, Mr. Blitman was liable for fifty

percent (50%) of the losses incurred and that he should fund 50% of any cash requirements (notwithstanding that under the Operating Agreement, he was only required to fund 15%). Unable to reach an agreement over funding, Mr. Blitman was removed as managing member and litigation ensued, including the filing, on August 28, 2020, by Jay Russ, Esq.,[3] on behalf of Debtor and the Gorens, a complaint in New York Supreme Court, Suffolk County, against Mr. Blitman and Ms. Winter titled *Blitman Saratoga, LLC, Alex Goren and James Goren, et al. v. Howard N. Blitman and Robin Winter, Supreme Court of the State of New York, County of Suffolk, Index No. 611885/2020* (the "State Court Litigation"). In that action, which remains pending, Debtor and the Gorens asserted claims of purported mismanagement, misappropriation, breaches of fiduciary duties, as well as breach of the alleged oral "umbrella" agreement. Mr. Blitman's estate and Ms. Winter dispute the claims asserted in the State Court Litigation, and have also asserted a cross-claim against Mr. Peresiper.

---

[3] Mr. Russ also represents Saratoga Funding in this case, as well as in another action he commenced on June 11, 2021, in New York Supreme Court, Saratoga County, against Mr. Blitman's estate, but against no other guarantors, in which it sought to enforce Mr. Blitman's guaranty under the BSNB Loans. *Saratoga Funding, LLC v. Robin Winter, as Executor of the Estate of Howard N. Blitman*, Supreme Court of the State of New York, County of Saratoga, Index Number EF20211733. However, because, pursuant to the DIP Financing Orders, the maturity date of the BSNB Loans was extended until Debtor's last property is sold, that action was dismissed. Mr. Russ has also appeared as counsel for the estate representatives of Alexander M. Goren, James Goren, Goren Brothers, LP and Goren Cousins 1, LLC in the State Court Litigation, and Ira Levine, who is "Of Counsel" to Mr. Russ' firm, represents Mr. Peresiper in the State Court Litigation.

Mr. Russ also represents Goren Brothers Limited Partnership, Goren Cousins I, LLC, MAG Multi Corp., James Goren, Brooke W. Kroeger, Andrea Y. Goren, Mitchell Bredefeld, as Executors of the Estate of Alexander M. Goren, and Goren Brothers, in another action against Ms. Winter, The Howard N. Blitman Revocable Trust, and others, with respect to a different project. *See Goren Brothers Limited Partnership, Goren Cousins I, LLC, MAG Multi Corp., James Goren, Brooke W. Kroeger, Andrea Y. Goren, Mitchell Bredefeld, as Executors of the Estate of Alexander M. Goren, and Goren Brothers, a general partnership, v. Robin Winter, Pond View Partners, LLC, Beaver Brook Beacon Acquisition, LLC and Robin Winter, as Trustee of The Howard N. Blitman Revocable Trust*, Supreme Court of the State of New York, County of Suffolk, Index Number 601642/2021.

10. Next, in a letter to BSNB's Board of Directors dated September 23, 2020, Mr. Russ appears to have threatened and tried to bully BSNB into selling to the Gorens the Bank's loans made to Debtor, which include the personal guarantees of members of the Debtor, including Mr. Blitman.

11. As reflected in a letter dated September 30, 2020, from Peter Burgess, BSNB's counsel, in response to Mr. Russ' September 23, 2020 letter to BSNB's Board of Directors, apparently Mr. Peresiper "told the BSNB relationship manager that the Goren Brothers wanted BSNB to call (*i.e.*, default) the loans." Letter, p. 1. A copy of Mr. Burgess' Letter, as well as Mr. Russ', are annexed as Exhibit "B" to Mr. Blitman's Objection to the DIP Financing Motion. *See* Doc. No. 11-2. Mr. Burgess further observed that "I have practiced in loan workout and litigation for more than 25 years and this is the first time a borrower of my client has asked for a loan default – the request is that unusual." Letter, p. 1. Following further observations of a lack of candor, Mr. Burgess stated that "This all confirms the now transparent effort of the Goren Brothers to purchase the BSNB loans for the purpose of having another claim against Mr. Blitman." Letter, p. 2.

12. On or about November 18, 2020, Debtor filed its *Motion, Pursuant to §§ 362, 364 and 507, For an Order Authorizing Debtor to Obtain Replacement and New Postpetition DIP Financing* [Docket No. 6]. The motion provided, among other things, for approval of the Gorens' purchase of the BSNB bank loans and advancing up to $1.2 million in loans, through Saratoga Funding, LLC ("Saratoga Funding" or the "DIP Lender"), which the Gorens created to purchase the loans and loan money to Debtor.

13. Mr. Blitman filed an objection to the motion. To resolve, in part, Mr. Blitman's objection, the Court entered the *Interim Order Approving and Authorizing the Debtor to Obtain*

*Replacement and New Postpetition Financing Pursuant to 11 U.S.C. §§362 and 364(c)*, on December 8, 2020 (the "Interim Order") (ECF No. 21) and the *Final Order Authorizing the Debtor to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§362 and 364(c)*, on February 5, 2021 (ECF No. 38) (the "Final Order", and, collectively with the Interim Order, the "Financing Orders"). The Financing Orders provide, *inter alia*, that the personal guarantees shall only relate to the BSNB Loans; repayments of the DIP Loans shall be applied first to the satisfaction of all obligations under the BSNB Loans; and the obligations under the BSNB Loans and the DIP Loans shall not become due until the Revised Maturity Date, which is defined as thirty (30) days after the sale of the last home and all vacant lots.

14. While, pursuant to a prior version of the Plan, Debtor sought to alter the paydown provisions mandated by the DIP Orders, that provision has been removed from the current Plan.

15. However, the Second Amended Plan now provides that the BSNB Loans will not be repaid until repayment of the Additional Exit Financing.

16. This Court has already addressed and resolved this very issue when it would not prime the BSNB Loans. Moreover, while, at that time, Debtor projected, as reflected in its budget accompanying the DIP Financing application, there would be more than sufficient sale proceeds to satisfy both the BSNB Loans and the $1.2 million Note, Debtor no longer believes that is the case.

17. While, in its Response to Mr. Blitman's objection to the Disclosure Statement (as well as to the objection filed by Callanan Industries) [Doc. No. 176], Debtor cited *In re Aspen Club & Spa LLC*, 2020 WL 4251761 (10th Cir. 2020), for the proposition that a DIP lien can be subordinated in favor of exit financing, *see* Response, p. 5, ¶ 15, the case does not stand for that proposition.

6

18. In *Aspen*, the court authorized the debtor to borrow up to $4.2 million from EFO Financial, and granted EFO a priming lien against debtor's property, finding there was more than sufficient equity in the property. (The property was found to be worth no less than $90 to $100 million, while the liens were only around $34 million). In contrast, here, Judge Drain did not grant Saratoga Funding a priming lien; to the contrary, the Financing Orders specifically provide that the liens with respect to the existing prepetition BSNB Loans would be senior to the lien granted to Saratoga Funding with respect to the $1.2 million postpetition Note, and that the BSNB Loans were to be paid before the $1.2 million Note.

19. When Aspen sought exit financing, EFO requested that its exit financing lien prime the liens of the prepetition secured lenders, which were previously primed pursuant to the DIP financing order. The exit financing was to be used to, among other things, replace the DIP financing, pay off mechanics' lien claims that were senior to the DIP loan, and complete construction. In contrast, here, the $1.2 million postpetition Note did not prime the BSNB Loans, nor is the proposed Exit Financing being used to pay off the existing senior loans (*i.e.*, the BSNB Loans or the $1.2 million Note).

20. Moreover, in *Aspen*, the Court found there was equity in the property above the debt. In contrast, here, Debtor has already stated in its Plan and Disclosure Statement that there is no equity, as it no longer believes there will be sufficient sale proceeds to pay both the BSNB Loans that were purchased by Saratoga Funding or the $1.2 million Note.

21. The *Aspen* court went on to observe that debtor cannot simply modify the creditor's lien, which Debtor and the Gorens are trying to do here. Rather, it would need to satisfy 1129(b)(2)(A)(iii), pursuant to which, and also quoting from the Second Circuit in *Murel Holding Corp.*, 75 F.2d 941 (2d Cir. 1935) (where the Second Circuit reversed denial of relief

7

from the stay where a creditor proposed to subordinate a first mortgagee's lien to a second mortgagee's loan), that creditor must be provided with the indubitable equivalent of its claim, which means that subordinating the lien "does not increase the creditor's exposure to risk."

22. Finally, the *Aspen* court remanded to the bankruptcy court for findings of fact and conclusions of law on the issue of whether there is a reasonable possibility that the plan provides GPIF with the indubitable equivalent of its claim.[4]

23. Here, Debtor has already represented to the Court that there may not be sufficient sale proceeds to satisfy the BSNB Loans. Thus, based on its own representations, as well as the very case it cites, there is no indubitable equivalent and therefore, absolutely no basis to prime the BSNB Loans.

24. Moreover, the Gorens are not some third-party lenders; they are 50% owners of Debtor that have been running this chapter 11 case since its inception. In addition to protecting their 50% interest in the Debtor, upon information and belief, they are also seeking to minimize exposure on the four letters of credit totaling $950,000 to secure completion of the site work, *see* Plan, § 3.5, which, upon information and belief, were guaranteed by James and Alex Goren.

25. Additionally, the vote of the DIP Lender, which is controlled by the Gorens, should not count in determining whether the Plan will be accepted by creditors.

26. Moreover, the Gorens are retaining their 50% interest in Debtor without providing *any* capital contributions to retain such interests. Yet, the Plan provides that the other Insiders and their affiliates (*i.e.*, Mr. Blitman's estate, Changebridge Construction Corp. and

---

[4] *Cf.*, *In re Hickey Properties*, 181 B.R. 173 (Bankr. D. Vt. 1995) (§ 364(d)(1) does not apply to post-confirmation borrowings. As confirmation vests all property of estate in debtor, no property remains in estate to which a super-priority lien can attach. Moreover, a post-confirmation priming lien violates § 1129(a)(3) because state law does not allow the priming of a secured creditor.)

8

Blitman Development Corp.) will receive no distributions on account of their claims. Thus, the Plan also violates the absolute priority rule.

27. Finally, the Plan provides that Class 2 Non-Insider Unsecured Claims will be paid a *pro rata* dividend of approximately fifty (50%) percent of their Allowed Claims from the Confirmation Fund. *See* Plan, § 4.2.

28. At the time the Court approved Debtor's request to escrow the $600,000 Confirmation Fund, Debtor projected there would be more than sufficient sale proceeds to satisfy the BSNB Loans and the Note. However, if, as Debtor now claims, there will be insufficient sale proceeds to even satisfy the BSNB Loans, among other claims, the Plan, which provides for distributions to Class 2 Non-Insider Unsecured Claims, cannot be confirmed. Thus, Ms. Winter, as Executor of Howard N. Blitman's Estate, objects to, and does not consent to the payment of any funds to any party or entity, including to fund the Additional Infrastructure Reserve, to pay the prospective Additional Exit Financing, or to pay holders of Class 2 Claims, until and unless the BSNB Loans are paid in full.

29. While Debtor claims that it is keeping Debtor's restructuring issues and the internal disputes between the Gorens and Mr. Blitman's estate separate, its actions are to the contrary, as Debtor continues to seek to leverage the bankruptcy plan process to benefit the Gorens to the detriment of Mr. Blitman's estate. If that were not the case, it would not continually be seeking to subordinate the loans that Mr. Blitman guaranteed, as the only parties that would benefit from such subordination are the Gorens.

30. If the Gorens, through Saratoga Funding, wish to protect their 50% membership interest in the Debtor, and to minimize their exposure under the letters of credit, they can still do so through the proposed Additional Exit Financing, provided that the claims and liens granted

9

with respect to such financing simply be junior to those granted pursuant to the DIP Financing Orders.

31. As we have advised Debtor and the Court in prior pleadings and at hearings before the Court, Mr. Blitman's estate wishes to see the Project successfully completed or sold for the benefit of all stakeholders, including existing and prospective homeowners, contractors, and the City of Saratoga Springs. However, as long as Debtor and the Gorens continue to attempt to improperly use the bankruptcy plan process and this Court to gain an improper litigation advantage, any such plan cannot be approved.

32. Mr. Blitman's estate reserves all of its rights, including raising any and all further objections to the Plan, and to any prospective motion seeking to approve the Additional Exit Financing.

WHEREFORE, Robin Winter, as Executor of the Estate of Howard N. Blitman, respectfully requests that the Court sustain her Objection, deny confirmation of the Plan, and grant Mr. Blitman's estate such other and further relief as this Court deems just and proper.

Dated: New York, New York
      September 14, 2023

WHITEFORD, TAYLOR & PRESTON L.L.P.

By: */s/ Kenneth M. Lewis*
    Kenneth M. Lewis

444 Madison Avenue, 4th Floor
New York, NY 10022
(914) 761-8400
klewis@whitefordlaw.com

*Attorneys for Robin Winter, as Executor
of the Estate of Howard N. Blitman*