| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Chapter 11<br>Case No. 20-23177(SHL) |

In re:

BLITMAN SARATOGA LLC,

*Debtor.*

### DECLARATION OF CHRISTOPHER BALDWIN AND TERESA INDYK, AS HOMEOWNER MEMBERS AND DIRECTORS OF BEAVER POND VILLAGE HOMEOWNERS' ASSOCIATION, INC., OF OBJECTION TO CONFIRMATION OF DEBTOR'S SECOND REVISED PLAN OF REORGANIZATION

CHRISTOPHER BALDWIN and TERESA INDYK hereby declare under the penalty of perjury, pursuant to 28 U.S.C. §1746, as follows:

1. We are homeowner members and directors of Beaver Pond Village Homeowners' Association, Inc., and respectfully submit this limited Objection to confirmation of Debtor's Second Revised Plan of Reorganization which was filed on August 18, 2023 [Doc No. 190] (hereinafter the "Plan").

2. The Board of Directors (the "Board") is the entity duly formed and authorized under the Declaration and By-Laws of the Beaver Pond Village Homeowners' Association (the "HOA") to administer the affairs of the HOA. We, Teresa Indyk and Christopher Baldwin (hereinafter the "Independent Directors") are independent resident-directors of the Board who are unaffiliated with the Debtor. The other three directors – Thomas Keaney, Scott Varley and Gary Peresiper (collectively the "Debtor-Directors") – are all members of the Debtor and have interests separate from, or which may even conflict with, the interests of the Board, the HOA and the approximately 60 Beaver Pond homeowners.

1

3.     The Independent Directors object to the Plan to the extent that it fails to set aside enough money to complete the remaining infrastructure work and fails to provide for adequate security in the form of letters of credit ("LOC's) held by the City of Saratoga Springs to ensure the remaining infrastructure work is completed.

4.     The Independent Directors calculate it will cost approximately $835,628.22 to complete the remaining infrastructure work. Accordingly, the following three modifications of the Plan are appropriate for confirmation:

   a. The proposed new Infrastructure Reserve should be increased from "approximately $500,000" [see Plan at 3.5] to $835,628.22, or minimally to $672,175.72, to reflect the actual remaining cost;

   b. Either (i) the Letters of Credit for Phases I-VII should be kept in place and not eliminated, and should be released upon completion of infrastructure work only in proportion to the value of the remaining infrastructure work; or (ii) if any Letters of Credit are to be cancelled, the remaining Letters of Credit should be increased in an amount commensurate with the cost of the remaining Infrastructure Work; and

   c. The new Infrastructure Reserve should be funded from any "Sale Proceeds" (i.e.- proceeds from future sales of both complete homes or vacant lots), rather than just from the sale of the "Remaining Homes."

5.     If the Plan is modified to reflect these three points, the Independent Directors can withdraw their objection to confirmation.

### The HOA Site

6. The HOA is planned residential community located in Saratoga Springs. Debtor originally designed the project to consist of 84 single-family homes to be constructed across seven phases (I-VII). The infrastructure and site work for the community to be completed by the Debtor included the roadways, sidewalks, streetlights, trees and certain walking trails through the HOA property and woods.

7. As set forth in the Debtor's First Revised Disclosure Statement [Doc. No. 191], the Debtor built and sold 60 homes (56 pre-petition sales, 4 sales during this case). There are four more homes under various stages of construction (defined as the "Remaining Homes" – see Plan at ¶1.20), a completed model home, and 13 vacant buildable lots (the "Vacant Lots" – see Plan at ¶1.27).

8. There are, in reality, eight phases of the project because Phase II has two different components- Phase II, which is located among Phases I-V, and Phase II(b) which separated and adjacent to Phases VI-VII.

### The Remaining Infrastructure Work

9. All of the Vacant Lots and the Remaining Homes still requiring construction are located in Phases II(b), VI and VII. Accordingly, the vast majority of the remaining Infrastructure Work is for Phases II(b), VI and VII – there are no sidewalks, no asphalt topcoat on the road, and no streetlights in those areas. There is also some Infrastructure Work remaining in Phases I-V, although much of the work in those phases was completed over the past several months with funds generated from the sale of 57 Jane Street, which closed in February 2023.

10. The Plan states that the Debtor will establish an "Infrastructure Reserve of approximately $500,000" (Plan at ¶3.5). But the Plan does not describe the cost of the remaining Infrastructure Work, whether "approximately $500,000" will be enough to cover the work, or

why the amount of the proposed new reserve fund is only an approximation. Thus, the Independent Directors are left to calculate the amount needed to complete the remaining Infrastructure Work based on documents previously filed by the Debtor and updated information from the City of Saratoga Springs.

11. Engineers from the City of Saratoga Springs have inspected the completed work and prepared a chart in August 2023 of the cost of the remaining Infrastructure Work. That chart, estimates the remaining work to cost $672,175.72. That amount is clearly greater than the "approximately $500,000" the Debtor has budgeted in the Plan.

12. However, the Independent Directors are concerned that the City's chart fails to account for all of the remaining Infrastructure Work, particularly the paving and sidewalks required in Phases II(b), VI and VII, none of which is completed. Thus, the Independent Directors believe the actual cost may exceed the City's estimate of $672,175.72.

13. To be more specific, in 2022 the Debtor filed a chart with figures for the remaining Infrastructure Work, [which was previously filed with Court by the Debtor as exhibit B to Doc. 145]. The Debtor's chart contains two different sections for Phase II and Phase II(b) work (which is logical as the work in those sections was to be done separately) and represented the remaining square feet of sidewalks and paving to be completed in Phase II(b) and Phases VI-VII. With respect to the roads, according to the Debtor the total remaining paving is 56,000 sq/ft in Phase II(b) and 63,000 sq/ft in Phases VI-VII. The City's chart, on the other hand, does not include anything for Phase II(b) and 89,460 $ft^2$ in Phases VI-VII.

14. And according to the Debtor, there is 11,250 sq/ft of sidewalks remaining to be installed in Phase II(b) and 12,750 sq/ft in Phases VI-VII. The City's chart, again, does not include anything for Phase II(b) and 18,325 sq/ft of remaining sidewalks in Phases VI-VII.

15. Using the City's estimate of $4.20 sq/ft for paving and $6.94 sq/ft for sidewalks, this discrepancy results in a cost underestimate by the City of $124,068 for the roads and $39,384.50 for the sidewalks. The following chart illustrates this more clearly:

|  |  | Debtor's Chart (sq/ft) | City Chart (sq/ft) | Shortfall (sq/ft) |
|---|---|---|---|---|
| Paving | Phase II(b) | 56,000 | - |  |
|  | Phases VI-VII | 63,000 | 89,460 |  |
|  |  | 119,000 | 89,460 | (29,540) |
|  |  |  | at $4.20/sq ft | $ 124,068.00 |
| Sidewalks | Phase II(b) | 11,250 | - |  |
|  | Phases VI-VII | 12,750 | 18,325 |  |
|  |  | 24,000 | 18,325 | (5,675) |
|  |  |  | at $6.94/sq ft | $ 39,384.50 |

16. Thus, if the Debtor's reporting of the square footage of sidewalks and paving needed in Phases II(b), VI and VII is correct, the Independent Directors believe the total cost to complete all remaining Infrastructure Work could be as high as $835,628.22 ($672,175.72 + 124,068.00 + 39,384.50).

17. But whether the actual final amount winds up closer the City's estimate of $672,175.72, or the Independent Director's estimate of $835,628.22, the Debtor's proposal of an "Infrastructure Reserve of approximately $500,000" is inadequate, unsupported and too indefinite to be included as part of a confirmed Plan. Thus, the Plan should not be confirmed unless it is modified to increase the amount of the new Infrastructure Reserve or until the interested parties (Debtor, City of Saratoga Springs and Independent Directors) come to agreement to the estimate of cost for the remaining Infrastructure Work.

18. Finally, it should be noted that in addition to the cost estimate discrepancies, there exists a point of omission. It appears the Debtor has not included costs to fund remaining walking trails not yet constructed that are enumerated in approved Open Space Management Plan for Beaver Pond Village. The City of Saratoga Springs has estimated this cost to be $10,000, which may be inadequate.

### The Letters of Credit

19. The Debtor provided four letters of credit in varying amounts to the City as a guarantee of its completion of the required Infrastructure Work, all of which are set to expire in May or June 2024. Those letters of credit are as follows:

| | $ |
|---|---|
| LOC Phase I | 221,500.00 |
| LOC Phase II | 294,000.00 |
| LOC Phase III-V | 136,250.00 |
| LOC Phase VI-VII | 268,000.00 |
| Total | 919,750.00 |

20. The Plan states that "[u]pon completion of the site work and the infrastructure relating to Phases I-V, the letters of credit directly related to the work (excluding Phase II) shall be cancelled with Saratoga's consent not to be unreasonably withheld. The letters of credit securing the site work for the last two Phases (VI and VII) plus Phase II shall be renewed by the Debtor until completion of this work." See Plan at ¶3.5.

21. This would be problematic and lead to the under-securitization of remaining Infrastructure Work. Specifically, as set forth above the City calculates that the Infrastructure

Work for Phases II(b), VI and VII will cost $672,175.72, and the Independent Director's believe that cost could approach $835,628.22. Yet if the Phase I and Phase III-V letters of credit are cancelled now, the value of the remaining LOC's would only total $562,000.

22.   Thus, there are two viable options to address this problem: (i) all LOCs should remain in place and should be released upon completion of infrastructure work only in proportion to the value of the remaining infrastructure work, or (ii) if any LOCs are to be cancelled, the remaining LOCs should be increased in an amount commensurate with the cost of the remaining Infrastructure Work.

23.   Accordingly, the Plan should not be confirmed unless appropriately modified to prevent any disparity between the existing Letters of Credit and cost of the remaining Infrastructure Work.

## The Infrastructure Reserve Should Be Funded From Any Sale

24.   The new Infrastructure Reserve should be funded from any "Sale Proceeds" (i.e.- proceeds from future sales of both complete homes or vacant lots), rather than just from the sale of the "Remaining Homes".

25.   As drafted, the Plan states that the Infrastructure Reserve would be funded only form sale of the Remaining Homes. However, the Plan also contemplates that Vacant Lots may be sold, rather than developed, by the Debtor.

26.   As set forth above, an "Infrastructure Reserve of approximately $500,000" is insufficient to cover the probable cost of all remaining work, and a larger Infrastructure Reserve is necessary. It should not matter if that reserve is funded with proceeds are received from the

sale of one of the four Remaining Homes, or from the sale of one of the 13 Vacant Lots. Either way, the reserve needs to be adequately funded, regardless of the type of sale.

## Conclusion

27. The Independent Directors want to see a viable Plan presented and will support confirmation if the modifications set forth above are made. Most importantly, the Independent Directors need to ensure that all remaining Infrastructure Work is completed and these modifications are necessary to provide that assurance.

28. As such, the Court should not confirm the Plan in its current form, and should require these modifications as a condition of confirmation.

29. We declare under penalty of perjury that the foregoing is true and correct to our knowledge and belief.

Dated: September 15, 2023

_____
CHRISTOPHER BALDWIN

_____
TERESA INDYK

State of: New York
County of: Saratoga
The foregoing instrument was acknowledged before me 15 day of September 2023.

_____
Kristina Toomey
Your Name Here, Notary Public
My Commission Expires: June 12 2025

KRISTINA M. TOOMEY
Notary Public, State of New York
Saratoga County #01TO6360198
Commission Expires June 12, 20 25