**Hearing Date and Time: 10/19/2023 at 10:00 a.m.**

WHITEFORD, TAYLOR & PRESTON L.L.P.
444 Madison Avenue, 4th Floor
New York, NY 10022
(914) 761-8400
klewis@whitefordlaw.com
Kenneth M. Lewis

*Attorneys for Robin Winter, as Executor*
 *of the Estate of Howard N. Blitman*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BLITMAN SARATOGA LLC, | ) | Case No. 20-23177-shl |
| | ) | |
| Debtor. | ) | |
| | ) | |

### OBJECTION OF ROBIN WINTER, AS EXECUTOR OF THE ESTATE OF HOWARD N. BLITMAN, TO DEBTOR'S MOTION PURSUANT TO 11 U.S.C. § 364 FOR AN ORDER AUTHORIZING DEBTOR TO OBTAIN POST-CONFIRMATION EXIT FINANCING

Robin Winter, as Executor of the Estate of Howard N. Blitman, by her attorneys,

Whiteford, Taylor & Preston L.L.P., respectfully submits this Objection to *Debtor's Motion*

*Pursuant to 11 U.S.C. § 364 For an Order Authorizing Debtor to Obtain Post-Confirmation Exit*

*Financing* (ECF No. 202).

1.      While Debtor claims that the adage "no good deed goes unpunished" forms the

backdrop for its Motion, as it accepted several of Mr. Blitman's estate's comments to attempt to

head-off potential objections to its Plan, it fails to mention that it added a brand-new provision,

which, given the backdrop of this case, knew would never pass-muster and thus, trumped any

claimed good-faith efforts to reach consensus on a Plan.

2.      One of the biggest, if not the biggest disputes between Mr. Blitman's estate, on the one hand, and the Gorens, on the other hand, is over the funding of Debtor's operations.

3.      The first time this issue came to a head was in the summer of 2020, when, in addressing the need for additional capital, the Gorens insisted that pursuant to an alleged oral "umbrella" agreement, Mr. Blitman was required to fund fifty (50%) percent of any cash requirements. Following an impasse, the Gorens launched their scorched-earth strategy, pursuant to which they removed Mr. Blitman as managing member, asked BSNB to call the BSNB Loans, and commenced the State Court Litigation. *See* Objection to the DIP Financing Motion (ECF No. 11); Objection to the Disclosure Statement (ECF No. 171); and Amended Objection to the Plan (ECF No. 196), which are incorporated herein.

4.      The second time was in November 2020, when, pursuant to the DIP Financing Motion, Debtor sought to prime the BSNB Loans in this Court.  Following the filing of Mr. Blitman's Objection to the DIP Financing Motion (ECF No. 11), this Court entered the Interim Financing Order (ECF No. 21) and the Final Financing Order (ECF No. 38), which provide that the personal guarantees shall only relate to the BSNB Loans; repayments of the DIP Loans shall be applied first to the satisfaction of all obligations under the BSNB Loans; and the obligations under the BSNB Loans and the DIP Loans shall not become due until the Revised Maturity Date, which is defined as thirty (30) days after the sale of the last home and all vacant lots.[1]

---

[1] Notwithstanding those decretal paragraphs of the Financing Orders, on June 11, 2021, Saratoga Funding commenced, in New York Supreme Court, Saratoga County, an action against Mr. Blitman's estate, but against no other guarantors, with respect to the BSNB Loans. *Saratoga Funding, LLC v. Robin Winter, as Executor of the Estate of Howard N. Blitman*, Supreme Court of the State of New York, County of Saratoga, Index Number EF20211733.  Mr. Blitman's estate was required to spend time and money to cause that action to be discontinued, as, pursuant to the Financing Orders, the maturity date of the BSNB Loans was extended until Debtor's last property is sold.

5.       The third time was on March 7, 2023, when Debtor filed *Debtor's Revised Plan of Reorganization* (ECF  No. 165), in which it sought to alter the paydown provisions of the Financing Orders when it included, in the "No-Third-Party Releases" section of the Plan, the following language: "[t]he provisions of the DIP Financing Order relating to the allocation of loan payments shall not be operative following the Effective Date."

6.       Mr. Blitman's estate objected to the Disclosure Statement with respect to that Plan on several grounds, including that the reallocation could result in Mr. Blitman's estate effectively funding the Debtor.  (ECF No. 171).  Following the May 9 hearing, Debtor removed that provision.

7.       In its efforts to reach consensus on the Plan, Mr. Blitman's estate agreed not to object to having (i) the claims held by TPK Development Inc., an affiliate of Thomas P. Keaney, Debtor's current managing member, treated as a Class 2 Non-Insider Claim, rather than a Class 3 Insider Claim; or (ii) Class 3 Insider Claims being resolved in any applicable non-bankruptcy forum of competent jurisdiction, rather than this Court. *See* Plan Objection, n. 1. This is in addition to Mr. Blitman's estate previously agreeing to the subordination of Insider Claims to those held by non-Insiders. Such concessions hardly constitute derailment of Debtor's Plan.

8.       In that regard, Debtor accepted Mr. Blitman's estate's comments that included clarifying §§ 7.3 and 7.4 of the Plan to provide for the prosecution and defense of claims held by Insiders against Debtor, and each other, in any applicable non-bankruptcy forum of competent jurisdiction.[2]  Mr. Blitman's estate also agreed not to object to the payment of brokerage commissions to Scott Varley's brokerage firm, Keller Williams Capital District.

---

[2] In Debtor's prior version of the Plan, while it was clear that the Gorens were free to pursue claims against Mr. Blitman's estate, there was no corresponding language providing that Mr. Blitman's estate (and others) could pursue any of their claims.

9.      What the Debtor has given, the Debtor has taken, as it has added a brand-new provision to the Plan in which Debtor is now seeking to prime the BSNB Loans with the proposed Additional Exit Financing.  This is now the fourth attempt by the Gorens to try to force Mr. Blitman, or his estate, to fund Debtor's operations.

10.     Assuming, arguendo, that there would ever be *any* justification for a lender to seek to prime itself, particularly where, as here, it is doing so as part of its litigation strategy to create exposure on Mr. Blitman's guaranty, and in turn, try to force Mr. Blitman's estate to fund operations, as this Court already found no justification for priming the BSNB Loans the first time around, when Debtor believed there was more than sufficient equity to do so, there is certainly no support for doing so now, where Debtor projects a significant shortfall of at least $800,000 in the event the BSNB Loans are subordinated.  *See* Exit Financing Motion, ¶ 11.

11.     Debtor cannot contend that Mr. Blitman's estate does not have standing, *see* Exit Financing Motion, ¶ 21 (or only has limited standing, *see* Exit Financing Motion, ¶ 17, whatever that means) to object to the "accommodations" Saratoga Funding proposes to make to itself (*i.e.*, priming itself), as such accommodations would result in a deficiency under the BSNB Loans of at least $800,000, *see* Exit Financing Motion, ¶ 11, thereby implicating Mr. Blitman's guaranty. *See* 11 U.S.C. ¶ 1109(b); *TransUnion LLC v. Ramirez*, 594 U.S. __, 141 S. Ct. 2190, 2203 (2021) (to establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief); *In re Heating Oil Partners, LP*, 422 Fed.Appx. 15, 2011 WL 1838720, *2 (2d Cir. 2011) (insurer that was obligated to satisfy, in whole or in part, judgment entered against debtor prosecuted after stay had gone into effect was "party in interest" with standing to raise stay issue); *In re Global Indus.*

*Technologies, Inc.*, 645 F.3d 201, 210-13 (3d Cir. 2011), *cert denied* 565 U.S. 1014, 132 S. Ct. 551 (2011) (even though insurers' ultimate liability was contingent, they had standing to object to plan that significantly increased their exposure); *In re Revco D.S., Inc.*, 901 F.2d 1359, 1363 (6th Cir. 1990) (holder of preferred stock in holding company that owned debtor had standing to object to postpetition financing and to also pursue appeal); *In re Farley, Inc.*, 156 B.R. 203, 208 (Bankr. N.D. Ill. 1993) (PBGC, as guarantor of debtor's pension plans, had standing to object to debtor's attorneys' fees).

12.     And as already discussed in the Plan Objection, the Gorens (through Saratoga Funding) are not some market-driven lenders; they are members with a 50% interest in Debtor that has been running this chapter 11 case since its inception.  In addition to protecting their 50% interest in the Debtor, upon information and belief, they are also seeking to minimize exposure on the four letters of credit totaling $950,000 to secure completion of the site work, *see* Plan, § 3.5, which, upon information and belief, were guaranteed by James and Alex Goren.[3]

13.     Next, while Debtor continues to rely on *In re Aspen Club & Spa LLC*, 2020 WL 4251761 (10th Cir. 2020), for the proposition that a DIP lien can be subordinated in favor of exit financing, as discussed, at length, in Mr. Blitman's estate's objection to the Plan, the *Aspen* case does not support such priming.  Nor do any of the other cases cited by Debtor support the priming proposed in Debtor's Exit Financing Motion, under any standard, let alone the heightened one that governs insiders.[4]

---

[3] Despite having already raised this issue in two prior pleadings, *see* Disclosure Statement Objection, ¶ 34; Plan Objection, ¶¶ 24 & 30; Debtor has still not disclosed whether the Gorens, in fact, guaranteed the letters of credit and if any exposure on those guarantees is impacted by the Additional Infrastructure Reserve or the Additional Exit Financing.

[4] While the only other case that even mentions exit financing is *In re Latam Airlines Group SA*, 620 B.R. 722 (Bankr. S.D.N.Y. 2020), there, the debtor asserted that the financing was not exit financing, nor was the financing approved in any event.

14.     Moreover, in *In re Hickey Properties*, 181 B.R. 173 (Bankr. D. Vt. 1995), where, as here, debtor sought to secure post-confirmation borrowings with a superpriority lien that would prime the existing first lien, the court denied such financing, as well as confirmation of the plan.  The court found that § 364(d)(1) does not apply to post-confirmation borrowings, as confirmation vests all property of estate in debtor, and therefore, no property remains in estate to which a super-priority lien can attach.  The court further found that a post-confirmation priming lien violates § 1129(a)(3) because state law does not allow the priming of a secured creditor.

15.     If, as Debtor claims, the insiders can "have at it" in the State Court Litigation, *see* Debtor's Response to Objections to Disclosure Statement (ECF No. 176), ¶ 15, it should be held to its word, and, if in fact, it is determined in the State Court Litigation that Mr. Blitman's estate is required to fund 50% of Debtor's cash requirements, it can do so at that time.  However, this Court should not, and cannot be used to try to force Mr. Blitman's estate to fund Debtor's cash requirements, particularly where, as here, the Gorens and Debtor have insisted that the resolution of those claims be resolved in state court.

16.     It has now been more than 3 years since Mr. Blitman was removed as managing member.  Yet, throughout this case, Mr. Blitman seems to be blamed for every conceivable operational, infrastructure or funding shortfall in this case, even though the very same team that was in place during Mr. Blitman's tenure remains in place.  Indeed, Thomas P. Keaney, Debtor's current managing member, was Debtor's project manager from about July 2015, until he resigned on June 19, 2020, and became managing member.  When Debtor proposed the $600,000 Confirmation Fund back in January 2022, it justified the fund on its belief that there were more than sufficient closing proceeds to satisfy all creditors in full.  At that time, Mr. Keaney was Debtor's managing member for more than 18 months and was Debtor's project manager for

6

more than 6 years.  Yet, Debtor is hardly blaming Mr. Keaney, or any of Debtor's other members, for any of the problems that Debtor currently faces, including those relating to the need for additional capital for infrastructure.

17.     Finally, it is remarkable that given the urgent need for Additional Exit Financing, *see* Exit Financing Motion, ¶ 2, Debtor waited until September 22, just days before the originally scheduled confirmation hearing of September 27, to file its motion seeking its approval (notwithstanding that the Plan contemplated the filing of such motion, *see* Plan, ¶ 4.1), in which, for the first time, it discusses any details of the proposed financing.  While Debtor's initial Plan, filed on January 31, 2022 (ECF No. 99), did not even mention exit financing, its next one, filed more than a year later, on March 7, 2023 (ECF No. 165), only mentioned it in passing.  And it was not until more than a month following the May 9 hearing on the Disclosure Statement that Debtor included any provisions in its Plan concerning exit financing, including, for the very first time, that it is now seeking to prime (for the third time during this case) the BSNB Loans.  Given this backdrop, it seems impossible that Debtor was trying to head off potential objections to its Plan.

18.     As discussed, while Debtor claims that Mr. Blitman's estate is not being asked to guarantee the exit financing, *see* Exit Financing Motion, ¶ 7, the priming of the BSNB Loans does just that, as such priming would result in a shortfall of at least $800,000, which would not be the case if the priming were not approved.  And while Debtor further tries to justify the priming by claiming that the DIP Loans and the Additional Exit Financing serve different purposes and functions, that has nothing to do with whether there is any justification for priming the BSNB Loans.

19.     If the Gorens, through Saratoga Funding, wish to lend money to Debtor, whether

to protect their 50% membership interest in the Debtor, to minimize their exposure under the letters of credit, or for any other reason, they can still do so through the proposed Additional Exit Financing, provided that the claims and liens granted with respect to such financing simply be junior to those granted pursuant to the DIP Financing Orders.

20.     As we have advised Debtor and the Court in prior pleadings and at hearings before the Court, Mr. Blitman's estate wishes to see the Project successfully completed or sold for the benefit of all stakeholders, including existing and prospective homeowners, contractors, and the City of Saratoga Springs.  However, so long as Debtor continues to do the Gorens bidding and attempts to improperly use this Court to provide the Gorens with an improper litigation advantage, any requests to do so, whether through a plan, a motion, or otherwise, should be denied.

WHEREFORE, Robin Winter, as Executor of the Estate of Howard N. Blitman, respectfully requests that the Court sustain her Objection, and grant Mr. Blitman's estate such other and further relief as this Court deems just and proper.

Dated: New York, New York
          October 10, 2023

WHITEFORD, TAYLOR & PRESTON L.L.P.

By: */s/ Kenneth M. Lewis*
     Kenneth M. Lewis

444 Madison Avenue, 4th Floor
New York, NY 10022
(914) 761-8400
klewis@whitefordlaw.com

*Attorneys for Robin Winter, as Executor
 of the Estate of Howard N. Blitman*