| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT | Hearing Date and Time: |
| SOUTHERN DISTRICT OF NEW YORK | October 19, 2023 at 10:00 a.m. |

-----------------------------------------------------------------x

In re:                                                                        Chapter 11

Blitman Saratoga LLC,                                          Case No. 20-23177 (SHL)

Debtor.

-----------------------------------------------------------------x

### DECLARATION OF THOMAS KEANEY IN SUPPORT OF CONFIRMATION OF THE DEBTOR'S SECOND REVISED PLAN OF REORGANIZATION AND RELATED EXIT FINANCING

Thomas Keaney declares under penalties of perjury pursuant to 28 U.S.C. § 1746:

1.      I am the manager of Blitman Saratoga LLC (the "Debtor") and I respectfully submit this Declaration in support of confirmation of the Debtor's Second Revised Chapter 11 Plan of Reorganization [ECF No. 190] (the "Plan").[1] The Plan has gained the support of the Official Committee of Unsecured Creditors (the "Committee") and the unanimous support of all voting unsecured creditors.  The Plan should be confirmed as a fair, proper and necessary resolution of this Chapter 11 case.

2.      I have been active in the bankruptcy case since inception.  I manage remaining construction at the Debtor's residential development known as "Beaver Pond Village" on a day-to-day basis.  I am literally and figuratively "the boots on the ground" and deal with all contractors and City of Saratoga Springs officials relating to completion of the remaining homes and infrastructure.  I am a graduate of RPI with years of construction experience.  I am also the president of the Homeowners Association.  In view of the foregoing, I am fully familiar with the facts and circumstances set forth below.

---

[1] All terms defined in the Plan shall have the same meanings for the purpose of this Declaration.

**Background**

3.     The Debtor has accomplished a great deal in the Chapter 11 case.  After receiving DIP Financing, the Debtor resumed construction in 2021 despite the challenges of the Covid-19 pandemic and ultimately finished and sold five homes (including the model).   These sales generated, among other things, the Confirmation Fund of $600,000 and enabled the Debtor to establish a separate reserve of $375,000 to fund infrastructure costs relating to Phases I-V.

4.     The Debtor is on the cusp of successfully emerging from Chapter 11 and has lined-up Exit Financing to complete the remaining construction and infrastructure.  I was personally involved in formulating the Plan and provided input in the drafting of the Debtor's Revised Disclosure Statement which contains a detailed summary of the various hurdles that have been overcome by the Debtor during the Chapter 11 case.  For purposes of the confirmation, the factual recitations of the Disclosure Statement are incorporated by reference.

**The Objection of the HB Estate Should be Overruled**

5.     Unfortunately, the primary obstacle to confirmation comes from the Estate of Howard Blitman as represented by Robin Winter (the "HB Estate") who seeks to derail the entire process to facilitate a personal agenda.  Historically, Howard Blitman as the original developer, together with his daughter, Robin Winter, mismanaged the project and left the Debtor with no operating funds as of late November 2020, triggering the need for Chapter 11.

6.     Without any other liquidity, the main financial investors James Goren and his late brother, came to the rescue and caused the Chapter 11 filing to be made in November 2020. The Gorens thereafter advanced funds to resume construction under a Court approved DIP Loan Facility. The Goren brothers organized the DIP Lender (Saratoga Lender LLC) and made a total DIP Loan of $3,100,000.  James Goren is now prepared to fund an additional and separate Exit

Financing in the total sum of $1,683,225 as part of the confirmation process, all as detailed in the Debtor's accompanying motion seeking formal approval of the Exit Financing (ECF No. 202).

7.      The HB Estate's motivation in lodging objections to the Plan is to attempt to limit its exposure under a personal guarantee relating to the pre-petition mortgage indebtedness originally held by Ballston Spa National Bank ("BSNB").  The BSNB pre-petition mortgage was assigned to the DIP Lender as part of the DIP Loan refinancing, including an assignment of the guarantee of Howard Blitman (and others) given to BSNB.

8.      Early on, the DIP Loans were earmarked to be repaid from the subsequent sale of homes and vacant lots. The Interim and Final Financing Order contained certain provisions allocating the net sale proceeds to first reduce and pay down the BSNB pre-petition mortgage debt that was guaranteed by Howard Bitman and others, and then pay down the balance of the DIP loan.

9.      As events unfolded, however, the DIP Loans were exhausted without completion of all home sales.  Nevertheless, during the Chapter 11 case, the Debtor made various partial payments to the DIP Lender, leaving a current total balance of $2,673,639 as of August 31, 2023, of which $1,256,874 remains due under the BSNB pre-petition mortgage as guaranteed by Howard Blitman and others.  The Plan provides that the DIP Lender's balance of $2,673,639 is being deferred post-confirmation pending additional sales and will be paid from future proceeds after repayment of the proposed Exit Financing of $1,685,225, beginning with the guaranteed portion of the DIP Loans as provided by the allocations under the Financing Orders.

10.     Indeed, the Debtor still requires additional financing to complete the four remaining homes at 6 Katie Lane, 8 Katie Lane, 9 Jane Street and 11 Jane Street, and to fund remaining infrastructure costs projected to be $543,000 covering the second half of Phase II and Phases VI and VII.  The updated infrastructure budget is approximately $543,000.

11.     Without this Exit Financing, the Debtor's residential development cannot be completed.  Moreover, infrastructure will be left incomplete to the chagrin of creditors, the City of Saratoga Springs and the residential community.  For this reason, approval of the Exit Financing is a critical aspect of the Plan.  While the Confirmation Fund of $600,000 is immediately available to pay administration expenses and return a *pro rata* dividend of approximately fifty (50%) percent to unsecured creditors, additional financing is needed to insure the overall feasibility of the Plan.  Hence, there is a critical need for approval of the Exit Financing as part of the confirmation process.

12.     As a condition of the new loan, the DIP Lender has demanded, and the Debtor agrees, that the Exit Financing must be repaid first before the balance of the prior DIP Loans are paid down. This is a strict condition of the proposed Exit Financing imposed by the DIP Lender consistent with customary market terms, failing which the DIP Lender is not prepared to provide Exit Financing.  No other party has objected to the proposed Exit Financing, except for HB Estate without providing any financing alternatives or sound business justification as to why the Exit Financing is not permitted to be repaid first.  The Exit Financing is intended, and must be viewed as a separate facility, not tied to the prior DIP Loans which have been exhausted.

13.     I can state that there are no other better terms available to the Debtor concerning Exit Financing than those offered by the DIP Lender. Specifically, I consulted with Dan Fariello, President of Capital Bank in Albany, New York.  Mr. Fariello confirmed that market interest rates on comparable construction loans in the area are currently running over nine (9%) percent per annum.  Mr. Fariello shared with me a term sheet recently issued by Capital Bank relating to a different loan for a senior development project in the area which carries and interest rate of more than a nine (9%) per annum.  A copy of this redacted term sheet relating to this comparable loan

is annexed hereto as Exhibit "A".  It shows quite clearly that the proposed Exit Financing, with interest at slightly above 5% per annum based on a one-year treasury, is far better than any current market rates.

14.     Moreover, Capital Bank is requiring a continuing first mortgage lien on this loan. In my experience, I see no chance that any type of Exit Financing can be obtained without a first priority repayment on the new funds advanced.  The Financing Orders do not preclude additional borrowing by the Debtor, nor require that any additional borrowing be subordinated to the existing loans.

15.     Accordingly, the game of brinkmanship being played by the HB Estate to undermine badly needed Exit Financing must be overruled.  In fact, proposed Exit Financing is beneficial to the HB Estate since the sale of the remaining homes will provide additional liquidity to pay-down the guaranteed debt of Howard Blitman even after repayment of the Exit Facility.

**The Other Objections to Confirmation**

16.     Besides the HB Estate, two other limited objections were filed mainly to preserve various specific rights without necessarily opposing confirmation or Exit Financing.  First, the two minority members of the Homeowners' Association filed an objection essentially questioning whether a reserve of $500,000 (since increased to $543,000) was sufficient to fund remaining infrastructure.  According to the objection, the reserve should be at least $672,175.02.  I developed the remaining infrastructure budget in consultation with the City and I believe that the projected amounts are sufficient.  It is noteworthy that I completed infrastructure for Phases I-V on budget, utilizing the reserve of $375,000.  I believe I will be equally successful with the balance of the infrastructure.  Yet, besides the reserve, the Debtor will have access to other sale proceeds if a deficiency arises.  I also note that various letters of credit will remain in place until all infrastructure

work is completed.  Because the reserve is not the exclusive source for funding infrastructure, the objection should be overruled.

17.     I further note that the two minority members do not have the authority to act on behalf of the Homeowners' Association.  Pursuant to the Association Bylaws, a copy of which are attached hereto as <u>Exhibit</u> "B" the Debtor, as sponsor, retains majority control over the Board. However, the goal remains to complete infrastructure regardless of the minority members lack of standing. The quality of the infrastructure already completed is sound and the remaining infrastructure will be done in a similar workman-like manner.  I have the necessary experience and relationships to maintain proper cost controls so that the remaining infrastructure is completed in a timely and effective manner.

18.     Insofar as the objections regarding the Akker family are concerned, their house at 11 Jane Street is scheduled to be completed by next Spring and will be resold.  Under the terms of the existing settlement, the balance of $30,000 owed to the Akkers shall be paid from the resale proceeds.  I do not foresee any future default in this settlement but, if necessary, we can create a reserve of $30,000 from the Exit Financing pending a resale.

19.     In sum, the limited objections do not present a basis to deny confirmation of the Plan but do crystalize that the only way the limited objections can be fully addressed is through approval of the Exit Financing over the objection of the HB Estate.

**Compliance With Section 1129**

20.     Section 1129(a)(l). The Plan has been filed in good faith and complies with the Bankruptcy Code.

21.     Section 1129(a)(2). The Plan also complies with the applicable provisions of the Bankruptcy Code.

22.    Section 1129(a)(3). The Plan was proposed in good in consultation with the Committee.

23.    Section 1129(a)(4). All payments and professional fees for services rendered by the Debtor's counsel and the Committee's counsel remain subject to approval of the Bankruptcy Court as being reasonable.

24.    Section 1129(a)(5). The requirement of Section 1129(a)(5) providing for the Plan proponent to disclose all necessary information regarding directors, officers, and insiders is satisfied.  The Plan provides for continued completion of home sales and infrastructure under my oversight in conjunction with the DIP Lender.

25.    Section 1129(a)(6). Because the Plan does not propose any rate changes, Section 1129(a)(6) does not apply.

26.    Section 1129(a)(7). The Plan complies with the best interests test under Section 1129(a)(7) of the Bankruptcy Code, as general creditors will be paid for more than they could expect in liquidation and foreclosure.

27.    Section 1129(a)(8). As set forth in the Amended Certification of Balloting (the "Certification") (ECF No. 210) the impaired unsecured class of general claims has unanimously voted to approve the Plan.

28.    Section 1129(a)(9). The Plan properly provides for the payment of Administrative Claims from the Confirmation Fund.

29.    Section 1129(a)(10). As set forth in the Certification, Class II voted to accept the Plan. Accordingly, the requirement of Section 1129(a)(10) that at least one impaired class accept the Plan has been satisfied.

30.     Section 1129(a)(11). The Plan is feasible given the immediate availability of the Confirmation Fund and the DIP Lenders commitment to finance the Exit Facility.  Moreover, the Debtor has obtained the voluntary termination of pre-petition contracts from the Lyeth family and Lesiak family as per the attached letter agreements, collectively annexed hereto as Exhibit "C". Thus, completion of the last four homes can resume without legal entanglements.

31.     Section 1129(a)(12). The Debtor shall continue to pay all accrued and future quarterly fees pursuant to 28 U.S.C. § 1930.

32.     I am advised that the balance of the requirements under 11 U.S.C. § 1129(a)(13), (14), (15) and (16) do not apply to the Debtor.

For all of the reasons set forth above, the Plan should be confirmed, and all objections should be overruled.

Dated: New York, NY
        October 11, 2023


                                                /s/ Thomas Keaney

W:\GWFG\new data\Yen\word\Blitman Saratoga, LLC\Declaration in support of confirmation of Second Revised Plan 10-11-23 v1.docx