Hearing Date/Time:
October 19, 2023 @ 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re

BLITMAN SARATOGA LLC,

Debtor.

Chapter 11
Case No. 20-23177 (SHL)

**DECLARATION BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN
SUPPORT OF CONFIRMATION OF DEBTOR'S SECOND REVISED PLAN AND
MOTION FOR EXIT FINANCING**

**FRANCIS J. BRENNAN, ESQ.**, an attorney admitted to practice law in the State of New York and the United States District Court for the Southern District of New York affirms under penalty of perjury as follows in support of confirmation of the *Second Revised Plan of Reorganization* (the "Plan") by debtor Blitman Saratoga, LLC ("Debtor") and *Debtor's Motion Pursuant to 11 U.S.C. §364 for an Order Authorizing Debtor to Obtain Post-Confirmation Exit Financing* (the "Exit Financing Motion"), and respectfully submits the following:

1.      I am a partner in the law firm of Nolan Heller Kauffman LLP ("NHK") and am counsel to the Official Committee of Unsecured Creditors (the "Committee") in the Debtor's Chapter 11 case.  I submit the within Declaration in Support of Confirmation of the Debtor's Second Revised Plan and in support of the Debtor's Motion for Exit Financing (the "Declaration").

2.      The Debtor filed its petition for relief on November 6, 2020 (the "Petition Date"). Since the Petition Date, the Debtor has (i) successfully obtained DIP financing, which addressed certain defaults on the pre-petition loans with Ballston Spa National Bank ("BSNB") and provided additional working capital to continue construction of houses and continued installation of infrastructure in the Beaver Pond Village subdivision; (ii) completed construction and sale of five

houses in the sub-division despite facing historic economic, labor and supply chain issues as a result of the Covid-19 pandemic; (iii) generated proceeds from the sale of those properties that were applied to the DIP Loans[1], including the reduction of the balance of the DIP Loans attributable to the BSNB portion of the those loans; (iv) obtained the consent of the DIP Lender to the carveout (the "Carveout") of $600,000 for payment of administrative claims and a dividend of approximately fifty (50%) percent to general, unsecured creditors; (v) negotiated terms and funding for the completion of remaining infrastructure work within the sub-division with the City of Saratoga Springs, which work inures to the benefit of the current and future homeowners in the sub-division (and which work continues to be secured by letters of credit issued in favor of the City of Saratoga Springs); (vi) proposed a plan for the completion of construction of four remaining homes as well as the sale of unimproved lots within the sub-division, with the proceeds of such sales to be paid to the DIP Lender; (vii) obtained a commitment for exit financing on terms more advantageous to the Debtor than would otherwise be available to a borrower in the Debtor's circumstances and in the current lending market; and (viii) preserves the rights, claims and defenses of the Howard Blitman Estate and the other members of the Debtor to litigate the claims between them in an appropriate stat court forum.

3.      Summarizing, confirmation of the Debtor's Plan will result in completion of the sub-division, payments to secured, administrative and general unsecured creditors, closure of the Chapter 11 case, and resumption of litigation in state court with respect to claims among members that are not amenable to this Court's jurisdiction.

4.      Denial of confirmation will likely result in (i) the DIP Lender declining to provide exit financing; (ii) potential conversion or dismissal of the Debtor's Chapter 11 case; (iii)

---

[1] Capitalized terms used herein and not defined shall have the meaning as set forth in the Plan or Exit Financing Motion, ass applicable.

unfinished construction of the remaining lots in the sub-division; (iv) further delay in payment to general unsecured creditors that have patiently participated in the case specifically because of the Carveout and the promise of payment of a substantial portion of their claims from the Carveout; (v) the likely foreclosure by the DIP Lender of its mortgagee interest in the Debtor's real property.

5.      The Debtor's case has been pending for approximately three years.  The time has come to confirm the Plan.  Accordingly, it is respectfully submitted that the *Objection of Robin Winter, as Executor of the Estate of Howard N. Blitman, to Debtor's Second Revised Plan of Reorganization* (the "Blitman Plan Objection") and the *Objection to Confirmation of Debtor's Second Revised Plan of Reorganization by Christopher Baldwin and Teresa Indyk, as Homeowner Members and Directors of Beaver Pond Homeowners' Association, Inc*. (the "HOA Objection") and the *Objection to Debtor's Second Revised Plan of Reorganization* by Michael and Lisa Akker (the "Akker Objection") should be overruled in their entirety and the Court should enter an order confirming the debtor's Plan.  It is further respectfully submitted that the Court should overrule the *Objection of Robin Winter, as Executor of the Estate of Howard N. Blitman, to Debtor's Motion pursuant to 11 U.S.C. §364 for an Order Authorizing Debtor to Obtain Post-Confirmation Exit Financing* (the "Blitman Exit Financing Objection") for the reasons set forth herein.

**I.      THE BLITMAN PLAN OBJECTION SHOULD BE OVERRULED**

6.      With respect to the Blitman Plan Objection's clam that the Debtor failed to file a motion to approve the proposed exit financing provided for under the Plan, it is respectfully submitted that objection has been rendered moot by the filing of the Exit Financing Motion. Further, any objection to the Debtor's funding of the Additional Infrastructure Reserve should be overruled because the Debtor is obligated to complete the infrastructure within the sub-division. To the extent that the infrastructure is not completed, the City of Saratoga Springs will presumably

call the letters of credit issued to secure completion of the infrastructure, which would further expose the members to the extent of their guaranties of those letters of credit. Given Mr. Keaney's successful completion of a portion of the infrastructure, his working relationship with the contractors performing the work on the remaining infrastructure and his continuing involvement in the project post-petition, it is not clear why the Blitman Estate would object to the Plan providing for the Additional Infrastructure Reserve.

7.      Although not explicitly denoted as such, the Blitman Plan Objection asserting that the Carveout should not be paid unless and until the BSNB portion of the DIP financing has been paid in full is essentially an objection that the Plan violates the Absolute Priority Rule because the secured claim of the DIP Lender (or at least that portion of the DIP Loan attributable to the BSNB debt) will not be paid prior to payment of the Carveout to unsecured creditors. The Blitman Estate similarly objects to the funding of the Additional Infrastructure Reserve on the same grounds.

8.      The Blitman Estate's objection ignores the fact that confirmation of the Plan is sought pursuant to 11 U.S.C. §1129(a), and the Absolute Priority Rule is not applicable to confirmation of the Plan. Further, having obtained this Court's approval of the Carveout pursuant the *Order Granting Debtor's Omnibus Motion and Approving (A) the Settlement with the Eastin Family in Conjunction with the Sale of Residential Homes Located at 47 Jane Street and 49 Jane Street Free and Clear of All Liens, Claims and Interests and (B) Such Sale* [sic] [Dkt. No 108] (the "Carveout Order") entered on March 16, 2022, the Creditors' Committee and the unsecured creditors have waited patiently while the Debtor developed its Plan and continued to litigate with the Blitman Estate regarding both bankruptcy and non-bankruptcy matters before this Court. Denial of confirmation based on the Blitman Plan Objection to application of the Carveout as contemplated and provided for in the Court's order entered nearly one and one-half years ago

would be inequitable to the unsecured creditors whose payments have been delayed during the pendency of this case.

9.     Overlapping with the Blitman Plan Objection is the Blitman Exit Financing Objection. While the Blitman Estate objects to payment of the exit financing priming payment of the DIP Loans, it fails to offer any alternative to sources of funding to complete the sub-division, including completion of construction of homes and infrastructure, funding of the Additional Infrastructure Reserve and the Carveout. Further, the Committee's agreement to the Carveout was integral to the Debtor's continued post-petition operations and directly resulted in the unanimous consent to confirmation of the Plan. Indeed, given that the DIP Lender is an insider, the general unsecured creditors in Class 2 are the *only* creditors whose votes on the Plan are entitled to be counted for confirmation purposes[2]. Accordingly, absent the Carveout and with the prospect of unsecured creditors receiving no distribution, it is safe to assume that the unsecured creditors would not have voted to confirm the Plan. Thus, the Carveout is an essential aspect of the Plan without which it could not be confirmed.

10.     The remainder of the Blitman Plan Objection repeats the litany of claims among the Debtor's members that are beyond the scope of this Court's jurisdiction and have appropriately been referred back to the appropriate stat court forum for resolution. It is respectfully submitted, however, that those claims should not further delay confirmation of the Debtor's Plan.

**II.     THE BLITMAN EXIT FINANCING OBJECTION SHOULD BE OVERRULED**

11.     It is abundantly clear from the Debtor's Disclosure Statement that, absent exit

---

[2] Class 1 consists of the claim of Saratoga Funding LLC, whose members are insiders of the Debtor. Class 3 consists of the Unsecured Insider Claims and Class 4 includes the membership and equity interests in the Debtor. Given the impairment of Class 2 creditors, the votes of classes of insiders cannot be considered pursuant to 11 U.S.C. §1129(a)(10).

financing, the Debtor would be unable to complete the project, pending contracts would be breached, infrastructure improvements would not be completed, unsecured creditors would not receive a dividend and the DIP Lender would presumably resort to its state court remedies and foreclose its mortgages against the Debtor's real property.  Presumably, that action would result in a deficiency for which the Blitman Estate would be liable, at least with respect to that portion of the DIP Loans attributable to the BSNB Loans.

12.    Further, despite being a member of the Debtor, the Blitman Estate has not offered to fund the Debtor's post-petition operations nor has  it offered to provide the obviously necessary exit financing.

13.    Since the exit financing is clearly necessary for confirmation of the Plan as well as the opportunity to successfully complete the Plan (which would inure to the benefit of the Blitman Estate), opposition to the motion to approve such financing should be overruled in its entirety.

14.    The Declaration of Thomas Keaney clearly demonstrates the efforts undertaken to review opportunities for exit financing from sources other than the DIP Lender.  It is reasonable to assume that a borrower in the Debtor's circumstances would have a difficult time obtaining financing to complete the sub-division and related work.  As noted in the term sheet example provided by Mr. Keaney, the terms of a comparable loan (presumably to a borrower not saddled with a three-year old Chapter 11 case, unpaid suppliers and membership disputes) would require a first mortgage against the borrower's properties, significant pay down obligations during the loan term and an interest rate nearly double that of the proposed rate for the exit financing.[3]  Indeed, the DIP lender proposes to charge 5% per annum on the exit financing.

---

[3] The current Wall Street Journal Prime Rate quoted in the commitment letter example is 8.5%.  Applying the 0.75% noted results in an interest rate of 9.25%.  Further, given the delays in Debtor's completion of construction of the projects, it seems unreasonable to assume that the Debtor could possibly comply with the periodic pay down requirements in the term sheet.

15.     While the proposed exit financing requires subordination of the DIP Loans to repayment of the exit financing, the Blitman Estate offers no alternative to the proposed terms. Based on the information provided in Mr. Keaney's declaration, subordination of existing indebtedness to proposed exit financing would be reasonably expected.  As noted above, the Disclosure Statement and Plan make abundantly clear that completion of the project requires exit financing.  The harm to the Debtor, its estate, unsecured creditors and the guarantors of the DIP Loans, including the Blitman Estate with respect to that portion of the DIP Loans attributable to the BSNB Loans, is obvious in the event that exit financing is not obtained.  The immediate result would presumably be denial of confirmation of the Plan after the case has been pending for nearly three years.  Such a result would be exceedingly inequitable to the general unsecured creditors that patiently waited for confirmation of the Plan and whose votes are the only way the Plan can be confirmed.

### III.     THE HOMEOWNERS' OBJECTION TO CONFIRMATION SHOULD BE OVERRULED

16.     To the extent the Debtor retains control over the homeowners' association pursuant to the terms of the Bylaws of Beaver Pond Village Homeowners' Association, Inc., the objecting homeowners lack standing to assert an objection to confirmation of the Plan.

17.     Notwithstanding the homeowners' lack of standing, Mr. Keaney makes clear that (i) he has reviewed the remaining infrastructure to be completed; (ii) based on his experience in the industry and specifically with respect to his experience completing the infrastructure in earlier phases of this project he has developed a reasonable estimate of the costs of completion; and (iii) letters of credit in favor of the City of Saratoga Springs remain in place until the completion of the remaining infrastructure.  Accordingly, the Debtor appears to have adequately addressed the homeowners' concerns.

## IV.    THE AKKERS' OBJECTION TO CONFIRMATION SHOULD BE OVERRULED.

18.    The terms of the court-approved settlement with the Akkers controls the terms of the Debtor's obligations.  The debtor's offer to escrow $30,000.00 to fund the balance owed to the Akkers pursuant to the court-approved settlement appears to resolve their limited objection.

**WHEREFORE**, it is respectfully requested that the Court overrule the Blitman Plan Objection, the Blitman Exit Financing Objection, the Homeowners' Objection, and the Akkers' Objection, enter an Order confirming the Debtor's Plan and granting the Exit Financing Motion, together with such other and further relief as this Court may deem just and proper.

Dated:  October 12, 2023
        Albany, New York                         **NOLAN HELLER KAUFFMAN LLP**


                                      By:  /s/Francis J. Brennan
                                           Francis J. Brennan, Esq,
                                           80 State Street, 11th Floor
                                           Albany, New York 12207
                                           (518) 449-3300
                                           fbrennan@nhkllp.com


                                           *Attorneys for the Official
                                           Committee of Unsecured Creditors*